## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**NEC Corporation,**

              Plaintiff,

      v.

**Peloton Interactive, Inc.**

              Defendant.

Civil Action No.:

**TRIAL BY JURY DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

1.      Plaintiff, NEC Corporation ("Plaintiff" or "NEC") files this Complaint for patent infringement and demand for jury trial against Defendant Peloton Interactive, Inc. ("Defendant" or "Peloton"), and alleges as follows:

## NATURE OF THE ACTION

2.      This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") against Peloton for infringement of U.S. Patent No. 8,752,101 (the "'101 Patent"), U.S. Patent No. 8,909,809 (the "'809 Patent"), and U.S. Patent No. 9,769,427 (the "'427 Patent") (collectively the "patents-in-suit"), which are attached as Exhibits A, B, and C, respectively, and incorporated herein by reference, pursuant to 35 U.S.C. § 271, to recover damages, attorney's fees, and costs.

## THE PARTIES

3.      Plaintiff NEC is a corporation organized under the laws of Japan, with its principal place of business at 7-1, Shiba 5-chome Minato-ku, Tokyo 108-8001 Japan.

4.      Upon information and belief, Defendant Peloton Interactive, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 441 Ninth Avenue, 6th Floor, New York, New York 10001.

## JURISDICTION AND VENUE

5.     This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*.  This Court's jurisdiction over this action is proper under relevant statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has general personal jurisdiction over Defendant at least because Defendant is incorporated in Delaware.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

## FACTUAL ALLEGATIONS

8.     Founded in 1899 and based in Tokyo, Japan, NEC (Nippon Electric Company) has through its 120-year history been a world leader and innovator across a variety of technical industries, including in electronic devices, computing, computer displays, semiconductors, mobile phones and communications, and most recently, software and artificial intelligence solutions. Over the years, NEC has expended significant resources on research, development, and innovation, and on capturing and protecting the fruits of those efforts in patent applications filed around the world.  The patents-in-suit, which provide improved multimedia content delivery systems and methods, were born from this history of innovation.

9.     NEC is the owner of the patents-in-suit with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

10.     The claims of the patents-in-suit are directed to patent eligible subject matter under 35 U.S.C. § 101.  They are not directed to any abstract idea, and the technologies covered by the claims comprise content delivery and distribution systems and/or consist of ordered combinations

of features and functions that, at the time of the invention, were not, alone or in combination, well-understood, routine, or conventional.

11.     On information and belief, Defendant offers content streaming services—such as the "Peloton App"—that deliver content data from a transmission device to one or more reception devices and manufactures and/or sells products—such as the "Peloton Bikes" and "Peloton Treads"—that use such content streaming services (together, the "Accused Products").  For example, the Accused Products use a content distribution method applied to a distribution system including a transmission device and a reception device.

12.     On information and belief, the Accused Products also include a content delivery system that includes a server device and a client device configured to be communicable with each other.  The delivery system also comprises an application server system and one or more connection control servers.

13.     On information and belief, the Accused Products also connect a client device, such as a laptop, tablet, cellphone, a Peloton Bike, or a Peloton Tread to a Peloton content delivery server.  The content delivery server then requests content from a server, and then transmits that content to the user device, along with sub content that is overlaid onto the content.

14.     The patents-in-suit are described briefly as follows:

**The '101 Patent**

15.     On June 10, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '101 Patent, entitled "DISTRIBUTION SYSTEM" after a full and fair examination.  The '101 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

16.     Claim 11 of the '101 Patent states:

"11. A distribution method applied to a distribution system including a transmission device and a reception device configured to be capable of communicating with each other, the distribution method comprising:

transmitting content data, which is one content coded with any one code rate of a plurality of code rates different from each other, to the reception device, by the transmission device;

while receiving the content data transmitted by the transmission device, storing received data of the content data into a storage device and also reproducing the content based on the stored data, by the reception device;

determining the code rate based on a remaining time before reproduction start time set as time at which the reception device starts reproduction of the content from a present moment, and based on an available reproduction time, which is a time available for reproducing the content based on the content data stored in the storage device of the reception device;

changing the code rate of the content data to be transmitted to the reception device to the determined code rate, by the transmission device; and

starting reproduction of the content at the set reproduction start time, by the reception device." *See* Exhibit A.

17.    Claim 11 of the '101 Patent recites a non-abstract method for distributing content data including a transmission device and a reception device.

18.    Claim 11 of the '101 Patent provides the practical application of a method for distributing content data including a transmission device and a reception device.

19.    Claim 11 of the '101 Patent provides an inventive concept for a method for distributing content data including a transmission device and a reception device.

20.    Claim 11 of the '101 Patent provides specific elements/steps that accomplish the desired results to overcome the then existing problems in the relevant field of content delivery methods.

21.    The specific elements/steps of Claim 11 of the '101 Patent were an unconventional arrangement of elements compared to prior art content delivery systems.  As such, Claim 11 of the '101 Patent was able to unconventionally change the code rate of the content data to be transmitted to the reception device.

22.     For example, the specification of the '101 Patent identifies that in content data distribution systems, the transmission code rate can be either extremely low or extremely high. Exhibit A, 2:8-12.  The method of Claim 11 in the '101 Patent provides a non-conventional and specific solution to the problem by reciting, at least, "determining the code rate based on a remaining time before reproduction start time set as time at which the reception device starts reproduction of the content from a present moment, and based on an available reproduction time, which is a time available for reproducing the content based on the content data stored in the storage device of the reception device."

23.     Claim 11 of the '101 Patent recites a specific, inventive way of providing more efficient data transfer, by providing a transmitting device that adjusts the code rate of transmitted content data to the reception device.

**The '809 Patent**

24.     On December 9, 2014, the USPTO duly and legally issued the '809 Patent, entitled "DELIVERY SYSTEM, DELIVERY METHOD, SERVER DEVICE, PROGRAM, AND CLIENT DEVICE" after a full and fair examination.  The '809 Patent is attached hereto as Exhibit B and incorporated herein as if fully rewritten.

25.     Claim 1 of the '809 Patent states:

"1. A delivery system including a server device and a client device configured to be communicable with each other,
the server device being configured to be able to transmit, to the client device, content data in which a piece of content is encoded at an arbitrary one of a plurality of different bit rates;
the delivery system comprising:
a remaining reproduction time acquisition unit for acquiring remaining reproduction time that is a period of time during which the content can be reproduced based on a portion of the data stored in the storage device of the client device that has not been reproduced; and
a bit rate changing unit for calculating, according to a predetermined correction amount calculation procedure, a correction amount for correcting the bit rate of the content data transmitted by the server device based on the acquired

remaining reproduction time and a preset target value so as to approximate the remaining reproduction time to the target value, and changing the bit rate based on the calculated correction amount,

the bit rate changing unit being configured to calculate, when the bit rate is within a predetermined correction amount reducing range, a correction amount having a smaller magnitude than a magnitude of the correction amount calculated according to the correction amount calculation procedure." *See* Exhibit B.

26.    Claim 1 of the '809 Patent recites a non-abstract system for delivering content including a server device and a client device.

27.    Claim 1 of the '809 Patent provides the practical application of a system for delivering content including a server device and a client device.

28.    Claim 1 of the '809 Patent provides an inventive concept for a system for delivering content including a server device and a client device.

29.    Claim 1 of the '809 Patent provides specific elements/steps that accomplish the desired results to overcome the then existing problems in the relevant field of content delivery systems.

30.    The specific limitations of Claim 1 of the '809 Patent were an unconventional arrangement of elements compared to prior art content delivery systems.  As such, Claim 1 of the '809 Patent was able to unconventionally transmit information from a server device to a client device efficiently despite fluctuating data reception rates.

31.    For example, the specification of the '809 Patent identifies that in content data delivery systems, the delivery to the client device can be interrupted when the remaining reproduction time of the content becomes too short.  Exhibit B, 1:31-33.  The system of Claim 1 of the '809 Patent provides a non-conventional and specific solution to the problem by reciting, at least, "a bit rate changing unit for calculating, according to a predetermined correction amount calculation procedure, a correction amount for correcting the bit rate of the content data transmitted by the server device based on the acquired remaining reproduction time and a preset target value

so as to approximate the remaining reproduction time to the target value, and changing the bit rate based on the calculated correction amount."

32.    Claim 1 of the '809 Patent recites a specific, inventive way of providing more efficient data transfer, by preventing the content reproduction by the client device from being interrupted.

**The '427 Patent**

33.    On September 19, 2017, the USPTO duly and legally issued the '427 Patent, entitled "CONTENT DELIVERY SYSTEM" after a full and fair examination.  The '427 Patent is attached hereto as Exhibit C and incorporated herein as if fully rewritten.

34.    Claim 1 of the '427 Patent states:

"1. A content delivery system comprising an application server system and one or more connection control servers,

the one or more connection control servers being configured to receive equipment specification information transmitted by a user equipment and establish a connection between the application server system and the user equipment based on the received equipment specification information,

the application server system comprising:

a memory for storing sub content data representing sub content and main content data representing main content;

a first receiver for receiving a content delivery request transmitted by the user equipment and containing main content identification information for identifying the main content;

a processor for selecting the stored sub content data based on selection information containing attribute information representing an attribute of the sub content; and

a first transmitter for transmitting selected sub content specification information for specifying the selected sub content data via the one or more connection control servers to the user equipment which has transmitted the content delivery request, wherein the first transmitter is configured to, at a same time that the one or more connection control servers executes a process for guaranteeing a communication bandwidth required for transmitting content data as a process for establishing the connection, transmit the play-list information via the one or more connection control servers to the user equipment which has transmitted the content delivery request, the play-list information being information containing the main content identification information contained in the content delivery request and the selected sub content specification information, and the play-list

7

information being information containing information indicating a sequence in which the main content identified by the main content identification information and the sub content specified by the selected sub content specification information are output,

wherein the user equipment comprises a second receiver for receiving main content data and sub content data transmitted by the application server system and output, based on the received main content data and sub content data, viewing content in which sub content represented by the sub content data is inserted in main content represented by the main content data." *See* Exhibit C.

35.     Claim 1 of the '427 Patent recites a non-abstract system for distributing data including an application server system and one or more connection control servers.

36.     Claim 1 of the '427 Patent provides the practical application of a system for distributing data including an application server system and one or more connection control servers.

37.     Claim 1 of the '427 Patent provides an inventive concept for a system for distributing data including an application server system and one or more connection control servers.

38.     Claim 1 of the '427 Patent provides specific elements/steps that accomplish the desired results to overcome the then existing problems in the relevant field of content delivery systems.

39.     The specific limitations of Claim 1 of the '427 Patent were an unconventional arrangement of elements compared to prior art content delivery systems.  As such, Claim 1 of the '427 Patent was able to unconventionally to cause a user to view the user's desired content and/or advertisement content selected by the user.

40.     For example, the specification of the '427 Patent identifies that in content data distribution systems, sometimes it is impossible to cause a user to view the user's desired content and/or advertisement content selected according to the user.  Exhibit C, 1:48-52.  The system of

Claim 1 in the '427 Patent provides a non-conventional and specific solution to the problem by reciting, at least, "a first transmitter for transmitting selected sub content specification information for specifying the selected sub content data via the one or more connection control servers to the user equipment which has transmitted the content delivery request, wherein the first transmitter is configured to, at a same time that the one or more connection control servers executes a process for guaranteeing a communication bandwidth required for transmitting content data as a process for establishing the connection, transmit the play-list information via the one or more connection control servers to the user equipment which has transmitted the content delivery request, the play-list information being information containing the main content identification information contained in the content delivery request and the selected sub content specification information, and the play-list information being information containing information indicating a sequence in which the main content identified by the main content identification information and the sub content specified by the selected sub content specification information are output."

41.    Claim 1 of the '427 Patent recites a specific inventive way of providing more efficient data transfer, by allowing the transmission of additional sub content when supported by the appropriate bandwidth.

### Count I: Infringement of the '101 Patent

42.    Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

43.    On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent in violation of 35 U.S.C. § 271(a).

44.    On information and belief, Defendant makes, has made, offers to sell, sells and/or uses the Accused Products.

45.     On information and belief, the Accused Products use the content distribution methods and systems claimed in the '101 Patent. The Accused Products include servers configured to communicate with a reception device as described in and claimed by the '101 Patent. *See* Exhibit D. Thus, Defendant's Accused Products infringe the '101 Patent.

46.     For example, use of the Accused Products includes running the Peloton Web Application. A Peloton server sends content data to the Peloton Web Application, and the code rate is changed during the transmission described in and claimed by the '101 Patent. Thus, on information and belief, Defendant directly infringes the claimed method for content distribution as described in the '101 Patent by making, having made, offering to sell, selling and/or using the Accused Products including the claimed communication between a server and reception device. In particular, Defendant infringes the '101 Patent at least when its instructors teach classes on the Accused Products, its employees demonstrate the Accused Products in its showrooms, and/or its employees conduct testing on the Accused Products. Defendant further infringes the '101 Patent by training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Peloton's customers including, but not limited to, end-users, subscribers, and digital connected device platforms for implementing the content distribution method as claimed in the '101 Patent. A non-limiting and exemplary claim chart comparing Accused Products to Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent is attached hereto as Exhibit D.

47.     Defendant has known of the '101 Patent at a date prior to the filing of this Complaint, and has known of the '101 Patent at least upon the filing of this Complaint. For example, NEC put Defendant on notice of its infringement of the '101 patent at least in a letter dated July 26, 2022.

48.     On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 4, 5, 11, 12, 14–16, 18, 20–23, 25, and 26 of the '101 Patent.

49.     On information and belief, Defendant is liable for inducing infringement of the '101 Patent under 35 U.S.C. § 271(b) by having knowledge of the '101 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '101 Patent, with specific intent, by its customers.

50.     Specifically, Defendant induces infringement of the '101 Patent by training, promotion, and/or sales of the Accused Products to Peloton customers for their use of the content distribution method as claimed in the '101 Patent.  On information and belief, Peloton provides demonstrations and user manuals to Peloton customers.  Defendant's customers for the Accused Products directly infringe the '101 Patent by using the Accused Products as instructed by Defendant.

51.     As alleged above, Defendant had knowledge of the '101 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '101 Patent at a date prior to the filing of this Complaint.  Despite knowing that its actions constitute induced infringement of the '101 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of the patent, Peloton nevertheless continues its infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

52.     Peloton is liable for contributory infringement of the '101 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part

of the invention embodied in the '101 Patent, which Peloton knows to be especially made and/or especially adapted for use in infringement of the '101 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

53.    Specifically, Peloton contributes to infringement of the '101 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Peloton's customers for their use of the content distribution method as claimed in the '101 Patent.  Those customers directly infringe the '101 Patent by using the Accused Products.

54.    By engaging in the conduct described herein, Defendant has injured NEC and is thus liable for infringement of the '101 Patent, pursuant to 35 U.S.C. § 271.

55.    Defendant has committed these acts of infringement without license or authorization.

56.    As a result of Defendant's infringement of the '101 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

57.    As a result of Defendant's infringement of the '101 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

58.    As alleged above, Defendant had knowledge of the '101 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '101 Patent at a date prior to the filing of this Complaint.  Despite such knowledge, Defendant has continued its infringing activities.  Upon information and belief, Defendant's infringement of the '101 Patent is willful, entitling Plaintiff to enhanced damages

pursuant to 35 U.S.C. § 284.  This action is therefore exceptional within the meaning of 35 U.S.C.

§ 285, entitling Plaintiff to its attorneys' fees and expenses.

59.     NEC is in compliance with 35 U.S.C. § 287.

**Count II: Infringement of the '809 Patent**

60.     Plaintiff realleges and incorporates by reference all of the allegations set forth in

the preceding paragraphs.

61.     On information and belief, Defendant directly infringes, literally and/or under the

doctrine of equivalents, at least Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent in

violation of 35 U.S.C. § 271(a).

62.     On information and belief, Defendant makes, has made, offers to sell, sells and/or

uses the Accused Products.

63.     On information and belief, the Accused Products use the content distribution

method claimed in the '809 Patent.  The Accused Products include servers that transmit content

data, and client devices that receive content data, at an adjustable bit rate as described in and

claimed by the '809 Patent. *See* Exhibit E.  Thus, Defendant's Accused Products infringe the '809

Patent.

64.     For example, use of the Accused Products includes connecting a client device, such

as a laptop, tablet, cellphone, a Peloton Bike, or a Peloton Tread to a Peloton content delivery

server.  The bit rate of the content data is changed according to the remaining reproduction time,

as described in Claim 1 of the '809 Patent.  Thus, on information and belief, Defendant directly

infringes the claimed method for distributing content as described in the '809 Patent by making,

having made, offering to sell, selling, and/or using the Accused Products including the claimed

content distribution system.  In particular, Defendant infringes the '809 Patent at least when its

instructors teach classes on the Accused Products, its employees demonstrate the Accused

Products in its showrooms, and/or its employees conduct testing on the Accused Products. Defendant further infringes the '809 Patent by training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Peloton's customers including, but not limited to, end-users, subscribers, and digital connected device platforms for implementing the content delivery system as claimed in the '809 Patent. A non-limiting and exemplary claim chart comparing Accused Products to Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent is attached hereto as Exhibit E.

65.    Defendant has known of the '809 Patent at a date prior to the filing of this Complaint, and has known of the '809 Patent at least upon the filing of this Complaint.  For example, NEC put Defendant on notice of its infringement of the '809 patent at least in a letter dated July 26, 2022.

66.    On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent.

67.    On information and belief, Defendant is liable for inducing infringement of the '809 Patent under 35 U.S.C. § 271(b) by having knowledge of the '809 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '809 Patent, with specific intent, by its customers.

68.    Specifically, Defendant induces infringement of the '809 Patent by training, promotion, and/or sales of the Accused Products to Peloton customers for their use of the content delivery system as claimed in the '809 Patent.  On information and belief, Peloton provides demonstrations and user manuals for the Accused Products to Peloton customers.  Defendant's customers for the Accused Products directly infringe the '809 Patent by using the Accused Products as instructed by Defendant.

69.     As alleged above, Defendant had knowledge of the '809 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '809 Patent at a date prior to the filing of this Complaint.  Despite knowing that its actions constitute induced infringement of the '809 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of the patent, Peloton nevertheless continues its infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

70.     Peloton is liable for contributory infringement of the '809 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '809 Patent, which Peloton knows to be especially made and/or especially adapted for use in infringement of the '809 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

71.     Specifically, Peloton contributes to infringement of the '809 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Peloton's customers for their use of the content delivery system as claimed in the '809 Patent.  Those customers directly infringe the '809 Patent by using the Accused Products.

72.     By engaging in the conduct described herein, Defendant has injured NEC and is thus liable for infringement of the '809 Patent, pursuant to 35 U.S.C. § 271.

73.     Defendant has committed these acts of infringement without license or authorization.

74.    As a result of Defendant's infringement of the '809 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

75.    As a result of Defendant's infringement of the '809 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

76.    As alleged above, Defendant had knowledge of the '809 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '809 Patent at a date prior to the filing of this Complaint.  Despite such knowledge, Defendant has continued its infringing activities.  Upon information and belief, Defendant's infringement of the '809 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284.  This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

77.    NEC is in compliance with 35 U.S.C. § 287.

### **Count III: Infringement of the '427 Patent**

78.    Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

79.    On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 4, 5, 14–18, 20, 22, 32, and 34–36 of the '427 Patent in violation of 35 U.S.C. § 271(a).

80.    On information and belief, Defendant makes, has made, offers to sell, sells and/or uses the Accused Products.

81.    On information and belief, the Accused Products use the content distribution systems and methods claimed in the '427 Patent.  The Accused Products include an application

server system and a connection control server, where the connection control server transmits equipment specification information from user equipment to the application server system and transmits sub content specification information from the application server system to the user equipment as described in and claimed by the '427 Patent. *See* Exhibit F. Thus, Defendant's Accused Products infringe the '427 Patent.

82.     For example, use of the Accused Products includes connecting a client device, such as a cellphone, a Peloton Bike, or a Peloton Tread to a Peloton content delivery server. The content delivery server then requests content from a broadcast facility, and then transmits that content to the user device, along with sub content that is overlaid onto the content as described in and claimed by the '427 Patent. In particular, Defendant infringes the '427 Patent at least when its instructors teach classes on the Accused Products, its employees demonstrate the Accused Products in its showrooms, and/or its employees conduct testing on the Accused Products. Defendant further infringes the '427 Patent by training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Peloton's customers including, but not limited to, end-users, subscribers, and digital connected device platforms for implementing the content delivery system as claimed in the '427 Patent. A non-limiting and exemplary claim chart comparing Accused Products to Claims 1, 4, 5, 14–18, 20, 22, 32, and 34–36 of the '427 Patent is attached hereto as Exhibit F.

83.     Defendant has known of the '427 Patent at a date prior to the filing of this Complaint, and has known of the '427 Patent at least upon the filing of this Complaint. For example, NEC put Defendant on notice of its infringement of the '427 patent at least in a letter dated July 26, 2022.

84.    On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 4, 5, 14–18, 20, 22, 32, and 34–36 of the '427 Patent.

85.    On information and belief, Defendant is liable for inducing infringement of the '427 Patent under 35 U.S.C. § 271(b) by having knowledge of the '427 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '427 Patent, with specific intent, by its customers.

86.    Specifically, Defendant induces infringement of the '427 Patent by training, promotion, and/or sales of the Accused Products to Peloton customers for their use of the content delivery system as claimed in the '427 Patent.  On information and belief, Peloton provides demonstrations and user manuals to Peloton customers.  Defendant's customers for the Accused Products directly infringe the '427 Patent by using the Accused Products as instructed by Defendant.

87.    As alleged above, Defendant had knowledge of the '427 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '427 Patent at a date prior to the filing of this Complaint.  Despite knowing that its actions constitute induced infringement of the '427 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of the patent, Peloton nevertheless continues its infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

88.    Peloton is liable for contributory infringement of the '427 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '427 Patent, which Peloton knows to be especially made and/or

especially adapted for use in infringement of the '427 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

89.     Specifically, Peloton contributes to infringement of the '427 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Peloton's customers for their use of the content delivery system as claimed in the '427 Patent.  Those customers directly infringe the '427 Patent by using the Accused Products.

90.     By engaging in the conduct described herein, Defendant has injured NEC and is thus liable for infringement of the '427 Patent, pursuant to 35 U.S.C. § 271.

91.     Defendant has committed these acts of infringement without license or authorization.

92.     As a result of Defendant's infringement of the '427 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

93.     As a result of Defendant's infringement of the '427 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

94.     As alleged above, Defendant had knowledge of the '427 Patent at a date prior to the filing of this Complaint and knew, should have known, or was willfully blind to the fact of Defendant's infringement of the '427 Patent at a date prior to the filing of this Complaint.  Despite such knowledge, Defendant has continued its infringing activities.  Upon information and belief, Defendant's infringement of the '427 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284.  This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

95.    NEC is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

96.    Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

97.    WHEREFORE, Plaintiff prays for the following relief:

98.    That Defendant be adjudged to have directly infringed the patents-in-suit either literally or under the doctrine of equivalents, and to have indirectly infringed the patents-in-suit by inducement and contributory infringement;

a.    Entry of a preliminary and/or permanent injunction against Defendant pursuant to 35 U.S.C. § 283 and/or the equitable powers of the Court to prevent further infringement of the patents-in-suit;

b.    An award of damages to Plaintiff and against Defendant pursuant to 35 U.S.C. § 284 adequate to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement, including compensatory damages, lost profits, and/or a reasonable royalty;

c.    A declaration that Defendant's infringement is willful and an award of enhanced damages, in the form of treble damages, pursuant to 35 U.S.C. § 284;

d.    An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

e.    An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

f.    That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

g.    That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: July 28, 2022                         Respectfully submitted,

                                             /s/ Kenneth L. Dorsney
                                             Kenneth L. Dorsney (#3726)
                                             Cortlan S. Hitch (#6720)
                                             MORRIS JAMES LLP
                                             500 Delaware Ave., Ste. 1500
                                             Wilmington, DE 19801-1494
                                             (302) 888-6800
                                             kdorsney@morrisjames.com
                                             chitch@morrisjames.com

                                             ATTORNEYS FOR PLAINTIFF NEC
                                             CORPORATION


                                             Robert L. Maier
                                             Jennifer C. Tempesta
                                             Michael E. Knierim
                                             Nick Palmieri
                                             BAKER BOTTS L.L.P.
                                             30 Rockefeller Plaza
                                             New York, NY 10112
                                             Telephone: (212) 408-2500
                                             Fax: (212) 408-2501
                                             Robert.Maier@bakerbotts.com
                                             Jennifer.Tempesta@bakerbotts.com
                                             Michael.Knierim@bakerbotts.com
                                             Nick.Palmieri@bakerbotts.com

                                             Sarah J. Guske
                                             BAKER BOTTS L.L.P.
                                             101 California Street, Suite 3200
                                             San Francisco, CA 94111
                                             Telephone: (415) 291-6200
                                             Fax: (415) 291-6300

                                             ATTORNEYS FOR PLAINTIFF NEC
                                             CORPORATION