# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Kenneth L. Dorsney and Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Robert L. Maier, Jennifer C. Tempesta, Michael E. Knierim and Nick Palmieri, BAKER BOTTS L.L.P., New York, NY; Sarah J. Guske, BAKER BOTTS L.L.P., San Francisco, CA, Attorneys for Plaintiff.

Karen Jacobs, Michael J. Flynn and Cameron P. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Anupam Sharma and Robert T. Haslam, COVINGTON & BURLING LLP, Palo Alto, CA; Richard L. Rainey and Han Park, COVINGTON & BURLING LLP, Washington, DC, Attorneys for Defendant.

**MEMORANDUM OPINION**

December 8, 2023
Wilmington, Delaware

**BURKE, United States Magistrate Judge**

Presently pending before the Court in this patent infringement case is Defendant Peloton Interactive, Inc.'s ("Peloton" or "Defendant") motion seeking partial dismissal of Plaintiff NEC Corporation's ("NEC" or "Plaintiff") First Amended Complaint ("FAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 20) For the reasons that follow, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion.

## I. BACKGROUND

NEC asserts three patents in this case: United States Patent Nos. 8,752,101, 8,909,809 and 9,769,427 (collectively, the "asserted patents"). (D.I. 16 at ¶ 2) The asserted patents relate to multimedia content delivery and distribution systems and methods. (*Id.* at ¶¶ 8, 10)

NEC filed its initial Complaint on July 28, 2022. (D.I. 1) Peloton filed a motion to dismiss the initial Complaint, (D.I. 10), and NEC thereafter filed the FAC on October 31, 2022, (D.I. 16). Peloton then filed the instant Motion on November 21, 2022. (D.I. 20) The Motion was fully briefed as of December 19, 2022. (D.I. 23) And on January 25, 2023, the parties jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 25)

Further relevant facts related to resolution of the Motion will be discussed as needed in Section III.

## II. STANDARD OF REVIEW

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11.

Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III. DISCUSSION

NEC asserts that Peloton offers content streaming services such as through the "Peloton App" and manufactures and/or sells products such as "Peloton Bikes" and "Peloton Treads" that use such services (together, the "Accused Products"). (D.I. 16 at ¶ 11) In the FAC, NEC alleges that:

- Peloton directly infringes the asserted patents by making, offering to sell, selling and/or using the Accused Products, which use the claimed content distribution methods and systems. (*Id.* at ¶¶ 87-89, 118-20, 149-51);

- Peloton is liable for joint/divided infringement of, or is vicariously liable for infringement of the asserted patents when its customers use the Accused Products to stream media in an infringing manner. (*Id.* at ¶¶ 91, 122, 153);

- Peloton induces infringement of the asserted patents by training, promotion, and/or sales of the Accused Products to Peloton customers for their use of the claimed content distribution methods and systems. (*Id.* at ¶¶ 99-101, 130-32, 161-63);

- Peloton contributes to infringement of the asserted patents by promotion and/or sales of the Accused Products to Peloton's customers for their use of the claimed content

3

> distribution methods and systems.  (*Id.* at ¶¶ 108-09, 139-40, 171-72); and

- Peloton's infringement has been willful.  (*Id.* at ¶¶ 115, 146, 178)

With its Motion, Peloton asserts that NEC's indirect and willful infringement claims should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6).  It argues that this is so for four reasons:  (1) NEC failed to sufficiently plead, with regard to its indirect and willful infringement claims, Peloton's pre-suit knowledge of the asserted patents; (2) NEC otherwise failed to adequately plead induced infringement; (3) NEC otherwise failed to adequately plead contributory infringement; and (4) NEC otherwise failed to adequately plead willful infringement.  (D.I. 21 at 6-17; D.I. 23 at 2-10)  The Court will address these arguments in turn.

A. **Pre-Suit Knowledge**

Claims for induced, contributory and willful infringement all require that the defendant had knowledge of the asserted patents and knowledge that the acts at issue constituted patent infringement.  *See, e.g.*, *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 491 (D. Del. 2021) (citing cases).  Peloton first argues that NEC's induced, contributory and willful infringement claims should be dismissed because "the FAC does not plead adequate pre-suit knowledge of the [a]sserted [p]atents."  (D.I. 21 at 6)

The FAC alleges that Peloton had pre-suit knowledge of the asserted patents based solely on a letter received by Peloton on the morning of July 27, 2022 (the "notice letter")—i.e., one day before NEC filed this lawsuit on July 28, 2022.  (D.I. 16 at ¶¶ 96-98, 127-29, 158-60; *see also* D.I. 22 at 2 ( NEC noting that "[T]he FAC's indirect and willful infringement allegations stem from Peloton's receipt of NEC's letter prior to the date this case was filed."))  More specifically, the FAC alleges that NEC sent the notice letter on July 26, 2022 to Defendant's Co-

4

Founder and then Chief Legal Officer, Hisao Kushi, via FedEx Priority Overnight; the FAC also notes that on July 27, 2022, the notice letter was signed for by a representative of Peloton (an otherwise unidentified person named "B. B[rian]") at 9:59 a.m. (*See, e.g.*, D.I. 16 at ¶ 97 & ex. N)  The notice letter included "detailed claim charts" setting out how Peloton purportedly infringed the asserted patents. (D.I. 16 at ¶¶ 98, 129, 160; *see also id*., ex. L)  The initial Complaint in this case was then filed at 10:06 a.m. on July 28, 2022—or about exactly 24 hours after the Peloton representative signed for the letter. (D.I. 1)  Peloton asserts that such eleventh hour notice is insufficient to support a plausible allegation that it knew of the asserted patents and of its infringement, prior to suit being filed. (D.I. 21 at 6-7; D.I. 23 at 2-3)

On the factual record here, the Court agrees with Peloton.  Here, again, the notice letter: (1) was received only *one day* before the Complaint was filed; (2) by a Defendant that is a corporate entity of some size; (3) by a person ("B. Brian") whose title or position with Defendant is unclear; and it (4) attached detailed claim charts involving infringement allegations as to three complex patents (patents that span 29 columns, 36 columns and 50 columns, respectively), which would surely take some time to digest, even after they eventually made it into the hands of Defendant employees or agents knowledgeable about the subject matter.  In light of all of these facts, it is not plausible that by the time suit was filed on the morning of July 28, 2022, Peloton had acquired pre-suit knowledge of the patents or knowledge of why it infringed.[1]  Indeed, other

---

[1] In addition to knowledge of the patent and knowledge of direct infringement, induced infringement requires that the defendant possess a *specific intent* to encourage another's direct infringement. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).  Similarly, willful infringement requires the patentee to show that "the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).  In the Court's view, it is not a reasonable inference that after someone at Peloton received the notice letter at 9:59 a.m. on July 27, 2022, then within one day's time: (1) the letter made it into the hands of a person who was in a position to know something about the asserted patents and Accused Products; (2) such a person

courts have reached similar conclusions in similar factual situations. *See, e.g.*, *Express Mobile, Inc. v. Squarespace, Inc.*, Civil Action No. 20-1163-RGA, 2021 WL 3772040, at *5 (D. Del. Aug. 25, 2021) (finding that allegations that a plaintiff notified the defendant of its infringement of the asserted patent one day before filing suit "do not plausibly support an allegation that [d]efendant willfully infringed between the time it was notified of the alleged infringement of the '755 Patent and the filing of the suit the subsequent day"); *see also Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022) ("Turning to the operative pleading here, Sonos proceeds on the theory that provision of a massive, pre-filing copy of the complaint one day prior to filing it in Texas was adequate to provide knowledge. Sonos has failed to sufficiently allege knowledge of the patent and knowledge of infringement."); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-cv-1017-Orl-22KRS, 2015 WL 1246500, at *12 (M.D. Fla. Mar. 16, 2015) ("The Court is not convinced that sending a letter merely one day before filing a lawsuit confers

---

immediately read the letter and the attached detailed claim charts for the three complex asserted patents; and (3) that person immediately both knew of Peloton's infringement and developed a specific intent that Peloton should continue to infringe. *See Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 644, 646 (N.D. Cal. 2022) (noting that upon receiving a notice letter, "reasonable time must be allowed for the alleged infringer to evaluate the letter and to react" and that giving "notice of infringement less than twenty-four hours before commencing [a lawsuit is] not enough time to provide an alleged infringer a meaningful opportunity to cease infringing [or to] parse through the [attached allegations of infringement]").

       While contributory infringement does not require intent to infringe, it occurs when a party "*sells 'a component of a patented . . . combination* . . . constituting a material part of the invention, *knowing the same to be especially made or especially adapted for use in an infringement of such patent*, and not a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (quoting 35 U.S.C. § 271(c)) (emphasis added). Here again, it is not plausible to the Court that in this one-day window of time, someone at Peloton in a position to know about and understand the patented technology immediately read the notice letter and its claim charts, gained knowledge of infringement, and thereafter made the conscious decision (in whatever time was left in the one-day time period) to continue to sell an infringing component that it knew was especially made for use in infringing the asserted patents.

on a defendant the requisite knowledge for indirect infringement."); *cf. Intell. Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 500 (D. Del. 2014) (granting a motion to dismiss willful infringement claims where "notice of the infringement risk via the letter written only one day before the complaint was filed does not constitute a showing of objective recklessness on the part of the defendants"). The Court therefore grants Peloton's Motion with respect to NEC's pre-suit claims for indirect infringement and willful infringement.

NEC's indirect and willful infringement claims are not completely doomed on the knowledge front, however. (D.I. 22 at 8-10) The FAC (which, again, was filed on October 31, 2022) further alleges that Peloton knew of the asserted patents and of its infringement as of the service of the original Complaint on July 28, 2022 (or, perhaps more plausibly, at some reasonable point soon thereafter). (D.I. 16 at ¶¶ 96, 127, 158) In response, Peloton argues that a plaintiff cannot sufficiently plead knowledge of an asserted patent in an amended complaint by pointing back to the notice that the accused infringer received of the patent's existence via a prior complaint filed in the same case. (D.I. 21 at 6; D.I. 23 at 1, 6) However, as the Court has previously explained, it believes that a plaintiff *can* do so. *See, e.g.*, *ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, Civil Action No. 21-652-LPS-CJB, 2022 WL 611249, at *3 & n.5 (D. Del. Feb. 7, 2022) (citing cases), *report and recommendation adopted*, 2022 WL 951549 (D. Del. Mar. 30, 2022). The Court therefore denies Peloton's Motion with respect to NEC's post-suit claims for indirect infringement and willful infringement on this ground.

### B. Induced Infringement

A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage

7

another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Peloton next argues that the FAC's allegations are insufficient to plausibly plead Peloton's specific intent to induce infringement. (D.I. 21 at 8-10; D.I. 23 at 7) On this score, the FAC alleges that Peloton induces infringement of the asserted patents by: (1) promoting the Peloton App to customers to use in an infringing manner via its website; (2) inviting customers and prospective customers to try Peloton Bike and Tread devices in local Peloton showrooms; and (3) providing demonstrations and user manuals to customers that encourage use of the Accused Products in an infringing manner. (D.I. 16 at ¶¶ 101-05, 132-36, 163-67) Peloton's argument here is that reliance on such marketing materials, user manuals and product instructions to plead inducement is not sufficient, *unless* such allegations are accompanied by plausible assertions that Peloton had contemporaneous knowledge of the asserted patents and infringement of such patents. (D.I. 21 at 9-10; D.I. 23 at 7)

Peloton is correct that with respect to a pre-suit claim for induced infringement, allegations "demonstrating that [a defendant] markets the infringing capabilities of its devices to consumers" are insufficient to withstand a motion to dismiss where "the complaint fails to sufficiently allege that [the defendant] understood the infringing nature of the asserted conduct prior to commencement of the suit[.]" *Evolved Wireless, LLC v. Samsung Elecs. Co.*, Civil Action No. 15-545-SLR-SRF, 2016 WL 1019667, at *6 (D. Del. Mar. 15, 2016), *report and recommendation adopted*, 2016 WL 1381765 (D. Del. Apr. 6, 2016); *see also ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 459-60 (D. Del. 2014). As explained above, the FAC fails to adequately plead Peloton's pre-suit knowledge of the asserted patents. Therefore, the FAC's allegations regarding specific intent fail with respect to any pre-suit claim for induced infringement.

The FAC also alleges that Peloton's inducement continued after the date of the filing of the initial Complaint. (D.I. 16 at ¶¶ 107, 138, 170) NEC asserts that in light of these allegations, "at least . . . post-suit induced infringement is sufficiently ple[ade]d." (D.I. 22 at 12) In response, Peloton again reiterates its argument that receipt of an original complaint cannot serve to impute knowledge of the asserted patents. (D.I. 23 at 7) And for the same reasons as discussed above, the Court does not agree. Thus, the FAC adequately alleges that Peloton induced infringement at some point after the filing of the instant suit. *See, e.g.*, *ReefEdge*, 29 F. Supp. 3d at 460.

### C.  Contributory Infringement

In order to make out a claim of contributory infringement, a patentee must plausibly demonstrate, *inter alia*, that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of a patented machine, manufacture, combination or composition (or a material or apparatus for use in practicing a patented process), constituting a material part of an invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]" 35 U.S.C. § 271(c); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). A substantial non-infringing use is any use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp.*, 581 F.3d at 1327.

Peloton argues that the FAC fails to sufficiently plead contributory infringement for a few reasons. Below, the Court will address them in turn.

#### 1.  Substantial Non-Infringing Use

Peloton first asserts that the FAC fails to adequately plead that the Accused Products have no substantial non-infringing uses. (D.I. 21 at 11-14) With respect to this element of contributory infringement, the FAC alleges in paragraphs 110, 141 and 173 as follows:

> For example, infringing Accused Products, such as the "Bike" and "Tread" products, are designed to run software that infringes the [asserted patents], and Defendant's Terms of Service expressly prohibit the use of any other third-party software. Exhibit K (Peloton Terms of Service) at 7; *see also id[.]* at 9 (prohibiting the "Download and/or install [of] any third party software and/or application on any Peloton hardware . . . that is not expressly permitted by Peloton in writing."); 12 ("Downloading and/or installing any third party software and/or applications that are not expressly authorized by Peloton on any Peloton hardware constitutes a breach of these Terms; any such downloading or installation is done at your own risk and may void any applicable warranty or support commitments by Peloton."). Accordingly, the Accused Products have no substantial non-infringing uses.

(D.I. 16 at ¶¶ 110, 141, 173)

Peloton asserts that the FAC actually demonstrates the opposite—i.e., that the Accused Products *do have* substantial non-infringing uses—because the Accused Products can be used without also using any infringing "content delivery system." (D.I. 21 at 12-13; *see also* D.I. 23 at 8) It points in support to instruction manuals attached to the FAC that "demonstrate [that] Peloton's Bike, Bike+, Tread, and Tread+ can be used without streaming or playing any video at all" such at by utilizing the Bike's "Just Ride" feature or the Tread's "Just Run" experience. (D.I. 21 at 12-13 (citing D.I. 16, exs. Q at 27, R at 31, S at 33, T at 23)) Peloton also points to instructions in these manuals that demonstrate that the Peloton Bike and Bike+ can be used as traditional workout bikes (without using any content delivery system) when they are not plugged into a power source. (*Id.* (citing D.I. 16, ex. Q at 20-25, R at 24-27); *see also id.* at 13-14 (discussing purported non-infringing uses involving the use of third-party software with the Accused Products)) NEC, for its part, responds by stating that: (1) it has pleaded that the

10

Accused Products have no substantial non-infringing uses; (2) even assuming that the alleged non-infringing uses that Peloton identifies exist, it is not clear that such uses are "substantial"; and (3) such an issue would be one for the fact finder to address later in the case. (D.I. 22 at 13-14)

The Court agrees with NEC that, at this stage of the case, the FAC sufficiently pleads the absence of substantial non-infringing uses. It is not clear on the face of the FAC that the uses that Peloton highlights are substantial. Therefore, the parties' factual dispute as to substantiality is not ripe for resolution at this time.[2] *See, e.g., Cleveland Med. Devices Inc. v. ResMed Inc.*, C.A. No. 22-794-GBW, 2023 WL 6389628, at *3 (D. Del. Oct. 2, 2023) (explaining that at the motion to dismiss stage, the complaint's "affirmative allegation regarding the absence of substantial non-infringing uses is sufficient to plead a claim for contributory infringement" and while the defendant "cites to exhibits attached to [the] [c]omplaint to discredit [the plaintiff's] allegations as pled, . . . such factual disputes cannot be resolved . . . at the pleading stage"); *ScaleMP, Inc. v. TidalScale, Inc.*, Case No. 18-cv-04716-EDL, 2019 WL 7877939, at *7 (N.D. Cal. Mar. 6, 2019) ("[T]he nature of the non-infringing use put forward by [d]efendant is in

---

[2] NEC also responds that it is the infringing *software* that has no other substantial non-infringing uses, not simply the separate Bike, Bike+, Tread or Tread+ products. (D.I. 22 at 14-17) To that, Peloton retorts that: (1) the FAC identifies the Bike and Tread *products* as having no substantial non-infringing uses; and (2) even to the extent that the FAC does identify *software* as the feature or component of the Accused Products that has no substantial non-infringing use, "that very software is the same software Peloton customers use to navigate to and enable the indisputably non-infringing Just Ride and Just Run modes[.]" (D.I. 23 at 8) In the Court's view, the FAC could be read to identify the software as the feature with no substantial non-infringing uses. The FAC identifies Peloton's "content streaming services" used by Peloton Bikes and Treads, collectively, as the "Accused Products." (D.I. 16 at ¶ 11) The relevant paragraphs of the FAC reiterate that the Bikes and Treads are "designed to run *software* that infringes[,]" and then go on to state that the Accused Products (which again, are defined to encompass the allegedly infringing software) have no substantial non-infringing uses. (*Id.* at ¶¶ 110, 141, 173 (emphasis added)) And whether the software has substantial non-infringing uses as Peloton contends is a factual dispute that cannot be resolved at this stage.

dispute, and nothing in the complaint makes it implausible that this use is non-substantial as [p]laintiff alleges.").[3]

### 2. Other Arguments Regarding Contributory Infringement

Peloton next makes three additional arguments about the purported insufficiency of NEC's contributory infringement claims, in which it focuses on the following allegations in the FAC:

> [Paragraphs 108, 139, 171:] Peloton is liable for contributory infringement of the [asserted patents] under 35 U.S.C. § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the [asserted patents], which Peloton knows to be especially made and/or especially adapted for use in infringement of the [asserted patents], and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.
>
> [Paragraphs 109, 140, 172:] Specifically, Peloton contributes to infringement of the [asserted patents] by, inter alia, promotion, and/or sales of the infringing Accused Products to Peloton's customers for their use of the content [distribution method/delivery system] as claimed in the [asserted patents]. Those customers directly infringe the [asserted patents] by using the Accused Products.

(D.I. 16 at ¶¶ 108-09, 139-40, 171-72)

First, Peloton argues that the allegations in paragraphs 108, 139 and 171 "are a mere basic recitation of the elements of [contributory] infringement" that do not satisfy the Rule 12(b)(6) pleading standard. (D.I. 21 at 15) And Peloton is right on that score. But the Court

---

[3] Peloton also argues that "NEC has not adequately alleged that an actual third party itself directly infringes." (D.I. 21 at 13) But the FAC clearly asserts that Peloton's customers directly infringe the asserted patents. (*See, e.g.*, D.I. 16 at ¶¶ 109, 140, 172) This is sufficient. *See, e.g.*, *Eyesmatch Ltd. v. Facebook, Inc.*, C.A. No. 21-111-RGA-JLH, 2021 WL 4501858, at *4 (D. Del. Oct. 1, 2021), *report and recommendation adopted*, 2021 WL 5061730 (D. Del. Oct. 19, 2021).

12

does not understand why Peloton framed its argument this way, because paragraphs 108, 139 and 171 are not the only allegations in the FAC regarding contributory infringement. Peloton wrongfully ignores NEC's additional allegations on this subject matter, such as those set out in paragraphs 110, 141 and 173 (reproduced above).

 Second, Peloton contends that beyond reciting in paragraphs 108, 139 and 171 that the Accused Products "constitute a material part of the invention embodied in" the asserted patents, the FAC is devoid of any factual allegations going to the materiality requirement of contributory infringement. (*Id.* (citing D.I. 16 at ¶¶ 108, 139, 171); D.I. 23 at 9) However, in the Court's view, the FAC has just enough in it to plausibly plead materiality—via its allegations demonstrating that Peloton's Bike and Tread products "are designed to run software" that constitutes a material part of the claimed inventions. (D.I. 22 at 18-19) To that end, the FAC: (1) defines Accused Products as Peloton's content streaming services such as the Peloton App, which are used along with Peloton's Bike and Treads, (D.I. 16 at ¶ 11); (2) flatly states that the Accused Products constitute a material part of the invention, (*id.* at ¶¶ 108, 139, 171); (3) alleges that the Bike and Tread products are designed to run software that infringes the asserted patents, (*id.* at ¶¶ 110, 141, 173); (4) alleges that Peloton requires its customers to use the infringing software and has Terms of Service that prohibit the use of any other third-party software, (*id.* at ¶¶ 90-93, 110, 141, 173); and (5) states facts that (although they seem to have been offered largely for another purpose, that is, to explain why the asserted claims are patent eligible) also provide enough information for the Court to see how the accused functionality amounts to a material and important part of the asserted claims (i.e., via its use in prioritizing video start time, utilizing an adaptive bit rate process, and providing music sub-content with the workout main

content), (*id.* at ¶¶ 30, 56, 76). These allegations, taken together, adequately plead the materiality requirement.[4]

Finally, Peloton argues that the FAC's bare allegation that Peloton contributes to infringement of the asserted patents by its sale of the Accused Products to its customers for their use of the claimed methods are insufficient "to establish the requisite intent for a contributory infringement claim." (D.I. 23 at 9-10; *see also* D.I. 21 at 15-16) But "contributory infringement requires only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (internal quotation marks and citation omitted) (emphasis in original). And as discussed above, the FAC sufficiently pleads Peloton's post-suit knowledge.

### D.  Willful Infringement

Lastly, Peloton challenges NEC's claim of willful infringement. However, its briefing was a bit unclear as to *how* it intended to make that challenge.

For example, Peloton's reply brief appeared to simply rehash its argument (described above) that the FAC's allegations about Peloton receiving a notice letter one day before NEC filed suit cannot, as a matter of law, demonstrate that Peloton knew of the asserted patents and knew that it was infringing. (D.I. 23 at 10) If that is the argument, then for the reasons discussed above, the Court agrees with Peloton that the notice-letter related allegations are insufficient to

---

[4]     Peloton cited to *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, C.A. No. 14-874-SLR-SRF, 2015 WL 4036951 (D. Del. July 1, 2015), *report and recommendation adopted*, 2015 WL 4477699 (D. Del. July 22, 2015), in support of its argument here. (D.I. 21 at 15) In that case, however, the plaintiff had argued that it need not plead materiality at all in order to sufficiently allege a contributory infringement claim. *Merck Sharp & Dohme*, 2015 WL 4036951, at *6. Those are not the circumstances here. (D.I. 22 at 19)

state a claim for pre-suit willful infringement. But it finds that the FAC adequately pleads post-suit willful infringement.

In addition to that argument, Peloton's opening brief could be read to suggest two other possibilities as to why the willful infringement allegations should fail. If so, neither are helpful to Peloton.

First, Peloton appeared to argue in its opening brief that in order to sufficiently plead willful infringement, NEC had to plead facts indicating that Peloton had engaged in conduct warranting enhanced damages under 35 U.S.C. § 284: i.e., conduct that was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate" and that was "egregious[.]" (D.I. 21 at 16-17 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016) and asserting that "NEC's allegations do not remotely reach [or] plead behavior [that is] 'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate'")) If Peloton was suggesting this, then it is wrong on the law. In order to sufficiently plead willful infringement, NEC does not need to plead facts showing "egregious" infringement, nor demonstrate an entitlement to enhanced damages. The Court has previously explained why this is so in cases like *Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018).

Peloton's opening brief might also have been suggesting that the FAC otherwise failed to sufficiently assert Peloton's knowledge of *how* it infringed (i.e., after Peloton read and digested the contents of the notice letter, post-suit). (D.I. 21 at 17) If Peloton was making that argument, then the argument is rejected on the ground that it was not sufficiently developed. The notice letter attached "detailed claim charts" setting out why Peloton infringed. (D.I. 16, ex. L at 1; *see*

15

*also* D.I. 16 at ¶¶ 97-98, 128-29, 159-60) And in its opening brief, Peloton never explained *why* it was asserting that the notice letter or its attached claim charts were insufficiently detailed to provide sufficient knowledge of infringement. (D.I. 21 at 17)

## IV.     CONCLUSION

For all of the above reasons, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion.[5] Specifically, the Court GRANTS the Motion with respect to NEC's pre-suit claims for indirect infringement and willful infringement. In all other respects, the Motion is DENIED.

NEC requested leave to amend should the Court grant any portion of the Motion. (D.I. 22 at 21) Because the only portion of the Motion that the Court granted related to NEC's ability to demonstrate pre-suit knowledge (in light of the notice letter received one day before the case was filed), and because the Court does not see how it is possible that NEC could muster further facts to fix this problem, the Court will not permit further amendment as a matter of course. If NEC believes it has a need or basis to further amend the FAC, it may seek leave of Court to do so.

An appropriate Order will issue.

---

[5] NEC's request for oral argument on the Motion, (D.I. 24), is DENIED.