# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

1.      The Court, having reviewed Defendant Peloton Interactive, Inc.'s ("Defendant") motion to stay pending *inter partes* review ("IPR") (the "Motion"), (D.I. 182), having reviewed the parties' letter briefing, (D.I. 183; D.I. 184; D.I. 189), and having considered the three stay-related factors, hereby ORDERS that the Motion is GRANTED and the case is STAYED for the following reasons.

2.      With regard to the "simplification of issues" factor, it is admittedly a mixed bag.  On the one hand, there are some reasons why a stay might not simplify things to a great degree.  For example, because one of the three asserted patents (the '809 patent) is not at issue in the pending *inter partes* review ("IPR") proceedings, no matter what happens with the other two asserted patents (the '101 and '427 patents) in those proceedings, we will be proceeding forward at some point in this case on at least one patent.  Additionally, since there are real similarities between the '809 patent and the '101 patent (as the Court will explain further below), then it is likely that a good chunk of the discovery that would be needed in a three-patent case might still have to happen in an '809 patent-only case.  Moreover, if all of the asserted claims of the '101 and '427 patents are not invalidated after the IPR proceedings conclude, then there will still be a

lot to do here pre-trial as to the remaining claims as to those patents. All of these considerations suggest possible limits to the efficacy of a stay.

3.  However, there are a bunch of reasons why a stay could meaningfully simplify the instant proceedings—enough reasons that, in the Court's view, the "simplification" factor slightly favors a stay overall. To begin, the fact that all of the asserted claims of the '101 and '427 patents are at issue in the IPR is important, for at least three reasons. First, this means that the case would become significantly smaller in scope should Defendant prevail on its IPR-related invalidity challenges as to most or all of those patents' asserted claims. And a smaller case will surely result in less work to be done by the Court and the parties. As just one example, five of the 11 disputed claim terms relate exclusively to the '101 or '427 patents (with a sixth term found in both the '101 and '809 patents); at least some of those claim construction disputes would become moot if the claims of the '101 and/or '427 patents were invalidated. (*See* D.I. 137; D.I. 183 at 2) Second, with different inventors on each of the three asserted patents, certain inventor depositions would not need to occur if the claims of the '101 and/or '427 patents are invalidated. Third, efficiencies will be gained via estoppel as to certain defenses, even if some claims from one or both of the '101 and '427 patents survive.

4.  Beyond this, a stay might bring some benefits even as to the not-in-IPR '809 patent. That is because there is real overlap between the '809 patent and the '101 patent. (D.I. 183 at 2) Although the two patents are not formally related, Plaintiff NEC Corporation's ("Plaintiff") own expert explained that "even though the '809 [patent] is a separate patent, it does describe similar technology and uses almost identical words [as the '101 patent]." (*Id.*, ex. 5 at 28) Moreover: (a) Plaintiff's complaint characterizes the '101 and '809 patents similarly, (D.I. 16 at ¶¶ 25, 48); (b) Plaintiff accuses the same set of media players for both the '101 and '809

patents, (D.I. 183 at 2); and (c) one disputed claim term is found in both the '101 and '809 patents, (D.I. 137 at 12).  In light of this similarity between the patents, it seems likely that the parties may take positions in the IPR regarding the '101 patent that could end up impacting the Court's later analysis regarding the '809 patent.  And getting the benefit of that input from the IPR proceedings might be helpful in terms of the Court's later work on '809 patent issues—no matter what happens with the asserted claims of the '101 patent in those proceedings.

5. There is one final point about simplification that favors grant of the Motion:  Final Written Decisions ("FWDs") in these IPRs are due on February 7, 2025 and March 4, 2025—shortly before trial is scheduled to begin on March 31, 2025 in this case.  This provides for the prospect of a hectic and disjointed pre-trial process if no stay is instituted—were the PTAB to issue its decisions on the eve of trial.

6. In the end, when these "simplification" issues are all weighed together, it seems to the Court that they favor Defendant's position a bit.  *Cf. Speyside Med., LLC v. Medtronic Corevalve, LLC*, Civil Action No. 20-361-JLH-CJB, D.I. 155 (D. Del. Sept. 30, 2021) (concluding that there were enough potential simplification gains to warrant a stay as to the entire case, where two of the five asserted patents were not at issue in the IPR, but those patents were closely related to one of the patents at issue in the IPR).

7. As for second "status of the case" factor, at the time of the filing of the Motion: (a) the case had proceeded through a good bit of document discovery, but no depositions had been taken; (b) a *Markman* hearing was held, but no *Markman* decision has issued; and (c) the expert discovery, summary judgment and pre-trial phases were still a ways away.  It is true that the Court has done some real work in the case, including addressing a protective order dispute, (D.I. 57), and a discovery dispute, (D.I. 106), resolving a motion to dismiss, (D.I. 108), and

holding the *Markman* hearing, (D.I. 173). But even still, the case is about in the middle of its schedule. A lot of work still remains between now and trial. Thus, this factor is about neutral. *See, e.g.*, *ImmerVision, Inc. v. Apple, Inc.*, Civil Action No. 21-1484-MN-CJB, D.I. 159 (D. Del. Oct. 17, 2023) (concluding the same, in a patent case that was at essentially the same stage as this one).

        8.      Finally, the undue prejudice factor surely favors a stay. While a stay of the case will mean some delay for Plaintiff, the potential for delay alone does not amount to undue prejudice. *See WSOU Inv., LLC v. Netgear, Inc.*, Civil Action No. 21-1117-MN-CJB, Civil Action No. 21-1120-MN-CJB, 2022 WL 17337924, at *2 (D. Del. Nov. 30, 2022). It is undisputed that the parties are not competitors, (D.I. 183, ex. 12 at 13; D.I. 189 at 2), and Plaintiff will later be able to seek full relief for infringement via a monetary damage award, *see WSOU Inv., LLC*, 2022 WL 17337924, at *2. It is true that Defendant filed its IPR petitions at the end of the statutory deadline, but the Court sees no evidence of gamesmanship here. *Id.* (explaining that filing an IPR petition close to the one-year statutory deadline is not problematic *per se*, because "accused infringers often understandably want to have a good handle on what the scope of the district court litigation will be before they file an IPR petition"). It also seems relevant to the Court that, as Defendant noted in its opening brief, while the asserted patents issued in 2014 and 2017, Plaintiff waited until 2022 to file this case. (D.I. 183 at 3) Plaintiff did not provide a substantive response to this point, (D.I. 184 at 4 n.2), and this timeline could suggest that Plaintiff was not in a big hurry to get this case started.

        9.      In the end, with the "simplification of issues" factor slightly favoring a stay, the "status of the case" factor being about neutral, and the "undue prejudice" factor favoring a stay, Defendant's Motion should be granted. The case could be simplified quite a lot via the IPRs.

And the additional wait to get the benefit of that simplification does not seem like it will cause Plaintiff undue harm.

10. Therefore, the Court ORDERS that the case is STAYED pending the issuance of a FWD in each of the respective IPR proceedings. Within five business days of the issuance of a FWD in the last of the IPRs at issue to resolve, the parties shall jointly file a letter, of no more than three single-spaced pages, providing their views as to whether a case schedule should be entered.

Dated: April 9, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE