**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-987-CJB |
| | ) | |
| v. | ) | ███████████████ |
| | ) | ███████████████ |
| PELOTON INTERACTIVE, INC., | ) | ██████████ |
| | ) | |
| Defendant. | ) | |

**JOINT PRE-TRIAL ORDER
(Volume 1 of 2 – Exhibits 1-15)**

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff NEC Corporation*

OF COUNSEL:

Robert L. Maier
Jennifer C. Tempesta
Michael E. Knierim
Kiyotoki Natsume
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, NY 10112
Telephone:  (212) 408-2591
Facsimile:  (212) 259-2591
robert.maier@bakerbotts.com
jennifer.tempesta@bakerbotts.com
michael.knierim@bakerbotts.com
thomas.natsume@bakerbotts.com

Lance J. Goodman
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
Cameron P. Clark (#6647)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St., 16th Fl.
Wilmington, DE 19801
kjacobs@morrisnichols.com
mflynn@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant Peloton Interactive, Inc.*

OF COUNSEL:

Robert T. Haslam
Anupam Sharma
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
(650) 632-4700

Richard Rainey
Benjamin J. Razi
Jared Frisch
Ashley Winkler
Derek J. Andros
Emily Mondry

Austin, TX 78704
Telephone:  (512) 322-2500
lance.goodman@bakerbotts.com

Allen Cross
Elaine H. Nguyen
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Philip A. Irwin
Megan Hare
Jesse Y. Chang
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001-2170
(212) 841-1000

Dated: July 10, 2026

**TABLE OF CONTENTS**

**Page**

I.      Nature of the Case ................................................................................................ 1

II.     Jurisdiction ........................................................................................................... 2

III.    Facts ...................................................................................................................... 2

     A.      Uncontested Facts ....................................................................................... 2

     B.      Contested Facts ........................................................................................... 2

IV.     Issues of Law ........................................................................................................ 2

V.      Witnesses .............................................................................................................. 3

     A.      List of Witnesses ........................................................................................ 3

     B.      Testimony by Deposition ............................................................................ 7

     C.      Impeachment with Prior Inconsistent Testimony ...................................... 11

     D.      Objections to Expert Testimony ................................................................ 11

VI.     Exhibits ............................................................................................................... 12

     A.      Exhibits ...................................................................................................... 12

     B.      Demonstrative Exhibits ............................................................................. 18

     C.      Designations from Discovery Responses ................................................... 20

VII.    Bifurcated Trial .................................................................................................. 20

VIII.   Stipulations and Agreed Motions in *Limine* ..................................................... 21

IX.     Disputed Motions In *Limine* ............................................................................. 21

X.      Discovery ............................................................................................................ 22

XI.     Number of Jurors ............................................................................................... 22

XII.    Length of Trial ................................................................................................... 22

XIII.   Order of Trial Presentations .............................................................................. 23

XIV.    Amendments to the Pleadings ............................................................................ 23

XV.     Settlement ........................................................................................................... 24

XVI.    Additional Matters ............................................................................................. 24

     A.      Pending Motions ....................................................................................... 24

     B.      Issues Raised by the Parties ...................................................................... 25

     C.      Use of Confidential Material at Trial ........................................................ 27

     D.      Federal Judicial Center's Patent Video ..................................................... 27

     E.      Jury Notes .................................................................................................. 28

     F.      Motions for Judgment as a Matter of Law ................................................ 28

G.  Disclosure of Intent to Rest..................................................................... 28

H.  Set-Up of Electronic and Computer Equipment ..................................... 29

I.  Dispute Resolution Procedures .............................................................. 29

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| 1 | Joint Statement of Uncontested Facts |
| 2 | NEC's Statement of Contested Issues of Fact |
| 3 | Peloton's Statement of Contested Issues of Fact |
| 4 | NEC's Statement of Issues of Law |
| 5 | Peloton's Statement of Issues of Law |
| 6 | NEC's Witness List |
| 7 | Peloton's Witness List |
| 8 | NEC's Deposition Designations |
| 9 | Peloton's Deposition Designations |
| 10 | NEC's Exhibit List |
| 11 | Peloton's Exhibit List |
| 12 | Joint Exhibit List |
| 13 | NEC's Motion in *Limine* #1 |
| 14 | NEC's Motion in *Limine* #2 |
| 15 | NEC's Motion in *Limine* #3 |
| 16 | Peloton's Motion in *Limine* #1 |
| 17 | Peloton's Motion in *Limine* #2 |
| 18 | Peloton's Motion in *Limine* #3 |

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

## I. NATURE OF THE CASE

1.    Plaintiff NEC Corporation ("NEC") filed the present action on July 28, 2022, alleging infringement by Defendant Peloton Interactive, Inc. ("Peloton") of certain claims of U.S. Patent Nos. 8,752,101 (the "'101 Patent") and 8,909,809[1] (the "'809 Patent", and together with the '101 Patent, the "Asserted Patents").[2] Peloton denies that it infringes any of the Asserted Claims, and further contends that the claims are invalid. NEC seeks damages for Peloton's alleged infringement in the form of a reasonable royalty. Peloton denies that NEC is entitled to any damages.

2.    The currently operative pleadings are filed at:

   a.  Plaintiff's First Amended Complaint for Patent Infringement (D.I. 16), and

   b.  Defendant's Answer to Amended Complaint and Counterclaims (D.I. 125).

---

[1] **NEC's Position:**  Items related to the '809 Patent have been left in this Pretrial Order pending resolution of NEC's motion for reargument filed on July 6, 2026.  (D.I. 570).
**Peloton's Position:** The Court granted summary judgment that Peloton does not infringe, literally or under the doctrine of equivalents, all asserted claims of the '809 Patent (including claims 1, 2, 8, 12-15, 22-24, 26, 27, 30, and 31 of the '809 Patent). (D.I. 562-563). As a result of the Court's order, Peloton disputes that any allegation of infringement related to the '809 Patent remains a live issue to be resolved at trial by the jury, and accordingly objects to any reference to such allegation in the Joint Pre-Trial Order (including in the exhibits to the Joint Pre-Trial Order) and other jury documents (including the proposed voir dire, proposed preliminary jury instructions, proposed final jury instructions, or proposed verdict form). Given NEC's position, Peloton has not revised its pre-trial disclosures related to the '809 Patent but reserves the right to object to any attempt by NEC to preserve or introduce evidence, testimony, or argument related to an allegation of infringement of the '809 Patent.
[2] NEC also previously alleged infringement of U.S. Patent No. 9,769,427 (the "'427 Patent"). The asserted claims of the '427 Patent were subsequently found to be unpatentable by the PTAB, and the parties thereafter stipulated to dismissal of the '427 Patent asserted claims with prejudice. (D.I. 221).

1

## II. JURISDICTION

3.      The jurisdiction of the Court is not disputed.  This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).  The parties do not dispute personal jurisdiction or venue for purposes of this action.

## III. FACTS

4.      To the extent that any issue identified in the statements of facts is more properly considered as an issue of law, it should be so considered.

### A.      Uncontested Facts

5.      The parties stipulate to and admit the facts set forth in the Joint Statement of Uncontested Facts, attached hereto as **Exhibit 1**.  These uncontested facts require no proof at trial and will become part of the evidentiary record in this case.  Either party, with notice to the other party, may read any or all of the uncontested facts to the jury or the Court.

6.      The parties reserve the right to modify or supplement the Joint Statement of Uncontested Facts to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

### B.      Contested Facts

7.      NEC's Statement of Contested Facts to be litigated at trial is attached as **Exhibit 2**.

8.      Peloton's Statement of Contested Facts to be litigated at trial is attached as **Exhibit 3**.

9.      The parties reserve the right to modify or supplement their statements of contested facts to be litigated at trial to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## IV. ISSUES OF LAW

10.      NEC's Statement of Issues of Law to be litigated at trial is attached as **Exhibit 4**.

2

11. Peloton's Statement of Issues of Law to be litigated at trial is attached as **Exhibit 5**.

12. To the extent that any issue identified in either party's statement of issues of law is more properly considered as an issue of fact, it should be so considered.

13. The parties reserve the right to modify or supplement their statements of issues of law to be litigated at trial to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties.

## V. WITNESSES

14. Any witness not listed in this Final Joint Pre-Trial Order will be precluded from testifying at trial absent good cause. In the absence of an alternative agreement among the parties, fact witnesses will be sequestered, including for opening statements, unless a fact witness is also a party's corporate representative at trial. The parties agree that expert witnesses need not be sequestered.

15. Counsel shall comply with District of Delaware Local Rule 43.1, concerning conferring with witnesses during testimony. A witness affiliated with a party who is being examined by the other side's counsel may not confer with counsel for that party, any employee or agent of that party, or any other witness regarding his or her testimony (e.g., during breaks or if held over at the end of a trial day) until the examination is completed.

### A. List of Witnesses

16. NEC's list of witnesses to be called live or by deposition, including expert witnesses, is attached as **Exhibit 6**, together with its objections to any Peloton witness.

17. Peloton's list of witnesses to be called live or by deposition, including expert witnesses, is attached as **Exhibit 7**, together with its objections to any NEC witness.

18. Each party reserves the right to amend or supplement its trial witness list as part of the meet and confer process leading up to trial, in response to the other party's pretrial disclosures

3

and objections, in response to any pretrial rulings or orders from the Court, and in the event any of the individuals listed in a party's list becomes unable to attend the trial or otherwise unable to provide testimony.

19.    Inclusion of any witness on a party's list does not imply or establish that the other party may compel the live testimony of that witness and does not waive any objections that the other party may have to testimony from that witness.

20.    The parties have filed *Daubert* motions that may affect the scope of expert testimony. The Court may rule on objections to expert testimony as beyond the scope of expert disclosures at trial.

### 1.    Order of Witnesses

21.    The order of the presentation of evidence will generally follow the burden of proof, specifically:

Phase I: NEC's case-in-chief on infringement and damages

Phase II: Peloton response on infringement and damages, and case-in-chief on invalidity

Phase III: NEC rebuttal on infringement and damages, and response on invalidity

Phase IV: Peloton rebuttal on invalidity

22.    In the interest of judicial economy and efficiency, the parties agree to use "one and done" approach for calling live fact witnesses. If a Peloton-affiliated fact witness is called adversely by NEC in NEC's case-in-chief, Peloton may exceed the scope of NEC's direct examination on cross-examination so that the witness does not need to be recalled during Peloton's case-in-chief. Should Peloton exceed the scope as allowed for above, that witness may then be subjected to further examination by NEC, but only as to that subject matter that exceeded the scope of NEC's initial examination. Peloton may then have the final examination for that witness but limited in scope to the further NEC examination.

### 2. Witness Testimony Exchanges at Trial

23. The parties shall provide written notice to each other of the witnesses they intend to call live at trial, and the order in which the witnesses will testify in accordance with the below exchange schedule:

| Event | Day/Time |
|---|---|
| Disclosure of witnesses who will appear live at trial and order of witness presentation | 6:00 p.m., Monday, July 13, 2026 (with the caveat that this list may be updated on July 20 if the Court issues a ruling that reasonably requires an update) |
| Disclosure of Witnesses and Order | 6:00 p.m. two (2) calendar days before witness will be called |
| Objections to Witnesses | 6:00 p.m. one (1) calendar day before witness will be called (i.e., the day after the witness is disclosed) |
| Parties to Meet and Confer Regarding Objections | 8:00 p.m. one (1) calendar day before witness will be called (i.e., the day after the witness is disclosed) |
| Parties to Inform the Court of Any Unresolved Disputes | Disputes will be presented to the Court pursuant to § XVI.I below |

24. The service of exhibits and demonstratives to be used with such witnesses on direct examination and the resolution of any objections thereto shall be dealt with as set forth below. A party is not required to provide advance notice of exhibits to be used during cross-examination.

25. Once exchanged, witness order shall not be altered absent agreement by the parties or good cause shown to the Court. The parties will meet and confer and work together in good faith to address circumstances that may arise where witness order needs to be adjusted for legitimate reasons.

### 3. Other Provisions Regarding Witnesses

26. The parties agree to use Ms. Junko Salmon as the interpreter in this matter for any witness requiring Japanese to English interpretation. The parties will jointly retain and pay for Ms. Salmon, except that NEC agrees that it will bear all costs and expenses associated with Ms.

Salmon's engagement in the event that NEC does not call any witness requiring Japanese to English interpretation at trial. The parties will jointly communicate with Ms. Salmon to coordinate her involvement in the proceeding.

27.    The parties agree that the interpreter Ms. Salmon will not be involved in preparation of any witness for trial, nor otherwise communicate or coordinate with counsel regarding the substance of any witness's testimony. The interpreter shall be sworn to provide accurate translations. The parties agree that time required for interpretation should be charged to the party asking the questions, including during cross-examination.

28.    The parties agree that the opposing party may provide a check interpreter at its own expense.

29.    To the extent that a witness becomes unavailable after the date of this pretrial order, each party reserves the right to call that witness by deposition, to the extent permitted by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, as set forth below in this pretrial order. If a party no longer expects to call a witness identified on the "will call" list, that party shall provide the other side notice of the change as soon as possible.

30.    If a party expects to call live a witness on the "may call" witness list, that party shall provide the other side notice of the change as soon as possible.

31.    Any witness not listed in the parties' witness lists will be precluded from testifying absent a showing of good cause.

32.    With respect to those witnesses whom the parties have identified in **Exhibits 6** and **7** who will be called to testify in person at trial, no deposition designations or counter-designations are required. Should the party that intends to call such a witness determine that it will not call the

witness, that party shall immediately notify the other side and allow the other side sufficient time to prepare deposition designations.

33.    Pursuant to Federal Rules of Evidence 615, fact witnesses, other than witnesses who have already testified and have been excused, shall be sequestered and prevented from hearing the testimony of other witnesses.  Pursuant to provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative.

**B.      Testimony by Deposition**

34.    NEC's list of deposition designations that it may introduce at trial, Peloton's objections thereto, Peloton's counter-designations, and NEC's objections thereto are attached as **Exhibit 8**.

35.    Peloton's list of deposition designations that it may introduce at trial, NEC's objections thereto, NEC's counter-designations, and Peloton's objections thereto are attached as **Exhibit 9**.

36.    The procedure the parties will use to identify deposition testimony to be played at trial and resolve objections thereto is set forth below.

37.    The deposition designations should not be construed as an acknowledgement of the scope of the trial or admissibility of evidence. Designation of any portion of testimony does not waive a party's right to contest the admissibility of the witnesses' testimony nor does it constitute a waiver of any admissibility arguments that a party may raise. Designation of any testimony does not imply admissibility.

38.    This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony. None of the foregoing may be supplemented without approval of both parties or leave of the Court, on good cause shown,

although parties may object to deposition designations based on future Court rulings and may object to depositions designations that arise from the context in which the designation is offered.

39. Each party reserves the right to use designations identified by the other party either as counter-designations or as affirmative designations. Each party reserves the right to use affirmatively any of its counter-designations as if identified as the party's affirmative designation. Each party reserves the right to supplement, amend, or withdraw its list of deposition designations in response to any additional disclosures by the other party or in response to any rulings by the Court.

40. Should a fact witness previously identified as testifying live not be made available for live testimony at trial, the parties may designate specific pages and lines of deposition transcript that they intend to play, or if video presentation is unavailable, read aloud, in lieu of the witness's appearance upon reasonable notice. The parties shall immediately notify each other in the event they decide not to call a witness to testify live at trial.

41. Pursuant to Federal Rule of Evidence 613, deposition or other testimony or statements not specifically identified on a party's deposition designation list or documents not on any party's exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose. The Court will rule at trial on any objections based on lack of completeness and/or lack of consistency.

### 1. Deposition Designation Exchanges at Trial

42. If a party intends to call a witness by prior testimony, the parties shall follow the exchange schedule below. The party offering the deposition testimony shall also provide at the same time a short statement of introduction for the witness that may be read to the jury prior to playing the designated deposition testimony to the jury.

| Event | Day/Time |
|---|---|
| Disclosure of witnesses by deposition, deposition testimony, exhibits, and statement of introduction | 6:00 p.m. two (2) calendar days before witness will be called |
| Objections, counter-designations, and additional exhibits | 10:00 p.m. two (2) calendar days before testimony is offered |
| Objections to counter-designations | 6:00 p.m. one (1) calendar day before testimony is offered |
| Parties meet and confer regarding any objections to designations or counter-designations designations | 8:00 p.m. one (1) calendar day before testimony is offered (i.e., the day after the witness is disclosed) |
| Exchange of Video | Introducing party will provide the other party with a video file of the testimony the party intends to play by video by 9:00 p.m. the night before the party offers the testimony. Any objection to the video recording will be made promptly to the introducing party but no later than 11:00 p.m. the night before the testimony is intended to be introduced. |
| Parties to Inform the Court of Any Unresolved Disputes (as set out below) | Disputes will be presented to the Court pursuant to § XVI.I below |

43. If objections remain to be resolved after the meet and confer, the party calling the witness by prior testimony shall submit, in addition to the items required by the Dispute Resolution Procedures set forth below, on behalf of all parties: (i) a copy of the entire transcript of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) an identification of the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. No testimony subject to remaining objections may be played or read back before the Court resolves objections. Failure to comply with these procedures, absent an agreement by the parties or Court approval, will result in waiver of the use of the prior testimony or waiver of objection(s) to the use of the designated testimony.

44. Testimony may be admitted by playing a video of the deposition at trial, or by reading the transcript aloud. When reading or playing deposition testimony, irrelevant and

redundant material, including colloquy between counsel and objections, will be eliminated. When reading or playing deposition testimony from a translated deposition, only English testimony will be read or played.

45.    If a party opts to introduce deposition testimony, the opposing party's counter designations of that same witness's deposition testimony must also be presented at the same time. Prior testimony designation excerpts, whether affirmative designations or counter-designations, will be played or read in the order they are found in that particular transcript. When such excerpts are introduced, all admissible counter-designation excerpts, whether offered by video or by transcript, will be introduced at the time the testimony is offered, subject to the resolution of any objections to the designated or counter-designated testimony.

46.    When the witness is called to testify by prior testimony at trial, the party calling the witness shall provide the Court with the video, if available, and two copies of the transcript of the designations and counter designations that will be read or played.

47.    Designated deposition testimony played at trial will count against the party's trial presentation time. Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designation. The parties will be charged for all time that elapses from the time the witness is called until the time the testimony concludes, according to proportions to be agreed upon by the parties based on the video time (if presented via video) or the number of lines of testimony designated by each party.

48.    Use of deposition testimony shall be governed by Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence. If a party discloses deposition testimony under the procedures set forth above and then decides to play less than all of the designated testimony for a

10

witness at trial, or to include less than all of its counter-designations, the opposing party may use such dropped testimony as designations or counter-designations to the extent the usage of such testimony in such manner is otherwise consistent with Fed. R. Evid. 106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure. The time needed to play the dropped designations will be charged to the party playing the dropped designations. The parties can use adverse party deposition testimony for any purpose, to the extent allowable by the Federal Rules of Evidence, that was taken from anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6).

**C.      Impeachment with Prior Inconsistent Testimony**

49.      Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose, provided that the parties may object to the use of deposition testimony for impeachment.

50.      The parties agree that the Court should allow objections to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of consistency. Time for such objections shall be charged to the losing party.

**D.      Objections to Expert Testimony**

51.      The parties agree that the Court may rule at trial on objections to expert testimony as beyond the scope of prior expert disclosures. Time for such objections shall be charged to the losing party.

## VI. EXHIBITS

### A.    Exhibits

52.    NEC's exhibit list with Peloton's objections is attached hereto as **Exhibit 10**. NEC identified its exhibits with PTX numbers, starting with PTX-0001.

53.    Peloton's exhibit list with NEC's objections is attached hereto as **Exhibit 11**. Peloton identified its exhibits with DTX numbers, starting with DTX-0001.

54.    A Joint Exhibit List is attached as **Exhibit 12**. The parties identified joint trial exhibits with JTX numbers, starting with JTX-0001.  The parties agree and stipulate that they will not object to the admissibility of any exhibit that is included on the joint exhibit list.

55.    On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party which shall also contain a list of all trial witnesses.

56.    The exhibits identified in the AO Form 187 exhibit lists are the universe of exhibits that can be introduced at trial, except for documents to be used solely for impeachment.

57.    Each party may use a subset of an exhibit as a standalone exhibit, subject to evidentiary objections (e.g., Fed. R. Evid. 106). Such subset exhibit shall be marked with the entire exhibit's number followed by a letter (e.g., PTX-0001-A).

58.    Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence. In other words, a party does not waive its objections to an exhibit by including that exhibit on its own exhibit list.

12

59.     The parties agree that any date listed on an exhibit list is provided for convenience only and is neither evidence nor an admission of the date of the document, and that failing to list a date on an exhibit list is neither evidence nor an admission of whether the document is dated.

60.     The parties agree that any description of a document listed on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document or any other listed documents.

61.     The parties agree that exhibits that are to be used on cross examination need not be disclosed through the parties' agreed-upon disclosure process.

62.     Legible photocopies of documents may be offered and received in evidence in lieu of originals, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

63.     To the extent any exhibit(s) requires special software for viewing or accessing the exhibit(s), the parties will first meet and confer in good faith on any third-party software tools that may be used by the parties to demonstrate or otherwise publish such exhibits to the jury.

64.     Four days before the first day of trial, the parties shall make available for inspection any physical exhibits to be used at trial (e.g., computer hard drives), labeled with an exhibit number. Physical exhibits include non-document trial exhibits but exclude demonstrative exhibits, which are addressed below.

### 1.     Witness Exhibit Exchanges at Trial

65.     The following exchange schedule applies to any exhibits, including any physical exhibits, the parties intend to use during the direct examination of a live witness, including any witness called in rebuttal of the other party's witness.

13

| Event | Day/Time |
|---|---|
| Disclosure of Exhibits and Identification of Witness with Whom They Will Be Used | 6:00 p.m. two (2) calendar days before use |
| Objections to Admissibility of Exhibits | 6:00 p.m. one (1) calendar day before use (i.e., the day after the exhibit is disclosed) |
| Parties to Meet and Confer Regarding Objections | 8:00 p.m. one (1) calendar day before use (i.e., the day after the exhibit is disclosed) |
| Parties to Inform the Court of Any Unresolved Disputes | Disputes will be presented to the Court pursuant to § XVI.I below |

66. Any objections to the use of exhibits on direct examination that cannot be resolved shall be raised with the Court as set forth in the Dispute Resolution Procedures set forth at the end of this Pretrial Order.

67. The parties agree to work together in good faith and amend these deadlines, as needed.

68. For the avoidance of doubt, the agreement to identify and exchange a list of exhibits for use in the examination of a witness shall not apply to a party's use of exhibits in the cross examination of any witness.

### 2. Exhibit Binders

69. Prior to the start of direct examination of a particular witness, the party conducting the direct examination will provide the other party with one copy of a binder containing all exhibits that they intend to use with that witness on direct examination and will provide all required copies to the Court. With respect to cross examination, the party cross-examining a witness shall provide one copy of a binder containing all of the exhibits expected to be used during cross examination to the other party and all required copies to the Court at the start of the cross examination of that witness. The party conducting the cross-examination may collect the binder from opposing counsel if the cross-examination is not completed by the end of the trial day.

14

### 3.    Exhibits Admitted Into Evidence

70.    Absent agreement of the parties or order of the Court, no exhibit will be admitted unless it was discussed by a witness without a sustained objection, including through deposition designation, who must at least be shown the exhibit.

71.    Provided they are not otherwise objected to, exhibits may be entered through expert witnesses so long as the expert substantively discussed or cited the document in his or her respective expert report, including in exhibits or appendices, and the portion(s) of the expert report discussing or citing the exhibit have not been struck by the Court. For the avoidance of doubt, the parties agree that a document that is cited only in an expert's list of materials considered is not a document or exhibit that was substantively discussed or cited.

72.    Exhibits not objected to will be received into evidence without the need for additional foundation testimony, provided they are shown to and identified by a witness. Such identification may be as part of a group of exhibits consistent with the procedure herein. Any party that has used an exhibit with the witness (whether during direct, cross, or re-direct examination) who wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by reading a list of exhibit numbers into the record, which may occur at the end of the court day or at another time ordered by the Court.

73.    Regarding authenticity, any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party that produced such document or its predecessors, will be deemed to be a true and correct copy of a document maintained in that producing party's files as of the date of the party's document collection under Federal Rule of Evidence 901. No foundation need be laid for the authenticity of such documents at trial. Additionally, no foundation need be laid for the authenticity of exhibits

15

entered through expert witnesses so long as the expert substantively discussed or cited the document in his or her respective expert report(s), including in exhibits or appendices.

74.     A party's inclusion of an exhibit on its exhibit list does not waive any evidentiary or other objections to that exhibit if the opposing party attempts to offer it into evidence.

75.     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.

76.     The parties shall work in good faith to ensure that they have an accurate list of exhibits admitted into evidence daily throughout the trial. If any exhibits were used with a witness but inadvertently not formally moved into evidence, the party offering the witness shall read the list of inadvertently omitted exhibits into the record and request that it be formally admitted into evidence. To the extent that any exhibit will be submitted in a form other than that previously disclosed (e.g., as an excerpt or with additional redactions), no later than the deadline for disclosing the documents to be used during direct examination, the party seeking to enter that exhibit shall provide to the other party the exhibit intended to be admitted, the version of the exhibit it intends to submit to allow the other party to review any modifications, and such exhibit shall not be shown to a witness, published to the jury, or otherwise submitted to the Court absent approval of the other party.

### 4.     Stipulations Regarding Exhibits

77.     To facilitate the use of exhibits at trial, the parties stipulate to not object on authenticity grounds under Fed. R. Evid. 901 to exhibits that have been produced by either party or produced by a third party pursuant to a court order, and appear on their face to be business records of the producing party (e.g., internal emails, financials, contracts/agreements, videos, user guides, technical documents, PowerPoint presentations created by the producing party in the ordinary course of their business, and other similar categories of documents), unless the party has

16

a good faith belief disputing the exhibit's authenticity. Such documents are admissible if used with a witness, including an expert witness, subject to resolution of other objections to the admissibility of these exhibits, including but not limited to Fed. R. Evid. 106, 401, 402, 403, 408, 805 (hearsay within hearsay objections), 1002, and any applicable order granting a *Daubert* motion, a motion in *limine*, or a motion for summary judgment, as well as objections on the grounds that the documents were not timely produced, were not timely disclosed, or were not within the scope of an expert's report, pursuant to Fed. R. Civ. P. 26. This stipulation does not waive other objections to the admissibility of these exhibits.

78.    The parties further stipulate not to object on foundation grounds to the admission of an exhibit through an expert witness as long as the requirements of Fed. R. Civ. P. 26 have been met, including but not limited to being within the scope of the opinions of an expert's report (meaning the expert properly relied upon that exhibit in his or her report), timely produced, and timely disclosed. This stipulation does not waive the parties' other objections to exhibits admitted through an expert witness. If properly relied upon by the expert, the parties agree to work together to identify evidence for which there are no legitimate disputes as to admissibility and allow those exhibits to be introduced through experts for efficiency, included by discussing such exhibits in advance of trial.

79.    Regarding authenticity, any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party that produced such document or its predecessors, will be deemed to be a true and correct copy of a document maintained in that producing party's files as of the date of the party's document collection under Federal Rule of Evidence 901. No foundation need be laid for the authenticity of such documents at trial. Additionally, no foundation need be laid for the authenticity of exhibits

17

entered through expert witness so long as the expert substantively discussed or cited the document in his or her respective expert report(s), including in exhibits or appendices.

80.     The parties further stipulate that exhibits that are United States Patent and Trademark Office documents, such as patents, published patent applications, provisional patent applications, file histories, and assignment records shall be presumed authentic within the meaning of Fed. R. Evid. 901 and not hearsay.

**B.      Demonstrative Exhibits**

81.     Demonstrative trial exhibits need not be listed on a party's exhibit list. The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide to the other side a video file electronically through a file sharing program. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

82.     NEC's demonstrative exhibits will be identified by numbers prefixed with "PDX." Peloton's demonstrative exhibits will be identified by numbers prefixed with "DDX."

83.     Demonstratives shall not be admitted into evidence, unless otherwise ordered by the Court.

84.     Demonstratives disclosed by one party may not be used by the opposing party prior to being used by the disclosing party.  However, once the demonstrative is used by the disclosing party, the opposing party may also use the demonstrative for cross-examination, impeachment, in its case, or in its closing argument.

85.     This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use.

18

**1.      Exhibits and Demonstratives to Be Used in Opening Statements**

86.      The parties will exchange demonstratives and a list of exhibits to be used in opening statements by 2:00 p.m. one (1) calendar day before opening statements. The parties will provide any objections to such demonstratives and exhibits by 5:00 p.m. the same day. By 7:00 p.m. the same day, the parties will meet and confer concerning objections. Any objections to the use of demonstratives or exhibits that cannot be resolved shall be raised with the Court at the Court's convenience prior to the opening statements.

87.      For any exhibit for which no objection made in the exhibit list remains pending at the time of opening statements, the exhibit may be shown to the jury by either party during opening statements if the exhibit will be the subject of testimony and explained to the jury by a witness at trial.

**2.      Demonstratives to be Used with Witnesses on Direct Examination**

88.      A party will provide the other party with any demonstratives not previously used during trial to be used in connection with direct examination (for the avoidance of doubt, an adverse direct is considered a cross-examination not subject to the schedule below). The exchange schedule for demonstratives is set forth below:

| Event | Day/Time |
|---|---|
| Disclosure of Demonstratives | 6:00 p.m. one (1) calendar day before use |
| Objections to Demonstratives | 7:00 p.m. one (1) calendar day before use (i.e., the same night the demonstrative is disclosed) |
| Parties to Meet and Confer Regarding Objections | 8:00 p.m. one (1) calendar day before use (i.e., the same night the demonstrative is disclosed) |
| Parties to Inform the Court of Any Unresolved Disputes | Disputes will be presented to the Court pursuant to § XVI.I below |

89.      If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

19

90.    If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention in writing, as set forth in the Dispute Resolution Procedures discussed at the end of this Pretrial Order.

91.    Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or demonstrative or a waiver of an objection to the exhibit or demonstrative.

### C.    Designations from Discovery Responses

92.    Statements from a party opponent's responses to interrogatories or requests for admission may be read at trial. The parties agree discovery responses need not be included on the exhibit list.

93.    If a party plans to use such a document in its case-in-chief or rebuttal case, the following exchange schedule shall apply:

| Event | Day/Time |
| --- | --- |
| Disclosure of Discovery Responses | 6:00 p.m. two (2) calendar days before use |
| Objections to Admissibility of Discovery Responses | 7:00 p.m. one (1) calendar day before use (i.e., the day after the document is disclosed) |
| Parties to Meet and Confer Regarding Objections | 8:00 p.m. one (1) calendar day before use (i.e., the day after the document is disclosed) |
| Parties to Inform the Court of Any Unresolved Disputes | Disputes will be presented to the Court pursuant to § XVI.I below |

94.    Any disputes remaining after the parties' meet and confer will be brought to the Court's attention as set forth in the Dispute Resolution Procedures discussed at the end of this Pretrial Order.

### VII.    BIFURCATED TRIAL

95.    The parties agree that trial should not be bifurcated.

## VIII.    STIPULATIONS AND AGREED MOTIONS IN *LIMINE*

96.    Neither party will present expert testimony regarding paragraphs of the expert reports that have been struck by the Court.

97.    The parties shall be precluded from introducing evidence, testimony, or argument that is inconsistent with the Court's Claim Construction Orders.

98.    The parties shall be precluded from introducing evidence, testimony, or argument that raises religious or political beliefs, race, ethnicity, gender, sexual orientation, or health (including but not limited to vaccination status) of a party, witness, attorney, or law firm.

99.    The parties shall be precluded from introducing any argument, evidence, testimony, insinuation, reference, or assertion regarding a witness' choice to testify in his or her native or chosen language (being any language other than English). The Parties shall be precluded from introducing evidence, testimony, or argument regarding whether Peloton obtained or presented an opinion of counsel, or from inviting any inference from the absence of such an opinion, for purposes of proving that Peloton willfully infringed the patent or that Peloton intended to induce infringement of the patent.

## IX.    DISPUTED MOTIONS IN *LIMINE*

100.    NEC's Motions in Limine, Peloton's Responses, and NEC's Replies are attached as **Exhibits 13-15**.

- **Exhibit 13**: NEC's Motion in *Limine* #1: Motion to Preclude Reference to the Presence or Absence of an NEC Corporate Representative, Mr. Katsube.

- **Exhibit 14**: NEC's Motion in *Limine* #2: Motion to Exclude Any Previously Undisclosed Evidence or Argument That Peloton Has a Good Faith Belief of Non-Infringement or Invalidity.

- **Exhibit 15**: NEC's Motion in *Limine* #3: Motion to Exclude Evidence or Argument that the '809 Patent is Invalid.

21

101.    Peloton's Motions in Limine, NEC's Responses, and Peloton's Replies are attached as **Exhibits 16-18**.

- **Exhibit 16**: Peloton's Motion in *Limine* #1: Motion to Exclude Reference to the '101 IPR Proceeding

- **Exhibit 17**: Peloton's Motion in *Limine* #2: Motion to Exclude Reference to the DISH Litigation and License

- **Exhibit 18**: Peloton's Motion in *Limine* #3: Motion to Exclude Reference to Peloton's Sales or Revenue Other Than Sales Alleged to Infringe

## X.  DISCOVERY

102.    Discovery is complete, except (1) there is limited ongoing expert discovery related to Microsoft that will be completed by July 15, 2026; and (2) there is limited ongoing expert discovery to include updated Peloton financial information that will be completed by July 14, 2026.

## XI. NUMBER OF JURORS

103.    There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers and there addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

## XII.    LENGTH OF TRIAL

104.    This case is scheduled for a five-day jury trial to begin on July 27, 2026, with jury selection conducted on that first morning. The trial will be timed. The parties agree that unless otherwise ordered or stated in the Final Joint Pretrial Order, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, time for the interpreter to translate the testimony of a witness it calls, and its closing argument. Time dedicated to arguing objections to trial or demonstrative

exhibits will be charged to the losing party at the Court's discretion. Time will not be charged to the parties for objections raised with the Court on the morning before trial proceedings begin.

105. The Courtroom Deputy will keep a running total of trial time used by counsel.  The Courtroom Deputy will provide notice of the time used by each party at the conclusion of each trial day. If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation, except for good cause shown.

106. Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties respectfully request **a total of 24 hours of trial time**, divided evenly with each party having **12 hours** for its trial presentation, including opening statements and closing arguments.

## XIII.     ORDER OF TRIAL PRESENTATIONS

107. NEC will present its opening statement followed by Peloton's opening statement. The presentation of evidence will follow the burden of proof, subject to the parties' agreement to use one-and-done for the presentation of fact-witnesses, as described above.

108. NEC will go first and present its case-in-chief on infringement and damages. Peloton will then present its response to NEC's case-in-chief and present Peloton's case-in-chief on invalidity. NEC will then present its rebuttal in support of its case in chief and present its response to Peloton's case-in-chief.  Peloton will then present its rebuttal in support of its case in chief on invalidity.

109. NEC will present its closing arguments and then Peloton will present its closing arguments. NEC may reserve up to 10 minutes for rebuttal closing arguments after Peloton concludes its closing arguments.

## XIV.     AMENDMENTS TO THE PLEADINGS

110. Neither party seeks any amendment(s) to the pleadings.

## XV.     SETTLEMENT

111.     The parties hereby certify that they have engaged in a good-faith effort to explore resolution of the controversy by settlement. Counsel for the parties conducted an in-person mediation on January 29, 2026 at the New York office of Plaintiff's Lead Counsel, Baker Botts LLP, with the Honorable Kent A. Jordan. (D.I. 349).

112.     The parties have periodically assessed whether to engage in further settlement discussions, and will continue to do so prior to trial.

## XVI.     ADDITIONAL MATTERS

### A.     Pending Motions

113.     The following motions remain pending:

    a.  Peloton Motions:

        i.  Motion for Summary Judgment of Non-infringement of the '101 Patent (D.I. 383)

        ii.  Motion for Summary Judgment of No Pre-suit Damages Pursuant to 35 U.S.C. § 287(a) (D.I. 385), subject to the Court's oral order dated July 13, 2026 (D.I. 567)

    b.  NEC Motions:

        i.  *Daubert* No. 2 to exclude Almeroth Testimony on Obviousness Combinations (D.I. 363)

        ii.  Motion for Summary Judgment on Claim Construction (D.I. 367)

        iii.  Motion for Summary Judgment of No Invalidity Based on RealNetworks (D.I. 371)

        iv.  Motion for Summary Judgment of No Invalidity Based on Obviousness (D.I. 373)

24

v.  Motion for Reargument on Peloton's Motion for Summary Judgment of Non-infringement of the '809 Patent (D.I. 570)

vi.  Motion for Summary Judgment of No Invalidity based on Smooth Streaming (Renewed) (D.I. 580)

**B.    Issues Raised by the Parties**

**1.    Peloton objects to NEC's attempt to assert 12 claims from the '101 Patent at trial.**

114.  **Peloton's Position:** At NEC's request, the parties stipulated to a process that was intended to narrow the issues raised at trial and required NEC to narrow its list of asserted claims and Peloton to narrow its list of prior art combinations. (*See* D.I. 546). According to the narrowing schedule, as proposed by NEC, the narrowing proceeded in two phases, with the parties initially narrowing their respective lists to 22 claims or combinations, and then narrowing a second time to 12 claims or combinations. At the time of the parties' stipulation, Peloton objected to NEC's suggestion that it would assert up to 12 claims from two asserted patents at trial, but in an effort to compromise and based on NEC's representation that it would consider narrowing to even fewer claims during the second phase, Peloton agreed to NEC's proposal.

115.  According to the parties' stipulation, on May 20, 2026, NEC initially narrowed its asserted claims to the following 12 asserted claims from the '101 Patent: 1, 2, 4, 5, 11, 12, 14, 15, 22, 23, 25, and 26. At that time, NEC also identified 10 asserted claims from the '809 Patent. Peloton likewise initially narrowed its prior art combinations. Then, in violation of the parties' stipulation, on July 6, 2026, NEC served its second "narrowing," which failed to actually narrow the asserted claims of the '101 Patent at all. Instead, NEC's list of asserted claims identified the same 12 claims from its May 20 list. Importantly, on June 30, 2026, the Court granted summary judgment of non-infringement as to the '809 Patent. *See* D.I. 563. But the Court's order, which

25

effectively narrowed the issues for trial, did not relieve NEC of its own obligation to narrow the list of claims that would be asserted before the jury. Indeed, NEC cannot justify its attempt to unduly burden the jury with 12 different claims from the same asserted patent. *See, e.g.*, *Bial-Portela & CA S.A. v. Alkem Labs. Ltd.*, C.A. 20-786-CFC-CJB, D.I. 106.3 (D. Del. May 16, 2022) (ordering plaintiff to narrow from 15 claims across eight patents to four total claims); *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125-GBW, D.I. 573 (D. Del. Apr. 21, 2023) (ordering plaintiff to narrow to 10 total claims from three patents); *10x Genomics, Inc. v. Celsee*, Inc., C.A. No. 19-862-CFC-SRF (D. Del. July 1, 2021) (ordering plaintiff to narrow its case to no more than two patents and no more than a total of six claims for trial).

116.   Moreover, with its purported second "narrowing," NEC attempted to disclose an alternative wherein it asserted six claims from each of the '101 and '809 Patents despite the Court's summary judgment ruling with respect to the '809 Patent. NEC's suggestion that it may substitute six additional claims from the '101 Patent if the '809 Patent is excluded violates the parties' agreement that "neither party may substitute or reintroduce any previously asserted patent claim." D.I. 546 at n. 1.

117.   Here, NEC should be required, at a minimum, to narrow the asserted claims of the '101 Patent to no more than six claims. Peloton notified NEC of its objection on July 8, 2026, but NEC has refused to update its narrowed list of asserted claims, maintaining that it may assert 12 claims from the '101 Patent at trial.

118.   **NEC's Position:**  NEC's July 6, 2026 disclosure fully complied with the parties' stipulation. D.I. 546 required NEC to "reduce its list of asserted patent claims to a maximum of 12," and NEC did precisely that. The stipulation established a ceiling of twelve claims, and nothing in its text imposes a per-patent cap, obligates NEC to assert fewer than the maximum to which the

parties agreed, or conditions that maximum on the disposition of any other asserted patent. Peloton's demand that NEC now cut its case to "no more than six claims" finds no support in the language of D.I. 546—which Peloton negotiated, to which it consented, and which the Court so ordered—and instead asks the Court to rewrite the parties' bargain. Peloton, meanwhile, retains the full benefit of the same bargain: under D.I. 546, Peloton may proceed to trial with up to twelve prior art combinations of its own selection, due July 13, 2026—a number Peloton does not suggest should be reduced.

119.    Peloton's contention that NEC's July 6 disclosure did not "narrow" the asserted claims is both inaccurate and beside the point. The operative benchmark is the stipulated cap: D.I. 546 obligated NEC to reduce its *list of asserted patent claims*—not its list of '101 Patent claims— to a maximum of twelve, and NEC's list went from 22 claims to 12.

120.    Regardless, NEC is considering further narrowing the number of claims to be asserted at trial and will provide Peloton with an update in that regard once it is available.

### C.    Use of Confidential Material at Trial

121.    The parties may request that the courtroom be closed to the public for portions of testimony by fact or expert witnesses that contain highly confidential information of the parties or third parties, such as source code, confidential technical documents, or sensitive and non-public agreement terms or financial information. The parties will work together to avoid, to the greatest extent possible, the need to seal the courtroom.

### D.    Federal Judicial Center's Patent Video

122.    The parties agree that the Federal Judicial Center's video, "The Patent Process: An Overview for Jurors," will be played to jurors during the Preliminary Jury Instructions, and the jurors will be provided with a copy of the sample patent referenced in the video. See https://www.fjc.gov/publications/patent-process-overview-jurors.

### E.    Jury Notes

123.    The parties agree that the jurors will each be given a binder that includes a copy of the sample patent referenced in the Federal Judicial Center's Patent video (*supra* ¶ 122), copies of the Asserted Patents, a chart as agreed on by the parties that includes the claim constructions of any Asserted Claims, and blank pages for juror notes.

124.    The parties agree that jurors are permitted to write notes during the presentations of the parties and that jurors be permitted to bring these notes into the deliberation room. The parties propose that jurors be instructed not to exchange or share their notes with other jurors (though they may discuss the contents of their notes) and that the juror's notes be collected by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

### F.    Motions for Judgment as a Matter of Law

125.    The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom, or at the end of the day after the jury has been dismissed. The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard. The parties agree that raising motions orally with brief grounds in support shall suffice to preserve their rights under Rule 50(a), and that the parties have the option, but are not required, to submit written briefing (subject to any further direction from the Court).

### G.    Disclosure of Intent to Rest

126.    By 7:00 p.m. one day before the party that is presenting its case-in-chief expects to rest, its counsel shall provide to counsel for the other party an estimate of when it expects to rest.

28

**H.     Set-Up of Electronic and Computer Equipment**

127.    The parties request that the Court grant access to the Courtroom on Friday, July 24, 2026, to allow the parties to set up electronic equipment to be used during trial. To the extent that both sides will be sharing common equipment in the Courtroom, each side will share the cost of that equipment.

**I.     Dispute Resolution Procedures**

128.    If, after meeting and conferring, the parties are unable to resolve their objections to demonstratives, witnesses, or other evidence, the objecting party shall provide its position(s) promptly after the conclusion of the meet and confer and in no event later than 10:00 p.m. The responding party shall provide its responsive position by 11:00 p.m. Unless otherwise directed by the Court, by 12:00 a.m., counsel of record, on behalf of the parties, shall notify the Court by email of any objections to demonstratives, witnesses, or other evidence to be presented that trial day. The parties shall attach to the email a joint pleading identifying the disputes and digital copies of all relevant demonstratives, exhibits, or other evidence with the disputed passages highlighted. The parties shall state their position on each dispute in three sentences or less. By 8:30 a.m., the parties shall provide the Court with two (2) courtesy copies of the submission. The parties shall leave the courtesy copies on the lectern in the courtroom.

129.    Parties' objections to demonstratives, exhibits, witnesses, and deposition designations shall be addressed from 8:30 a.m. to 9:00 a.m., after 4:30 p.m., or during the morning, lunch, or afternoon breaks.

*  *  *

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

29

Dated: July 10, 2026

_/s/ Kenneth L. Dorsney_
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

OF COUNSEL:

Robert L. Maier
Jennifer C. Tempesta
Michael E. Knierim
Kiyotoki Natsume
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, NY 10112
Telephone:  (212) 408-2591
Facsimile:  (212) 259-2591
robert.maier@bakerbotts.com
jennifer.tempesta@bakerbotts.com
michael.knierim@bakerbotts.com
thomas.natsume@bakerbotts.com

Lance J. Goodman
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300
Austin, TX 78704
Telephone:  (512) 322-2500
lance.goodman@bakerbotts.com

_Attorneys for Plaintiff NEC Corporation_

_/s/ Cameron P. Clark_
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
Cameron P. Clark (#6647)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market St., 16th Fl.
Wilmington, DE 19801
kjacobs@morrisnichols.com
mflynn@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Robert T. Haslam
Anupam Sharma
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306
(650) 632-4700

Richard Rainey
Benjamin J. Razi
Jared Frisch
Ashley Winkler
Derek J. Andros
Emily Mondry
Allen Cross
Elaine H. Nguyen
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Philip A. Irwin
Megan Hare
Jesse Y. Chang
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001-2170
(212) 841-1000
_Attorneys for Defendant Peloton Interactive, Inc._

Dated: _____

                                        _____
                                        Christopher J. Burke
                                        UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

## Joint Statement of Uncontested Facts

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 1 TO PRETRIAL ORDER
JOINT STATEMENT OF UNCONTESTED FACTS**

**Exhibit 1 to the Pretrial Order**                    **Joint Statement of Uncontested Facts**

Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

The following facts are not disputed or have been agreed to or stipulated to by the parties:

## I.    The Parties

1.    NEC Corporation ("NEC") is a corporation organized and existing under the laws of Japan, with its headquarters located at 7-1, Shiba 5-chome Minato-ku, Tokyo 108-8001 Japan.

2.    Peloton Interactive, Inc. ("Peloton") is a corporation organized in the State of Delaware, with a principal place of business at 441 Ninth Avenue, 6th Floor, New York, New York 10001.

## II.    The Asserted Patents

3.    NEC is the owner of all right, title, and interest in and to asserted United States Patent Nos. 8,909,809 (the "'809 Patent") and 8,752,101 (the "'101 Patent," and together with the '809 Patent, the "Asserted Patents").

4.    The '101 Patent is titled "Distribution System," was filed on October 13, 2010, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on June 10, 2014.  The '101 Patent claims priority to Japanese Patent Application No 2009-253581, which was filed on November 5, 2009.

5.    The '101 Patent is entitled to a priority date of November 5, 2009 because it claims priority to Japanese Patent Application No. 2009-253581.

6.    Takeo Onishi is the named inventor of the '101 Patent.

7.    In this Litigation, NEC asserts that Peloton's content streaming services infringe Claims 1, 2, 4, 5, 11, 12, 14, 15, 22, 23, 25 and 26 of the '101 Patent.

**Exhibit 1 to the Pretrial Order**                    **Joint Statement of Uncontested Facts**

8.      The '809 Patent is titled "Delivery System, Delivery Method, Server Device, Program, and Client Device," was filed on January 14, 2010, and was duly and legally issued by the USPTO on December 9, 2014.  The '809 Patent claims priority to Japanese Patent Application No. 2009-015262, which was filed on January 27, 2009.

9.      The '809 Patent is entitled to a priority date of January 27, 2009 because it claims priority to Japanese Patent Application No. 2009-015262.

10.     Hiroshi Yoshida is the named inventor of the '809 Patent.

11.     In this Litigation, NEC asserts that Peloton's content streaming services infringe Claims 1, 2, 8, 13-15, 26, 27, 30 and 31 of the '809 Patent.

12.     On July 26, 2022, NEC through its counsel sent a letter to Peloton by FedEx, addressed to Mr. Hisao Kushi, then Co-Founder and Chief Legal Officer of Peloton, and which was received by Peloton as early as July 27, 2022, and which identified the '101 Patent and the '809 Patent.

## III.    <u>Infringement</u>

### A.      **Accused Products**

13.     NEC accuses Peloton's iOS, Android, and web-based applications (including Peloton Strength+), Connected Fitness (CFX) applications running on Peloton hardware (i.e., Peloton Bike, Bike+, Tread, Tread+, Row, and Guide), and content streaming services running on Apple TV, Android TV, Amazon Fire TV, Sky TV, and LG Smart TV.

**Exhibit 1 to the Pretrial Order**                    **Joint Statement of Uncontested Facts**

### B.    Instantiated Media Players

14.    From July 28, 2016 to the present, Peloton's Accused Products have used various third-party media player software as listed in Peloton's Fourth Supplemental Response to NEC's Interrogatory No. 5 (October 3, 2025).[1]

### C.    Software Versions of Media Players

15.    The parties do not allege that determination of infringement for the Accused Products differs between the software versions for each respective media player listed in Peloton's Fourth Supplemental Response to NEC's Interrogatory No. 5 (October 3, 2025), with the exception of "Modified ExoPlayer," which Peloton has identified as version r2.18.2.2.[2]

---

[1] The parties agree that the exact date the Row product began using ExoPlayer version 2.8.1, noted as a possible error by Mr. Mankala, is not material. Mankala Dep. Tr. at 100:20-101:18. Additionally, the parties agree that Amazon Fire TV used ExoPlayer, not Apple AV Player as confirmed by Mr. Shanahan. Shanahan Dep. Tr. at 176:8-15.

[2] For purposes of this statement, the parties consider ExoPlayer and Media3 to be the same media player.

# EXHIBIT 2

NEC's Statement of Contested Issues of Fact

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
|  | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
|  | ) | |
| Defendant. | ) | |

**EXHIBIT 2 TO PRETRIAL ORDER
NEC'S STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED**

**Exhibit 2 to the Pretrial Order**                    **NEC's Statement of Contested Facts**

Pursuant to D. Del. LR 16.3(c)(4), and the parties' agreement to engage in an iterative exchange of components making up the Pretrial Order, Plaintiff NEC Corporation ("NEC") respectfully submits its Statement of Issues of Fact That Remain to be Litigated.

NEC identifies the following contested issues of fact. The following statement of contested issues of fact is based on the arguments NEC expects to make to establish infringement of the Asserted Patents and damages to compensate NEC for that infringement. This statement is also based on the parties' pleadings, documentary and testimony evidence, and NEC's current understanding of Peloton's claims and defenses.

This statement is not intended to be exhaustive, and in addition to what is set forth herein, NEC reserves the right to prove any matters identified in the pleadings, fact and expert discovery, and any of the accompanying statements of facts and legal issues to be litigated at trial. NEC reserves the right to disprove, prove a fact contrary to, or prove the opposite of any issue of fact identified in Defendant Peloton Interactive, Inc.'s ("Peloton") Statement of Issues of Fact That Remain to Be Litigated.

To the extent NEC's Statement of Issues of Law That Remain to Be Litigated contain issues of fact, those issues are incorporated herein by reference. If the Court determines that any issue identified in this list as an issue of fact is more properly considered an issue of law, NEC incorporates such issues by reference into its Statement of Issues of Law That Remain to Be Litigated. Similarly, if the Court decides that issues that NEC has designated as issues of law are issues of fact, NEC incorporates those issues by reference into this Statement of Issues of Fact That Remain to Be Litigated.

NEC's Statement of Issues of Fact That Remain to Be Litigated is made pursuant to the Local Rules, the Court's orders, and the parties' agreements, and to preserve NEC's rights, based

1

**Exhibit 2 to the Pretrial Order**    **NEC's Statement of Contested Facts**

on the present status of the case. NEC's identification of the Issues of Fact That Remain to Be Litigated is based in part on its current understanding of the arguments Peloton is likely to make, based upon the pleadings and discovery in the action to date. To the extent Peloton attempts to introduce different or additional facts to meet its burden of proof, NEC reserves the right to object to and/or contest those facts, and to present any and all rebuttal evidence in response to those facts.

The parties have exchanged and/or will exchange objections and motions in *limine* and otherwise present to the Court disputes regarding the issues and evidence to be presented to the jury and the relevance and admissibility of certain testimony and exhibits. NEC's Statement of Issues of Fact That Remain to Be Litigated does not waive NEC's right to object to certain categories of evidence as irrelevant or otherwise inadmissible and does not waive its right to pursue motions in *limine*. Until the Court addresses and rules on such disputes, NEC reserves the right to make final decisions regarding what issues remain to be litigated.

NEC reserves the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to Peloton's pretrial disclosures and objections, by agreement with Peloton, and/or in response to any pretrial rulings or orders from the Court. NEC reserves the right to present facts set forth in pending or previously determined motions and to appeal any issues identified in motions that have been decided by the Court, in addition to the right to further clarify its Statement of Issues of Fact to Be Litigated.

I.    **Contested Issues of Fact Where NEC Bears the Burden of Proof**

    A.    **Infringement of the Asserted Patents**

        1.    **Infringement of the '101 Patent**

1.    Whether Peloton directly infringes Claims 1, 2, 4, 5, 11, 12, 14-15, 22-23, 25 and 26 of the '101 Patent (the "'101 Patent Asserted Claims") literally and/or under the doctrine of

2

**Exhibit 2 to the Pretrial Order**                    **NEC's Statement of Contested Facts**

equivalents by making, using, selling, offering for sale, and operating its content streaming services.

2.      Whether Peloton has induced infringement of the '101 Patent Asserted Claims.

3.      Whether Peloton contributorily infringes the '101 Patent Asserted Claims.

### 2.      Infringement of the '809 Patent

4.      Whether Peloton directly infringes Claims 1, 2, 8, 13-15, 26, 27, 30 and 31 of the '809 Patent (the "'809 Patent Asserted Claims") literally and/or under the doctrine of equivalents by making, using, selling, offering for sale, and operating its content streaming services.

5.      Whether Peloton has induced infringement of the '809 Patent Asserted Claims.

6.      Whether Peloton contributorily infringes the '809 Patent Asserted Claims.

### 3.      Willful Infringement

7.      Whether Peloton has willfully infringed any of the '101 Patent Asserted Claims and/or the '809 Patent Asserted Claims.

### B.      **Damages and Other Relief from Infringement of the Asserted Patents**

8.      Whether NEC has proven that it is owed damages for Peloton's infringement of the '101 Patent and/or the '809 Patent, if so, in what amount.

9.      Whether NEC has proven that it is entitled to an accounting of damages for post-verdict infringement of the '101 Patent and/or /or the '809 Patent, such as an ongoing royalty, and, if so, in what amount.

10.      Whether NEC is entitled to an award of pre- and post-judgment interest and, if so, in what amounts.

11.      Whether NEC is entitled to enhanced damages pursuant to 35 U.S.C. § 284 because Peloton's infringement was willful.

3

**Exhibit 2 to the Pretrial Order**                    **NEC's Statement of Contested Facts**

12.    Whether NEC is entitled to attorneys' fees and costs.

13.    Whether NEC is entitled to permanent injunctive relief.

14.    Whether NEC is entitled to any other relief as this Court may deem just and proper.

**II.    Contested Issues of Fact Where Peloton Bears the Burden of Proof**

    **A.    Invalidity**

15.    Whether Peloton's proffered prior art system(s) qualify as prior art under pre-AIA 35 U.S.C. § 102(a) or (b).

16.    Whether the testimony regarding Peloton's proffered prior art system(s) is sufficiently corroborated.

17.    Whether any of the '101 Patent Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

18.    Whether any of the '809 Patent Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

19.    Whether any of the '101 Patent Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

20.    Whether any of the '809 Patent Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

21.    Whether any of the '101 Patent Asserted Claims are invalid for lack of an adequate written description under 35 U.S.C. § 112.

22.    Whether a person of ordinary skill in the art would be motivated to modify the prior art asserted by Peloton to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

**Exhibit 2 to the Pretrial Order**                    **NEC's Statement of Contested Facts**

23.    Whether a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by Defendant to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

24.    Whether a nexus exists between any alleged secondary consideration of non-obviousness and the patented inventions.

25.    Whether objective indicia of non-obviousness or secondary considerations support the non-obviousness of the '101 Patent and/or '809 Patent Asserted Claims, such as the following:

- whether the claimed invention satisfied a long-felt need which was recognized, persistent, and not solved by others;

- whether others tried, but failed, to solve the problem solved by the claimed invention;

- whether there were unexpected results;

- whether the claimed invention received industry praise or if others in the field were skeptical of the claimed invention;

- whether products covered by the claim have been commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim; and

- whether others copied the claimed invention.

**B.        Peloton's Requested Relief**

26.    Whether Peloton has proved by a preponderance of the evidence that this Litigation is an "exceptional" case within the meaning of 35 U.S.C. § 285, specifically that the strength of Peloton's position or unreasonable manner in which the case was litigated, entitles Peloton to an award of attorneys' fees, and if so, in what amount.

**Exhibit 2 to the Pretrial Order**                    **NEC's Statement of Contested Facts**

27.     Whether Peloton has proven by a preponderance of the evidence that it should be granted an award of its costs and expenses in defending against NEC's claims of patent infringement and if so, in what amount.

# EXHIBIT 3

Peloton's Statement of Contested Issues of Fact

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-987 (CJB) |
| v. | ) | |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXHIBIT 3

## PELOTON'S STATEMENT OF CONTESTED FACTS
## TO BE LITIGATED AT TRIAL

**Exhibit 3 to the Pretrial Order**                                **Peloton's Contested Facts**

Pursuant to Local Rule 16.3(c)(4), Defendant Peloton Interactive, Inc. ("Peloton") respectfully submits this Statement of Contested Facts, which is based on Peloton's current understanding of Plaintiff NEC Corporation's ("NEC") claims and the proceedings in this action to date.

Peloton reserves the right to revise this statement in light of the Court's rulings, in response to NEC's positions, or as otherwise may be appropriate. Peloton reserves the right to supplement this statement to rebut or otherwise address the issues of fact identified by NEC.

The following statements are not exhaustive, and Peloton reserves the right to prove any matters identified in its pleadings, invalidity contentions, interrogatory responses, and/or expert reports and to appeal any issues identified in motions that have been decided by the Court. Peloton also intends to offer evidence as to the issues of fact and issues of law identified in this Joint Pretrial Order. Peloton further intends to offer evidence to rebut evidence offered by NEC and to argue that NEC is precluded from offering evidence in support of theories and claims not adequately disclosed in accordance with the scheduling order. Peloton incorporates by reference its expert reports in support of any proof to be presented by expert testimony. By including a fact herein, Peloton does not assume the burden of proof, persuasion, or production with regard to that fact.

To the extent Peloton's Statement of Issues of Law That Remain to be Litigated set forth in Exhibit 5 to the Joint Pretrial Order contains issues of fact, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified below is more appropriately considered an issue of law, Peloton incorporates such issues by reference into Exhibit 5.

**Exhibit 3 to the Pretrial Order**                                      **Peloton's Contested Facts**

I.       **Issues on Which NEC Bears the Burden of Proof**

     A.       **Infringement**

          1.       **Infringement of U.S. Patent No. 8,752,101 (the "'101 Patent)**

1.       Whether NEC has failed to prove that Peloton has directly infringed, either literally or under the doctrine of equivalents, claims 1, 2, 4, 5, 11, 12, 14, 15, 22, 23, 25 and 26 of the '101 Patent (the "'101 Asserted Claims") under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States Peloton's iOS, Android, and web-based applications, Peloton's applications operating on Peloton hardware (i.e. Peloton's Bike, Bike+, Tread, Tread+, Row, and Guide), Peloton's Strength+ application, and Peloton's smart TV applications (i.e. Apple TV, Android TV, Amazon Fire TV, Sky TV, and LG Smart TV) (collectively, the "Peloton Accused Products").[1] [2]

2.       Whether NEC has failed to prove that Peloton has indirectly infringed the '101 Asserted Claims by actively inducing others to directly infringe the '101 Patent under 35 U.S.C. § 271(b).

3.       Whether NEC has failed to prove that Peloton has indirectly infringed the '101 Asserted Claims by contributing to the direct infringement by others under 35 U.S.C. § 271(c).

          2.       **Infringement of U.S. Patent No. 8,809,809 (the "'809 Patent")**

4.       Whether NEC has failed to prove that Peloton has directly infringed, either literally or under the doctrine of equivalents, claims 1, 2, 8, 13-15, 26, 27, 30 and 31 of the '809 Patent (the

---

[1] This issue is contingent on Peloton's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 8,752,101 (D.I. 383). If the Court finds that Peloton has not infringed the '101 Asserted Claims, then this issue is moot.

[2] Pursuant to the Court's Order Setting Pretrial Disclosure Deadlines, by May 20, 2026, NEC will narrow its list of asserted patent claims to a maximum of 22, and by July 6, 2026, NEC will narrow its list of asserted patent claims to a maximum of 12.

**Exhibit 3 to the Pretrial Order**                                          **Peloton's Contested Facts**

"'809 Asserted Claims," and together with the '101 Asserted Claims, the "Asserted Claims") under

35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States the Peloton

Accused Products.[3] [4]

5.      Whether NEC has failed to prove that Peloton has indirectly infringed the '809

Asserted Claims by actively inducing others to directly infringe the '809 Patent under 35 U.S.C.

§ 271(b).

6.      Whether NEC has failed to prove that Peloton has indirectly infringed the '809

Asserted Claims by contributing to the direct infringement by others under 35 U.S.C. § 271(c).

**B.      Willful Infringement**

7.      If Peloton is found to have infringed a claim of either NEC Patent, whether NEC

has failed to prove that Peloton willfully infringed pursuant to 35 U.S.C. § 284.

**C.      Damages to NEC**

8.      Whether NEC has failed to prove that it is entitled to compensatory damages for

any infringement of the '101 Patent and/or '809 Patent.

9.      For any infringement of the NEC Patents, whether NEC has failed to prove the

amount of reasonable royalty damages it is entitled to for any infringement.[5]

10.     Whether NEC has failed to prove it is entitled to a running royalty payment as

opposed to a lump sum payment for any infringement.[3]

---

[3] This issue is contingent on Peloton's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 8,909,809 (D.I. 384). If the Court finds that Peloton has not infringed the '809 Asserted Claims, then this issue is moot.

[4] Pursuant to the Court's Order Setting Pretrial Disclosure Deadlines, by May 20, 2026, NEC will narrow its list of asserted patent claims to a maximum of 22, and by July 6, 2026, NEC will narrow its list of asserted patent claims to a maximum of 12.

[5] This issue is contingent on Peloton's *Daubert* Motion to Preclude Expert Testimony Regarding Damages (D.I. 366). If the Court finds that the expert testimony of NEC's damages expert, Dr. Christopher A. Vellturo, on reasonable royalty damages should be excluded, this issue is moot.

**Exhibit 3 to the Pretrial Order**                                      **Peloton's Contested Facts**

11.     Whether NEC has failed to prove that its proposed royalty rates reflect the value attributable to the NEC Patents.[3]

12.     Whether NEC has failed to prove that NEC's licenses covering the NEC Patents are sufficiently comparable to a hypothetical negotiation between NEC and Peloton in July 2016.[3]

13.     Whether NEC failed to adequately apportion the allegedly infringing functionality in Peloton's Accused Products in calculating damages.[3]

14.     Whether there exist any non-infringing alternatives to the alleged inventions of the NEC Patents.

15.     If Peloton is found to have infringed a claim of either NEC Patent, whether NEC has failed to prove that it is entitled to an accounting of damages for post-verdict infringement of the infringed patent, such as an ongoing royalty, and, if so, in what amount.

16.     Whether NEC is entitled to an award of pre-judgment and post-judgment interest, and the amount of such interest.

**D.     Marking**

17.     Whether NEC has failed to prove compliance with 35 U.S.C. § 287 as related to NEC's licensees, ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮ (collectively, the "Licensed Products").[6]

**E.     Enhanced Damages, Attorney Fees, and Costs**

18.     Whether NEC has failed to prove that NEC is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

---

[6] This issue is contingent on Peloton's Motion for Summary Judgment of No Pre-Suit Damages Pursuant to 35 U.S.C. § 287(a) (D.I. 385). If the Court finds that NEC failed to comply with 35 U.S.C. § 287, and thus, is not entitled to pre-suit damages, then this issue is moot.

**Exhibit 3 to the Pretrial Order**                    **Peloton's Contested Facts**

19.     Whether NEC has failed to prove that this is an exceptional case pursuant to 35 U.S.C. § 285.

20.     Whether NEC has failed to prove that NEC is entitled to permanent injunctive relief.

21.     Whether NEC has failed to prove that NEC is entitled to attorneys' fees, expenses, or costs, and the amount.

22.     Whether NEC has failed to prove that NEC is entitled to any further relief that the Court deems just and proper.

## II.      Issues on Which Peloton Bears the Burden of Proof

### A.      INVALIDITY[7], [8]

23.     Whether the '101 Asserted Claims are invalid under 35 U.S.C. § 102 as being anticipated in view of Peloton's asserted prior art as set forth in Peloton's expert reports.

24.     Whether the '809 Asserted Claims are invalid under 35 U.S.C. § 102 as being anticipated in view of Peloton's asserted prior art as set forth in Peloton's expert reports.

25.     Whether the '101 Asserted Claims are invalid under 35 U.S.C. § 103 as being obvious in view of Peloton's asserted prior art combinations as set forth in Peloton's expert reports.

26.     Whether the '101 Asserted Claims are invalid for lack of written description under 35 U.S.C. § 112.[9]

---

[7] Pursuant to the Court's Order Setting Pretrial Disclosure Deadlines, by May 27, 2026, Peloton will narrow its list of asserted prior art combinations to a maximum of 22, and by July 13, 2026, Peloton will further narrow its list of asserted prior art combinations. Peloton incorporates its prior art combinations as disclosed according to the parties' stipulation.

[8] Issues of invalidity under §§ 102 and 103 are subject to ongoing third-party discovery with Microsoft. Peloton reserves the right to revise this statement in view of such discovery.

[9] This issue is contingent on Peloton's Motion for Summary Judgment of Invalidity of U.S. Patent No. 8,752,101 Based on Lack of Written Description (D.I. 381). If the Court finds that the '101 Asserted Claims are invalid due to lack of written description, then this issue is moot.

5

27.    Whether the '809 Asserted Claims are invalid under 35 U.S.C. § 103 as being obvious in view of Peloton's asserted prior art combinations as set forth in Peloton's expert reports.

28.    Whether a person of ordinary skill in the art with respect to the '101 and '809 Patents would have a bachelor's degree, or equivalent, in electrical engineering, computer science, or a related field, and 2–3 years' experience researching, designing, or developing content delivery systems and related hardware, software, and firmware, or equivalent experience, including less formal education with more practical experience or more formal education with less practical experience.

29.    Whether the parties' expert witnesses meet the requirements of a person of ordinary skill in the art as of the dates of the alleged inventions of the '101 and '809 patents.

30.    Whether a person of ordinary skill in the art would be motivated to modify the prior art asserted by Peloton to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

31.    Whether a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by Defendants to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

32.    Whether NEC has established that a nexus exists between any alleged secondary consideration of non-obviousness and the patented invention.

33.    Whether NEC has established that secondary considerations of non-obviousness support the non-obviousness of the '101 Asserted Claims.

34.    Whether NEC has established that secondary considerations of non-obviousness support the non-obviousness of the '809 Asserted Claims.

**Exhibit 3 to the Pretrial Order**                                    **Peloton's Contested Facts**

### B.    PELOTON'S REQUESTED RELIEF

35.    Whether this case is an exceptional case within the meaning of 35 U.S.C. § 285 such that Peloton is entitled to an award of attorneys' fees, and, if so, in what amount.

36.    Whether Peloton should be granted an award of its costs and expenses in defending against NEC's claims and, if so, in what amount.

37.    Whether Peloton is entitled to any further relief that the Court deems just and proper.

# EXHIBIT 4

## NEC's Statement of Issues of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 4 TO PRETRIAL ORDER
NEC'S STATEMENT OF ISSUES OF LAW**

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

Pursuant to D. Del. LR 16.3(c)(5), and the parties' agreement to engage in an iterative exchange of components making up the Pretrial Order, Plaintiff NEC Corporation ("NEC") submits the following Statement of Issues of Law That Remain to Be Litigated.

This Statement is not intended to be exhaustive, and, in addition to what is set forth herein, NEC reserves the right to prove any matters identified in the pleadings, fact and expert discovery, any of the accompanying statements of facts and legal issues to be litigated at trial, and statement of intended proofs. NEC may rely on authority not cited in this statement or the pending motions set forth below.

To the extent that NEC's Statement of Issues of Fact That Remain to Be Litigated contains issues of law, those issues are incorporated herein by reference. If the Court determines that any issue identified in this list as an issue of law is more properly considered an issue of fact, NEC incorporates such issues by reference into its Statement of Issues of Fact That Remain to Be Litigated. Similarly, if the Court decides that issues that NEC has designated as issues of fact are issues of law, NEC incorporates those issues by reference into this Statement of Issues of Law That Remain to Be Litigated.

NEC's Statement of Issues of Law that Remain to Be Litigated is made pursuant to the Local Rules, the Court's orders, and the parties' agreements, and to preserve NEC's rights, based on the present status of the case. NEC's identification of the Issues of Law That Remain to Be Litigated is based in part on its current understanding of the arguments Defendant Peloton Interactive, Inc. ("Peloton") is likely to make, based upon the pleadings and discovery in the action to date. To the extent Peloton attempts to introduce different or additional legal issues to meet its burden of proof or to rebut NEC's burden of proof, NEC reserves the right to object to and/or contest those issues, and to present any and all arguments in response to those legal issues.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

The parties have exchanged and/or will exchange objections and motions in *limine* and otherwise present to the Court disputes regarding the issues and evidence to be presented to the jury and the relevance and admissibility of certain testimony and exhibits. NEC's Statement of Issues of Law That Remain to Be Litigated does not waive NEC's right to object to certain categories of evidence as irrelevant or otherwise inadmissible and does not waive its right to pursue motions in *limine*. Until the Court addresses and rules on such disputes, NEC reserves the right to make final decisions regarding what issues remain to be litigated.

NEC identifies the following contested issues of law that remain to be litigated. The following statement of issues of law is based on the parties' pleadings, documentary and testimony evidence, and NEC's current understanding of Peloton's claims and defenses. NEC reserves the right to supplement, amend, or revise this statement to rebut or otherwise address the issues of law identified by Peloton.

NEC's identification of the issues that remain to be litigated regarding issues where NEC bears the burden of proof is based on its understanding of the arguments that Peloton has put forth to date. To the extent Peloton attempts to introduce different or additional legal arguments, NEC reserves its rights to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments, and will not be bound by this summary of remaining legal issues. NEC reserves the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to Peloton's pretrial disclosures and objections, by agreement with Peloton, and/or in response to any pretrial rulings or orders from the Court. NEC reserves the right to present issues of law set forth in pending or previously determined motions and to appeal any issues identified in motions that have been decided by the Court.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

I.      **<u>Infringement</u>**

    A.      **Issues of Law to be Litigated**

        1.            **Infringement of the '101 Patent**

1.      Whether NEC has proven by a preponderance of the evidence that Peloton directly infringes, either literally or under the doctrine of equivalents, Claims 1, 2, 4, 5, 11, 12, 14-15, 22-23, 25 and 26 of the '101 Patent (the "'101 Patent Asserted Claims") by making, using, offering to sell, and/or selling in the United States its content streaming services.

2.      Whether NEC has proven by a preponderance of the evidence that Peloton induces infringement of the '101 Patent Asserted Claims by actively encouraging and instructing others (such as its customers and digital connected device platforms) to use Peloton's content streaming services to directly infringe thin the United States, knowing that the induced acts constitute infringement.

3.      Whether NEC has proven by a preponderance of the evidence that Peloton contributorily infringes the '101 Patent Asserted Claims by offering to sell and selling its content streaming services in the United States, knowing that the streaming services were/are be especially made or adapted for infringing uses and not a staple article or commodity of commerce for substantial noninfringing use.

        2.            **Infringement of the '809 Patent**

4.      Whether NEC has proven by a preponderance of the evidence that Peloton directly infringes, either literally or under the doctrine of equivalents, Claims 1, 2, 8, 13-15, 26, 27, 30 and 31 of the '809 Patent (the "'809 Patent Asserted Claims") by making, using, offering to sell, and/or selling in the United States its content streaming services.

**Exhibit 4 to the Pretrial Order**          **NEC's Statement of Issues of Law**

5.        Whether NEC has proven by a preponderance of the evidence that Peloton induces infringement of the '809 Patent Asserted Claims by actively encouraging and instructing others (such as its customers and digital connected device platforms) to use Peloton's content streaming services to directly infringe thin the United States, knowing that the induced acts constitute infringement.

6.        Whether NEC has proven by a preponderance of the evidence that Peloton contributorily infringes the '809 Patent Asserted Claims by offering to sell and selling its content streaming services in the United States, knowing that the streaming services were/are be especially made or adapted for infringing uses and not a staple article or commodity of commerce for substantial noninfringing use.

### B.        Legal Authority

#### 1.        Direct and Literal Infringement

7.        Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." To prevail on infringement, the patentee "must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). Preponderance of the evidence means "more likely than not that direct infringement occurred." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 928 (Fed. Cir. 2011). This "only requires the fact finder to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden to persuade [the factfinder] of the fact's existence." *Bosies v. Benedict*, 27 F.3d 539, 542 (Fed. Cir.

4

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

1994) (citation, internal quotation marks, and brackets omitted). "Infringement is a question of fact." *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).

8.      "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (internal quotation marks and citation omitted); *Forest Lab'ys Holdings Ltd. v. Mylan Inc.*, 206 F. Supp. 3d 957, 973 (D. Del. 2016). Literal infringement requires that "each limitation in the asserted claim be found present in the accused device or process." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995). "The first step is determining the meaning and scope of the patent claims asserted to be infringed. . . . The second step is comparing the properly construed claims to the device [or process] accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) (internal citation omitted), *aff'd*, 517 U.S. 370 (1996). "[O]nce the Court construes a term, 'that legal determination governs for purposes of trial[, and n]o party may contradict the court's construction to a jury.'" *Bd. of Regents v. Bos. Sci. Corp.*, C.A. No. 18-392, 2024 WL 2848471, at *8 (D. Del. June 5, 2024) (quoting *Exergen*, 575 F.3d at 1321).

9.      Direct infringement of a method claim occurs where all steps of the method are performed by or attributable to a single entity. *Akamai Techs., Inc. v. Limelight Nets., Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). All steps of a method are attributable to a single entity when one entity "directs or controls" the other's performance, or when the actors "form a joint enterprise." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017); *see Akamai Techs.*, 797 F.3d at 1024-25 (defendant "establishe[d] the manner and timing of its customers' performance" by engaging in customer activities and by sending "welcome letter" and

5

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

"step-by-step instructions" explaining that its service is only available "[i]f [its] customers do not follow the[] precise steps").

10.    A "single entity directs or controls the acts of another" where that entity: (1) "acts through an agent"; (2) "contracts with another to perform one or more steps of a claimed method"; or (3) "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs.*, 797 F.3d at 1023; *see Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017) (observing that there is direction and control where "a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant"). "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact[.]" *Akamai Techs.*, 797 F.3d at 1023.

11.    There is no "rigid standard" for what constitutes the "condition requirement." *Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 580 (D. Del. 2018). It does not "require[] a legal obligation or unavoidable technological prerequisite[] to participation[.]" *Id.* at 581. No "verification of compliance or a threat of denial of [receiving the benefit]" is required. *Id.* Instead, direction or control is shown "where an actor crosses the line from merely guiding or instructing to conditioning, even if the conditioning is not categorical in nature." *Id.* This is established even if the third party could hypothetically obtain the benefit "through other means" where there is "no evidence" that anything other than an infringing process has actually been prescribed by the defendant or practiced by the third party. *Travel Sentry*, 877 F.3d at 1385.

12.    A court may also find joint infringement when the facts make clear that the accused infringer is vicariously liable for their customers' acts. *See id.* at 1380. A party is vicariously liable

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

for another's infringement where it "profit[s] from [the] direct infringement . . . [and] has the right and ability to stop or limit the infringement." *Id.* at 1385 (citing *Akamai Techs.*, 797 F.3d at 1023; *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)) (internal quotation marks omitted).

13.    "A patentee may prove infringement by 'any method of analysis that is probative of the face of infringement,' . . . and circumstantial evidence may be sufficient[.]" *Martek Bioscis. Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (citations omitted); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement . . . by either direct or circumstantial evidence."). "[I]nfringement is to be determined by comparing the asserted claim to the accused device, not by comparing the accused device to the figures of the asserted patent." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). Likewise, it "cannot be determined by comparing an accused product 'with a preferred embodiment described in the specification.'" *Int'l Bus. Machs. Corp. v. Zynga Inc.*, Civil Action No. 22-590-GBW, 2024 WL 3993290, at *2 (D. Del. Aug. 29, 2024) (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)). The Federal Circuit has made clear that "[a] patentee is entitled to rely on circumstantial evidence to establish infringement[.]" *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) (accused product's instruction manual was "circumstantial evidence of infringement").

14.    Using a patented invention without authorization constitutes infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483-84 (1964). "[I]ntent is not an element of direct infringement[.] . . . Infringement is, and should remain, a strict liability offense." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc), *rev'd on other grounds by Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

**Exhibit 4 to the Pretrial Order**    **NEC's Statement of Issues of Law**

### 2.    Infringement Under the Doctrine of Equivalents

15.    A patent may be infringed even when the accused product does not literally meet every claim limitation. Under the doctrine of equivalents "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 29 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002); *AquaTex Indus. v. Technische Sols.*, 419 F.3d 1374, 1382 (Fed. Cir. 2005). Infringement under the doctrine of equivalents is a question of fact. *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000).

16.    "[T]here is no basis for treating an infringing equivalent any differently than a device that infringes the express terms of the patent. Application of the doctrine of equivalents, therefore, is akin to determining literal infringement, and neither requires proof of intent." *Warner-Jenkinson*, 520 U.S. at 35. "Infringement under the doctrine of equivalents is an equitable doctrine devised for 'situations where there is no literal infringement but [where] liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention.'" *Insta-Foam Prods. Inc. v. Universal Foam Sys. Inc.*, 906 F.2d 698, 702 (Fed. Cir. 1990) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985)); *see also BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 604 (D. Del. 1995) ("The doctrine of equivalents is an equitable doctrine

designed to prevent parties from realizing the benefits of another's patent by designing around the patent's literal language.").

17.     The Supreme Court has set out two frameworks for evaluating substantial equivalence. *See Graver Tank*, 339 U.S. at 608-09. The function, way, result ("FWR") test asks whether the accused product performs "substantially the same function in substantially the same way to obtain the same result." *Id.* at 608. Alternatively, the patentee must show "that the difference between the claimed invention and the accused product was insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (citing *Graver Tank*, 339 U.S. at 608). A difference is "insubstantial" if it is shown "on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.*; *see also Warner-Jenkinson*, 520 U.S. at 40 (holding that the determination of equivalence must be made "on an element-by-element basis"); *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 362 (Fed. Cir. 2025). Evidence that the differences between the claimed and accused products are substantial includes evidence that the two are not interchangeable. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1429 (Fed. Cir. 1997).

18.     The accused product must contain every claim element, but "not necessarily in a corresponding component[.]" *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). "A patentee is, for example, free to frame the issue of equivalency, if it chooses, as equivalency to a combination of limitations." *Id.* at 1259 n.6. Courts have held that "[o]ne-to-one correspondence of components is not required, and elements or steps may be combined without ipso facto loss of equivalency." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) (internal quotation marks and citation omitted). A

**Exhibit 4 to the Pretrial Order**                                    **NEC's Statement of Issues of Law**

finding of infringement under the doctrine of equivalents is permissible unless "no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-19 (Fed. Cir. 2006).

### 3.        Indirect Infringement: Induced Infringement

19.        Section 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement "requires a plaintiff to show 'that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements.'" *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1326-27 (Fed. Cir. 2021) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part)). If a company knowingly induces the direct infringement of its customers, it is liable for that infringement. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003); *see also Forest Lab'ys*, 206 F. Supp. 3d at 974 (quoting *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012)). Proof of induced infringement requires evidence of an intent to cause the infringing acts. *See Moba*, 325 F.3d at 1318. And direct infringement is a necessary predicate for a finding of induced infringement in ordinary patent infringement cases. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014).

20.        Inducement must be proven by a preponderance of the evidence. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330 (Fed. Cir. 2016). Preponderance of the evidence "only requires the fact finder to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

to persuade [the factfinder] of the fact's existence." *Bosies*, 27 F.3d at 542 (citation, quotation marks, and brackets omitted).

21.    Proving "inducement requires a showing of specific intent to encourage another's infringement." *SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1376 (Fed. Cir. 2010) (internal quotation marks and citation omitted). "'[S]pecific intent' in the civil context is not so narrow as to allow an accused wrongdoer to actively disregard a known risk that an element of the offense exists." *Id.* This requirement can be satisfied by showing that the accused infringer manifested a "deliberate indifference to" or "knew of and disregarded" a risk that its activities were covered by a patent. *Id.* at 1376-77. "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c))." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016). "[A] belief as to invalidity cannot negate the scienter required for induced infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 664-45 (2015).

22.    "A defendant is liable for induced infringement under § 271(b) if the defendant took certain affirmative acts to bring about the commission by others of acts of infringement and had knowledge that the induced acts constitute patent infringement." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020) (internal quotation marks and citations omitted). This requires a plaintiff to show "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321-22 (Fed. Cir. 2009) (internal quotation marks and citations omitted). For example, "[i]nducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

to engage in an infringing use." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

23.    "[W]hile proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 644 (Fed. Cir. 2017); *see, e.g.*, *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-64 (Fed. Cir. 2006) (affirming infringement liability based on packaging of instruction manual with product); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (finding intent based on articles espousing use of product for infringing purpose); *Warsaw Orthopedic*, 834 F.3d at 1347; *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) ("[t]he requisite intent to induce infringement may be inferred from all of the circumstances"). "[L]iability for active inducement may be found where evidence . . . shows statements or actions directed to promoting infringement," and actions such as "instructing how to engage in an infringing use" demonstrate "an affirmative intent that the product be used to infringe." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1059 (Fed. Cir. 2010) (internal quotation marks and citations omitted); *see also Eli Lilly & Co. v. Actavis Elizabeth LLC*, 435 F. App'x 917, 926 (Fed. Cir. 2011) ("We have long held that the sale of a product specifically labeled for use in a patented method constitutes inducement to infringe that patent, and usually is also contributory infringement.").

24.    Inducement may be shown by an accused infringer's actions encouraging or instructing another on how to use an accused device in a way that infringes a patent such as through the provision of user manuals or advertisements. *Golden Blount*, 438 F.3d at 1361-64. Sales-related activities, including advertising, solicitation, and product instruction that encourage the infringing use may be acts constituting inducement. *See Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1351 (Fed. Cir. 2001) (product manual instructed customers to use

12

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

product so as to meet the patented limitation, thereby constituting an act of inducement); *Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (citing instruction sheet, puzzle solution booklet); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1353 (Fed. Cir. 2015) (citing customer services, including software installation, demonstrations, and maintenance); *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 532 (D. Del. 2018) (citing customer's use of included components for their intended purpose consistent with instructions).

### 4.        Indirect Infringement: Contributory Infringement

25.        Under 35 U.S.C. § 271(c), "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

26.        Plaintiff has the burden of showing contributory infringement by preponderance of the evidence. *See Bone Car Int'l, LLC v. Roxane Lab'ys, Inc.*, C.A. No. 09-cv-285 (GMS), 2012 WL 2126896, at *29 (D. Del. June 11, 2012). Preponderance of the evidence "only requires the fact finder to believe that the existence of a fact is more probable than its nonexistence before he may find in favor of the party who has the burden to persuade [the factfinder] of the fact's existence." *Bosies*, 27 F.3d at 542 (citation, quotation marks, and brackets omitted).

27.        "A party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process." *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) (citation omitted), *aff'd,* 564 U.S. 91 (2011). "Pursuant to § 271(c) of the Patent Act, an act of contributory infringement may include either the sale of a

13

'component of a patented machine, manufacture, combination or composition' (including a component used in a claimed system), or the sale of a 'material or apparatus for use in practicing a patented process.'" *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (quoting 35 U.S.C. § 271(c)). As an initial matter, "component" as recited in § 271(c) covers software components. *See, e.g.*, *Robocast, Inc., v. Microsoft Corp.*, 21 F. Supp. 3d 320, 332 (D. Del. 2014).

28.    To establish contributory infringement, plaintiff must show the following elements: "1) that there is direct infringement [by another], 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 522 (Fed. Cir. 2016).

29.    Similar to induced infringement, a claim for contributory infringement requires knowledge of the asserted patent and knowledge of infringement. *See Commil USA*, 575 U.S. at 639; *Aro Mfg.*, 377 U.S. at 488 (Section 271(c) "does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."); *Fujitsu*, 620 F.3d at 1330 (similar); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Evidence of knowledge may include that the patentee "provided a letter that identified the [asserted] patent and stated that [the defendant's] products infringe." *Fujitsu*, 620 F.3d at 1330.

30.    To show that an accused component has substantial noninfringing uses, the defendant must show at least one type of actual noninfringing use for the component, as speculative or theoretical uses will not suffice to meet this standard. *See Fujitsu*, 620 F.3d at 1330-31; *Bio-Rad Lab'ys., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1336 (Fed. Cir. 2021). And a "substantial non-

**Exhibit 4 to the Pretrial Order**                          **NEC's Statement of Issues of Law**

infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018). "In assessing whether an asserted noninfringing use was 'substantial,' the jury [i]s allowed to consider not only the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market." *i4i Ltd.*, 598 F.3d at 851; *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012); *Pickholtz v. Rainbow Techs., Inc.*, 260 F. Supp. 2d 980, 989 (N.D. Cal. 2003) (noting that inefficient, uneconomical, non-commercially viable, and non-recommended uses are less likely to be "substantial").

## II.    Willful Infringement

### A.    Issues to be Litigated

#### 1.    Willful Infringement of the '101 Patent

31.    Whether NEC has proven by a preponderance of the evidence that Peloton has willfully infringed the '101 Patent Asserted Claims.

#### 2.    Willful Infringement of the '809 Patent

32.    Whether NEC has proven by a preponderance of the evidence that Peloton has willfully infringed '809 Patent Asserted Claims.

### B.    Legal Authority

33.    A patentee has the burden of proving willfulness, along with entitlement to enhanced damages, by a preponderance of the evidence. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 107 (2016). "Willful infringement is found where the defendant both knew of the asserted patent and knew its conduct amounted to infringement of the asserted patent." *VB Assets, LLC v. Amazon.com Servs. LLC*, 751 F. Supp. 3d 391, 405 (D. Del. 2024). Willful infringement is an issue of fact for the jury. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

34.     "[T]he concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo*, 579 U.S. at 1933 for its statement that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless"). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo*, 579 U.S. at 105; *see Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119 (Fed. Cir. 2022) ("In some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer."). "[P]roof that the accused infringer acted in the face of a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer' can satisfy" the subjective willfulness standard. *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, 624 F. Supp. 3d 473, 480-81 (D. Del. 2022) (quoting *WesternGeco L.L.C v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016)), *aff'd in relevant part, rev'd in part on other grounds,* 2026 WL 122544 (Fed. Cir. Jan. 16, 2026)..

35.     Courts have repeatedly acknowledged that either pre- or post-suit conduct is sufficient to establish willful infringement. *See, e.g.*, *Evonik Degussa GmbH v. Materia, Inc.*, No. 09-cv-636 (NLH/JS), 2018 WL 1532425, at *11 (D. Del. Mar. 28, 2018) ("The Court stated that 'culpability is generally measured against the knowledge of the actor at the time of the challenged conduct.'") (quoting *Halo,* 579 U.S. at 105); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) (holding that post-suit conduct was a basis for willful infringement);

**Exhibit 4 to the Pretrial Order**                                    **NEC's Statement of Issues of Law**

*DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (denying motion to dismiss willful infringement claims for post-complaint conduct). Therefore, a finding of willfulness can be based exclusively on post-complaint conduct. *See, e.g.*, *NEC Corp. v. Peloton Interactive, Inc.*, Civil Action No. 22-987-CJB, 2023 WL 8529287, at *3 (D. Del. Dec. 8, 2023); *Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021); *IOENGINE, LLC v. PayPal Holdings, Inc.*, Civil Action No. 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("knowledge of the patents was clearly conveyed to [the defendant] by the service of the complaint"); *see also ESCO Grp. LLC v. Deere & Co.*, Civil Action No. 20-1679-WCB, 2023 WL 4199413, at *7-8 (D. Del. June 22, 2023) (holding that post-suit knowledge can be obtained from filing of the original complaint).

## III.   Requested Relief

### A.   Issues of Law to be Litigated

#### 1.   Requested Relief for Infringement of the '101 Patent and the '809 Patent

36.     Whether NEC has proven that it is owed damages for Peloton's infringement of the '101 Patent and/or the '809 Patent, and if so, in what amount.

37.     Whether NEC has proven that it is entitled to an accounting of damages for post-verdict infringement of the '101 Patent and/or /or the '809 Patent, such as an ongoing royalty, and, if so, in what amount.

38.     Whether NEC has proven that it is entitled to an award of prejudgment and post-judgment interest and, if so, in what amounts.

39.     Whether NEC has proven that it is entitled to enhanced damages under 35 U.S.C. § 284 because Peloton's is willful.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

40.     Whether NEC has proven that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, in what amount.

41.     Whether NEC has proven that it is entitled to permanent injunctive relief.

42.     Whether NEC has proven that it is entitled to any other relief as this Court deems just and proper.

### B.     Legal Authority

#### 1.     Damages

43.     Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

44.     "Section 284 imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). "The phrase 'damages adequate to compensate' means full compensation for 'any damages' [the patent owner] suffered as a result of the infringement." *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("the Supreme Court has interpreted [the statute] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement.") (emphasis in original). "Full compensation includes any foreseeable lost profits the patent owner can prove." *Id.* A damage award shall be "in no event less than a reasonable royalty," which sets the lower limit for a damages award. *See Rite-Hite*, 56 F.3d at 1544.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

45.     "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). The patentee, however, need not prove its damages with absolute certainty. *See W.R. Grace & Co.-Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999). "[I]t will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Moreover, "[a]ny doubt about the correctness of the award is resolved against the infringer." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989); *W.R. Grace*, 60 F. Supp. 2d at 321. "[F]undamental principles of justice require [the court] to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party." *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

### 2.     Reasonable Royalty

46.     "A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits." *Rite-Hite*, 56 F.3d at 1554 (citing 35 U.S.C. § 284). "A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owners of the patent rights and the infringer, with both operating under the assumption that the negotiated patent is not invalid and is infringed, i.e., that absent the 'reasonable royalty' payment, that the infringer would respect the patent." *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 838 (D. Del. 1995). "[W]hat an infringer would prefer to pay is not the test for damages." *Rite-Hite*, 56 F.3d at 1555. "[T]hat the parties might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened; it would also make an election to infringe a handy means

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

for competitors to impose a compulsory license policy upon every patent owner." *Id.* (discussing *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986)). "There is no rule that a royalty be no higher than the infringer's net profit margin." *State Indus.*, 883 F.2d at 1580.

47.    The hypothetical negotiation is presumed to take place on the eve of first infringement. *See Wang Lab'ys, Inc. v. Toshiba Corp.*, 993 F.2d 858, 869-70 (Fed. Cir. 1993); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158 (6th Cir. 1978). "The Court must also assume, for purposes of the hypothetical negotiation, that all parties would have known all relevant information." *Mobil Oil Corp. v. Amoco Chems. Co.*, 915 F. Supp. 1333, 1353 (D. Del. 1994). The hypothetical negotiation speaks of negotiations as of the time infringement began, yet a court may look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothetical negotiators. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1571-72 (Fed. Cir. 1988). A jury may consider industry royalty rates in determining an applicable royalty rate, but these "do not necessarily establish a ceiling for the royalty that may be assessed after an infringement trial. *Bio-Rad*, 739 F.2d at 617.

48.    The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, No. Civ.A. 03-241 JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004). These factors are:

a.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.;

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

b.    The rates paid by the patentee, the licensee, or others for the use of other patents comparable to the patent in suit.;

c.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.;

d.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.;

e.    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.;

f.    The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.;

g.    The duration of the patent and the term of the license.;

h.    The established profitability of the product made under the patent; its commercial success; and its current popularity.;

i.    The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.;

j.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.;

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

k.    The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.;

l.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.;

m.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.;

n.    The opinion testimony of qualified experts.;

o.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.;

*Georgia-Pacific*, 318 F. Supp. at 1120.

49.    A patentee "must in every case give evidence tending to separate or apportion the defendants profits and the patentee's damages between the patented features and the unpatented features . . . or show that the entire market value of the whole machine, as a marketable article, is

properly and legally attributable to the patented feature." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (internal quotation marks and citation omitted). Apportionment may be achieved in any number of legally acceptable ways such as "by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of the product's non-patented features; or by a combination thereof. The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226-27 (Fed. Cir. 2014).

50.    "However, 'further apportionment may not . . . be required' un the 'unusual' case where another license agreement is 'sufficiently comparable' and, thus, has 'built-in-apportionment.'" *Bd. of Regents Univ. of Texas Sys. v. Bos. Sci. Corp.*, 645 F. Supp. 3d 324, 333 (D. Del. 2022) (quoting *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040-41 (Fed. Cir. 2020); *see also Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019) (holding that "that the district court's analysis was not in error because it already built in apportionment by starting from discussions centered on a license rate for the same patent, those discussions having already informally apportioned the proposed license rates to the value of the patented technology" and the expert's testimony "allowed the jury to find that the components at issue, for purposes of apportionment to the value of a larger product or service, were comparable to the components at issue [in the license]"). In other words, "[b]uilt-in-apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patents." *Vectura*, 981 F.3d at 1041; *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022); *Midwest Energy Emissions*

*Corp. v. Arthur J. Gallagher & Co.*, Civil Action No. 19-1334-CJB, 2023 WL 7547490, at *5 (D. Del. Nov. 7, 2023).

51.      "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003). Even if evidence presented at trial falls short of supporting a party's specific royalty estimate, "the fact finder is still required to determine what royalty is supported by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) (citing cases), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The requirement to determine actual damages is not diminished by difficulty of determination."). "Indeed, if the record evidence does not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence." *Apple*, 757 F.3d. at 1328. "[T]he factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party." *SmithKline Diagnostics*, 926 F.2d at 1167. "[T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence." *Id.* at 1168.

### 3.      Post-Verdict Accounting

52.      A patentee is also be entitled to an accounting of damages for post-verdict sales of products found to infringe the patents-in-suit. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) (holding that, when a patentee requested "money damages sustained as a result of the defendants' infringement[,]" it is "entitled to an accounting for [the defendants'] post-verdict infringement"), *abrogated on other grounds by Brumfield, Tr. for*

24

*Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024). "A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of [additional infringing] parts." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009); *see also Edwards Lifesciences AG v. CoreValve, Inc.*, C.A. No. 08-91-GMS, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011) ("The court will grant . . . an accounting of the number of [infringing] devices made, used, sold and corresponding revenue. . . through the date of the order accompanying this memorandum."), *aff'd in part, remanded in part,* 699 F.3d 1305 (Fed. Cir. 2012); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383-EJW, 2001 WL 34778689, at *18 (D. Nev. Aug. 1, 2001) (collecting instances of accountings in patent cases).

53.     Courts in this District have permitted additional discovery to properly complete a post-trial accounting of damages. *See, e.g.*, *TruePosition Inc. v. Andrew Corp.*, No. Civ. 05-747-SLR, 2009 WL 1651042, at *1 n.2 (D. Del. June 10, 2009), *aff'd,* 389 F. App'x 1000 (Fed. Cir. 2010). This is because "[o]nce a judgment of validity and infringement has been entered, . . . the calculus is markedly different because different economic factors are involved" and there is less uncertainty as to the parties' claims and defenses. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008). "Generally, the jury's damage award is a starting point for evaluating ongoing royalties." *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 449 (D. Del. 2023). From there, the Court may examine the *Georgia-Pacific* factors, changed economic circumstances, market changes, and other post-verdict considerations to calculate an ongoing royalty rate. *Id.*; *see, e.g.*, *Bos. Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 275-76 (D. Del. 2012) (recognizing that a post-verdict royalty is different than a pre-verdict royalty, and declining to allow "an adjudicated willful infringer[] to effectively owe less for its post-verdict infringement than the jury found for

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

its pre-verdict infringement"), *aff'd,* 497 F. App'x 69 (Fed. Cir. 2013); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, Civil Action No. 04-876-GMS, 2014 WL 1457797, at *5 (D. Del. Apr. 14, 2014) (considering a maturing market, post-verdict licenses, and proactive measures taken to reduce infringement).

### 4.    Prejudgment Interest

54.    The patent statute authorizes awards of prejudgment interest. 35 U.S.C. § 284. The Supreme Court has held that "prejudgment interest should ordinarily be awarded." *Gen. Motors*, 461 U.S. at 654-55. "An award of prejudgment interest serves to make the patentee whole because the patentee also lost the use of its money due to infringement." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001). In *General Motors*, the Supreme Court held that prejudgment interest is the rule, not the exception. 461 U.S. at 655. "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (quoting *Gen. Motors*, 461 U.S. at 657). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citing *Gen. Motors*, 461 U.S. at 656).

55.    "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court. . . . In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *Gen. Motors*, 461 U.S. 655).

26

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

### 5.        Post-Judgment Interest

56.       Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Postjudgment interest is awarded on monetary judgments recovered in all civil cases[,]" including those for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

57.       Post-judgment interest is governed by regional circuit law. *Id.* at 1348; *see EagleView Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 71 (D.N.J. 2021) ("Although this is a patent case, the Court will apply § 1961 as construed by Third Circuit case law."). Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Penn. Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993) (discussing 28 U.S.C. § 1961). "Post-judgment interest is mandatory for damages awarded in a civil case[,]" *VB Assets, LLC v. Amazon.com Servs. LLC*, 751 F. Supp. 3d 391, 419 (D. Del. 2024); *Purewick*, 666 F. Supp. at 451-52; *Sight Scis., Inc. v. Ivantis, Inc.*, C.A. No. 21-1317-JLH-SRF, 2026 WL 851257, at *19 (D. Del. Mar. 27, 2026), for the entire amount included in the judgment, including prejudgment interest, the jury's damages award, enhanced damages, and attorneys' fees, *EagleView Techs.*, 522 F. Supp. 3d at 72 (citing *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 174 (3d Cir. 2010)); *see ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019 (MN), 2022 WL 4597877, at *19 (D. Del. Sept. 30, 2022), *rev'd and remanded on other grounds sub nom. Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350 (Fed. Cir. 2025).

### 6.        Enhanced Damages

58.       Section 284 of Title 35 of the United States Code 35 provides in pertinent part that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

§ 284. The Court may enhance damages, up to trebling the actual damages, upon a finding of willful infringement. *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998).

59.    In determining whether to award enhanced damages, a court should consider "egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman*, 517 U.S. 370. In exercising its discretion to enhance damages, the Court should consider the weight of the evidence of the infringer's culpability in light of the following factors:

a.    whether the infringer copied the ideas or design of another;

b.    whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed;

c.    the infringer's behavior as a party to the litigation;

d.    the infringer's size and financial condition;

e.    the closeness of the case;

f.    the duration of the infringer's misconduct;

g.    any remedial action of the infringer;

h.    the infringer's motivation for harm; and

i.    whether the infringer attempted to conceal its misconduct.

*Id.* at 826-27; *Johns Hopkins*, 152 F.3d at 1352 n.16, 1364-65; *see also Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) ("[The Federal Circuit] has identified several criteria for assessing damages, including, inter alia, whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

good-faith belief that it was invalid or that it was not infringed, and the duration of defendant's misconduct").

### 7.    Attorneys' Fees and Costs under 35 U.S.C. § 285

60.    Section 285 of Title 35 of the United States Code provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Determining whether a case is exceptional and whether attorneys' fees should be granted under 35 U.S.C. § 285 is a two-step process. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000). The first step is a factual determination whether the case is exceptional, and the second step, the Court exercises its discretion to determine whether attorneys' fees should be awarded. *Id.*

61.    "[F]or that party to be a *prevailing party*, that party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014) (summarizing cases); *see Future Link Sys., LLC v. Realtek Semiconductor Corp.*, 154 F.4th 1370, 1375 (Fed. Cir. 2025) (noting that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.") (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)) (internal quotation marks omitted). The prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-58 (2014); *EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1366 (Fed. Cir. 2025), *cert. denied*, 2026 WL 1127244 (U.S. Apr. 27, 2026).

62.    In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substance strength of a party's litigating position (considering both the governing law and the facts of the

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554. The Court added that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* There is "no precise rule or formula" for awarding attorneys' fees under § 285, but the district court should exercise equitable discretion in light of the purposes of the statute. *Id.* at 554 & n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). "[C]ulpability . . . is generally measured against the knowledge of the actor at the time of the challenged conduct[,]" and such culpability can be found if an infringer "acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Halo Elecs.*, 579 U.S. at 105-06 (emphasis and citation omitted).

### 8.     Injunction

63.     Under 35 U.S.C. § 283, "[a] district court 'may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.'" *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2019 WL 3802650, at *2 (D. Del. Aug. 13, 2019) (quoting 35 U.S.C. § 283). In order to obtain a permanent injunction, a party with a valid and infringed patent must show that the following factors favor the requested relief: (i) the patent holder has suffered or will suffer irreparable injury or harm, (ii) legal remedies are inadequate to compensate for that injury, (iii) balance of hardships, and (iv) the public interest." *Bayer Pharma AG v. Watson Lab'ys, Inc.*, Civil Action No. 12-1726-LPS, Civil Action No. 12-1726-(LPS)(CJB), 2016 WL 7468172, at *2 (D. Del. Dec. 28, 2016) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Permanent injunctions in patent cases must be based on a case-by-case assessment of the traditional equitable factors governing injunctions."

64.    "A finding of irreparable harm requires a causal nexus between the patent infringement and the alleged injury." *EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956(GMS), 2016 WL 1291757, at *13 (D. Del. Mar. 31, 2016), *aff'd,* 691 F. App'x 623 (Fed. Cir. 2017). This "means that there must be proof that the infringement causes the harm." *Apple, Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015).

65.    Regarding the adequacy of money damages, "money damages alone cannot fully compensate for [the patentee] for the[] harm[] . . . [when t]here is no reason to believe that [the defendant] will stop infringing, or that the irreparable harms resulting from its infringement will otherwise cease, absent an injunction." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011).

66.    With respect to the balance of hardships, this factor looks at "the relative effect of granting or denying an injunction on the parties." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) (citing *eBay*, 547 U.S. at 391), *aff'd,* 564 U.S. 91 (2011). This factor considers the parties' sizes, products, business strategy, and revenue sources. *Id.* Where a defendant's infringing product is "merely one of thousands of features" and purportedly used by only a small fraction of customers, the hardship has a smaller footprint. And it is proper for the district court to "ignore[] the expenses [the defendant] incurred in creating the infringing product." *Id.* The same goes for the consequences of infringement, including redesign and other sunken costs. *Id.*; *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (a defendant "should not be permitted on a theory 'that successful exploitation of infringing technology shields a party from injunctive relief'"); *see also Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

**Exhibit 4 to the Pretrial Order**                                    **NEC's Statement of Issues of Law**

67.    Lastly, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors[.]" *Apple*, 809 F.3d at 647; *Dasso Int'l*, 2023 WL 5349374, at *21; *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) (recognizing "the public's general interest in judicial protection of property rights in inventive technology"). This is especially the case when "the patentee's proposed injunction is narrow in scope" that is "commensurate in scope with its monopoly rights" and "includes a sunset provision limiting the impact of the injunction on consumers."

## IV.    Issues on Which Peloton Bears the Burden of Proof: Invalidity

### A.    Issues to be Litigated

68.    Whether Peloton has proven by clear and convincing evidence that Peloton's proffered prior art system(s) qualify as prior art under pre-AIA 35 U.S.C. § 102(a) or (b).

69.    Whether Peloton has proven by clear and convincing evidence that the testimony regarding Peloton's proffered prior art system(s) is sufficiently corroborated.

70.    Whether Peloton has proven by clear and convincing evidence that any of the '101 Patent Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

71.    Whether Peloton has proven by clear and convincing evidence that any of the '809 Patent Asserted Claims are invalid as anticipated under 35 U.S.C. § 102.

72.    Whether Peloton has proven by clear and convincing evidence that any of the '101 Patent Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

73.    Whether Peloton has proven by clear and convincing evidence that any of the '809 Patent Asserted Claims are invalid as obvious under 35 U.S.C. § 103.

**Exhibit 4 to the Pretrial Order**                          **NEC's Statement of Issues of Law**

74.     Whether Peloton has proven by clear and convincing evidence that any of the '101 Patent Asserted Claims are invalid for lack of an adequate written description under 35 U.S.C. § 112.

75.     Whether a person of ordinary skill in the art would be motivated to modify the prior art asserted by Peloton to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

76.     Whether a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by Defendant to arrive at the inventions of the Asserted Claims against which such prior art is asserted.

77.     Whether a nexus exists between any alleged secondary consideration of non-obviousness and the patented inventions.

78.     Whether objective indicia of non-obviousness or secondary considerations support the non-obviousness of the '101 Patent and/or '809 Patent Asserted Claims, such as the following:

- whether the claimed invention satisfied a long-felt need which was recognized, persistent, and not solved by others;

- whether others tried, but failed, to solve the problem solved by the claimed invention;

- whether there were unexpected results;

- whether the claimed invention received industry praise or if others in the field were skeptical of the claimed invention;

- whether products covered by the claim have been commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim; and

- whether others copied the claimed invention.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

**B.      Legal Authority**

**1.      In General**

79.      "A patent shall be presumed valid, and each claim shall be presumed valid independently of the validity of other claims." *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.,* 796 F.2d 443, 446 (Fed. Cir. 1986) (citing 35 U.S.C. § 282); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent[.]'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft Corp.*, 564 U.S. at 95-96); *see also Immervision, Inc. v. Apple Inc.*, 819 F. Supp. 3d 338, 354 (D. Del. 2026) ("The Court certainly agrees with Plaintiff that the '990 patent enjoys the benefit of the presumption of validity, as the USPTO has already examined [it]") (internal quotation marks and citations omitted). "While an alleged infringer 'may attempt to prove that the patent never should have issued in the first place,' *i.e.*, challenge its validity, the alleged infringer must prove the patent does not satisfy these prerequisites before the patent loses its presumption of validity." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft Corp.*, 564 U.S. at 96-97). The party asserting invalidity must prove it with clear and convincing evidence. *Microsoft Corp.*, 564 U.S. at 95; *Immervision*, 819 F. Supp. 3d at 354. "It is black-letter law that . . . a party challenging validity bears the burden of proving the factual elements of invalidity by clear and convincing evidence, and that is because 'the presumption of validity remains intact . . . throughout the litigation,' and the burden of persuasion never shifts to the patentee during the court of a district court [validity] challenge." *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1366 (Fed.

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

Cir. 2022) ("The burden of proof to invalidate [the plaintiff's] patent claims is a heavy one—clear and convincing evidence—and it is a burden that rests squarely on [the defendant].").

80.     The Court may assume that "the examiner . . . has some expertise in interpreting the references [before them] and some familiarity with the level of skill in the art[.]" *Bausch*, 796 F.2d at 447 (citation omitted). "[T]here is a high burden of proof created by the necessary deference to the PTO." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (internal quotation marks and citation omitted). "This notion stems from [the Federal Circuit's] suggestion that the party challenging a patent in court 'bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.'" *Id.* (quoting *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007)). "Whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity." *Id.* "[T]he fact that references were previously before the PTO goes to the weight the court or jury might assign to the proffered evidence." *Id.*

### 2.     Prior Art

81.     Section 102 of Title 35 of the United States Code provides:

> A person shall be entitled to a patent unless —
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

Pre-AIA 35 U.S.C. § 102(a)-(b).

82.     "The presumption of validity, 35 U.S.C. § 282 (1994), requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

reference as prior art." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001).

83.    Under pre-AIA 35 U.S.C. § 102(a), "a document is prior art only when published before the invention date." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).

84.    Pursuant to pre-AIA 35 U.S.C. § 102, "invalidating prior art must be shown by clear and convincing evidence, to have been 'in public use or on sale in this country more than one year prior to the [priority] date'" of the relevant patent application. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-LPS, C.A. No. 11-742-LPS, 2016 WL 6542726, at *8 (D. Del. Oct. 31, 2016) (quoting 35 U.S.C. § 102(b)).

85.    "The statutory language 'known or used by others in this country' (35 U.S.C. § 102(a)), means knowledge or use which is accessible to the public." *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986). "Accordingly, in order to invalidate a patent based upon prior knowledge or use, that knowledge must have been available to the public." *Woodland Tr. V. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) (citing P.J. Federico, *Commentary on the New Patent Act*, 35 U.S.C.A. 1, 26 (1954), *reprinted in* 75 J. Pat. & Trademark Off. Soc'y, 161, 178 (1993) for the proposition that § 102(a) "excludes various kinds of private knowledge not known to the public"); *see also Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, No. CV 13-2072 (KAJ), 2017 WL 1045912, at *9 (D. Del. Feb. 22, 2017) ("the key criterion for prior art is public accessibility") (internal quotation marks and citation omitted), *aff'd,* 721 F. App'x 994 (Fed. Cir. 2018). "[A] third party's commercial exploitation of a secret process" does not *per se* create a public-use bar to another inventor. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983)).

86.     When a party claims that a prior invention "predates, and thereby anticipates, a patent asserted against it, the oral testimony of the inventor of the purported prior art must be corroborated." *Mosaic Brands*, 55 F.4th at 1363; *see Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, C.A. No. 18-462 (MN), 2019 WL 10248462, at *2 (D. Del. Apr. 18, 2019) ("Where. . . an accused infringer contends that a patent is invalid because the invention was on sale or in public use before the critical date, oral testimony of a witness alone is insufficient to render the patent invalid."). "[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999). The purpose of this requirement "is to prevent fraud" and to "provide[] an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the past." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006); *Mosaic Brands*, 55 F.4th at 1363.

87.     "Possible corroborating evidence, from most to least probative, includes documentary and physical evidence created at the time of conception or reduction to practice, circumstantial documentary evidence about the inventive process, and oral testimony by someone other than the inventor [or primary witness]." *Mosaic Brands*, 55 F.4th at 1363; *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159-60 (Fed. Cir. 2004) (listing factors to consider when assessing the sufficiency of corroborative evidence). "Uncorroborated testimony 'alone cannot surmount the hurdle that the clear and convincing standard imposes on proving patent invalidity.'" *Masimo Corp.*, 2016 WL 6542726, at *8 (quoting *Finnigan*, 180 F.3d at 1370); *Rsch. Found. of State Univ. of New York v. Mylan Pharms. Inc.*, 809 F. Supp. 2d 296, 323 (D. Del. 2011) (holding that even though the court found the witness's testimony credible, it was uncorroborated and failed as a matter of law to invalidate the asserted patent) (collecting Federal

Circuit cases), *aff'd in part, vacated in part on other grounds, remanded,* 531 F. App'x 1008 (Fed. Cir. 2013).

88.    "When the asserted basis of invalidity is a public use or on-sale bar, the court should determine 'whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002) (quoting *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999)). In other words, the prior art invention that has allegedly been in public use or "offered for sale, must, of course, be something within the scope of the claim." *Scaltech Inc.*, 178 F.3d at 1383; *see Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009) ("In order for a public use within the meaning of § 102(b), there must be a public use with all of the claim limitations."); *e.g., Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 738 (Fed. Cir. 2002) (faulting the defendant for "not present[ing] an element-by-element comparison between the [prior art dispensers] and the asserted claims"). This requires the party asserting invalidity to demonstrate how the alleged prior art operated "at the time of its sale" or public use. *Dey, L.P. v. Teva Parenteral Medicines, Inc.*, 6 F. Supp. 3d 651 (N.D.W. Va. 2014) (citing *Scaltech Inc.*, 178 F.3d at 1383), *aff'd sub nom. DEY LP v. Teva Parenteral Medicines, Inc.*, 600 F. App'x 773 (Fed. Cir. 2015); *see, e.g., Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, 548 F. Supp. 3d 916, 923-24 (N.D. Cal. 2021) (concluding that a source code system was not prior art because there was "no evaluation of the 3Gmate source code—specifically as it existed prior to [the asserted patent's priority date,] December 2013").

89.    Another requirement is that the alleged prior use or sale must be within the United States. Pre-AIA 35 U.S.C. § 102(a)-(b); *e.g., Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1348 n.4 (Fed. Cir. 2018) ("Because pre-AIA § 102(b) applies to this case, testing in Canada cannot

**Exhibit 4 to the Pretrial Order**                        **NEC's Statement of Issues of Law**

constitute an invalidating prior public use."); *Freeny v. Murphy Oil Corp.*, Case No. 2:13-CV-791-RSP, 2015 WL 5144347, at *3 (E.D. Tex. June 4, 2015) ("the Court agrees that prior use outside the United States (e.g., in West Germany and Canada) cannot constitute prior use"); *Badowski v. United States*, 164 F. Supp. 252, 255 (Ct. Cl. 1958) ("Considering next the Russian devices, it is clear that knowledge or use of a device in a foreign country, such as Russia, without such knowledge or use in this country, is not a statutory bar to the patent in suit."); *PB Farradyne, Inc. v. Peterson*, No. C 05-3447 SI, 2006 WL 2578273, at *4 (N.D. Cal. Sept. 6, 2006) (holding claim charts which "assert invalidity on the basis of products known, used, or invented outside the United States" fail as a matter of law).

### 3.    Anticipation

90.    A claim is only invalid for anticipation if "a single prior art reference discloses each and every limitation of the claimed invention." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014). "If it is necessary to reach beyond the boundaries of a single reference to provide missing disclosure of the claimed invention, the proper ground is not § 102 anticipation, but § 103 obviousness." *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) (quoting *Scripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1577 (Fed. Cir. 1991)). "[I]t is not enough that the prior art reference discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) (citation omitted). "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Id.*

91.    "Anticipation is a question of fact, including whether or not an element is inherent in the prior art . . . . To anticipate, a prior art reference must place the inventive compound or composition in the possession of the public. Thus, the prior art reference must disclose each and every feature of the claimed invention, either explicitly or inherently." *Eli Lilly & Co. v. Zenith Goldine Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006) (citations omitted).

92.    Anticipation is not a question of whether a prior art reference "suggests" the claimed subject matter but rather "whether one skilled in the art would reasonably understand or infer from a prior art reference that every claim element is disclosed in that reference." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1055 (Fed. Cir. 2010) (citation omitted). In order to show a reference is anticipatory, "one skilled in the art cannot supply missing elements through his or her knowledge." *Forest Lab'ys, Inc. v. Ivax Pharms., Inc.*, 438 F. Supp. 2d 479, 485 (D. Del. 2006), *aff'd,* 501 F.3d 1263 (Fed. Cir. 2007).

93.    For a reference to be inherently anticipatory, the missing element must necessarily be present, not merely "probably or possibly present." *Trintec Indus. Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002). "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation . . . ." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002).

94.    A mere suggestion to investigate further is not an inherent disclosure. *Metabolite Lab'ys, Inc. v. Lab'y Corp of Am. Holdings*, 370 F.3d 1354, 1367 (Fed. Cir. 2004) ("An invitation to investigate is not an inherent disclosure.").

95.    To prove that a patent is inherently anticipated, "[d]efendants bear the burden of proving by clear and convincing evidence that [the prior art] 'necessarily and inevitably' produces the claimed invention." *In re Depomed Pat. Litig.*, No. 13-cv-4507, 2016 WL 7163647, at *45

40

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

(D.N.J. Sept. 30, 2016), *aff'd sub nom, Grunenthal GmbH v. Alkem Lab'ys Ltd.*, 919 F.3d 1333 (Fed. Cir. 2019). This "requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." *In re Armodafinil Patent Litig. Inc.*, 939 F. Supp. 2d 456, 465 (D. Del. 2013) (quoting *Trintec Indus.*, 295 F.3d at 1295).

### 4.      Obviousness

96.      Under 35 U.S.C. § 103, a patent claim is only invalid for obviousness "if an alleged infringer proves, by clear and convincing evidence, that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art." *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1290 (Fed. Cir. 2012) (citations omitted). "[A] patent is presumed valid and the party asserting invalidity must overcome this presumption by clear and convincing evidence . . . ." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 834 (Fed. Cir. 1991).

97.      "Obviousness is a question of law with underlying factual findings, including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence such as commercial success, long-felt need, and the failure of others." *Otsuka Pharm.*, 678 F.3d at 1290 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 660, 663 (Fed. Cir. 2000) (noting that where a court "fail[s] to make factual findings on obviousness as set forth by the Supreme Court in Graham . . . [the Federal Circuit] must vacate the judgment of invalidity.").

98.      "A party seeking to invalidate a patent based on obviousness must demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the

41

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)). "Whether a motivation to combine prior art references has been demonstrated is a question of fact" and "the factual inquiry whether to combine references must be thorough and searching." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351-52 (Fed. Cir. 2001).

99.    Predictability for obviousness requires both that the "prior art elements are capable of being . . . combined" and also "that the combination would have worked for its intended purpose." *DePuy Spine*, 567 F.3d at 1326. "[I]f the prior art indicated that the invention would not have worked for its intended purpose or otherwise taught away from the invention," an invention is not obvious. *Id.*

100.    "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351-52 (Fed. Cir. 20210) (citation omitted). Instead, "a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012) (internal quotation marks and citations omitted).

101.    "[The Federal Circuit] has emphasized that consideration of the objective indicia [of nonobviousness] is part of the whole obviousness analysis, not just an afterthought." *Leo*

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

*Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013) (emphasis in original). "Objective indicia of nonobviousness play a critical role in the obviousness analysis. They are 'not just a cumulative or confirmatory part of the obviousness calculus but constitute[ ] independent evidence of nonobviousness.'" *Id.* at 1358 (citation omitted). "Objective indicia 'can be the most probative evidence of nonobviousness in the record, and enables the court to avert the trap of hindsight.'" *Id.* (citation omitted).

102.    The Federal Circuit has emphasized that "[s]econdary considerations 'can be the most probative evidence of non-obviousness in the record, and enables the . . . court to avert the trap of hindsight.'" *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310-11 (Fed. Cir. 2010) (citation omitted) (reversing ITC finding of obviousness because prior art taught away from claimed invention and "the secondary considerations suppl[ied] additional evidence of non obviousness"). "This evidence is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness." *Id.* (citation omitted).

103.    "[T]here is a presumption of nexus for objective considerations when the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'" *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016) (citations omitted). The presumption is rebuttable, but "a patent challenger cannot successfully rebut the presumption with argument alone—it must present evidence." *Id.*

104.    "[E]ven in the absence of such a presumption, a patentee may establish a nexus 'by showing that the objective indicia are the 'direct result of the unique characteristics of the claimed invention.'" *IOENGINE, LLC v. PayPal Holdings, Inc.,* 607 F. Supp. 3d 464, 508 (D. Del. 2022 (citation omitted).

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

105.    "[T]he burden of persuasion never shifts to the patentee during the course of a district court obviousness challenge." *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013).

### 5.    Written Description

106.    Pursuant to 35 U.S.C. § 112, "the specification shall contain a written description of the invention . . . ." 35 U.S.C. § 112(a).

107.    "The purpose of the written description requirement is to assure that the public receives sufficient knowledge of the patented technology, and to demonstrate that the patentee is in possession of the invention claimed." *Zoltek Corp. v. United States*, 815 F.3d 1302, 1308 (Fed. Cir. 2016) (citation omitted). The written description requirement evaluates whether "the patentee possessed the invention that is claimed" from the context of "the state of knowledge at the time of the invention." *Id.*; *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1063 (Fed. Cir. 2010) ("Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date."). The standard for satisfying the written description requirement is whether the specification's disclosure "reasonably conveys to a person of ordinary skill that the inventor had possession of" the claimed subject matter as of the filing date. *See Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361-64 (Fed. Cir. 2018) (holding that PCT application satisfied written description requirement). The written description "need not include information that is already known and available to the experienced public." *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 405 F.3d 985, 987 (Fed. Cir. 2005) (reversing judgment of invalidity).

108.    A patentee does not fail to satisfy the written description requirement simply because the embodiments described in the specification do not contain explicit examples of the full scope of the claim language. *See, e.g.*, *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d

1363, 1371 (Fed. Cir. 2009) ("a patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed.") (citation omitted); *Shopify Inc. v. Express Mobile, Inc.*, No. 19-cv-439, 2021 WL 4288113, at *15 (D. Del. Sept. 21, 2021) (denying summary judgment for lack of written description because the embodiment described in the specification was just one example and "[t]he '397 patent did not have to disclose all known examples of virtual machines. And it did not claim 'JavaScript virtual machines.' It claimed a 'virtual machine.'"). In the same vein, "[a]n applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention." *Cordis Corp. v. Medtronic Ave*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (citation omitted) (defendant failed to prove lack of written description by clear and convincing evidence). Nor does a patentee fail to satisfy the written description requirement because the disclosure of the specification does not exactly match the claims. *See Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682-83 (Fed. Cir. 2015) (vacating a summary judgment of invalidity for lack of an adequate written description).

## V.    **Issues on Which Peloton Bears the Burden of Proof: Attorneys' Fees and Costs**

### A.    **Issues to be Litigated**

109.    Whether Peloton has proven that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, in what amount.

110.    Whether Peloton has proven that it is entitled to any other relief as this Court deems just and proper.

### B.    **Legal Authority**

#### 1.    **Attorneys' Fees**

111.    Section 285 of Title 35 of the United States Code provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

45

**Exhibit 4 to the Pretrial Order**                    **NEC's Statement of Issues of Law**

Determining whether a case is exceptional and whether attorneys' fees should be granted under 35
U.S.C. § 285 is a two-step process. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958,
964 (Fed. Cir. 2000). The first step is a factual determination whether the case is exceptional, and
the second step, the Court exercises its discretion to determine whether attorneys' fees should be
awarded. *Id.*

112.    "[F]or that party to be a *prevailing party*, that party must win a dispute within the
case in favor of it that materially alters the legal relationship between the parties at the time of the
judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014) (summarizing
cases); *see Future Link Sys., LLC v. Realtek Semiconductor Corp.*, 154 F.4th 1370, 1375 (Fed. Cir.
2025) (noting that the "touchstone of the prevailing party inquiry must be the material alteration
of the legal relationship of the parties.") (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch.
Dist.*, 489 U.S. 782, 792-93 (1989)) (internal quotation marks omitted). The prevailing party must
prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Octane Fitness,
LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-58 (2014); *EscapeX IP, LLC v. Google
LLC*, 159 F.4th 1360, 1366 (Fed. Cir. 2025), *cert. denied,* 2026 WL 1127244 (U.S. Apr. 27, 2026).

113.    In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held
that "an 'exceptional' case is simply one that stands out from others with respect to the substance
strength of a party's litigating position (considering both the governing law and the facts of the
case) or the unreasonable manner in which the case was litigated." 572 U.S. at 554. The Court
added that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case
exercise of their discretion, considering the totality of the circumstances." *Id.* There is "no precise
rule or formula" for awarding attorneys' fees under § 285, but the district court should exercise
equitable discretion in light of the purposes of the statute. *Id.* at 554 & n.6 (citing *Fogerty v.*

**Exhibit 4 to the Pretrial Order**                                   **NEC's Statement of Issues of Law**

*Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). "[C]ulpability . . . is generally measured against the knowledge of the actor at the time of the challenged conduct[,]" and such culpability can be found if an infringer "acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Halo Elecs.*, 579 U.S. at 105-06 (emphasis and citation omitted).

# EXHIBIT 5

Peloton's Statement of Issues of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-987 (CJB) |
| v. | ) | |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**EXHIBIT 5**

**PELOTON'S STATEMENT OF ISSUES OF LAW
THAT REMAIN TO BE LITIGATED**

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

## TABLE OF CONTENTS

I.    Issues on Which NEC Bears the Burden of Proof ...................................................... 2

    A.    INFRINGEMENT ............................................................................................ 2

        1.    Issues of Law to be Litigated ............................................................ 2

        2.    Legal Authority .................................................................................. 4

    B.    REQUESTED RELIEF .................................................................................. 10

        1.    Issues of Law to be Litigated .......................................................... 10

        2.    Legal Authority ................................................................................ 11

II.   Issues on Which Peloton Bears the Burden of Proof ........................................... 21

    A.    INVALIDITY ................................................................................................ 21

        1.    Issues of Law to be Litigated .......................................................... 21

        2.    Legal Authority ................................................................................ 21

    B.    REQUESTED RELIEF .................................................................................. 28

        1.    Issues of Law to be Litigated .......................................................... 28

        2.    Legal Authority ................................................................................ 28

**Exhibit 5 to the Pretrial Order**                              **Peloton's Issues of Law**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adapt Pharma Operations Ltd v. Teva Pharms. USA, Inc.*,
25 F.4th 1354 (Fed. Cir. 2022) ......................................................................................25

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
261 F.3d 1329 (Fed. Cir. 2001).........................................................................................4

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000).......................................................................................22

*Agrizap, Inc. v. Woodstream Corp.*,
520 F.3d 1337 (Fed. Cir. 2008).......................................................................................25

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015).........................................................................................5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003).......................................................................................27

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014).......................................................................................14

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)..................................................................................17, 18

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) .....................................................................27

*ART+COM Innovationpool GmbH v. Google Inc.*,
155 F. Supp. 3d 489 (D. Del. 2016)................................................................................15

*Aventis Pharm. S.A. v. Hospira, Inc.*,
743 F. Supp. 2d 305 (D. Del. 2010).................................................................................26

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986).........................................................................................18

*Bosch Auto. Serv. Sols., LLC v. Matal*,
878 F.3d 1027 (Fed. Cir. 2017).......................................................................................26

*In re Carlson*,
983 F.2d 1032 (Fed. Cir. 1992).......................................................................................23

**Exhibit 5 to the Pretrial Order**                              **Peloton's Issues of Law**

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
 C.A. No. 11-1175-RGA, 2014 WL 4675002 (D. Del. Sept. 12, 2014) ............................19, 29

*Commil USA, LLC v. Cisco Sys., Inc.*,
 575 U.S. 632 (2015) .................................................................................................7, 8, 9

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015) ...................................................................................15

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
 559 F.3d 1308 (Fed. Cir. 2009) .....................................................................................6

*D Three Enters., LLC v. SunModo Corp.*,
 890 F.3d 1042 (Fed. Cir. 2018) ...................................................................................27

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
 469 F.3d 1005 (Fed. Cir. 2006) .....................................................................................7

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) .....................................................................................7

*ePlus, Inc. v. Lawson Software, Inc.*,
 789 F.3d 1349 (Fed. Cir. 2015) .....................................................................................7

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ...................................................................................14

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010) ...................................................................................15

*Forest Labs. Holdings Ltd. v. Mylan Inc.*,
 206 F. Supp. 3d 957 (D. Del. 2016) ...............................................................................4

*Gart v. Logitech, Inc.*,
 254 F.3d 1334 (Fed. Cir. 2001) ...................................................................................17

*Gen. Motors Corp. v. Devex Corp.*,
 461 U.S. 648 (1983) .....................................................................................................18

*Geo M. Martin Co. v. All. Mach. Sys. Int'l LLC*,
 618 F.3d 1294 (Fed. Cir. 2010) ...................................................................................24

*Georgia–Pacific Corp. v. United States Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y.1970) .........................................................................12, 13

*In re Giannelli*,
 739 F.3d 1375 (Fed. Cir. 2014) ...................................................................................21

**Exhibit 5 to the Pretrial Order**                    **Peloton's Issues of Law**

*In re Gleave*,
　　560 F.3d 1331 (Fed. Cir. 2009).................................................................................22

*In re GPAC Inc.*,
　　57 F.3d 1573 (Fed. Cir. 1995)..................................................................................22

*Graham v. John Deere Co. of Kansas City*,
　　383 U.S. 1 (1966)......................................................................................................25

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
　　339 U.S. 605 (1950)....................................................................................................6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　　579 U.S. 93 (2016)......................................................................................16, 20, 29

*Hanson v. Alpine Valley Ski Area, Inc.*,
　　718 F.2d 1075 (Fed. Cir. 1983)................................................................................11

*In re Huai-Hung Kao*,
　　639 F.3d 1057 (Fed. Cir. 2011)................................................................................26

*In re Huang*,
　　100 F.3d 135 (Fed. Cir. 1996)..................................................................................25

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
　　558 F.3d 1368 .........................................................................................................27

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
　　870 F.3d 1320 (Fed. Cir. 2017)..................................................................................4

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
　　821 F.3d 1359 (Fed. Cir. 2016)................................................................................25

*Johns Hopkins Univ. v. CellPro*,
　　894 F. Supp. 819 (D. Del. 1995)..............................................................................11

*In re Kahn*,
　　441 F.3d 977 (Fed. Cir. 2006)..................................................................................24

*Kaneka Corporation v. Designs for Health, Inc.*,
　　760 F. Supp. 3d 152 (D. Del. 2024)..........................................................................10

*KSR Int'l Co. v. Teleflex Inc.*,
　　550 U.S. 398 (2007)......................................................................................23, 24, 25

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
　　694 F.3d 51 (Fed. Cir. 2012)....................................................................................14

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
  485 F.3d 1157 (Fed. Cir. 2007)...............................................................................25

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014).................................................................................................7

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005)...............................................................................27

*Loughman v. Consol-Penn. Coal Co.*,
  6 F.3d 88 (3d Cir. 1993)..........................................................................................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)......................................................................8, 9, 15

*M2M Sols. LLC v. Enfora, Inc.*,
  167 F. Supp. 3d 665 (D. Del. 2016).........................................................................15

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996).................................................................................................4

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)...............................................................................26

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012)...............................................................................5

*MicroStrategy Inc. v. Business Objects, S.A.*,
  429 F.3d 1344 (Fed. Cir. 2005)...............................................................................5

*Midwest Energy Emissions Corp. v. Vistra Energy Corp.*,
  C.A. No. 19-1334-RGA-CJB, 2020 WL 3316056 (D. Del. June 18, 2020)............7

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
  878 F.3d 1336 (Fed. Cir. 2018)...............................................................................22

*MTD Prods. Inc. v. Iancu*,
  933 F.3d 1336 (Fed. Cir. 2019)...............................................................................21

*Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*,
  847 F.2d 795 (Fed. Cir. 1988).................................................................................18

*In re Nilssen*,
  851 F.2d 1401 (Fed. Cir. 1988)...............................................................................23

*Parallel Iron LLC v. NetApp Inc.*,
  70 F. Supp. 3d 585 (D. Del. 2014)....................................................................19, 28

**Exhibit 5 to the Pretrial Order**                                      **Peloton's Issues of Law**

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007)..................................................................24, 25

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013), *abrogated on other grounds by Brumfield, Tr.*
    *for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024).......................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..........................................................................6

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)........................................................................21

*Provisur Techs., Inc. v. Weber, Inc.*,
    119 F.4th 948 (Fed. Cir. 2024) .........................................................................9

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992), abrogated in part on other grounds by
    *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ...............................16

*Richardson-Vicks Inc. v. Upjohn Co.*,
    122 F.3d 1476 (Fed. Cir. 1997).......................................................................25

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008)..........................................................................5

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)..........................................................................11

*Rivera v. Int'l Trade Comm'n*,
    857 F.3d 1315 (Fed. Cir. 2017)........................................................................27

*Roche Diagnostics Corporation v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022) .........................................................................9

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009)........................................................................25

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)..........................................................................6

*Sage Prods, Inc.. v. Stewart*,
    133 F.4th 1376 (Fed. Cir. 2025) .......................................................................22

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*,
    926 F.2d 1161 (Fed. Cir. 1991)....................................................................11, 15

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)......................................................................................................8

*SRI International, Inc. v. Cisco Systems, Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019).....................................................................................9

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,
  C.A. No. 03-241-JJF, 2004 WL 2213562 (D. Del. Sept. 28, 2004) ........................12

*Standard Oil Co. v. Am. Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985)....................................................................................23

*State Indus., Inc. v. A.O. Smith Corp.*,
  751 F.2d 1226 (Fed. Cir. 1985)..................................................................................16

*Stryker Corp. v. Davol Inc.*,
  234 F.3d 1252 (Fed. Cir. 2000)....................................................................................5

*In re Sullivan*,
  498 F.3d 1345 (Fed. Cir. 2007)..................................................................................23

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*,
  No. 17-1390-LPS-CJB, 2020 WL 7330715 (D. Del. Jan. 13, 2020)........................14

*Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*,
  731 F.3d 1271 (Fed. Cir. 2013)....................................................................................4

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008)..................................................................................29

*Tate Access Floors v. Maxcess Techs., Inc.*,
  222 F.3d 958 (Fed. Cir. 2000)...............................................................................19, 28

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)....................................................................................4

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001)..................................................................................22

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
  895 F.3d 1304 (Fed. Cir. 2018)..................................................................................20

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  180 F.3d 1343 (Fed. Cir. 1999)..................................................................................18

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012)..................................................................................11

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)..................................................................................................5, 6

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015)....................................................................................14

*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999)....................................................................................26

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010)...............................................................................24, 25

**Statutes**

35 U.S.C. § 102............................................................................................................21

35 U.S.C. § 103..........................................................................................21, 23, 24, 25

35 U.S.C. § 112.......................................................................................................21, 26

35 U.S.C. § 271..............................................................................................................4

35 U.S.C. § 271(a) ...................................................................................................2, 3, 4

35 U.S.C. § 271(b) ...................................................................................................2, 3, 7

35 U.S.C. § 271(c) ...............................................................................................2, 3, 8, 9

35 U.S.C. § 283............................................................................................................20

35 U.S.C. § 284..................................................................................................... *passim*

35 U.S.C. § 285..................................................................................................... *passim*

35 U.S.C. § 287............................................................................................................17

35 U.S.C. § 287(a) .........................................................................................................17

35 U.S.C. § 298.......................................................................................................9, 10

**Exhibit 5 to the Pretrial Order**                    **Peloton's Issues of Law**

Pursuant to Local Rule 16.3(c)(5), Defendant Peloton Interactive, Inc. ("Peloton") respectfully submits this Statement of Issues of Law That Remain to be Litigated, which is based on Peloton's current understanding of Plaintiff NEC Corporation's ("NEC") claims and the proceedings in this action to date.

Peloton reserves the right to supplement, amend, or revise this statement to rebut or otherwise address the issues of law identified by NEC.

Peloton's identification of the issues that remain to be litigated regarding issues where NEC bears the burden of proof is based on its understanding of the arguments that NEC has put forth to date. To the extent NEC attempts to introduce different or additional legal arguments to meet its burden of proof, Peloton reserves its rights to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments, and will not be bound by this summary of remaining legal issues.

The following statements are not exhaustive, and Peloton reserves the right to prove any matters identified in its pleadings, discovery responses, including in its contentions, and/or expert reports and depositions. Peloton reserves the right to present issues of law set forth in pending or previously determined motions and to appeal any issues identified in motions that have been decided by the Court. Peloton reserves the right to modify or supplement this statement as part of the meet and confer process leading up to trial, in response to NEC's pretrial disclosures and objections, by agreement with NEC, and/or in response to any pretrial rulings or orders from the Court. The authority cited herein or in the outstanding motions is not exhaustive. Peloton may rely on authority not cited in this statement.

To the extent Peloton's Statement of Contested Facts set forth in Exhibit 3 to the Joint Pretrial Order contains issues of law, those issues are incorporated herein by reference. Likewise,

**Exhibit 5 to the Pretrial Order**                    **Peloton's Issues of Law**

should the Court determine that any issue identified below is more appropriately considered an issue of fact, Peloton incorporates such issues by reference into Exhibit 3.

## I.        Issues on Which NEC Bears the Burden of Proof

### A.        INFRINGEMENT

#### 1.        Issues of Law to be Litigated

##### a)        Infringement of U.S. Patent No. 8,752,101 ("the '101 Patent")

1.        Whether NEC has proven by a preponderance of the evidence that Peloton directly, literally infringed claims 1, 2, 4, 5, 11, 12, 14, 15, 22, 23, 25, and 26 of the '101 Patent (the "'101 Asserted Claims") under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States Peloton's iOS, Android, and web-based applications, Peloton's applications operating on Peloton hardware (i.e. Peloton's Bike, Bike+, Tread, Tread+, Row, and Guide), Peloton's Strength+ application, and Peloton's smart TV applications (i.e. Apple TV, Android TV, Amazon Fire TV, Sky TV, and LG Smart TV) (collectively, the "Peloton Accused Products").[1]

2.        Whether NEC has proven by a preponderance of the evidence that Peloton has indirectly infringed the '101 Asserted Claims by actively inducing others to directly infringe the '101 Patent under 35 U.S.C. § 271(b).

3.        Whether NEC has proven by a preponderance of the evidence that Peloton has indirectly infringed the '101 Asserted Claims by contributing to the direct infringement by others under 35 U.S.C. § 271(c).

---

[1] This issue is contingent on Peloton's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 8,752,101 (D.I. 383). If the Court finds that Peloton has not infringed the '101 Asserted Claims, then this issue is moot.

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

4.      If Peloton is found to have infringed a claim of the '101 Patent, whether NEC has proven by a preponderance of the evidence that Peloton willfully infringed pursuant to 35 U.S.C. § 284.

**b)      Infringement of U.S. Patent No. 8,909,809 ("the '809 Patent")**

5.      Whether NEC has proven by a preponderance of the evidence that Peloton has directly infringed, either literally or under the doctrine of equivalents, claims 1, 2, 8, 13–15, 26, 27, 30, and 31 of the '809 Patent (the "'809 Asserted Claims," and together with the '101 Asserted Claims, the "Asserted Claims") under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States the Peloton Accused Products.[2]

6.      Whether NEC has proven by a preponderance of the evidence that Peloton has indirectly infringed the '809 Asserted Claims by actively inducing others to directly infringe the '809 Patent under 35 U.S.C. § 271(b).

7.      Whether NEC has proven by a preponderance of the evidence that Peloton has indirectly infringed the '809 Asserted Claims by contributing to the direct infringement by others under 35 U.S.C. § 271(c).

8.      If Peloton is found to have infringed a claim of the '809 Patent, whether NEC has proven by a preponderance of the evidence that Peloton willfully infringed pursuant to 35 U.S.C. § 284.

---

[2] This issue is contingent on Peloton's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 8,909,809 (D.I. 384). If the Court finds that Peloton has not infringed the '809 Asserted Claims, then this issue is moot.

Exhibit 5 to the Pretrial Order                                        Peloton's Issues of Law

### 2.    Legal Authority

### a)    Direct and Literal Infringement

9.    35 U.S.C. § 271 provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

10.    To prevail on infringement, the patentee "must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). This burden never shifts to the defendant. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008).

11.    "Infringement is a question of fact." *Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).

12.    A patent claim is literally infringed when each element of the claim is literally found in the accused product. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-91 (1996). "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Forest Labs. Holdings Ltd. v. Mylan Inc.,* 206 F. Supp. 3d 957, 973 (D. Del. 2016) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1320 (Fed. Cir. 2009)).

13.    "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it. Thus . . . to prove an infringing 'use' of a system under § 271(a), a patentee must demonstrate 'use'—that is, 'control' and 'benefit;—of the claimed system by an accused direct infringer." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017).

4

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

14.    When "the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent. Instead, direct infringement of a method claim requires a showing that every step of the claimed method has been practiced." *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) (citations omitted); see also *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim occurs when a party performs all of the steps of the process.") (citation modified).

15.    "Where more than one actor is involved in practicing the steps [of a method patent], a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). "We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*

16.    "If … even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (citation omitted).

### b)    Doctrine of Equivalents

17.    Under the doctrine of equivalents, an accused product "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).

18.    Infringement under the doctrine of equivalents is a question of fact. *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000).

**Exhibit 5 to the Pretrial Order**             **Peloton's Issues of Law**

19.     The Supreme Court has set out two frameworks for evaluating substantial equivalence. *See Graver Tank*, 339 U.S. at 608-09. The function, way, result ("FWR") test asks whether the accused product performs "substantially the same function in substantially the same way to obtain the same result." *Id.* at 608. Alternatively, the patentee must show "that the difference between the claimed invention and the accused product was insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). A difference is "insubstantial" if it is shown "on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.*; *see also Warner-Jenkinson*, 520 U.S. at 40 (holding that the determination of equivalence must be made "on an element-by element basis"). Evidence that the differences between the claimed and accused products are substantial includes evidence that the two are not interchangeable. *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1429 (Fed. Cir. 1997).

20.     In some circumstances, the doctrine of claim vitiation prevents a finding of infringement under the doctrine of equivalents. "Under claim vitiation, 'if a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claimed element, then the court should rule that there is no infringement under the doctrine of equivalents.'" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344 (Fed. Cir. 2016) (quoting *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003)).

21.     A finding of infringement under the doctrine of equivalents is permissible unless "no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

infringement otherwise lacks legal sufficiency." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-19 (Fed. Cir. 2006).

### c)    **Indirect Infringement**

22.    35 U.S.C.§ 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."

23.    Induced infringement requires a showing of direct infringement by another. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014). In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). It also "must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part) (citation modified). In other words, "an inducement claim requires a showing that when the induced infringer did the act that caused direct infringement to occur, the induced infringer actually knew that that direct infringement was happening—and specifically intended that it happen." *Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, C.A. No. 19-1334-RGA-CJB, 2020 WL 3316056 (D. Del. June 18, 2020).

24.    Induced infringement can only be found when an accused infringer has taken active steps to encourage direct infringement coupled with an affirmative intent that the product be used in an infringing manner. *See, e.g.*, *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir. 2015) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)) (holding that mere sales did not induce infringement of a method patent because "induced infringement requires active steps to encourage direct infringement and an 'affirmative intent that the product be used to infringe'").

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

25.    35 U.S.C. § 271(c) provides: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

26.    "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

27.    Evidence of actual non-infringing uses is not required; "[the accused product] need merely be capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).

28.    If an accused infringer "reads the patent's claims differently from the plaintiff," and if "that reading is reasonable," then the accused infringer should not be liable for indirect (induced or contributory) infringement. *Commil USA*, 575 U.S. at 642.

### d)    Contributory Infringement

29.    "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

8

30.    "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (cleaned up).

31.    Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement. *Commil USA*, 575 U.S. at 639 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)) (Section 271(c) "does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing.")

### e)    Willful Infringement

32.    "To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 955 (Fed. Cir. 2024) (citation omitted). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Id.* at 956 (citation modified).

33.    "In some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer." *Roche Diagnostics Corporation v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1119 (Fed. Cir. 2022).

34.    "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." 35 U.S.C. § 298; *see also SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("[D]ecision not

to seek an advice-of-counsel defense is legally irrelevant under 35 U.S.C. § 298."); *Kaneka Corporation v. Designs for Health, Inc.*, 760 F. Supp. 3d 152, 172 (D. Del. 2024) ("Likewise, the Federal Circuit has barred "[t]he adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel.") (quoting *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (*en banc*)).

## B.    REQUESTED RELIEF

### 1.    Issues of Law to be Litigated

35.    Whether NEC has proven by a preponderance of the evidence that it is entitled to compensatory damages and, if so, in what amount for any alleged infringement of the '101 Patent and/or '809 Patent.

36.    Whether NEC has proven by a preponderance of the evidence that it is entitled to an accounting of damages for alleged post-verdict infringement of the '101 Patent and/or the '809 Patent, such as an ongoing royalty, and, if so, in what amount.

37.    Whether NEC has proven by a preponderance of the evidence that it is entitled to an award of prejudgment and post-judgment interest and costs under 35 U.S.C. § 284, if so, in what amounts.

38.    Whether NEC has proven that it is entitled to enhanced damages under 35 U.S.C. § 284 if Peloton's infringement is found to be willful.

39.    Whether NEC has proven by a preponderance of the evidence that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, in what amount.

40.    Whether NEC has proven that it is entitled to permanent injunctive relief.

41.    Whether NEC has proven that it is entitled to any other relief as this Court deems just and proper.

**Exhibit 5 to the Pretrial Order**                                   **Peloton's Issues of Law**

### 2.    Legal Authority

### a)    Damages

42.    Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. A damage award shall be "in no event less than a reasonable royalty," which sets the floor below which a damage award may not fall. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995). "[T]he Supreme Court has interpreted [35 U.S.C. § 284] to mean that 'adequate' damages should approximate those damages that will fully compensate the patentee for infringement." *Id.* at 1545.

43.    "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

### (1)    Reasonable Royalty

44.    "A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owners of the patent rights and the infringer, with both operating under the assumption that the negotiated patent is not invalid and is infringed." *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 838 (D. Del. 1995). The hypothetical negotiation is presumed to take place on the eve of first infringement. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983).

45.    The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon

11

the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, C.A. No. 03-241-JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004). These factors are:

    a.  (1) The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

    b.  (2) The rates paid by the patentee, the licensee, or others for the use of other patents comparable to the patent in suit.

    c.  (3) The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

    d.  (4) The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

    e.  (5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

    f.  (6) The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

    g.  (7) The duration of the patent and the term of the license.

    h.  (8) The established profitability of the product made under the patent; its commercial success; and its current popularity.

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

i.  (9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

j.  (10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

k.  (11) The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

l.  (12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

m.  (13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

n.  (14) The opinion testimony of qualified experts.

o.  (15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

46.     "Actual licenses to the patents-in-suit are probative not only of the proper amount of a reasonable royalty, but also of the proper form of the royalty structure," such as whether "licenses to the patents-in-suit were all for lumps sum amounts." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79–80 (Fed. Cir. 2012).

47.     "[U]nder 35 U.S.C. § 284 [], damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2020 WL 7330715, at *3 (D. Del. Jan. 13, 2020) (citing *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)), *aff'd*, No. 2023-1218, 2026 WL 122544 (Fed. Cir. Jan. 16, 2026).

48.     Apportionment may be achieved in any number of legally acceptable ways such as "by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of the product's non-patented features; or by a combination thereof. The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226-27 (Fed. Cir. 2014).

49.     Even if evidence presented at trial falls short of supporting a party's specific royalty estimate, "the fact finder is still required to determine what royalty is supported by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) (citing cases) (overruled on other grounds *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)). "[T]he factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party . . . . [T]he district court

**Exhibit 5 to the Pretrial Order**                                                    **Peloton's Issues of Law**

may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence." *SmithKline Diagnostics*, 926 F.2d at 1167–68.

50.    Although the jury is permitted to resolve factual questions concerning the appropriate reasonable royalty, the underlying methodology considered by the jury must be sound. *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301-02 (Fed. Cir. 2015). The jury's opinion must be based on substantial evidence. *Lucent Techs.*, 580 F.3d at 1310, 1335.

51.    An expert's opinion on damages should be excluded if it relies on "noncomparable licenses in reaching [its proposed] royalty rate." *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 675-76 (D. Del. 2016) (quoting *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011)). An opinion that is not tied to the facts of the case also should be precluded. See *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 515 (D. Del. 2016).

### (2)    Post-Verdict Accounting

52.    If a defendant is found to infringe at trial, a patentee has "the right to prove damages for sales that occurred after trial." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1213 (Fed. Cir. 2010). However, a patentee's "right to a post-verdict accounting is not an unlimited after-hours hunting license." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1381 (Fed. Cir. 2013), *abrogated on other grounds by Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024). The patentee does not get "a second bite at the apple" to prove its damages case; rather, "the district court . . . shall limit the scope of its accounting to those post-verdict infringing sales, if any, which are substantially related to the direct infringement by [the defendant] which the district court finds supported by the existing record." *Id.*

**Exhibit 5 to the Pretrial Order**                                **Peloton's Issues of Law**

### (3)    Enhanced Damages

53.    Pursuant to 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). Whether to award enhanced damages is committed to the Court's discretion. *Id.*

54.    The following factors can support an award of enhanced damages: deliberate copying of the ideas or design; whether the defendant, that was aware of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; litigation behavior; defendant's size and financial condition; closeness of the case; duration of the defendant's misconduct; remedial action of the defendant; defendant's motivation for harm, and whether defendant attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), abrogated in part on other grounds by *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

55.    To succeed on its claim for willfulness, the patentee must present evidence that the defendant had intent to infringe at the time of the challenged conduct. *See Halo Elecs.*, 579 U.S. at 105-06. "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103-04. The patentee must show by a preponderance of the evidence that damages for willful infringement are warranted. *Id.* at 107.

56.    "[M]ore is necessary to support a finding of 'willfulness' than that the infringing acts were not inadvertent. The court must determine that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1237 (Fed. Cir. 1985) (citation omitted).

### b)    Marking

16

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

57.     Pursuant to 35 U.S.C. § 287, if patentee fails to mark a patented article, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

58.     "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). "The burden of proving compliance with marking is and at all times remains on the patentee." *Id.* at 1367. "[C]ompliance with the marking statute, 35 U.S.C. § 287(a), is a question of fact." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

59.     "A patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Arctic Cat*, 876 F.3d at 1366 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)). "[W]here third parties are involved, courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the marking requirements.'" *Arctic Cat*, 876 F.3d at 1366 (citing *Maxwell* 86 F.3d at 1111–12).

60.     "An alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent. The alleged infringer's burden is a burden of production, not one of persuasion or proof." *Arctic Cat* 876 F.3d at 1368. "Once the alleged infringer meets its

17

**Exhibit 5 to the Pretrial Order**                                     **Peloton's Issues of Law**

burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

### c)      Prejudgment and Post-Judgment Interest

61.      The patent statute authorizes awards of prejudgment interest. 35 U.S.C. § 284. The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court. In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (citation omitted). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988).

62.      A patent holder is not entitled to an automatic award of prejudgment interest. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983). A trial court has discretion to deny or limit prejudgment interest in appropriate cases. *Id.* at 656-57. The court also exercises discretion to determine the rate of prejudgment interest and whether it should be compounded. *Bio-Rad Lab'ys., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

63.      Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Penn. Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

### d)      Attorneys' Fees and Costs

64.      35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Determining whether a case is exceptional and whether attorneys' fees should be granted under 35 U.S.C. § 285 is a two-step process. *Tate Access Floors v. Maxcess Techs., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000). The first step is a factual determination whether the case is exceptional, and the second step, the Court exercises its discretion to determine whether attorneys' fees should be awarded. *Id.*

65.      To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014).

66.      In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that "[a]n 'exceptional' case. . .  is simply one that stands out from others with respect to the substance strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.)" 572 U.S. 545, 545 (2014). The Supreme Court added: "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion." *Id.*; *see also id.* at 554 ("As in the comparable context of the Copyright Act, 'there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified.'"). The prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Id.* at 557; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11-1175-RGA, 2014 WL 4675002, at *2 (D. Del. Sept. 12, 2014).

67.      "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. There is "no precise rule or formula" for

**Exhibit 5 to the Pretrial Order**                                 **Peloton's Issues of Law**

awarding attorneys' fees under § 285. *Id.* District Courts should "consider[] the totality of the circumstances." *Id.* A district court's "discretion should be exercised in light of the considerations" underlying the grant of that discretion. *Id.* "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct," and such culpability can be found if an infringer "acts knowing or having reason to know of facts which would lead a reasonable man to realize his actions are unreasonably risky." *Halo*, 579 U.S. at 106 (emphasis in original and internal quotation omitted).

### e)        Injunction

68.    Section 283 of Title 35 provides that "[t]he several courts having jurisdictions of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

69.    "To obtain a permanent injunction, [a plaintiff], having succeeded on the merits of its patent-infringement claim, ha[s] to show (1) irreparable injury in the absence of an injunction, (2) inadequacy of compensatory remedies at law, (3) a balance of hardships favoring an injunction, and (4) consistency of an injunction with the public interest." *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

70.    "To prove irreparable injury, a patentee must show 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong casual nexus relates the alleged harm to the alleged infringement. To determine whether the patentee will suffer irreparable harm absent an injunction, the court may consider factors such as the nature of competition between the patentee and the infringer, the willingness of a patentee to license, and any lost sales the patentee

20

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

has proven." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed.

Cir. 2017) (citation modified).

## II.    Issues on Which Peloton Bears the Burden of Proof

### A.    INVALIDITY[3]

#### 1.    Issues of Law to be Litigated

##### a)    Invalidity of the '101 Patent

71.    Whether Peloton has proven by clear and convincing evidence that the '101 Asserted Claims are invalid under 35 U.S.C. § 102 as being anticipated.

72.    Whether Peloton has proven by clear and convincing evidence that the '101 Asserted Claims are invalid under 35 U.S.C. § 103 as being obvious.

73.    Whether Peloton has proven by clear and convincing evidence that the '101 Asserted Claims are invalid for lack of written description under 35 U.S.C. § 112.[4]

##### b)    Invalidity of the '809 Patent

74.    Whether Peloton has proven by clear and convincing evidence that the '809 Asserted Claims are invalid under 35 U.S.C. § 102 as being anticipated.

75.    Whether Peloton has proven by clear and convincing evidence that the '809 Asserted Claims are invalid under 35 U.S.C. § 103 as being obvious.

#### 2.    Legal Authority

##### a)    Person of Ordinary Skill in the Art ("POSA")

---

[3] Each of the patents at issue in this case claim priority to an application filed prior to March 16, 2013. Accordingly, the applicable sections of Title 35 of the United States Code related to invalidity are those that were in effect prior to the Leahy-Smith America Invents Act ("AIA"), i.e., the pre-AIA version of the patent statute at 35 U.S.C. § 1 et seq. *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1341 n.1 (Fed. Cir. 2019); *In re Giannelli*, 739 F.3d 1375, 1376 n.1 (Fed. Cir. 2014).

[4] This issue is contingent on Peloton's Motion for Summary Judgment of Invalidity of U.S. Patent No. 8,752,101 Based on Lack of Written Description (D.I. 381). If the Court finds that the '101 Asserted Claims are invalid due to lack of written description, then this issue is moot.

**Exhibit 5 to the Pretrial Order**                                       **Peloton's Issues of Law**

76.    The level of ordinary skill in the art is that of a hypothetical person presumed to have known the relevant art at the time of the invention. Factors that may be considered are: (1) "type of problems encountered in the art," (2) "prior art solutions to those problems," (3) "rapidity with which innovations are made," (4) "sophistication of the technology," and (5) "educational level of active workers in the field." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citing *Custom Accessories, Inc. v. Jeffrey–Allan Indus.,* 807 F.2d 955, 962 (Fed. Cir. 1986)). "In a given case, every factor may not be present, and one or more factors may predominate." *Id*.

### b)    Anticipation

77.    "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). However, "the reference need not satisfy an *ipsissimis verbis* test." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). Moreover, "[a]s long as the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates—no actual creation or reduction to practice is required." *Id.* (citation modified)).

78.    "Anticipation is a question of fact . . . . Likewise, whether a claim limitation is inherent in a prior art reference is a question of fact." *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1342 (Fed. Cir. 2018) (citation modified).

79.    Expert testimony "may be used to interpret [an] allegedly anticipating reference and to shed light on what it would have meant to" a person having ordinary skill in the art. *Sage Prods. v. Stewart*, 133 F.4th 1376, 1385 (Fed. Cir. 2025)*; see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001) ("[R]ecourse to extrinsic evidence is proper

**Exhibit 5 to the Pretrial Order**                                      **Peloton's Issues of Law**

to determine whether a feature, while not explicitly discussed, is necessarily present in a reference.").

### c)    Obviousness

80.    Patent claims are invalid as obvious "if the differences between the claimed invention sought to be patented and the prior art are such that the claimed invention as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103.

81.    The determination of whether an invention would have been obvious under 35 U.S.C. § 103 is a legal conclusion based on underlying findings of fact. *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007). That determination requires a factual inquiry into: (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of nonobviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

82.    The obviousness determination must be made from the perspective of a person of ordinary skill. 35 U.S.C. § 103. The hypothetical person of ordinary skill is "presumed to know all the pertinent prior art, whether or not the applicant is actually aware of its existence." *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir. 1992). The person of ordinary skill is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen*, 851 F.2d 1401, 1403 (Fed. Cir. 1988). "In considering the obviousness issue, the district court stated that a hypothetical inventor is envisioned as working in his shop with all the prior art references—which he is presumed to know—hanging on the walls around him." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (citation modified).

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

83.     "[KSR] directs us to construe the scope of analogous art broadly." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238 (Fed. Cir. 2010). Art is analogous if it is either from the same "field of endeavor" or, even if outside the field of endeavor, "is reasonably pertinent to the [particular] problem with which the inventor [is involved]." *In re Kahn*, 441 F.3d 977, 986-87 (Fed. Cir. 2006). "[A] reference need not work to qualify as prior art; it qualifies as prior art, regardless, for whatever is disclosed therein. Even if a reference discloses an inoperative device, it is prior art for all that it teaches." *Geo M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1302-03 (Fed. Cir. 2010) (citation modified).

84.     Rather than applying "[r]igid preventative rules that deny factfinders recourse to common sense," courts must take a more "expansive and flexible approach" to determining whether an invention was obvious. *KSR*, 550 U.S. at 415, 421. Thus, "the legal determination of obviousness may include recourse to logic, judgment, and common sense . . . ." *Wyers*, 616 F.3d at 1239. "[O]bviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). "[E]xpectation of success need only be reasonable, not absolute." *Id.* at 1364.

85.     A patent claim is obvious when it does no more than combine familiar elements according to known methods to yield predictable results. *KSR*, 550 U.S. at 415–17 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."). Furthermore, when "there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try

**Exhibit 5 to the Pretrial Order**                                    **Peloton's Issues of Law**

might show that it was obvious under § 103." *Id.* at 421. In making an obviousness determination, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417.

86.    "The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016) (quoting *Par Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014)). "As to the specific factual consideration of motivation to combine, the fact finder (here, the district court) is not constrained to an expert's say-so; other documentary evidence, such as the teachings of the prior art or problems known in the field of endeavor at the time of the invention, can provide the requisite support for the court's motivation finding." *Adapt Pharma Operations Ltd v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1369 (Fed. Cir. 2022).

87.    Secondary considerations "do not necessarily control the obviousness conclusion." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007); *see also Graham v. John Deere Co.*, 383 U.S. 1, 17, 36 (1966); *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997). "Once a prima facie case of obviousness has been established, the burden shifts to the applicant to come forward with evidence of nonobviousness to overcome the prima facie case." *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996) (citing *Graham*, 122 F.3d 1476 at 17–18).

88.    Where there is a strong prima facie case of obviousness, secondary considerations "cannot overcome" that showing. *See, e.g.*, *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009).

**Exhibit 5 to the Pretrial Order**                    **Peloton's Issues of Law**

89.    Secondary considerations of non-obviousness include commercial success, long felt but unsolved needs, failure of others, copying, unexpected results, industry acclaim, and skepticism of others. *Aventis Pharm. S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 344 (D. Del. 2010).

90.    "[T]he mere fact of licensing, without more, is generally not a strong indication of non-obviousness if it cannot also be shown that the licensees did so out of respect for the patent rather than to avoid litigation expense." *Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1038 (Fed. Cir. 2017), as amended on reh'g in part (Mar. 15, 2018).

91.    "For objective evidence of secondary considerations to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (quoting *Wyers*, 616 F.3d at 1246). A "nexus" is a "causal relation" between the secondary consideration and the novel and claimed features of the invention. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376–77 (Fed. Cir. 2005). "The patentee bears the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).

### d)    Written Description

92.    35 U.S.C. § 112 requires a patent specification to contain "a written description of the invention." "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to 'recount his invention in such detail that his future claims can be determined to be encompassed

**Exhibit 5 to the Pretrial Order**                                              **Peloton's Issues of Law**

within his original creation.'" *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citing *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1561 (Fed.Cir.1991)).

93.     To meet the written description requirement, within the four corners of the specification, "enough must be included to convince a person of skill in the art that the inventor possessed the invention." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). "This inquiry, as we have long held, is a question of fact. Thus, we have recognized that determining whether a patent complies with the written description requirement will necessarily vary depending on the context. Specifically, the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351–52 (Fed. Cir. 2010) (*en banc*) (citations omitted).

94.     The knowledge of one of ordinary skill in the art "may be used to inform what is actually in the specification, but not to teach limitations that are not in the specification." *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1328 (Fed. Cir. 2017) (citation omitted). In addition, it is insufficient for adequate written description that one of ordinary skill in the art might recognize that the disclosure could be modified in light of the prior art to arrive at the claimed subject matter. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378–79 (citing *Eli Lilly*, 119 F.3d at 1566–67 (explaining that "an applicant complies with the written description requirement by describing the invention, with all its claimed limitations, not that which makes it obvious.") (internal quotation marks omitted, emphasis added)). "[A]dequate written description does not ask what is permissible, rather, it asks what is disclosed." *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1052 (Fed. Cir. 2018).

B.      REQUESTED RELIEF

1.      Issues of Law to be Litigated

95.      Whether Peloton has proven by a preponderance of the evidence that it is entitled to an award of attorneys' fees and costs and expenses in defending against NEC's claims under 35 U.S.C. § 285 and, if so, in what amount.

96.      Whether Peloton has proven that it is entitled to any further relief that the Court deems just and proper.

2.      Legal Authority

97.      35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Determining whether a case is exceptional and whether attorneys' fees should be granted under 35 U.S.C. § 285 is a two-step process. *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000). The first step is a factual determination whether the case is exceptional, and the second step, the Court exercises its discretion to determine whether attorneys' fees should be awarded. *Id.*

98.      To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585, 589 (D. Del. 2014).

99.      In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. 545, 554 (2014). The Supreme Court added: "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion." *Id.*; *see also id.* ("As in the comparable context of the Copyright Act, there is no precise rule or formula for making these determinations, but instead

28

**Exhibit 5 to the Pretrial Order**                                            **Peloton's Issues of Law**

equitable discretion should be exercised in light of the considerations we have identified." (citation omitted)). The prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Id.* at 557–58; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, C.A. No. 11-1175-RGA, 2014 WL 4675002, at *2 (D. Del. Sep. 12, 2014).

100.    There is "no precise rule or formula" for awarding attorneys' fees under § 285. *Octane Fitness*, 572 U.S. at 554. District courts should "consider[] the totality of the circumstances." *Id.* A district court's "discretion should be exercised in light of the considerations" underlying the grant of that discretion. *Id.* "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct," and such culpability can be found if a party "acts knowing or having reason to know of facts which would lead a reasonable man to realize his actions are unreasonably risky." *Halo*, 579 U.S. at 105–06 (citation modified).

101.    A district court may also invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute in cases involving bad faith that cannot be otherwise reached by rules or statutes. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming the district court's award of expert fees under the court's inherent power based on the generic companies' bad faith and vexatious litigation conduct).

# EXHIBIT 6

NEC's Witness List with Objections to Peloton's Witness List

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-987-CJB |
| PELOTON INTERACTIVE, INC., | ) ) | |
| Defendant. | ) ) | |

**EXHIBIT 6 TO PRETRIAL ORDER
PLAINTIFF NEC CORPORATION'S WITNESS LIST AND OBJECTIONS
<u>TO PELOTON'S WITNESSES</u>**

**Exhibit 6 to the Pretrial Order**　　　　　　　　**NEC's Witness List and Objections**

Pursuant to Local Rule 16.3(c)(7), NEC submits this list of witnesses that will or may be called at trial. Subject to the availability of each witness at the time of trial, NEC may call the following witnesses at trial, either by live testimony or by deposition. This list reflects NEC's current expectations; however, NEC reserves the right to supplement, amend, or modify this list in light of further rulings by the Court, any information submitted by Peloton, to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments, or any other changed circumstances.

NEC does not waive any objections should Peloton seek to introduce testimony of a witness included on the below list. Nor does NEC concede the relevance or admissibility of any issues addressed in the testimony of any witness. Inclusion on this list does not waive or prejudice any pending motion that NEC may have filed to exclude some or all testimony of a particular witness.

By including a witness on this list or by indicating that NEC expects the witness to be called live, NEC does not represent that the witness is available or will appear for trial, or that NEC can compel live testimony or make the witness available. NEC reserves the right to call any witness by deposition if the witness is not available to testify live or if the witness's deposition testimony may otherwise be used pursuant to the Federal Rules of Civil Procedure. Although NEC is not currently aware of any conflict that would prevent a witness indicated as testifying live from appearing in person, NEC reserves the right to present any witness's live testimony by remote means, subject to approval by the Court.

NEC reserves the right to amend its answering/rebuttal witness list, in view of events at trial or other developments, including evidentiary rulings or other rulings by the Court. NEC also reserves the right not to call any of the witnesses (either live or by deposition) set forth in the list

1

**Exhibit 6 to the Pretrial Order**                    **NEC's Witness List and Objections**

below, or to call by deposition any witnesses listed as a live witness below, or vice versa. NEC further reserves the right to call additional witnesses to provide foundational testimony should Peloton contest the authenticity or admissibility of any material proffered at trial.

The identification of a witness on this list is not an admission that the witnesses' testimony is admissible if called by Peloton, and NEC reserves its right to object to any witness or testimony that is objectionable or inadmissible. In addition to the witnesses identified below, NEC reserves the right to call live or by deposition anyone appearing on Peloton's witness list or as a corporate representative at trial. In addition to the witnesses listed below, NEC reserve the right to call live any witness that Peloton designates as offering live testimony and to call by deposition any witness that Peloton designates as offering deposition testimony, without waiving any objections to the admissibility of testimony offered by Peloton. NEC also expressly reserves the right to call any witness for purposes of rebuttal or impeachment, or to establish the admissibility or authenticity of a document.

## I.    EXPERT WITNESSES

| Expert Witness | Subject Matter of Expertise |
|---|---|
| Aviel D. Rubin, Ph.D. | Multimedia Streaming and Content Distribution Technologies, Multimedia Content Delivery, and Related Infrastructure, Opinions on Patent Infringement and Validity |
| Christopher A. Vellturo, Ph.D. | Patent Damages |

## II.    NON-EXPERT WITNESSES

| Witness | Method | Will/May Call |
|---|---|---|
| Takeo Onishi | Live | Will Call |
| Hiroshi Yoshida | Live | Will Call |

**Exhibit 6 to the Pretrial Order**                    **NEC's Witness List and Objections**

| Christopher White | Live | Will Call |
|---|---|---|
| Douglass Crossley | Live or by Deposition | May Call |
| Kevin Zetterstrom | Live or by Deposition | May Call |
| Scott Burch | Live or by Deposition | May Call |
| Alex Zambelli | Live or by Deposition | May Call |
| Adam McAmis | Live or by Deposition | May Call |
| Francis Shanahan | Live or by Deposition | May Call |
| Raul Santos | Live or by Deposition | May Call |
| Sam Walter | Live or by Deposition | May Call |
| Santhosh Mankala | Live or by Deposition | May Call |
| Adam McAmis | Live or by Deposition | May Call |
| Katie McNabb | Live or by Deposition | May Call |
| Clifford Reader | Live or by Deposition | May Call |
| Florin Mirica | Live or by Deposition | May Call |

III.    **OBJECTIONS TO PELOTON'S WITNESS LIST (EX. 7)**

NEC provides its preliminary objections to the Peloton's witness list.

NEC objects to Peloton's "May Call" list as it fails to meaningfully disclose or give notice of the fact witnesses who will appear at trial.  For example, 12 of the 13 fact witnesses identified in Peloton's witness list are indicated as witnesses Peloton "May Call" at trial, which is insufficient to provide notice to NEC of Peloton's witness list for trial.

NEC further objects to Peloton's identification of its own employee witnesses as potentially being called by deposition, as improper hearsay.  If Peloton seeks to have its employees within its control testify, that testimony must be offered live.

NEC further objects to Peloton's offering of the testimony of Julie Davis, which is based in part on the opinions of Ray Perryman, without Dr. Perryman testifying live at trial.  To the extent that Peloton intends to rely on the opinions of Dr. Perryman, Dr. Perryman must testify live at trial,

3

**Exhibit 6 to the Pretrial Order**                      **NEC's Witness List and Objections**

as it is improper for one expert witness to act as the mouthpiece of another. *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econometrician could answer."); *see also In re TMI Litigation*, 193 F.3d 613, 715-16 (3rd Cir. 1999).

NEC further objects under Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to Peloton offering the following expert testimony, for the reasons set forth in NEC's *Daubert* motions, (D.I. 362; D.I. 363; D.I. 364), and accompanying briefing, (D.I. 365 (omnibus opening brief); D.I. 492 (omnibus reply brief)):

- All expert and percipient testimony of Alex Zambelli.

- Expert testimony from Dr. Kevin Almeroth regarding: (1) opinions which rely on the testimony and expert report of Alex Zambelli; (2) a person having ordinary skill in the art's motivations to combine or modify prior art; and (3) opinions which improperly compare the accused products to the prior art.

NEC reserves the right to supplement, modify, or withdraw any of the objections it asserts here.

4

# EXHIBIT 7

Peloton's Witness List with

Objections to NEC's Witness List

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEC CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 22-987 (CJB) |
| v. | ) |
| | ) |
| PELOTON INTERACTIVE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**EXHIBIT 7**

**PELOTON'S WITNESS LIST AND
PELOTON'S OBJECTIONS TO NEC'S WITNESS LIST**

**Exhibit 7 to the Pretrial Order**                                  **Peloton's Witness List**

Pursuant to Local Rule 16.3(c), Peloton identifies the witnesses whom it may call to testify live or by deposition at trial. If any witness Peloton intends to call to testify live becomes unavailable, Peloton reserves the right to call the witness virtually (i.e., live via video conference) or offer deposition testimony from that witness. In addition, if any witness who is believed to be unavailable becomes available, Peloton reserves the right to call the witness to provide live testimony. By identifying these witnesses, Peloton is not required to call them at trial, nor is Peloton limited in the manner in which such testimony is presented at trial. Further, the inclusion of a witness on this list does not signify that Peloton agrees the witness is available or will appear for trial, or that the witness should necessarily be permitted to testify if called in person and/or by deposition. Nor does the inclusion of any witness waive Peloton's objections to all or part of the witness's testimony.

With respect to any witnesses on NEC's witness list or called by NEC, Peloton reserves the right to introduce testimony through deposition or live examination, as appropriate. Peloton also reserves the right to revise this list in light of further rulings by the Court or any other changed circumstances. In addition, Peloton reserves its right to cross-examine any witnesses called by NEC and to designate (or counter-designate) any deposition testimony from witnesses from whom NEC designates testimony. Peloton further reserves the right to call live or by deposition any witness to provide foundational testimony should any party contest the authenticity or admissibility of any material proffered at trial. Peloton also reserves the right to call any witness for impeachment purposes.

1

**Exhibit 7 to the Pretrial Order**                                    **Peloton's Witness List**

## I.      EXPERT WITNESSES

Peloton may offer live testimony from the following expert witnesses:

| EXPERT WITNESSES (LIVE) | GENERAL SUBJECT MATTER | WILL OR MAY CALL |
|---|---|---|
| Kevin Almeroth, Ph.D. | Non-Infringement and Invalidity of Asserted Patents | Will Call |
| Alex Zambelli[1] | Microsoft Smooth Streaming | Will Call |
| M. Ray Perryman, Ph.D. | Forward Citation Analysis | May Call |
| Julie L. Davis | Patent Damages | Will Call |

## II.      FACT WITNESSES

Peloton may offer testimony, either live or by deposition, from the following fact witnesses:

| FACT WITNESS | LIVE OR BY DEPOSITION | WILL CALL OR MAY CALL |
|---|---|---|
| Francis Shanahan | Live | Will Call |
| Scott Burch | Live | May Call |
| Sam Walter | Live | May Call |
| Katie McNabb | Live | May Call |
| Raul Santos | Live | May Call |
| Florin Mirica | By Deposition | May Call |
| Santhosh Mankala | By Deposition | May Call |
| Adam McAmis | By Deposition | May Call |
| Doug Crossley | By Deposition | May Call |
| Kevin Zetterstrom | By Deposition | May Call |
| Christopher White | By Deposition | May Call |
| Hiroshi Yoshida | By Deposition | May Call |
| Takeo Onishi | By Deposition | May Call |
| Koji Katsube | By Deposition | May Call |

## III.      PELOTON'S STATEMENT OF OBJECTIONS TO NEC'S WITNESSES

Peloton objects to NEC's witness list because it does not reasonably identify the witnesses that NEC expects to call at trial whether live or by deposition. Instead, NEC's witness list identifies

---

[1] Depending on the resolution of NEC's pending *Daubert* No. 1 (D.I. 364), Peloton reserves the right to call Alex Zambelli as a fact witness live or by deposition at trial.

**Exhibit 7 to the Pretrial Order**                    **Peloton's Witness List**

nearly all fact witnesses generally available without any clear indication of which witnesses will actually be called and by which method (live or deposition). Given the significant time constraints at trial, NEC's witness list is not a reasonable identification of its anticipated trial witnesses. In addition, Peloton objects to the identification and testimony of Peloton's fact witnesses to the extent that NEC intends to call these witnesses live during its case in chief.

Peloton further objects to the testimony of NEC's experts to the extent that it is inadmissible under Federal Rules of Evidence 702 and 703. Peloton further objects to Dr. Christopher Vellturo for the reasons set forth in its motion to exclude certain opinions and testimony. *See* D.I. 366, D.I. 369.

Peloton further objects to NEC's identification of Alex Zambelli as a fact witness that NEC may call live or by deposition. NEC failed to timely disclose Alex Zambelli in its initial disclosures pursuant to Federal Rule of Civil Procedure 26 and the governing Scheduling Orders (D.I. 36, D.I. 220).

Peloton further objects to NEC's identification of Clifford Reader as a fact witness. NEC failed to timely disclose Clifford Reader pursuant to Federal Rule of Civil Procedure 26 in NEC's initial disclosures and the governing Scheduling Orders (D.I. 36, D.I. 220). NEC also failed to disclose him pursuant to the parties' so-ordered Stipulation Setting Pretrial Disclosure Deadlines (D.I. 546, 547), in which NEC was required to identify witnesses that it may or will call live or by deposition on May 13, 2026. NEC's May 13 identification of witnesses did not include Clifford Reader. However, on May 28, 2026, NEC served deposition designations for Clifford Reader. On the same day, without explanation, NEC served an amended witness list adding Clifford Reader as a fact witness whom NEC may call live or by deposition. Peloton further objects to testimony by Clifford Reader, whether live or by deposition, as inadmissible under the Federal Rules of Civil

**Exhibit 7 to the Pretrial Order**                                              **Peloton's Witness List**

Procedure. Specifically, Clifford Reader provided expert testimony on behalf of Peloton regarding claim construction in a related IPR proceeding. He cannot testify as a fact witness because he has no personal knowledge of anything relevant to this case, and his opinions regarding claim construction are not relevant to the factfinder. *See* Fed. Rules Evid. 602, 402. To the extent NEC seeks to use him as an expert, Peloton objects because he has not been disclosed as an expert in this case and therefore cannot provide expert testimony in this proceeding. *See* Fed. R. Civ. P. 26; *The Nielsen Company (US), LLC v. TVision Insights, Inc.*, C.A. No. 22-00057, D.I. 502 (D. Del. June 4, 2026) (Burke, J.) (precluding evidence or argument regarding a party's former technical expert under FRE 403 and 801). Moreover, his opinions relating to claim construction are not relevant to the jury. In addition, the prior IPR proceedings, including expert opinions on claim construction provided in such proceedings, are irrelevant and unfairly prejudicial. *See, e.g., In re ChanBond, LLC, Patent Litig.*, C.A. No. 15-842-RGA (D. Del. Apr. 19, 2021).

# EXHIBIT 8

NEC's Deposition Designations, Peloton's Objections and Counter Designations, and NEC's Objections

| Scott Burch (9/25/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 7 | 25 | 8 | 3 | 21 | 15 | 21 | 20 | | IC |
| 9 | 1 | 9 | 3 | 27 | 18 | 28 | 15 | | IC, F, S, R, U |
| 13 | 3 | 13 | 6 | 33 | 8 | 33 | 12 | | IC, S, R, U |
| 13 | 23 | 14 | 2 | 34 | 15 | 34 | 24 | | IC, R, U |
| 15 | 4 | 15 | 9 | 50 | 14 | 50 | 23 | 106, 602/F | IC, S, R, U |
| 16 | 5 | 17 | 5 | 52 | 23 | 53 | 3 | 106, 402, 403 | IC, R |
| 20 | 6 | 20 | 8 | 64 | 24 | 65 | 9 | OS | IC, R, O, U |
| 21 | 23 | 22 | 1 | 68 | 24 | 69 | 15 | | IC |
| 22 | 14 | 22 | 22 | 69 | 23 | 70 | 1 | | IC |
| 24 | 18 | 24 | 24 | 76 | 9 | 76 | 25 | | IC, R, U |
| 29 | 5 | 32 | 18 | 95 | 4 | 95 | 20 | 106, 402, 403, 602/F, 901, NT, OS, VG | IC, F, S, O, R, U |
| 32 | 22 | 33 | 6 | 95 | 21 | 95 | 24 | 402, 403, NT, OS | IC |
| 33 | 13 | 34 | 14 | 96 | 1 | 96 | 4 | 402, 403, 901, OS, VG | IC, F, S, O, R, U |
| 34 | 25 | 37 | 15 | 96 | 6 | 96 | 7 | 106, 402, 403, 602/F, 701, 901, NT, OS | IC |
| 40 | 22 | 41 | 12 | 96 | 9 | 96 | 14 | 106, 402, 403, 602/F, 901 | IC, F, S, O, R, U |
| 48 | 4 | 48 | 22 | 118 | 24 | 119 | 5 | 106, 602/F, 901 | IC |
| 49 | 17 | 50 | 7 | 140 | 7 | 140 | 15 | 106, CQ, OS, VG | IC, R, U |
| 50 | 24 | 51 | 6 | 145 | 11 | 145 | 25 | 106, 402, 403, 602/F | IC, R, U |
| 51 | 15 | 51 | 20 | 146 | 1 | 146 | 21 | | IC, R, U |
| 65 | 10 | 65 | 24 | 147 | 3 | 147 | 12 | 106, 402, 403, 701, NT, OS, VG, HYPO | IC, R, U |
| 66 | 3 | 66 | 22 | 157 | 24 | 158 | 1 | 106, 402, 403, 701, VA, CQ, OS, HYPO | IC, R, U |
| 68 | 10 | 68 | 15 | 158 | 18 | 158 | 25 | 106 | IC, R, U |
| 69 | 16 | 69 | 22 | 162 | 4 | 162 | 7 | 106 | IC, F, R, U |
| 70 | 4 | 71 | 23 | 162 | 9 | 162 | 22 | 106, CQ, VG | IC, F, R, U |
| 75 | 2 | 75 | 25 | 162 | 25 | 163 | 1 | 106, OS | IC, F, R, U |
| 85 | 17 | 86 | 24 | 163 | 3 | 165 | 4 | NT | IC, F, R, U |
| 87 | 4 | 93 | 22 | 172 | 24 | 173 | 24 | 106, 402, 403, VG, CQ, OS | IC, F, R, U |
| 94 | 17 | 95 | 3 | 174 | 3 | 174 | 14 | 106, 402, 403, VG, OS | IC, R, U |
| 96 | 23 | 101 | 24 | 174 | 15 | 175 | 17 | 106, 402, 403, VG, NT, OS | IC, F, R, U |
| 104 | 4 | 104 | 19 | 175 | 19 | 176 | 19 | | IC, F, R, U |
| 115 | 4 | 115 | 21 | | | | | 106, 402, 403, NT, OS, MC, 701, OS | |
| 117 | 15 | 118 | 23 | | | | | CQ, 106, 402, 403, OS | |
| 119 | 6 | 120 | 11 | | | | | 106, 402, 403, OS | |
| 123 | 11 | 123 | 23 | | | | | | |
| 125 | 14 | 126 | 1 | | | | | 106 | |
| 126 | 23 | 127 | 11 | | | | | INC, 106 | |
| 127 | 15 | 127 | 19 | | | | | 106 | |
| 127 | 24 | 128 | 6 | | | | | INC, 106 | |
| 132 | 15 | 132 | 22 | | | | | 106, 402, 403 | |
| 138 | 14 | 140 | 6 | | | | | 106, 402, 403 | |
| 143 | 2 | 143 | 16 | | | | | | |
| 144 | 13 | 145 | 4 | | | | | | |
| 149 | 1 | 149 | 20 | | | | | 402, 403, 602/F, VG, OS | |
| 150 | 5 | 150 | 21 | | | | | 402, 403, OS | |
| 152 | 11 | 154 | 12 | | | | | 106, 402, 403, NT, CQ, HYPO | |
| 154 | 15 | 154 | 21 | | | | | 106, 402, 403 | |
| 154 | 24 | 156 | 2 | | | | | 102, 402, 403, VG | |
| 157 | 15 | 157 | 23 | | | | | 106 | |
| 158 | 12 | 158 | 17 | | | | | 106, CG, VG, HYPO | |
| 159 | 21 | 160 | 6 | | | | | 106, 402, 403, CQ, VG | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 160 | 10 | 162 | 1 | | | | 602/F, 901, MC, 106, 402, 403, NT, OS | |
| 165 | 5 | 165 | 23 | | | | 106, 402, 403, OS | |
| 166 | 14 | 167 | 9 | | | | NT, 402, 403, VG, OS | |
| 171 | 3 | 172 | 6 | | | | 602/F, NT, OS, 801, 901, VG, 106 | |

| Douglas Crossley (10/10/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 7 | 6 | 7 | 8 | 18 | 13 | 18 | 15 | | IC, R, OB |
| 10 | 17 | 10 | 21 | 18 | 17 | 18 | 17 | 106 | IC, R |
| 10 | 25 | 11 | 2 | 46 | 16 | 46 | 25 | | IC, R, U |
| 11 | 4 | 11 | 4 | 47 | 5 | 47 | 6 | | IC, R, U |
| 14 | 6 | 14 | 11 | 47 | 2 | 47 | 4 | | IC, R, U |
| 47 | 7 | 47 | 8 | 66 | 23 | 66 | 24 | 106, CQ, INC | IC, R, I |
| 47 | 9 | 47 | 23 | 67 | 2 | 67 | 8 | 106, 602/F, CQ, INC | IC, R, I |
| 47 | 25 | 47 | 25 | 67 | 10 | 67 | 14 | 602/F | IC, R, I |
| 48 | 2 | 48 | 2 | 67 | 16 | 67 | 22 | 602/F | IC, R, I |
| 70 | 3 | 70 | 5 | 104 | 6 | 104 | 8 | 402, 403, 602/F, 701, 901 | IC, R, I |
| 70 | 7 | 70 | 8 | 128 | 20 | 128 | 23 | 402, 403, 602/F, 701, 901 | IC |
| 72 | 16 | 72 | 19 | 128 | 25 | 128 | 25 | 402, 403, 602/F, 701, 901 | IC |
| 76 | 3 | 76 | 6 | 129 | 2 | 129 | 3 | 402, 403, 602/F, 701, 901 | IC |
| 86 | 16 | 86 | 25 | 133 | 12 | 133 | 25 | 106, 402, 403, 602/F, 701, 901, INC | IC, R, U |
| 103 | 21 | 103 | 24 | 134 | 2 | 134 | 3 | | IC, R, U |
| 104 | 9 | 104 | 17 | 134 | 4 | 134 | 17 | 106, 602/F, 901 | IC, R, U |
| 105 | 14 | 105 | 18 | | | | | 106, 602/F, 801, 901 | |
| 107 | 14 | 107 | 16 | | | | | 106, 403, 602/F, 701, VG | |
| 107 | 18 | 107 | 20 | | | | | 106, 403, 602/F, 701, VG | |
| 126 | 13 | 126 | 25 | | | | | | |
| 127 | 2 | 127 | 5 | | | | | | |
| 127 | 7 | 127 | 11 | | | | | 602/F, 701 | |
| 127 | 13 | 127 | 18 | | | | | 602/F, 701 | |
| 127 | 20 | 127 | 25 | | | | | | |
| 128 | 2 | 128 | 19 | | | | | | |
| 129 | 4 | 129 | 6 | | | | | 106, INC | |
| 129 | 8 | 129 | 15 | | | | | 106, INC | |

| Santosh Mankala (10/14/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
|---|---|---|---|---|---|---|---|---|---|
| 7 | 7 | 7 | 9 | 12 | 19 | 12 | 25 | | IC |
| 11 | 13 | 11 | 18 | 13 | 2 | 13 | 3 | 106 | IC |
| 18 | 11 | 18 | 13 | 13 | 4 | 13 | 22 | 106 | IC |
| 19 | 2 | 19 | 10 | 14 | 18 | 14 | 21 | 106 | IC, I, R |
| 23 | 7 | 23 | 16 | 16 | 11 | 16 | 18 | 106 | IC |
| 23 | 25 | 24 | 5 | 16 | 23 | 16 | 25 | NT, 106 | IC |
| 24 | 13 | 24 | 21 | 17 | 8 | 17 | 25 | AF | IC |
| 25 | 9 | 25 | 16 | 17 | 2 | 17 | 3 | 106 | IC |
| 25 | 25 | 26 | 3 | 18 | 2 | 18 | 10 | NT, 106 | IC |
| 26 | 22 | 26 | 24 | 19 | 11 | 19 | 25 | 106 | IC, I |
| 27 | 6 | 27 | 8 | 20 | 2 | 20 | 4 | 106 | IC, I |
| 27 | 13 | 28 | 11 | 22 | 8 | 22 | 25 | NT, 106 | IC |
| 48 | 13 | 49 | 9 | 23 | 2 | 23 | 6 | NT | IC |
| 49 | 24 | 50 | 10 | 23 | 17 | 23 | 21 | NT, 106 | IC |
| 50 | 24 | 51 | 6 | 25 | 4 | 25 | 8 | NT, 106 | IC |
| 52 | 21 | 53 | 9 | 26 | 10 | 26 | 16 | NT, 106 | IC |
| 53 | 10 | 53 | 12 | 49 | 10 | 49 | 23 | | IC |
| 54 | 21 | 55 | 9 | 50 | 11 | 50 | 23 | NT | IC |
| 55 | 16 | 55 | 19 | 51 | 7 | 51 | 10 | 901 | IC, I |
| 56 | 25 | 57 | 6 | 51 | 22 | 51 | 24 | NT, 901, 106 | IC, I |
| 57 | 12 | 57 | 14 | 56 | 15 | 56 | 20 | 901, 602/F, 106 | IC, I, R |
| 57 | 16 | 57 | 16 | 58 | 5 | 58 | 12 | 901, 602/F, 106 | IC |
| 57 | 20 | 58 | 4 | 60 | 6 | 60 | 9 | NT, 901, 106 | IC |
| 58 | 13 | 58 | 19 | 60 | 11 | 60 | 14 | 901, 106, 402, 403 | IC |
| 60 | 3 | 60 | 5 | 90 | 14 | 90 | 21 | 901, 106 | IC |
| 60 | 23 | 61 | 6 | 98 | 12 | 98 | 15 | NT, 901, 106, 402, 403, 602/F | IC |
| 87 | 12 | 87 | 15 | | | | | 106 | |
| 87 | 23 | 88 | 6 | | | | | NT, 106 | |
| 89 | 22 | 90 | 8 | | | | | NT, 106 | |
| 90 | 9 | 90 | 13 | | | | | 106 | |
| 90 | 22 | 91 | 16 | | | | | NT, 106, 402, 403 | |
| 92 | 14 | 92 | 19 | | | | | 106 | |
| 92 | 25 | 93 | 13 | | | | | NT, 106 | |
| 93 | 23 | 94 | 8 | | | | | NT, 106 | |
| 95 | 8 | 95 | 20 | | | | | 106 | |
| 96 | 11 | 96 | 15 | | | | | 106, 602F, 701, AF | |
| 97 | 2 | 97 | 6 | | | | | VG, 602F | |
| 97 | 2 | 97 | 6 | | | | | VG, 602F, DUP | |
| 98 | 2 | 98 | 6 | | | | | 106, 602F | |
| 102 | 16 | 102 | 19 | | | | | | |
| 103 | 6 | 103 | 14 | | | | | | |
| 104 | 10 | 104 | 13 | | | | | | |
| 104 | 17 | 104 | 25 | | | | | | |
| 106 | 2 | 106 | 12 | | | | | CQ | |
| 106 | 14 | 106 | 20 | | | | | CQ | |
| 107 | 20 | 107 | 23 | | | | | | |
| 108 | 10 | 108 | 12 | | | | | | |

| Adam McAmis (10/3/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 8 | 4 | 8 | 9 | 1 | 1 | 1 | 1 | | IC, R, U, ILL |
| 10 | 1 | 10 | 2 | 10 | 19 | 10 | 24 | | IC |
| 10 | 8 | 10 | 11 | 10 | 12 | 10 | 15 | 106, 403 | IC, R, U |
| 10 | 25 | 11 | 6 | 11 | 7 | 11 | 9 | 106 | IC |
| 11 | 10 | 12 | 5 | 12 | 6 | 12 | 17 | 106 | IC |
| 12 | 24 | 13 | 20 | 12 | 18 | 12 | 23 | 106, 701 | IC |
| 14 | 2 | 15 | 10 | 13 | 21 | 14 | 1 | | IC |
| 15 | 20 | 15 | 23 | 15 | 24 | 16 | 1 | 106 | IC |
| 16 | 2 | 16 | 5 | 15 | 11 | 15 | 14 | | IC |
| 16 | 25 | 17 | 12 | 21 | 2 | 21 | 8 | 106 | IC |
| 18 | 19 | 18 | 22 | 21 | 15 | 21 | 20 | 106 | IC |
| 20 | 11 | 20 | 14 | 23 | 2 | 23 | 20 | 106 | IC |
| 21 | 9 | 21 | 14 | 23 | 24 | 24 | 3 | 106, 403 | IC |
| 22 | 1 | 22 | 6 | 25 | 12 | 25 | 17 | 106 | IC, F, O, U |
| 22 | 24 | 23 | 1 | 27 | 5 | 27 | 5 | 106 | IC, U, I |
| 23 | 21 | 23 | 24 | 31 | 15 | 31 | 23 | 106, 701 | IC |
| 24 | 4 | 24 | 18 | 34 | 14 | 34 | 20 | 106, 701 | IC, R, U |
| 25 | 1 | 25 | 11 | 38 | 9 | 38 | 10 | 106, 701 | IC, R, U |
| 25 | 18 | 26 | 1 | 39 | 6 | 39 | 12 | 403, 602/F, 701 | IC |
| 27 | 6 | 27 | 7 | 41 | 17 | 41 | 21 | INC | IC |
| 28 | 2 | 28 | 4 | 48 | 10 | 48 | 11 | | IC, R, U |
| 30 | 19 | 30 | 22 | 50 | 9 | 50 | 14 | | IC, R, U |
| 31 | 24 | 33 | 8 | 52 | 12 | 52 | 16 | 106, 403, 602/F, 701 | IC |
| 34 | 1 | 34 | 7 | 56 | 11 | 56 | 22 | NT | IC, D, U |
| 34 | 11 | 34 | 13 | 57 | 14 | 57 | 16 | 402, 602/F, 901 | IC |
| 34 | 21 | 35 | 11 | 62 | 12 | 62 | 13 | 106, 402, 602/F, 701, 901 | IC, R, U |
| 36 | 21 | 37 | 1 | 62 | 15 | 62 | 17 | 402, 602/F, 701, 901 | IC, R, U |
| 37 | 23 | 37 | 24 | 68 | 6 | 68 | 22 | | IC, F |
| 38 | 11 | 38 | 14 | 70 | 13 | 70 | 25 | 106, 402, 602/F, 701, 901 | IC, R, U |
| 38 | 15 | 39 | 2 | 75 | 8 | 75 | 13 | 402, 602/F, 701, 901 | IC, R, U |
| 39 | 13 | 40 | 3 | 75 | 20 | 76 | 6 | 106, 402, 602/F, 701, 901, INC | IC, R, U |
| 41 | 1 | 41 | 2 | 82 | 24 | 83 | 1 | | IC, R, U |
| 41 | 10 | 41 | 16 | 86 | 20 | 86 | 24 | 402, 602/F, 701, 701, 901 | IC, NR |
| 41 | 22 | 42 | 22 | 92 | 22 | 93 | 3 | 106, 402, 602/F, 701, 901, INC | IC |
| 43 | 7 | 43 | 16 | 93 | 22 | 94 | 4 | 402, 602/F, 701, 901 | IC |
| 44 | 10 | 44 | 23 | 95 | 16 | 95 | 19 | 402, 602/F, 701, 901 | IC, F, O, U |
| 45 | 3 | 45 | 4 | 96 | 18 | 96 | 24 | | IC, F, O |
| 45 | 6 | 45 | 15 | 97 | 17 | 97 | 17 | 602/F, 901, MC | IC |
| 45 | 9 | 45 | 11 | 100 | 5 | 100 | 11 | 602/F, 901, MC | IC |
| 45 | 18 | 46 | 17 | 105 | 7 | 105 | 10 | 402, 602/F, 701, 801, 901 | IC, R, U |
| 48 | 7 | 48 | 9 | 106 | 20 | 107 | 1 | 402, 602/F, 701, 901 | IC, F, O, R, U |
| 48 | 12 | 50 | 8 | 107 | 6 | 107 | 10 | 106, 402, 602/F, 701, 901 | IC |
| 50 | 19 | 51 | 2 | 107 | 20 | 107 | 22 | 402, 602/F, 701, 801, 901 | IC, U |
| 51 | 5 | 52 | 2 | 126 | 22 | 128 | 3 | 402, 602/F, 701, 801, 901 | IC, U |
| 52 | 6 | 52 | 11 | 128 | 4 | 128 | 22 | 402, 602/F, 701, 801, 901 | IC, U, O, F |
| 52 | 17 | 52 | 19 | | | | | 106, 402, 602/F, 701, 901 | |
| 52 | 23 | 53 | 16 | | | | | 402, 602/F, 701, 801, 901 | |
| 55 | 18 | 55 | 20 | | | | | 106, 402, 602/F, 701, 901 | |
| 56 | 11 | 56 | 25 | | | | | 106, 402, 602/F, 701, 901 | |
| 57 | 10 | 57 | 13 | | | | | 106, 701 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 57 | 17 | 57 | 20 | | | | 106, 701 | |
| 58 | 2 | 58 | 15 | | | | 106, 602/F, 403, 701, VG | |
| 58 | 7 | 58 | 15 | | | | 106, 602/F, 403, 701 | |
| 59 | 6 | 59 | 16 | | | | 106, 602/F, 403, 701 | |
| 60 | 2 | 60 | 3 | | | | | |
| 60 | 9 | 61 | 5 | | | | 402, 602/F, 701, 801, 901 | |
| 61 | 9 | 62 | 11 | | | | 106, 402, 602/F, 701, 801, 901 | |
| 62 | 22 | 63 | 7 | | | | 402, 602/F, 701, 801, 901 | |
| 63 | 23 | 64 | 7 | | | | 106, 402, 602/F, 701, 901 | |
| 64 | 20 | 65 | 1 | | | | 106, 402, 602/F, 701, 901 | |
| 65 | 24 | 66 | 6 | | | | 402, 602/F, 701, 901 | |
| 66 | 25 | 67 | 6 | | | | 402, 602/F, 701, 901, MC | |
| 67 | 15 | 68 | 5 | | | | 106 | |
| 69 | 3 | 69 | 19 | | | | | |
| 70 | 6 | 70 | 12 | | | | 106 | |
| 71 | 21 | 71 | 25 | | | | 602/F, 701 | |
| 72 | 9 | 72 | 18 | | | | | |
| 73 | 3 | 73 | 8 | | | | | |
| 73 | 14 | 73 | 16 | | | | | |
| 73 | 20 | 75 | 7 | | | | 602/F, 701 | |
| 75 | 14 | 75 | 19 | | | | 106 | |
| 82 | 11 | 82 | 18 | | | | NT | |
| 82 | 20 | 82 | 23 | | | | 106, 602/F, 901 | |
| 83 | 2 | 83 | 4 | | | | 106 | |
| 86 | 1 | 86 | 3 | | | | | |
| 86 | 9 | 86 | 19 | | | | 106, INC, MC | |
| 90 | 21 | 90 | 24 | | | | 106, 602/F | |
| 91 | 7 | 92 | 21 | | | | 106 | |
| 94 | 5 | 94 | 21 | | | | 106, 602/F, 701, AF, NT, VG | |
| 94 | 17 | 94 | 19 | | | | 106, 602/F, 701, AF, NT | |
| 95 | 1 | 95 | 15 | | | | 106, 602/F, 701, NT | |
| 95 | 20 | 96 | 17 | | | | 106 | |
| 97 | 1 | 97 | 8 | | | | NT, INC | |
| 97 | 15 | 97 | 16 | | | | 106, 901, INC | |
| 98 | 18 | 99 | 6 | | | | 106, 602/F, INC, HYPO | |
| 99 | 23 | 100 | 4 | | | | 106 | |
| 101 | 7 | 102 | 1 | | | | 602/F, 701, VG | |
| 101 | 20 | 101 | 23 | | | | 106, 602/F, 701, VG | |
| 103 | 22 | 104 | 2 | | | | 106, 403 | |
| 104 | 23 | 104 | 25 | | | | | |
| 105 | 11 | 105 | 15 | | | | 106, 602/F, 901 | |
| 105 | 16 | 105 | 25 | | | | 602/F, 901 | |
| 107 | 2 | 107 | 5 | | | | 106 | |
| 107 | 25 | 108 | 2 | | | | INC | |
| 108 | 7 | 108 | 9 | | | | | |
| 115 | 22 | 115 | 23 | | | | | |
| 116 | 6 | 116 | 13 | | | | 401, 402, 403 | |
| 118 | 22 | 118 | 23 | | | | | |
| 119 | 6 | 119 | 11 | | | | 401, 402, 403, 602/F, 901 | |
| 121 | 17 | 121 | 18 | | | | | |
| 122 | 1 | 122 | 4 | | | | 401, 402, 403, 602/F, 901 | |
| 122 | 21 | 122 | 22 | | | | | |
| 123 | 5 | 123 | 7 | | | | | |
| 124 | 17 | 124 | 18 | | | | | |

| 124 | 25 | 125 | 2 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 126 | 9 | 126 | 17 | | | | | INC | |

| Katie McNabb (10/7/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
|---|---|---|---|---|---|---|---|---|---|
| 7 | 16 | 7 | 18 | 24 | 7 | 24 | 10 | | IC, R, U |
| 23 | 16 | 23 | 18 | 25 | 19 | 26 | 7 | | IC, R, U |
| 24 | 11 | 25 | 18 | 30 | 23 | 31 | 6 | 106, INC | IC, R, U |
| 28 | 16 | 29 | 2 | 32 | 19 | 32 | 25 | 402, 403 | IC, R, U |
| 32 | 13 | 32 | 18 | 41 | 15 | 42 | 6 | 402, 403, 602/F, MC | IC, R, U |
| 41 | 9 | 41 | 11 | 43 | 3 | 43 | 8 | 402, 403 | IC, R, U |
| 42 | 7 | 42 | 16 | 46 | 21 | 47 | 7 | 106, INC | IC |
| 45 | 20 | 46 | 20 | 47 | 12 | 47 | 22 | 106, 402, 403, 602/F, 801, INC | IC |
| 48 | 6 | 48 | 12 | 48 | 13 | 48 | 19 | 106, 402, 403, INC | IC, O, F |
| 48 | 20 | 48 | 23 | 61 | 9 | 61 | 12 | 106, 602/F, INC | IC, R, U |
| 48 | 25 | 49 | 4 | 68 | 23 | 68 | 25 | 901, NT | IC, R, U |
| 53 | 25 | 54 | 5 | 69 | 2 | 69 | 5 | 402, 403 | IC, R, U |
| 57 | 2 | 57 | 10 | 72 | 25 | 72 | 25 | 402, 403, 602/F, MC | IC, R, U |
| 57 | 12 | 57 | 12 | 73 | 2 | 73 | 16 | 402, 403, 602/F, MC | IC, R, U |
| 58 | 25 | 59 | 4 | 75 | 14 | 75 | 21 | | IC, F |
| 59 | 10 | 59 | 23 | 88 | 7 | 88 | 8 | | IC, R, U |
| 60 | 17 | 60 | 19 | 88 | 17 | 88 | 18 | 402, 403, 901, NT | IC |
| 61 | 3 | 61 | 8 | 93 | 8 | 93 | 11 | 402, 403, 602/F, 901 | IC, R, U |
| 63 | 7 | 63 | 12 | 97 | 12 | 97 | 19 | 602/F | IC, R, U |
| 68 | 3 | 68 | 5 | 99 | 4 | 99 | 4 | 901, NT | IC, F, O, R, U |
| 69 | 6 | 69 | 9 | 99 | 6 | 99 | 12 | 106 | IC, F, O, R, U |
| 70 | 12 | 70 | 22 | 106 | 23 | 107 | 5 | 602/F, 701 | IC |
| 72 | 14 | 72 | 24 | 115 | 7 | 115 | 15 | 602/F, 701 | IC, R, U |
| 75 | 3 | 75 | 7 | 115 | 21 | 115 | 22 | 602/F, 701 | IC, R, U |
| 77 | 2 | 77 | 8 | 115 | 24 | 115 | 25 | 402, 403, 602/F, 701 | IC, R, U |
| 87 | 13 | 87 | 14 | 126 | 16 | 127 | 10 | 402, 403, 901, NT | IC |
| 88 | 9 | 88 | 16 | 132 | 13 | 132 | 25 | 106, 402, 403, 602/F, 801, 901, INC | IC, F, O |
| 92 | 23 | 92 | 24 | 133 | 2 | 133 | 10 | 402, 403 | IC, F, O |
| 93 | 12 | 93 | 22 | 136 | 5 | 136 | 10 | 402, 403 | IC, R, U |
| 97 | 5 | 97 | 6 | 136 | 12 | 136 | 21 | 901, NT | IC, R, U |
| 97 | 20 | 97 | 22 | 138 | 22 | 138 | 25 | 602/F, 901 | IC, R, U |
| 98 | 16 | 98 | 17 | 139 | 2 | 139 | 3 | 602/F, 901, VG | IC, R, U |
| 98 | 19 | 98 | 21 | 139 | 23 | 139 | 25 | 602/F, 901 | IC, R, U |
| 98 | 22 | 98 | 23 | 140 | 3 | 140 | 7 | 602/F, 801, 901, VG | IC, R, U |
| 98 | 25 | 99 | 3 | 141 | 16 | 141 | 23 | 602/F, 801, 901 | IC |
| 106 | 21 | 106 | 22 | 155 | 5 | 155 | 7 | 602/F | IC, R, U |
| 109 | 14 | 109 | 15 | 155 | 21 | 155 | 22 | 402, 403 | IC, R, U |
| 109 | 24 | 110 | 11 | 155 | 24 | 155 | 24 | 402, 403 | IC, R, U |
| 110 | 12 | 110 | 17 | 156 | 11 | 156 | 13 | 402, 403, 602/F, AF, MC | IC, R, U |
| 110 | 19 | 111 | 2 | 163 | 19 | 163 | 20 | 402, 403, 602/F, AF, MC | IC, R, U |
| 114 | 25 | 115 | 2 | 163 | 22 | 163 | 24 | 402, 403, 901, NT | IC, R, U |
| 115 | 16 | 115 | 16 | 164 | 2 | 164 | 2 | 402, 403, 602/F, 901 | IC, R, U |
| 115 | 18 | 115 | 20 | 168 | 11 | 168 | 13 | 402, 403, 602/F, 901 | IC, R, U |
| 126 | 5 | 126 | 7 | 168 | 15 | 168 | 22 | 402, 403, 602/F, 901, NT | IC, R, U |
| 127 | 11 | 127 | 17 | 169 | 5 | 169 | 16 | 402, 403, 602/F, 901 | IC, R, U |
| 128 | 7 | 128 | 17 | 170 | 18 | 170 | 25 | 402, 403, 602/F, 901 | IC, R, U |
| 130 | 11 | 130 | 14 | 171 | 2 | 171 | 3 | 402, 403, 602/F, 901, VG | IC, R, U |
| 130 | 16 | 130 | 24 | | | | | 402, 403, 602/F, 901, VG | |
| 131 | 2 | 131 | 4 | | | | | 402, 403, 602/F, 901 | |
| 132 | 3 | 132 | 4 | | | | | 402, 403, 602/F, 901, VG | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 132 | 6 | 132 | 12 | | | | | 402, 403, 602/F, 901 | |
| 134 | 24 | 134 | 25 | | | | | 402, 403, 602/F, 801, 901, VG | |
| 135 | 3 | 135 | 13 | | | | | 402, 403, 602/F, 801, 901 | |
| 135 | 20 | 135 | 22 | | | | | 402, 403, 602/F, 901, VG | |
| 135 | 24 | 135 | 25 | | | | | 402, 403, 602/F, 901 | |
| 136 | 2 | 136 | 4 | | | | | 402, 403, 602/F, 901 | |
| 136 | 22 | 136 | 25 | | | | | 402, 403, 602/F, 901, VG | |
| 137 | 3 | 137 | 8 | | | | | 402, 403, 602/F, 901 | |
| 138 | 8 | 138 | 9 | | | | | 402, 403, 901, NT | |
| 138 | 17 | 138 | 21 | | | | | 402, 403, 602/F, 901 | |
| 141 | 6 | 141 | 7 | | | | | 402, 403, 901, NT | |
| 141 | 24 | 142 | 3 | | | | | 402, 403, 602/F, 901 | |
| 142 | 18 | 142 | 20 | | | | | 402, 403, 602/F, 901 | |
| 143 | 17 | 143 | 18 | | | | | 402, 403, 901, NT | |
| 144 | 2 | 144 | 4 | | | | | 402, 403, 602/F, 901 | |
| 152 | 24 | 152 | 25 | | | | | 402, 403, 901, NT | |
| 155 | 8 | 155 | 10 | | | | | 402, 403, 602/F, 901 | |
| 155 | 16 | 155 | 20 | | | | | 402, 403, 602/F, 901 | |
| 155 | 25 | 156 | 2 | | | | | 402, 403, 602/F, 901, VG | |
| 156 | 4 | 156 | 10 | | | | | 402, 403, 602/F, 901 | |
| 156 | 20 | 156 | 21 | | | | | 402, 403, 602/F, NT | |
| 157 | 5 | 157 | 9 | | | | | 402, 403, 602/F | |
| 161 | 19 | 161 | 22 | | | | | VG, 602/F | |
| 161 | 24 | 161 | 25 | | | | | | |
| 162 | 2 | 162 | 3 | | | | | 602/F, VG | |
| 162 | 5 | 162 | 9 | | | | | | |
| 162 | 11 | 162 | 14 | | | | | 402, 403, 901, NT | |
| 162 | 20 | 162 | 24 | | | | | 402, 403, 602/F, 901 | |
| 162 | 25 | 163 | 16 | | | | | 402, 403, 602/F, 901, VG | |
| 163 | 18 | 163 | 18 | | | | | 402, 403, 602/F, 901 | |
| 166 | 2 | 166 | 3 | | | | | 602/F, 901, VG | |
| 166 | 5 | 166 | 8 | | | | | 602/F, 901 | |
| 171 | 7 | 171 | 8 | | | | | 402, 403, 602/F, 901, NT | |
| 171 | 18 | 171 | 25 | | | | | 402, 403, 602/F, 901 | |

| Florin Mirica (6/26/2026) - Exchanged Deposition Designations and Objection | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 5 | 6 | 6 | 7 | 4 | 21 | 7 | 15 | INC, 106, 402, 403 | IC, MSJ/D |
| 7 | 22 | 9 | 16 | 9 | 17 | 10 | 1 | INC, 106, 402, 403, NT | IC, MSJ/D |
| 12 | 12 | 13 | 1 | 13 | 2 | 13 | 9 | INC, 106, 402, 403 | IC, F, MSJ/D |
| 13 | 17 | 13 | 22 | 13 | 10 | 13 | 16 | INC, 106, 402, 403 | IC |
| 14 | 7 | 14 | 14 | 14 | 15 | 15 | 2 | INC, 106, VG, 402, 403 | IC, MSJ/D |
| 14 | 24 | 15 | 18 | 15 | 19 | 16 | 1 | INC, 106, 403 | IC, IH, U, MSJ/D |
| 16 | 2 | 16 | 13 | 16 | 14 | 17 | 24 | INC, 106, 403 | IC, F, MSJ/D |
| 24 | 7 | 24 | 9 | 18 | 20 | 21 | 9 | INC, 106, MC, 106, 403 | IC, AF, ARG, E, F, MSJ/D, H |
| 25 | 11 | 25 | 13 | 25 | 14 | 25 | 16 | INC, 106, 402, 403 | IC |
| 25 | 20 | 26 | 1 | 26 | 10 | 27 | 2 | INC, 106, 402, 403 | IC, H, MSJ/D |
| 27 | 3 | 28 | 1 | 28 | 2 | 28 | 22 | INC, 106, 402, 403 | IC, MSJ/D |
| 28 | 9 | 28 | 18 | 38 | 6 | 38 | 8 | INC, 106, 402, 403 | IC, F, MSJ/D |
| 29 | 8 | 32 | 6 | 39 | 8 | 39 | 21 | INC, 106, 402, 403 | IC, F |
| 32 | 15 | 33 | 24 | 40 | 3 | 40 | 6 | INC, 106, 402, 403 | IC, MSJ/D |
| 34 | 1 | 34 | 23 | 46 | 3 | 46 | 13 | INC, 106, 402, 403 | IC, F, MSJ/D |
| 35 | 2 | 35 | 14 | | | | | INC, 106, 402, 403, 602/F | |
| 35 | 19 | 37 | 11 | | | | | INC, 106, 402, 403, 602/F | |
| 37 | 15 | 38 | 5 | | | | | INC, 106, 402, 403, 602/F | |
| 39 | 1 | 39 | 7 | | | | | 402, 403, 602/F | |
| 39 | 22 | 40 | 2 | | | | | INC, 106, 402, 403, 602/F | |
| 40 | 7 | 40 | 10 | | | | | INC, 106, 402/403 | |
| 41 | 7 | 41 | 20 | | | | | INC, 106, VG, 403 | |
| 43 | 5 | 43 | 12 | | | | | INC, 106, VG, 403 | |
| 44 | 4 | 44 | 21 | | | | | INC, 106, VG, 403 | |

| Raul Santos (10/10/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 12 | 24 | 13 | 8 | 18 | 3 | 18 | 9 | 106, 402, 403, 602/F | IC |
| 18 | 14 | 18 | 22 | 18 | 11 | 18 | 13 | | IC |
| 20 | 3 | 20 | 9 | 22 | 7 | 22 | 13 | | IC |
| 22 | 14 | 23 | 10 | 24 | 24 | 24 | 25 | 106, INC | IC, I |
| 23 | 11 | 23 | 17 | 25 | 2 | 25 | 2 | 701, LC, VC | IC, I |
| 23 | 19 | 24 | 3 | 25 | 4 | 25 | 10 | 701, LC | IC, F, R, U, I |
| 24 | 5 | 24 | 5 | 39 | 12 | 39 | 17 | 701, LC, 106, INC | IC, F, R, U, I |
| 24 | 13 | 24 | 20 | 39 | 6 | 39 | 11 | MC, VG | IC, F, R, U, I |
| 24 | 22 | 24 | 22 | 40 | 4 | 40 | 8 | MC | IC, F, R, U, I |
| 25 | 11 | 25 | 14 | 40 | 10 | 40 | 23 | 801 | IC, F, R, U, I |
| 26 | 3 | 26 | 12 | 41 | 9 | 41 | 11 | 106, INC | IC, F, R, U, I |
| 27 | 11 | 27 | 23 | 41 | 13 | 41 | 13 | | IC, F, R, U, I |
| 27 | 25 | 28 | 11 | 42 | 16 | 42 | 18 | 701, CQ, LC | IC, F, R, U, I |
| 28 | 13 | 28 | 13 | 48 | 13 | 48 | 15 | | IC, F, R, U, O, I |
| 28 | 15 | 28 | 23 | 48 | 17 | 48 | 25 | | IC, F, R, U, O, I |
| 28 | 24 | 29 | 4 | 49 | 2 | 49 | 3 | | IC, F, R, U, O, I |
| 30 | 22 | 31 | 2 | 49 | 10 | 49 | 24 | | IC, F, R, U, O, I |
| 31 | 5 | 31 | 7 | 59 | 5 | 59 | 14 | | IC |
| 32 | 9 | 32 | 13 | 81 | 24 | 81 | 25 | | IC |
| 37 | 3 | 38 | 14 | 82 | 3 | 82 | 6 | 402, 403 | IC |
| 38 | 15 | 38 | 20 | 89 | 5 | 89 | 12 | 402, 403, 801, MC | IC, F, R, U |
| 39 | 19 | 40 | 2 | 90 | 15 | 90 | 15 | 402, 403, 801 | IC |
| 41 | 22 | 42 | 13 | 90 | 17 | 90 | 25 | MC | IC |
| 42 | 15 | 42 | 15 | 91 | 2 | 91 | 5 | | IC |
| 49 | 4 | 49 | 8 | 94 | 20 | 94 | 24 | | IC |
| 51 | 6 | 51 | 17 | 95 | 2 | 95 | 4 | 106, INC | IC |
| 51 | 19 | 51 | 19 | 98 | 14 | 98 | 19 | 106, 402, 403, INC, MC | IC |
| 58 | 15 | 58 | 20 | 99 | 22 | 99 | 23 | 106, 402, 403, INC, MC | IC |
| 81 | 3 | 81 | 14 | 99 | 25 | 99 | 25 | 402, 403 | IC |
| 82 | 7 | 82 | 10 | 100 | 2 | 100 | 7 | 402, 403, VG, MC | IC |
| 82 | 12 | 82 | 18 | 103 | 7 | 103 | 9 | 602/F, MC, VG | IC |
| 88 | 7 | 88 | 19 | 109 | 17 | 109 | 19 | 602/F, MC, VG | IC |
| 88 | 21 | 89 | 4 | 111 | 5 | 111 | 10 | 402, 403, INC, 106, VG | IC |
| 91 | 18 | 92 | 6 | 111 | 12 | 111 | 20 | 402, 403 | IC, F, R, U, O |
| 93 | 2 | 93 | 5 | 111 | 22 | 111 | 25 | | IC, F, R, U, O |
| 93 | 15 | 93 | 16 | 112 | 2 | 112 | 13 | | IC, F, R, U, O |
| 93 | 20 | 94 | 3 | 113 | 6 | 113 | 9 | | IC, F, R, U, O, OB |
| 94 | 5 | 94 | 15 | 113 | 11 | 113 | 12 | CQ | IC |
| 96 | 19 | 96 | 22 | 121 | 20 | 121 | 25 | | IC |
| 97 | 11 | 98 | 3 | 122 | 2 | 122 | 2 | CQ | IC |
| 98 | 20 | 99 | 3 | 123 | 20 | 123 | 25 | | IC |
| 99 | 4 | 99 | 11 | 124 | 2 | 124 | 3 | 402, 403 | IC |
| 99 | 14 | 99 | 14 | 124 | 4 | 124 | 8 | 402, 403 | IC |
| 99 | 15 | 99 | 17 | 124 | 10 | 124 | 15 | 701, LC | IC |
| 99 | 19 | 99 | 21 | 130 | 21 | 130 | 25 | 701, LC | IC |
| 100 | 12 | 101 | 2 | 131 | 2 | 131 | 2 | 402, 403, 701, LC | IC |
| 101 | 7 | 101 | 13 | 132 | 18 | 132 | 25 | | IC |
| 101 | 16 | 101 | 23 | 133 | 2 | 133 | 2 | | IC |
| 101 | 21 | 101 | 23 | 139 | 4 | 139 | 6 | | IC |
| 102 | 2 | 102 | 12 | 148 | 2 | 148 | 4 | | IC, F, R, U, O, I |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 102 | 20 | 102 | 22 | 149 | 13 | 149 | 15 | | IC, F, R, U, O, I |
| 102 | 25 | 103 | 6 | 153 | 3 | 153 | 12 | | IC, F, R, U, O, I |
| 108 | 8 | 108 | 11 | 153 | 14 | 153 | 17 | | IC, F, R, U, O, I |
| 108 | 14 | 108 | 16 | 153 | 21 | 153 | 25 | | IC, F, R, U, O, I |
| 109 | 8 | 109 | 10 | 154 | 2 | 154 | 2 | 602/F, 901, NT | IC, F, R, U, O, I |
| 109 | 20 | 110 | 2 | 154 | 4 | 154 | 6 | 602/F, 901 | IC |
| 110 | 4 | 110 | 8 | 183 | 14 | 183 | 19 | 602/F, 901, MC | IC |
| 110 | 4 | 110 | 18 | 185 | 11 | 185 | 16 | 602/F, 901, MC | IC |
| 112 | 14 | 112 | 17 | 185 | 22 | 185 | 24 | 602/F, 901 | IC |
| 112 | 22 | 113 | 5 | 186 | 2 | 186 | 4 | 602/F, 901 | IC |
| 115 | 8 | 115 | 15 | 186 | 15 | 186 | 19 | | IC |
| 115 | 18 | 115 | 22 | 194 | 19 | 194 | 21 | | IC |
| 120 | 6 | 120 | 7 | 194 | 23 | 194 | 25 | | IC |
| 120 | 14 | 120 | 16 | 198 | 2 | 198 | 12 | | IC |
| 121 | 3 | 121 | 5 | 199 | 20 | 199 | 21 | 402, 403 | IC |
| 121 | 12 | 121 | 19 | 203 | 22 | 203 | 25 | 402, 403 | IC |
| 123 | 8 | 123 | 19 | 204 | 2 | 204 | 12 | | IC |
| 124 | 16 | 124 | 19 | 209 | 19 | 209 | 25 | 106, INC | IC |
| 124 | 23 | 124 | 25 | 210 | 2 | 210 | 4 | | IC |
| 125 | 7 | 125 | 14 | 210 | 12 | 210 | 13 | | IC |
| 131 | 5 | 131 | 9 | 210 | 14 | 210 | 14 | | IC |
| 131 | 25 | 132 | 2 | 211 | 5 | 211 | 16 | 402, 403 | IC |
| 132 | 11 | 132 | 17 | | | | | 402, 403 | |
| 134 | 21 | 134 | 24 | | | | | 701, 801, LC, MC | |
| 135 | 2 | 135 | 2 | | | | | 701, 801, LC, MC | |
| 137 | 22 | 138 | 4 | | | | | 602/F | |
| 138 | 6 | 138 | 10 | | | | | 602/F | |
| 141 | 22 | 142 | 3 | | | | | | |
| 142 | 5 | 142 | 9 | | | | | | |
| 146 | 23 | 147 | 2 | | | | | 602/F, 901, NT | |
| 147 | 4 | 147 | 5 | | | | | 602/F, 901 | |
| 153 | 18 | 153 | 20 | | | | | 106, 602/F, 901, INC | |
| 173 | 24 | 174 | 3 | | | | | | |
| 174 | 5 | 174 | 7 | | | | | | |
| 179 | 21 | 180 | 3 | | | | | 402, 403 | |
| 180 | 6 | 180 | 7 | | | | | 402, 403 | |
| 183 | 5 | 183 | 7 | | | | | 602/F, 901, NT | |
| 183 | 9 | 183 | 13 | | | | | 602/F, 901 | |
| 184 | 18 | 185 | 21 | | | | | 602/F, INC, 106 | |
| 186 | 5 | 186 | 13 | | | | | | |
| 189 | 2 | 189 | 12 | | | | | 402, 403 | |
| 195 | 2 | 195 | 3 | | | | | | |
| 195 | 5 | 195 | 6 | | | | | | |
| 197 | 9 | 197 | 19 | | | | | 402, 403 | |
| 199 | 11 | 199 | 18 | | | | | 602/F, 901, NT | |
| 199 | 23 | 200 | 2 | | | | | 602/F, 901 | |
| 200 | 19 | 200 | 21 | | | | | 602/F, 901 | |
| 201 | 3 | 201 | 23 | | | | | 602/F, 901 | |
| 202 | 11 | 202 | 13 | | | | | 106, INC, 602/F | |
| 202 | 19 | 202 | 22 | | | | | 602/F | |
| 205 | 20 | 205 | 22 | | | | | 402, 403 | |
| 206 | 10 | 206 | 15 | | | | | 402, 403 | |
| 210 | 5 | 210 | 9 | | | | | 402, 403, MC | |
| 210 | 11 | 210 | 11 | | | | | 402, 403, MC | |

| 211 | 22 | 211 | 24 | | | | 402, 403 | |
| 212 | 2 | 212 | 6 | | | | 402, 403 | |
| 220 | 16 | 220 | 19 | | | | | |
| 220 | 20 | 220 | 22 | | | | | |
| 220 | 23 | 221 | 6 | | | | | |
| 221 | 8 | 221 | 10 | | | | 402, 403 | |
| 221 | 11 | 221 | 14 | | | | 402, 403 | |

| Francis Shanahan (9/23/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 9 | 5 | 9 | 6 | 37 | 7 | 37 | 17 | | IC |
| 12 | 19 | 13 | 21 | 40 | 5 | 40 | 9 | CQ, 402, 403 | IC |
| 14 | 15 | 14 | 17 | 42 | 23 | 43 | 1 | INC, 106 | IC |
| 16 | 20 | 17 | 10 | 43 | 13 | 44 | 15 | | IC, F, O, R, U |
| 17 | 7 | 17 | 10 | 44 | 17 | 49 | 16 | 106 | IC, OB, ILL, F, O, R, U |
| 17 | 7 | 18 | 3 | 57 | 6 | 57 | 17 | CQ, VG | IC, F, NR |
| 17 | 23 | 18 | 3 | 61 | 11 | 61 | 23 | | IC, F, O, R, U |
| 19 | 21 | 19 | 25 | 68 | 21 | 69 | 21 | | IC, F, O, R, U |
| 33 | 13 | 33 | 18 | 70 | 13 | 71 | 3 | 901 | IC, F, O, R, U, H |
| 37 | 18 | 40 | 4 | 72 | 24 | 72 | 25 | DUP, 106 | IC |
| 39 | 8 | 39 | 13 | 73 | 1 | 73 | 3 | DUP, 106 | IC |
| 40 | 10 | 40 | 18 | 91 | 17 | 91 | 19 | 106 | IC |
| 40 | 19 | 41 | 13 | 97 | 9 | 97 | 10 | | IC |
| 41 | 14 | 41 | 17 | 101 | 16 | 101 | 17 | | IC |
| 41 | 18 | 42 | 20 | 101 | 21 | 101 | 22 | 106, MC | IC |
| 43 | 2 | 43 | 12 | 113 | 14 | 113 | 16 | 106 | IC |
| 51 | 12 | 52 | 4 | 124 | 23 | 124 | 24 | 106, 402, 403, 901 | IC |
| 52 | 14 | 52 | 17 | 125 | 4 | 125 | 5 | LC, 402, 403, 701 | IC |
| 52 | 20 | 52 | 22 | 128 | 16 | 130 | 5 | LC, 402, 403, 701 | IC, F, O, R, U, NR |
| 53 | 10 | 53 | 19 | 131 | 21 | 131 | 23 | 402, 403 | IC |
| 57 | 18 | 57 | 20 | 147 | 9 | 147 | 10 | 106, 402, 403, MC | IC |
| 59 | 19 | 59 | 24 | 147 | 15 | 147 | 17 | | IC |
| 64 | 10 | 64 | 14 | 149 | 17 | 149 | 18 | 106 | IC |
| 67 | 21 | 67 | 24 | 151 | 2 | 151 | 7 | | IC |
| 68 | 3 | 68 | 6 | 155 | 3 | 155 | 21 | | IC |
| 68 | 7 | 68 | 8 | 176 | 2 | 176 | 7 | | IC |
| 68 | 9 | 68 | 13 | 176 | 16 | 176 | 17 | | IC |
| 68 | 14 | 68 | 19 | 180 | 17 | 180 | 19 | 106 | IC |
| 72 | 21 | 72 | 23 | 181 | 12 | 181 | 23 | 106 | IC |
| 73 | 14 | 73 | 16 | 186 | 19 | 186 | 20 | 106, MC, 602/F, 402, 403 | IC |
| 77 | 8 | 77 | 14 | 187 | 2 | 187 | 5 | 106, 801, 901 | IC |
| 85 | 15 | 85 | 16 | 205 | 21 | 205 | 23 | 402, 403, 801, 901, INC, 106 | IC |
| 85 | 23 | 86 | 1 | 211 | 5 | 211 | 7 | | IC, F |
| 91 | 9 | 91 | 11 | 212 | 12 | 212 | 13 | 602/F, 901, 402, 403 | IC |
| 91 | 20 | 92 | 3 | 212 | 19 | 213 | 3 | 602/F, 901, 402, 403 | IC |
| 97 | 5 | 97 | 7 | 220 | 14 | 220 | 20 | 602/F, 901, 402, 403 | IC |
| 97 | 11 | 97 | 16 | 235 | 13 | 235 | 17 | 602/F, 901, 402, 403 | IC |
| 101 | 11 | 101 | 15 | 241 | 6 | 241 | 13 | INC, 106 | IC, F, O, R, U |
| 105 | 6 | 105 | 8 | 242 | 5 | 242 | 12 | | IC, F, O, R, U |
| 105 | 15 | 105 | 17 | 242 | 22 | 242 | 25 | | IC, F, O, R, U |
| 105 | 15 | 106 | 3 | 243 | 13 | 244 | 14 | | IC, F, O, R, U |
| 109 | 13 | 110 | 3 | | | | | | |
| 111 | 17 | 112 | 24 | | | | | NT, DUP, LC, 701 | |
| 111 | 17 | 111 | 18 | | | | | NT, DUP, LC, 701 | |
| 111 | 22 | 111 | 25 | | | | | DUP, LC, 701 | |
| 112 | 4 | 112 | 6 | | | | | DUP, LC, 701 | |
| 112 | 9 | 112 | 11 | | | | | DUP, LC, 701 | |
| 112 | 14 | 112 | 16 | | | | | DUP, LC, 701 | |
| 112 | 19 | 112 | 21 | | | | | DUP, LC, 701 | |
| 112 | 24 | 112 | 24 | | | | | DUP, LC, 701 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 113 | 9 | 113 | 11 | | | | 106, 402, 403, 901, 602/F | |
| 113 | 17 | 114 | 1 | | | | 106, 402, 403, 901, 602/F | |
| 116 | 7 | 116 | 9 | | | | 402, 403 | |
| 116 | 7 | 116 | 21 | | | | NT, DUP, 402, 403 | |
| 116 | 13 | 116 | 16 | | | | DUP, 402, 403 | |
| 116 | 20 | 116 | 22 | | | | DUP, 402, 403 | |
| 116 | 25 | 117 | 5 | | | | 402, 403 | |
| 124 | 17 | 124 | 19 | | | | 106, 402, 403, 901, 602/F | |
| 124 | 25 | 125 | 3 | | | | 106, 402, 403, 901, 602/F | |
| 127 | 23 | 127 | 25 | | | | 106, 901 | |
| 128 | 7 | 128 | 15 | | | | 106, 901 | |
| 131 | 5 | 131 | 6 | | | | 106, 402, 403, 901 | |
| 131 | 13 | 131 | 20 | | | | 106, 402, 403, 901 | |
| 132 | 2 | 132 | 4 | | | | 801, 901, 402, 403 | |
| 132 | 11 | 132 | 19 | | | | 801, 901, 402, 403 | |
| 146 | 2 | 146 | 4 | | | | | |
| 146 | 12 | 146 | 16 | | | | | |
| 146 | 25 | 147 | 7 | | | | 106, 402, 403, 901, 602/F | |
| 147 | 11 | 147 | 14 | | | | 106, 402, 403, 901, 602/F | |
| 148 | 12 | 148 | 19 | | | | 402, 403 | |
| 148 | 21 | 148 | 25 | | | | 402, 403 | |
| 149 | 9 | 149 | 11 | | | | 106, 402, 403, 901, 602/F | |
| 149 | 19 | 150 | 3 | | | | 106, 402, 403, 901, 602/F | |
| 150 | 14 | 150 | 15 | | | | 106, 402, 403, 901, 602/F | |
| 150 | 22 | 150 | 24 | | | | 106, 402, 403, 901, 602/F | |
| 152 | 3 | 152 | 5 | | | | | |
| 152 | 12 | 152 | 13 | | | | | |
| 153 | 22 | 153 | 23 | | | | 106, INC | |
| 155 | 24 | 157 | 1 | | | | 106, 402, 403 | |
| 173 | 7 | 175 | 12 | | | | 602/F | |
| 176 | 8 | 176 | 15 | | | | 602/F | |
| 176 | 18 | 180 | 5 | | | | 106, 602/F | |
| 176 | 23 | 179 | 3 | | | | 106, 602/F | |
| 180 | 2 | 180 | 5 | | | | | |
| 187 | 6 | 187 | 12 | | | | 106, 602/F | |
| 187 | 24 | 188 | 6 | | | | 106, 602/F | |
| 206 | 3 | 206 | 6 | | | | 106 | |
| 206 | 10 | 208 | 23 | | | | 602/F, 701 | |
| 209 | 3 | 210 | 21 | | | | INC, 106, 602/F, 701 | |
| 213 | 4 | 213 | 10 | | | | 106, 701 | |
| 213 | 11 | 213 | 15 | | | | 602/F, 701 | |
| 215 | 13 | 215 | 15 | | | | 602/F | |
| 220 | 5 | 220 | 7 | | | | 106, 402, 403, 901, 602/F | |
| 220 | 11 | 220 | 12 | | | | 106, 402, 403, 901, 602/F | |
| 220 | 21 | 220 | 23 | | | | 106, 402, 403, 901, 602/F | |
| 235 | 18 | 236 | 7 | | | | INC, 106 | |
| 242 | 13 | 242 | 17 | | | | 106 | |
| 243 | 1 | 243 | 8 | | | | 106 | |
| 243 | 9 | 243 | 12 | | | | 106 | |

| Clifford Reader (5/16/2024) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 14 | 5 | 15 | 64 | 21 | 64 | 24 | 402, 403 | |
| 65 | 6 | 66 | 15 | 65 | 1 | 65 | 4 | 402, 403, 701, 702 | |
| 87 | 11 | 87 | 14 | 86 | 11 | 87 | 10 | 402, 403, 701, 702 | |
| 106 | 24 | 107 | 3 | 87 | 15 | 87 | 18 | 402, 403, 701, 702, INC | |
| 110 | 7 | 110 | 15 | 105 | 14 | 105 | 18 | 402, 403, 701, 702 | |
| 111 | 16 | 111 | 20 | 105 | 20 | 106 | 7 | 402, 403, 701, 702 | |
| 116 | 20 | 116 | 22 | 106 | 12 | 106 | 16 | 402, 403, 701, 702, INC | |
| 117 | 11 | 117 | 16 | 106 | 18 | 106 | 23 | 402, 403, 701, 702 | |
| 117 | 21 | 117 | 25 | 108 | 14 | 109 | 25 | 402, 403, 701, 702 | |
| 174 | 15 | 175 | 8 | 116 | 24 | 117 | 10 | 402, 403, 701, 702 | |
| 176 | 9 | 176 | 11 | 117 | 17 | 117 | 20 | 402, 403, 701, 702 | |
| 176 | 18 | 177 | 7 | 118 | 1 | 118 | 9 | 402, 403, 701, 702 | |
| | | | | 174 | 7 | 174 | 9 | | |
| | | | | 174 | 12 | 174 | 13 | | |
| | | | | 175 | 9 | 175 | 12 | | |
| | | | | 183 | 25 | 184 | 10 | | |
| | | | | 184 | 13 | 184 | 23 | | |
| | | | | 184 | 25 | 185 | 3 | | |
| | | | | 185 | 5 | 185 | 14 | | |
| | | | | 185 | 17 | 185 | 25 | | |
| | | | | 186 | 3 | 186 | 7 | | |
| | | | | 188 | 22 | 189 | 9 | | |
| | | | | 191 | 16 | 191 | 25 | | |
| | | | | 193 | 2 | 195 | 2 | | |
| | | | | 202 | 2 | 202 | 11 | | |

| Sam Walter (10/17/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 7 | 10 | 7 | 13 | 22 | 16 | 22 | 24 | | IC, NR |
| 10 | 22 | 11 | 2 | 41 | 20 | 41 | 24 | NT objection passim: the confidentiality header is designated throughout | IC |
| 13 | 24 | 15 | 2 | 42 | 3 | 42 | 25 | | IC |
| 15 | 18 | 16 | 9 | 45 | 15 | 45 | 22 | CQ | IC |
| 22 | 25 | 23 | 18 | 46 | 4 | 46 | 11 | CQ, OS | IC |
| 39 | 24 | 40 | 11 | 49 | 25 | 49 | 25 | VG, CQ | IC |
| 40 | 16 | 41 | 19 | 50 | 2 | 50 | 23 | VG, CQ | IC |
| 51 | 22 | 52 | 8 | 67 | 7 | 67 | 18 | 106, 402, 403 | IC, U |
| 71 | 15 | 72 | 3 | 72 | 23 | 72 | 25 | 106, 402, 403 | IC, U |
| 72 | 13 | 72 | 22 | 73 | 2 | 73 | 22 | 106, 402, 403, VG | IC, U |
| 104 | 2 | 104 | 16 | 74 | 2 | 74 | 25 | 106, 402, 403, CQ, VG, OS | IC, U |
| 104 | 17 | 106 | 2 | 75 | 2 | 75 | 25 | 106, 402, 403, MD, OS | IC, U |
| 110 | 15 | 110 | 22 | 76 | 2 | 76 | 12 | 106, 402, 403, 801, OS | IC, U |
| 113 | 15 | 114 | 22 | 85 | 11 | 85 | 25 | 106, 402, 403, 801, VG,  CQ | IC, U, R, SC |
| 128 | 18 | 130 | 2 | 86 | 2 | 86 | 23 | 106, 402, 403, 801, NT, VG | IC, U, R, SC |
| 134 | 17 | 135 | 3 | 88 | 14 | 88 | 21 | 106, 402, 403, NT, VG, OS | IC, U, R, SC |
| 136 | 22 | 138 | 18 | 106 | 16 | 106 | 24 | | IC |
| 140 | 17 | 141 | 11 | 108 | 6 | 108 | 15 | 402, 403, 602/F, 801, 901, OS | IC, F, O |
| 142 | 20 | 143 | 25 | 109 | 12 | 109 | 25 | 402, 403, 602/F, 801, 901, OS | IC, NR, F, O |
| 144 | 19 | 146 | 2 | 110 | 2 | 110 | 7 | | IC, NR, F, O |
| 150 | 18 | 151 | 13 | 110 | 23 | 110 | 25 | | IC |
| 151 | 14 | 151 | 22 | 111 | 2 | 111 | 25 | | IC |
| 157 | 15 | 158 | 6 | 112 | 2 | 112 | 23 | 106, VG | IC, NR, F, O |
| 158 | 7 | 159 | 6 | 135 | 4 | 135 | 19 | 602/F, 901 | IC |
| 161 | 22 | 163 | 10 | 151 | 23 | 151 | 25 | 106, 402, 403, OS | IC |
| 165 | 13 | 167 | 8 | 152 | 2 | 152 | 14 | 602/F, 901, NT, VG, OS | IC, NR, F, O |
| 169 | 21 | 170 | 7 | 152 | 15 | 152 | 18 | 106, VG, OS | IC, NR, F, O |
| 175 | 3 | 175 | 12 | 152 | 23 | 152 | 25 | 106, VG | IC, NR, F, O |
| 175 | 18 | 175 | 22 | 153 | 2 | 153 | 9 | 106, VG, OS | IC, NR, F, O |
| 175 | 23 | 176 | 22 | 167 | 9 | 167 | 25 | 602/F, 901, VG, OS | IC, U |
| 182 | 11 | 183 | 18 | 168 | 2 | 168 | 10 | | IC, U |
| 185 | 5 | 186 | 25 | 168 | 12 | 168 | 23 | 602/F, 901, OS | IC, U |
| 204 | 3 | 205 | 4 | 168 | 25 | 168 | 25 | 602/F, 901, OS | IC, U |
| 210 | 3 | 210 | 24 | 169 | 2 | 169 | 12 | 602/F, 901, OS | IC, U |
| 217 | 5 | 217 | 19 | 170 | 8 | 170 | 25 | OS | IC |
| 221 | 23 | 223 | 8 | 171 | 2 | 171 | 7 | 602/F, 901, OS | IC |
| 226 | 25 | 227 | 13 | 173 | 2 | 173 | 16 | | IC, F, O, U |
| 229 | 21 | 230 | 25 | 173 | 18 | 173 | 25 | VG | IC, F, O, U |
| 235 | 16 | 236 | 24 | 174 | 2 | 174 | 10 | | IC, F, O, U |
| 241 | 17 | 242 | 10 | 174 | 12 | 174 | 25 | | IC, F, O, U |
| 247 | 5 | 248 | 3 | 175 | 2 | 175 | 2 | | IC, F, O, U |
| 272 | 8 | 272 | 11 | 198 | 15 | 198 | 25 | DUP | IC |
| 272 | 8 | 272 | 18 | 199 | 2 | 199 | 10 | DUP | IC |
| 274 | 17 | 274 | 24 | 227 | 18 | 227 | 25 | 402, 403 | IC, R, U |
| 275 | 22 | 276 | 3 | 228 | 2 | 228 | 25 | 106, 402, 403, OS | IC, R, U |
| 279 | 4 | 279 | 20 | 229 | 2 | 229 | 5 | 402, 403, CQ, VG, OS | IC, R, U |
| | | | | 275 | 4 | 275 | 13 | | IC, F, O, U |
| | | | | 276 | 4 | 276 | 25 | | IC, F, O, U |
| | | | | 277 | 2 | 277 | 4 | | IC, F, O, U |

| Alex Zambelli (1/7/2026) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 6 | 14 | 6 | 16 | 10 | 8 | 10 | 10 | | IC |
| 10 | 2 | 10 | 7 | 11 | 13 | 11 | 15 | INC, 106 | IC, U |
| 10 | 11 | 10 | 17 | 11 | 16 | 12 | 1 | | IC, U |
| 11 | 10 | 11 | 12 | 18 | 24 | 19 | 10 | INC, 106 | IC, U |
| 12 | 2 | 12 | 6 | 32 | 13 | 33 | 25 | INC, 106, 402, 403 | IC, R, U |
| 18 | 12 | 18 | 23 | 42 | 15 | 44 | 10 | INC, 106 | IC |
| 18 | 24 | 18 | 25 | 45 | 11 | 46 | 25 | NT | IC |
| 19 | 7 | 19 | 10 | 67 | 18 | 67 | 25 | INC, 106 | IC |
| 20 | 1 | 20 | 7 | 70 | 13 | 71 | 16 | INC, 106, 402, 403 | IC |
| 20 | 8 | 20 | 13 | 70 | 3 | 70 | 12 | INC, 106, 402, 403 | IC |
| 34 | 1 | 35 | 11 | 72 | 1 | 72 | 5 | CQ, INC, 106 | IC |
| 44 | 11 | 44 | 20 | 96 | 16 | 97 | 11 | 602/F, INC, 106, HYPO | IC |
| 44 | 21 | 44 | 24 | 101 | 5 | 101 | 16 | 602/F, INC, 106, HYPO | IC, I, U |
| 44 | 25 | 45 | 10 | 103 | 1 | 103 | 20 | 602/F, INC, 106 | IC |
| 47 | 2 | 47 | 9 | 106 | 10 | 107 | 5 | 602/F, INC, 106 | IC |
| 48 | 21 | 49 | 3 | 110 | 5 | 111 | 8 | 602/F, MC | IC |
| 67 | 13 | 67 | 17 | 111 | 24 | 112 | 22 | INC, 106, 403 | IC |
| 69 | 1 | 69 | 16 | 113 | 18 | 114 | 16 | INC, 106, 403 | IC |
| 69 | 19 | 69 | 23 | 116 | 1 | 117 | 1 | INC, 106, 403 | IC |
| 71 | 22 | 71 | 25 | 116 | 1 | 117 | 1 | INC, 106, 403 | IC, U |
| 72 | 6 | 72 | 21 | 117 | 16 | 117 | 21 | INC, 106, 403 | IC |
| 78 | 12 | 78 | 16 | 119 | 11 | 120 | 19 | 403, 602/F | IC |
| 78 | 17 | 79 | 10 | 121 | 25 | 122 | 12 | 403, 602/F | IC |
| 97 | 12 | 97 | 16 | 128 | 22 | 128 | 25 | INC, 106, 403 | IC |
| 102 | 9 | 102 | 12 | 138 | 8 | 138 | 16 | INC, 106 | IC, I |
| 102 | 13 | 102 | 18 | 139 | 4 | 139 | 12 | INC, 106, 403 | IC |
| 103 | 21 | 104 | 2 | 157 | 20 | 159 | 8 | INC, 106, 403 | IC |
| 104 | 5 | 104 | 10 | 157 | 1 | 157 | 12 | INC, 106, 403 | IC |
| 107 | 6 | 107 | 16 | 160 | 3 | 168 | 8 | INC, 106, 403, 602/F | IC, U, F, H |
| 111 | 9 | 111 | 14 | 170 | 4 | 170 | 8 | INC, 106, 402, 403, 602/F | IC, |
| 111 | 15 | 111 | 23 | 170 | 14 | 170 | 19 | INC, 106, 403, 602/F | IC, I, U, F, H |
| 112 | 23 | 113 | 13 | 171 | 14 | 172 | 5 | INC, 106, 403, 602/F | IC |
| 113 | 14 | 113 | 17 | 176 | 17 | 176 | 22 | INC, 106, 403, 602/F | IC, I, F, H |
| 114 | 25 | 115 | 2 | 177 | 12 | 178 | 16 | NT, INC, 106, 403, 602/F, MC | IC, U, F, H |
| 115 | 3 | 115 | 25 | 178 | 20 | 178 | 23 | INC, 106, 403, 602/F | IC, F, H |
| 117 | 2 | 117 | 8 | 191 | 24 | 192 | 12 | INC, 106, 403, 602/F | IC |
| 117 | 9 | 117 | 11 | 193 | 18 | 194 | 7 | INC, 106, 403, 602/F | IC, F, H |
| 117 | 22 | 118 | 2 | 208 | 1 | 209 | 3 | INC, 106, 402, 403, 602/F | IC, F, H |
| 118 | 3 | 119 | 10 | 215 | 15 | 216 | 2 | INC, 106, 403, 602/F | IC, I, F, H |
| 122 | 13 | 122 | 18 | 216 | 6 | 216 | 21 | INC, 106, 403, 602/F | IC, I, F, H |
| 123 | 8 | 123 | 13 | 219 | 23 | 220 | 9 | NT, MC, 403, 602/F | IC, I, H |
| 123 | 16 | 123 | 19 | 221 | 12 | 222 | 1 | INC, 106, MC, 403, 602/F | IC |
| 128 | 18 | 128 | 21 | 222 | 18 | 223 | 21 | INC, 106, 403, 602/F | IC, F, H |
| 139 | 13 | 139 | 14 | 223 | 22 | 223 | 23 | NT, AA, 403, 602/F | IC, F, H |
| 139 | 17 | 139 | 17 | 226 | 24 | 228 | 10 | NT, AA, 403, 602/F | IC, F, H |
| 139 | 19 | 140 | 5 | 235 | 20 | 236 | 19 | INC, 106, 403, 602/F, MC | IC, F, H |
| 159 | 9 | 159 | 23 | 237 | 8 | 237 | 9 | INC, 106, 403, 602/F | IC, I |
| 168 | 9 | 169 | 17 | 240 | 9 | 241 | 9 | INC, 106, 403, 602/F, AA, MC | IC |
| 172 | 6 | 172 | 14 | 241 | 17 | 242 | 4 | INC, 106, 403, 602/F | IC, I |
| 176 | 4 | 176 | 16 | 268 | 6 | 268 | 12 | INC, 106, 403, 602/F | IC, H |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 177 | 4 | 177 | 8 | 268 | 22 | 269 | 17 | INC, 106, 403, 602/F | IC, I, H |
| 177 | 9 | 177 | 11 | 274 | 7 | 274 | 10 | INC, 106, 403, 602/F | IC, I, H |
| 178 | 17 | 178 | 19 | 279 | 22 | 280 | 9 | INC, 106, 403, 602/F | IC |
| 192 | 13 | 193 | 7 | 290 | 6 | 291 | 17 | INC, 106, 403, 602/F | IC, F, H |
| 194 | 8 | 194 | 14 | 291 | 20 | 292 | 13 | INC, 106, 403, 602/F | IC, F, H |
| 195 | 6 | 195 | 8 | | | | | INC, 106, 402, 403, 602/F | |
| 195 | 19 | 195 | 24 | | | | | INC, 106, 402, 403, 602/F | |
| 199 | 8 | 199 | 18 | | | | | 402, 403, 602/F | |
| 209 | 4 | 209 | 9 | | | | | INC, 106, 403, 602/F | |
| 215 | 9 | 215 | 11 | | | | | INC, 106, 402, 403, 602/F | |
| 215 | 12 | 215 | 14 | | | | | INC, 106, 402, 403, 602/F | |
| 220 | 16 | 220 | 19 | | | | | INC, 106, 402, 403, 602/F | |
| 220 | 20 | 220 | 23 | | | | | INC, 106, 402, 403, 602/F | |
| 222 | 2 | 222 | 4 | | | | | INC, 106, 402, 403, 602/F | |
| 222 | 5 | 222 | 7 | | | | | INC, 106, 402, 403, 602/F | |
| 222 | 8 | 222 | 12 | | | | | INC, 106, 402, 403, 602/F | |
| 222 | 13 | 222 | 17 | | | | | INC, 106, 402, 403, 602/F | |
| 223 | 24 | 224 | 2 | | | | | 402, 403, AA, 602/F, VG | |
| 228 | 11 | 228 | 13 | | | | | INC, 106, 402, 403, 602/F | |
| 236 | 20 | 236 | 22 | | | | | NT, 402, 403, 602/F, MC, VG | |
| 236 | 23 | 237 | 2 | | | | | INC, 106, 402, 403, 602/F, AA | |
| 237 | 3 | 237 | 5 | | | | | NT, INC, 106, 403, 602/F, MC | |
| 237 | 11 | 237 | 17 | | | | | | |
| 237 | 18 | 237 | 23 | | | | | INC, 106, 403, 602/F, MC | |
| 237 | 24 | 238 | 14 | | | | | INC, 106, 403, 602/F, MC | |
| 243 | 7 | 243 | 11 | | | | | INC, 106, 403, 602/F, VG | |
| 243 | 11 | 243 | 16 | | | | | INC, 106, 403, 602/F, VG | |
| 243 | 19 | 243 | 20 | | | | | INC, 106, 403, 602/F, VG | |
| 243 | 22 | 243 | 25 | | | | | INC, 106, 403, 602/F, VG | |
| 244 | 1 | 244 | 3 | | | | | NT, 403 | |
| 244 | 4 | 244 | 10 | | | | | INC, 106, 403, 602/F, VG, CQ | |
| 244 | 11 | 244 | 14 | | | | | INC, 106, 403, 602/F, VG, CQ | |
| 252 | 13 | 253 | 11 | | | | | INC, 106, 402, 403, VG, CQ | |
| 268 | 13 | 268 | 17 | | | | | INC, 106, 402, 403, VG, AA | |
| 268 | 18 | 268 | 21 | | | | | INC, 106, 402, 403, VG, CQ, AA, MC | |
| 273 | 20 | 274 | 5 | | | | | INC, 106, 402, 403, MC | |
| 274 | 11 | 274 | 25 | | | | | INC, 106, 402, 403, 602/F, MC, HYPO | |
| 275 | 1 | 275 | 4 | | | | | NT, 403, HYPO | |
| 275 | 7 | 275 | 21 | | | | | INC, 106, 402, 403, 602/F, MC, HYPO | |
| 280 | 10 | 280 | 18 | | | | | 402, 403, 602/F | |
| 280 | 22 | 280 | 24 | | | | | 402, 403, 602/F | |
| 291 | 7 | 291 | 10 | | | | | INC, 106, 402, 403 | |

| Kevin Zetterstrom (10/15/2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| NEC's Affirmative Designations | | | | Peloton's Counter Designations | | | | Objected to Portion of NEC's Affirmative Designations with Concise Explanation | Objected to Portion of Peloton's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
|---|---|---|---|---|---|---|---|---|---|
| 6 | 21 | 6 | 25 | 1 | 1 | 1 | 1 | | IC, D, U |
| 7 | 4 | 7 | 5 | 1 | 1 | 1 | 1 | | IC, D, U |
| 12 | 4 | 12 | 7 | 10 | 6 | 10 | 16 | | IC, R |
| 13 | 15 | 13 | 19 | 11 | 16 | 11 | 21 | 106 | IC,D |
| 14 | 18 | 14 | 25 | 11 | 9 | 11 | 25 | | IC |
| 24 | 13 | 24 | 25 | 12 | 2 | 12 | 2 | 106 | IC |
| 25 | 2 | 25 | 4 | 12 | 8 | 12 | 25 | | IC |
| 27 | 8 | 27 | 10 | 13 | 2 | 13 | 14 | AF, 106 | IC |
| 27 | 12 | 27 | 16 | 13 | 20 | 13 | 23 | 106 | IC |
| 30 | 11 | 30 | 12 | 15 | 2 | 15 | 10 | CQ | IC |
| 30 | 14 | 30 | 16 | 17 | 11 | 17 | 25 | AA | IC, I (17:11 designates answer without question) |
| 34 | 15 | 34 | 17 | 18 | 2 | 18 | 10 | 106, 402, 403, INC, | IC, F, U |
| 34 | 19 | 34 | 19 | 24 | 7 | 24 | 12 | | IC, R |
| 34 | 25 | 34 | 25 | 25 | 5 | 25 | 25 | | IC, R |
| 34 | 25 | 37 | 3 | 26 | 2 | 26 | 2 | NT objection passim: the confidentiality header is designated throughout; | IC, R |
| 35 | 2 | 35 | 25 | 29 | 2 | 29 | 25 | | IC, R, U |
| 36 | 2 | 36 | 25 | 30 | 2 | 30 | 6 | | IC, R, U |
| 37 | 2 | 37 | 3 | 34 | 20 | 34 | 24 | | IC, F, U, R |
| 37 | 7 | 37 | 11 | 37 | 4 | 37 | 6 | | IC |
| 37 | 13 | 37 | 15 | 38 | 2 | 38 | 17 | | IC, NR, F |
| 40 | 10 | 40 | 13 | 39 | 20 | 39 | 25 | 401, 402, 403, 106 | IC, F, O |
| 40 | 15 | 40 | 16 | 40 | 2 | 40 | 9 | 401, 402, 403, 106, 901 | IC, F, O |
| 40 | 17 | 40 | 25 | 41 | 3 | 41 | 8 | 401, 402, 403, 106, 901 | IC, U |
| 41 | 9 | 41 | 11 | 41 | 12 | 41 | 17 | 401, 402, 403, 106, 901 | IC, NR |
| 46 | 15 | 46 | 22 | 46 | 23 | 46 | 25 | 106 | IC |
| 47 | 4 | 47 | 7 | 47 | 2 | 47 | 3 | 401, 402, 403, 106, 901 | IC |
| 49 | 24 | 49 | 25 | 47 | 8 | 47 | 25 | 401, 402, 403, 106, 901 | IC, R, U |
| 50 | 2 | 50 | 25 | 48 | 2 | 48 | 7 | 401, 402, 403, 106, 901 | IC, R, U |
| 51 | 2 | 51 | 25 | 49 | 4 | 49 | 9 | 401, 402, 403, 106, 901 | IC |
| 52 | 2 | 52 | 25 | 55 | 22 | 55 | 25 | 401, 402, 403, 106, 901, NT | IC |
| 53 | 2 | 53 | 5 | 56 | 2 | 56 | 2 | 401, 402, 403, 106, 901 | IC |
| 55 | 14 | 55 | 15 | 56 | 7 | 56 | 8 | | IC, I, U, R |
| 56 | 9 | 56 | 13 | 65 | 4 | 65 | 5 | 106 | IC, I (65:6-65:8 required for completeness and is hereby designated as a counter-counter designation) |
| 62 | 8 | 62 | 9 | 65 | 25 | 65 | 25 | | IC |
| 62 | 23 | 62 | 24 | 66 | 14 | 66 | 18 | | IC |
| 63 | 2 | 63 | 5 | 66 | 2 | 66 | 3 | | IC |
| 64 | 25 | 64 | 25 | 69 | 16 | 69 | 23 | 602/F, 106, AF, INC | IC, F, R, U |
| 65 | 2 | 65 | 2 | 69 | 25 | 69 | 25 | INC, | IC, F, R, U |
| 65 | 15 | 65 | 17 | 70 | 2 | 70 | 19 | INC, | IC, F, R, U |
| 66 | 4 | 66 | 13 | 89 | 4 | 89 | 5 | INC, | IC, R, U |
| 68 | 7 | 68 | 25 | 92 | 6 | 92 | 19 | 106, 401, 402, 403 | IC, NR |
| 69 | 2 | 69 | 15 | 106 | 6 | 106 | 7 | | IC, R, U |
| 70 | 20 | 70 | 25 | 106 | 9 | 106 | 9 | | IC, R, U |
| 71 | 2 | 71 | 2 | 106 | 11 | 106 | 16 | | IC, R, U, I (106:17-106:18 contains complete answer, is required for completeness, and is hereby designated as a counter-counter designation) |
| 71 | 18 | 71 | 24 | 107 | 19 | 107 | 25 | 401, 402, 403, 701, NA | IC, F, O, NR |
| 72 | 2 | 72 | 25 | 108 | 2 | 108 | 10 | 401, 402, 403, 701, NA | IC, F, O, NR |
| 73 | 2 | 73 | 3 | 109 | 2 | 109 | 4 | | IC, F, O, NR |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 75 | 25 | 75 | 25 | 109 | 6 | 109 | 19 | INC, 401, 402, 403 | IC, F, O, NR |
| 76 | 3 | 76 | 6 | 111 | 16 | 111 | 17 | 401, 402, 403 | IC, R, U |
| 78 | 5 | 78 | 12 | 111 | 19 | 111 | 21 | INC. | IC, R, U |
| 78 | 15 | 78 | 19 | 116 | 17 | 116 | 24 | | IC |
| 79 | 2 | 79 | 24 | 117 | 2 | 117 | 10 | 602/F | IC |
| 88 | 6 | 88 | 13 | 122 | 4 | 122 | 13 | INC, 401, 402, 403 | IC, R, U |
| 88 | 15 | 88 | 21 | 122 | 25 | 122 | 25 | | IC, R, U |
| 91 | 17 | 91 | 25 | 123 | 2 | 123 | 3 | INC, 401, 402, 403 | IC, R, U |
| 92 | 3 | 92 | 5 | 123 | 5 | 123 | 8 | | IC, R, U |
| 96 | 15 | 96 | 18 | 125 | 10 | 127 | 9 | 106, INC, 401, 402, 403 | IC, NR, R, U, F, O |
| 97 | 6 | 97 | 9 | 130 | 2 | 130 | 12 | | IC |
| 104 | 15 | 104 | 24 | 130 | 25 | 130 | 25 | INC | IC |
| 105 | 2 | 105 | 6 | 131 | 2 | 131 | 2 | 901 | IC |
| 105 | 16 | 105 | 25 | 131 | 19 | 131 | 25 | 901 | IC, R, U |
| 106 | 2 | 106 | 5 | 132 | 2 | 132 | 25 | 901 | IC, R, U |
| 106 | 21 | 106 | 23 | 133 | 9 | 133 | 25 | 106, 701, 901, 602/F | IC, R, U, E |
| 106 | 25 | 106 | 25 | 134 | 2 | 134 | 25 | 106, 701, 901, 602/F | IC, R, U, E |
| 107 | 14 | 107 | 16 | 135 | 2 | 135 | 15 | CQ, 401, 402, 403, 106, 701, 901, 602/F | IC, R, U, E |
| 107 | 18 | 107 | 18 | 135 | 16 | 135 | 17 | CQ, 401, 402, 403, 106, 701, 901, 602/F | IC, R, U, E |
| 108 | 11 | 108 | 19 | | | | | 106, 701, 901, 602/F | |
| 109 | 22 | 109 | 23 | | | | | 106, 701, 901, 602/F | |
| 109 | 25 | 109 | 25 | | | | | 106, 701, 901, 602/F | |
| 110 | 2 | 110 | 4 | | | | | 106, 701, 901, 602/F | |
| 110 | 6 | 110 | 9 | | | | | 106, 701, 901, 602/F | |
| 110 | 11 | 110 | 15 | | | | | 106, 701, 901, 602/F | |
| 110 | 18 | 110 | 25 | | | | | 106, 701, 901, 602/F | |
| 111 | 2 | 111 | 8 | | | | | 106, 701, 901, 602/F | |
| 111 | 10 | 111 | 15 | | | | | 106, 701, 901, 602/F | |
| 111 | 23 | 111 | 25 | | | | | 106, 701, 901, 602/F | |
| 112 | 2 | 112 | 25 | | | | | 106, 701, 901, 602/F | |
| 113 | 2 | 113 | 23 | | | | | 106, 701, 901, 602/F | |
| 113 | 25 | 113 | 25 | | | | | 106, 701, 901, 602/F | |
| 114 | 2 | 114 | 2 | | | | | 106, 701, 901, 602/F | |
| 114 | 4 | 114 | 10 | | | | | 106, 701, 901, 602/F | |
| 114 | 21 | 114 | 25 | | | | | 106, 701, 901, 602/F | |
| 115 | 3 | 115 | 10 | | | | | 106, 701, 901, 602/F | |
| 115 | 12 | 115 | 17 | | | | | 106, 701, 901, 602/F | |
| 116 | 2 | 116 | 3 | | | | | 106, 701, 901, 602/F | |
| 116 | 5 | 116 | 10 | | | | | 106, 701, 901, 602/F | |
| 116 | 12 | 116 | 15 | | | | | 106, 701, INC, 901, 602/F | |
| 117 | 12 | 117 | 14 | | | | | 106, 701, INC, 901, 602/F | |
| 118 | 2 | 118 | 10 | | | | | 106, 701, 901, 602/F | |
| 118 | 12 | 118 | 25 | | | | | 106, 701, 901, 602/F | |
| 119 | 2 | 119 | 25 | | | | | 106, 701, 901, 602/F | |
| 120 | 2 | 120 | 5 | | | | | 106, 701, 901, 602/F | |
| 120 | 7 | 120 | 25 | | | | | 106, 701, 901, 602/F | |
| 121 | 2 | 121 | 2 | | | | | 106, 701, 901, 602/F | |
| 121 | 4 | 121 | 25 | | | | | 106, 701, 901, 602/F | |
| 122 | 2 | 122 | 3 | | | | | 106, 701, 901, 602/F | |
| 122 | 14 | 122 | 18 | | | | | 106, 701, 901, 602/F | |
| 122 | 22 | 122 | 24 | | | | | 106, 701, 901, 602/F | |
| 123 | 18 | 123 | 19 | | | | | 106, 701, 901, AA, 602/F | |
| 123 | 22 | 123 | 25 | | | | | 106, 701, 901, AA, 602/F | |
| 124 | 2 | 124 | 6 | | | | | 106, 701, 901, 602/F | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 124 | 8 | 124 | 17 | | | | INC, 106, 701, 901, 602/F | |
| 124 | 19 | 124 | 22 | | | | INC, 106, 701, 901, 602/F | |
| 127 | 16 | 127 | 18 | | | | 106, 701, 901, 602/F | |
| 127 | 23 | 127 | 25 | | | | 106, 701, 901, 602/F | |
| 128 | 2 | 128 | 3 | | | | INC, 106, 701, 901, 602/F | |
| 128 | 5 | 128 | 5 | | | | INC, 106, 701, 901, 602/F | |
| 129 | 7 | 129 | 22 | | | | 106, 701, 901, 602/F | |
| 129 | 24 | 129 | 25 | | | | 106, 701, 901, INC, 602/F | |
| 130 | 13 | 130 | 16 | | | | 106, 602/F, 701, 901, AF | |
| 130 | 18 | 130 | 20 | | | | 106, 602/F, 701, 901, AF | |
| 130 | 23 | 130 | 24 | | | | 106, 701, 901, AF, 602/F | |
| 131 | 9 | 131 | 14 | | | | 106, 602/F, 701, 901 | |
| 131 | 17 | 131 | 18 | | | | 106, 602/F, 701, 901 | |

| CODE | OBJECTION | APPLICABLE RULE(S) |
|---|---|---|
| A | Requires authentication or identification | FRE 901 |
| AF | Assumes Facts not in Evidence | |
| ARG | Argumentative, or attorney argument | FRE 611 |
| B | Best evidence rules prohibit introduction | FRE 1001-1002 |
| C | Improper compilation of separate documents | FRE 403, 901 |
| D | Duplicative / Cumulative Exhibit | |
| E | Improper examination (vague, ambiguous, loaded, leading, etc.) | FRE 402, 403, 602, 611 |
| F | Lack of foundation/personal knowledge (including calls for speculation) | FRE 402, 403, 602, 611 |
| H | Hearsay if offered for the truth of the matter asserted | FRE 801, 802 |
| I | Incomplete document or testimony | FRE 106, 403 |
| IC | Improper Counter-designation | |
| ID | Incorrect Description | |
| IH | Incomplete hypothetical | |
| ILL | Illegible | |
| IT | Improperly Provides Two Translations | |
| LC | Legal Conclusion | |
| LD | Late Disclosure | |
| M | Offer of discussion for settlement or compromise | FRE 408 |
| MIL | Subject of outstanding Motion in Limine or Motion to Strike | |
| MIS | Mischaracterization of testimony or evidence | |
| MSJ/D | Subject of outstanding Motion for Summary Judgement or *Daubert* Motion | |
| N | Exhibit not produced in discovery | FRE 403 |
| NAR | Narrative | |
| NR | Non-responsive | |
| NT | Contains text in a foreign language that is not translated into English | |
| O | Improper opinion testimony | FRE 701-704 |
| OB | Attorney Objection improperly designated/Improper designation | |
| P | Privileged or attorney work product | FRE 501, 502 |

| R | Lack of relevance | 401, 402 |
|---|---|---|
| S | Summary requiring underlying data or information | FRE 1006 |
| SC | Beyond the scope of the witness's testimony as a 30(b)(6) designee | |
| U | Unduly prejudicial, wasteful, confusing, misleading, or cumulative | FRE 403 |

Peloton's Objection Key for Objections to Exhibits and Testimony

| Code | Objection |
|------|-----------|
| 106 | This testimony/exhibit is objectionable because it is incomplete and the introduction of the remaining portions ought, in fairness, to be considered contemporaneously with it (*see* F.R.E. 106). |
| 402 | This testimony/exhibit is objectionable because it is not relevant or immaterial (*see* F.R.E. 401 and 402). |
| 403 | Misleading, confusion of issues, cumulative, and/or waste of time. This testimony/exhibit is objectionable because its probative value is substantially outweighed by the danger of unfair prejudice. |
| 404 | Improper character evidence. |
| 408 | *See* F.R.E. 408 (Compromise Offers and Negotiations). |
| 602/F | This testimony/exhibit is objectionable because it constitutes evidence on a matter as to which the witness lacks personal knowledge or competency and lacks foundation, calls for speculation (*see* F.R.E. 602). |
| 701 | This testimony/exhibit is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (*see* F.R.E. 701), and/or it calls for a legal conclusion, and/or it is attempted expert testimony from a witness who was not designated as an expert and who did not submit an expert report (*see* FRCP 26). |
| 702 | Improper expert opinion (*see* F.R.E. 702). |
| 703 | This testimony/exhibit is objectionable because while experts may rely on inadmissible evidence in forming their opinions, those materials are not to be shown to the jury unless their probative value substantially outweighs prejudicial effect. |
| 801 | Hearsay. This testimony/exhibit is objectionable because it is a statement made by one other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted and not subject to any hearsay exception (*see* F.R.E. 801 and 802). |
| 901 | This testimony/exhibit is objectionable because it concerns a document for which authentication is lacking (*see* F.R.E. 901 et seq.). |
| 1006 | Improper summary, chart or calculation (*see* F.R.E. 1006). |
| AA | Asked and answered. |
| AF | Assumes a fact not in evidence. |
| B | Best evidence (*see* F.R.E. 1002, 1003, 1004). |
| CQ | Compound question. |
| DUP | Duplicative or another exhibit on the exhibit list or cumulative of other testimony. |
| FL | Foreign language without certified translation. |

1

**Exhibit 8A and 10A to the Pretrial Order**                              **Peloton's Objection Key**

| Code | Objection |
|---|---|
| HYPO | Incomplete hypothetical question. |
| NT | Not testimony; improper deposition designation (*e.g.*, attorney objections not removed; attorney argument, correspondence, or argument improperly offered as evidence, etc.). |
| NA | Calls for narrative answer/response. |
| NE | Not evidence: pleadings, court orders, correspondence by counsel, depositions. |
| NR | Non-responsive or volunteered answer. |
| IC | Improper counter deposition designation (not related to initial designation). |
| ID | Insufficient/incorrect description. |
| Illeg | Illegible. |
| IM | Improper impeachment (*see* F.R.E. 613). |
| INC | Incomplete question/incomplete answer. |
| LC | Calls for legal conclusion; document contains legal opinions and/or attorney argument (e.g. pleadings, Court orders). |
| LDG | Leading question (F.R.E. 611). |
| MC | Mischaracterizes testimony, misleading or misstates evidence; nonresponsive/volunteered answer. |
| MD | Multiple documents listed as a single exhibit. |
| MIL | Subject to a pending motion, including a motion *in limine* or Daubert motion or summary judgment motion. |
| NPD | Not previously or untimely disclosed (FRCP 26, etc.). |
| OS | Outside scope of designated subject matter including outside scope of 30(b)(6) topics/initial disclosures. |
| P | Subject to privilege / attorney work product. |
| VG | Vague, ambiguous, and/or unclear. |

# EXHIBIT 9

Peloton's Deposition Designations, NEC's Objections and Counter Designations, and Peloton's Objections

| Koji Katsube (September 18, 2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
| Peloton's Affirmative Designations | | | | NEC's Counter Designations | | | | Objected to Portion of Peloton's Affirmative Designations with Concise Explanation | Objected to Portion of NEC's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
|---|---|---|---|---|---|---|---|---|---|
| 7 | 5 | 7 | 9 | | | | | | |
| 7 | 18 | 7 | 23 | | | | | | |
| 11 | 14 | 12 | 6 | | | | | IT | |
| 12 | 16 | 12 | 23 | | | | | | |
| 12 | 24 | 13 | 14 | | | | | | |
| 14 | 9 | 14 | 15 | | | | | | |
| 15 | 3 | 15 | 7 | | | | | | |
| 18 | 24 | 19 | 3 | | | | | LC | |
| 19 | 9 | 19 | 12 | | | | | LC | |
| 20 | 5 | 21 | 19 | | | | | IT, OB | |
| 24 | 8 | 24 | 21 | | | | | IT | |
| 26 | 6 | 26 | 8 | | | | | U | |
| 26 | 11 | 26 | 24 | | | | | U | |
| 27 | 2 | 27 | 7 | | | | | U | |
| 27 | 13 | 27 | 23 | | | | | U, IH | |
| 28 | 2 | 28 | 5 | | | | | U, IH | |
| 28 | 14 | 29 | 10 | | | | | | |
| 33 | 5 | 34 | 8 | | | | | IT, IH, LC | |
| 35 | 1 | 35 | 10 | | | | | F, SC, LC | |
| 35 | 13 | 35 | 23 | | | | | F, SC, LC | |
| 36 | 1 | 36 | 13 | | | | | F, SC, LC | |
| 36 | 16 | 37 | 19 | | | | | F, SC, LC | |
| 36 | 1 | 36 | 7 | | | | | F, SC, LC | |
| 36 | 8 | 36 | 13 | | | | | F, SC, LC | |
| 36 | 16 | 36 | 19 | | | | | F, SC, LC, IT | |
| 39 | 16 | 40 | 4 | | | | | | |
| 40 | 6 | 40 | 17 | 42 | 10 | 42 | 19 | U, R, MIL, F | 402, 602/F, IC |
| 44 | 6 | 44 | 20 | 42 | 10 | 42 | 19 | U, R, MIL, F | 402, 602/F, IC |
| 45 | 20 | 46 | 1 | | | | | F, SC, LC, I | |
| 46 | 15 | 46 | 18 | | | | | F, SC, LC, I | |
| 46 | 15 | 46 | 18 | | | | | Duplicate Designation | |
| 46 | 15 | 46 | 18 | | | | | Duplicate Designation | |
| 46 | 4 | 47 | 1 | | | | | F, SC, LC, I | |
| 48 | 7 | 48 | 11 | | | | | | |
| 49 | 3 | 49 | 17 | | | | | IT | |
| 50 | 8 | 50 | 11 | | | | | | |
| 50 | 12 | 50 | 17 | | | | | | |
| 51 | 12 | 51 | 17 | | | | | | |
| 51 | 12 | 51 | 17 | | | | | Duplicate Designation | |
| 54 | 9 | 54 | 15 | | | | | SC, U, R, I | |
| 54 | 9 | 54 | 15 | | | | | Duplicate Designation | |
| 54 | 24 | 55 | 4 | | | | | SC, U, R, F | |
| 54 | 16 | 54 | 22 | | | | | SC, U, R, I | |
| 55 | 7 | 55 | 12 | | | | | SC, U, R, I | |
| 56 | 4 | 57 | 13 | | | | | SC, U, R | |
| 56 | 4 | 56 | 10 | | | | | Duplicate Designation | |
| 61 | 21 | 62 | 2 | | | | | SC, U, R, I, IH | |
| 62 | 5 | 62 | 6 | | | | | SC, U, R, I, IH | |
| 62 | 24 | 63 | 12 | | | | | SC, U, R, F | |
| 63 | 19 | 63 | 20 | | | | | SC, U, R, F, I | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 63 | 23 | 63 | 23 | | | | | SC, U, R, F, I | |
| 63 | 25 | 64 | 20 | | | | | SC | |
| 64 | 22 | 64 | 22 | | | | | SC | |
| 67 | 10 | 67 | 12 | | | | | SC, F | |
| 67 | 15 | 67 | 17 | | | | | SC, F | |
| 68 | 10 | 68 | 13 | | | | | SC, F, IH | |
| 69 | 24 | 70 | 16 | | | | | | |
| 69 | 24 | 70 | 8 | | | | | Duplicate Designation | |
| 69 | 24 | 70 | 8 | | | | | Duplicate Designation | |
| 70 | 22 | 71 | 5 | | | | | F, R, U | |
| 72 | 23 | 73 | 12 | | | | | U, R, MIL, F | |
| 73 | 18 | 74 | 4 | | | | | U, R, MIL, F | |
| 74 | 7 | 74 | 11 | | | | | IH, F, AF | |
| 74 | 20 | 74 | 24 | | | | | IH, F, AF | |
| 75 | 2 | 75 | 9 | | | | | IH, F, AF | |
| 75 | 14 | 75 | 15 | | | | | IH, F, AF | |
| 79 | 23 | 80 | 20 | | | | | SC, F | |
| 80 | 23 | 81 | 5 | | | | | SC, F | |
| 81 | 7 | 81 | 10 | | | | | SC, F | |
| 81 | 14 | 81 | 15 | | | | | SC, F | |
| 81 | 18 | 81 | 18 | | | | | SC, F | |
| 82 | 3 | 82 | 10 | | | | | | |
| 82 | 11 | 83 | 10 | | | | | | |
| 86 | 12 | 86 | 19 | | | | | SC, R, U, F | |
| 86 | 22 | 87 | 1 | | | | | SC, R, U, F | |
| 87 | 4 | 87 | 9 | | | | | SC, R, U, F | |
| 87 | 12 | 87 | 17 | | | | | SC, R, U | |
| 88 | 25 | 89 | 6 | | | | | SC, R, U | |
| 89 | 15 | 89 | 17 | | | | | SC, R, U | |
| 90 | 3 | 90 | 10 | | | | | SC, R, U, IH | |
| 90 | 15 | 90 | 16 | | | | | SC, R, U, IH | |
| 92 | 1 | 92 | 13 | | | | | IT, IH, LC | |
| 92 | 16 | 93 | 3 | | | | | LC | |
| 94 | 15 | 94 | 22 | | | | | LC | |
| 94 | 25 | 95 | 3 | | | | | LC, IT | |
| 95 | 13 | 95 | 17 | | | | | LC | |
| 96 | 10 | 96 | 13 | | | | | LC, SC, F | |
| 96 | 16 | 96 | 16 | | | | | LC, SC, F | |
| 97 | 1 | 97 | 2 | | | | | | |
| 97 | 7 | 97 | 10 | | | | | | |
| 97 | 13 | 97 | 21 | | | | | | |
| 99 | 3 | 99 | 6 | | | | | SC, R, U | |
| 99 | 9 | 99 | 18 | | | | | SC, R, U | |
| 99 | 21 | 99 | 24 | | | | | SC, R, U | |
| 100 | 7 | 100 | 10 | | | | | SC, R, U | |
| 100 | 15 | 100 | 17 | | | | | SC, R, U | |
| 102 | 3 | 102 | 9 | | | | | SC, R, U | |
| 103 | 22 | 104 | 6 | | | | | SC, R, U | |
| 104 | 9 | 104 | 12 | | | | | SC, R, U | |
| 104 | 24 | 105 | 8 | | | | | SC, R, U | |
| 105 | 14 | 105 | 20 | | | | | SC, R, U | |
| 105 | 23 | 105 | 24 | | | | | SC, R, U | |
| 107 | 4 | 107 | 6 | | | | | SC, R, U | |
| 107 | 9 | 107 | 10 | | | | | SC, R, U | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 107 | 18 | 107 | 20 | | | | | SC, R, U | |
| 108 | 6 | 108 | 9 | | | | | SC, R, U | |
| 108 | 11 | 109 | 6 | | | | | SC, R, U | |

| Takeo Onishi  (September 19, 2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Peloton's Affirmative Designations | | | | NEC's Counter Designations | | | | Objected to Portion of Peloton's Affirmative Designations with Concise Explanation | Objected to Portion of NEC's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 10 | 21 | 10 | 25 | 20 | 25 | 20 | 25 | | |
| 11 | 1 | 11 | 2 | 39 | 23 | 40 | 2 | | 106 |
| 11 | 21 | 12 | 15 | 40 | 3 | 40 | 6 | OB | 106 |
| 13 | 21 | 14 | 15 | 40 | 13 | 40 | 16 | R, U, OB | 106, 602/F |
| 13 | 6 | 13 | 20 | 57 | 17 | 57 | 24 | R, U, OB | IC |
| 13 | 1 | 13 | 5 | 62 | 1 | 62 | 8 | R, U | IC |
| 14 | 16 | 14 | 18 | 62 | 10 | 62 | 18 | R, U | IC |
| 17 | 14 | 18 | 3 | 62 | 22 | 62 | 23 | R, U, OB | IC |
| 19 | 4 | 19 | 8 | 68 | 8 | 68 | 11 | R, U | DUP |
| 20 | 12 | 20 | 21 | | | | | E, LC, R, U, OB | |
| 21 | 2 | 21 | 11 | | | | | R, U | |
| 21 | 12 | 21 | 23 | | | | | R, U, OB | |
| 23 | 19 | 24 | 1 | | | | | E, H, R, U, OB | |
| 24 | 16 | 25 | 1 | | | | | E, H, R, U | |
| 24 | 3 | 24 | 8 | | | | | E, H, R, U | |
| 25 | 13 | 25 | 23 | | | | | E, H, ID, R, U, OB | |
| 26 | 14 | 27 | 4 | | | | | E, H, ID, R, U | |
| 27 | 8 | 27 | 19 | | | | | E, H, ID, R, U, OB | |
| 38 | 25 | 39 | 17 | | | | | E, H, ID, R, U | |
| 39 | 21 | 39 | 22 | | | | | E, H, ID, R, U | |
| 48 | 17 | 48 | 19 | | | | | ARG, E, LC, O, R, U | |
| 49 | 2 | 49 | 4 | | | | | ARG, E, LC, O, R, U | |
| 49 | 15 | 50 | 5 | | | | | E, R, U | |
| 50 | 19 | 51 | 4 | | | | | E, R, U | |
| 51 | 11 | 51 | 15 | | | | | E, R, U | |
| 52 | 12 | 53 | 7 | | | | | ARG, E, ID, LC, R, U | |
| 53 | 10 | 53 | 13 | | | | | ARG, E, ID, LC, R, U | |
| 53 | 15 | 53 | 17 | | | | | ARG, E, ID, LC, R, U | |
| 54 | 22 | 56 | 4 | | | | | ARG, E, ID, LC, R, U | |
| 56 | 6 | 56 | 10 | | | | | ARG, E, ID, LC, R, U | |
| 57 | 25 | 59 | 11 | | | | | ARG, E, ID, LC, R, U, OB | |
| 60 | 3 | 60 | 4 | | | | | ARG, E, ID, LC, R, U | |
| 61 | 15 | 61 | 16 | | | | | E, R, U | |
| 61 | 18 | 61 | 25 | | | | | E, R, U | |
| 62 | 24 | 63 | 3 | | | | | E, R, U | |
| 64 | 23 | 67 | 2 | | | | | E, R, U | |
| 66 | 17 | 67 | 2 | | | | | E, R, U | |
| 67 | 22 | 68 | 6 | | | | | E, R, U, OB | |
| 67 | 7 | 67 | 20 | | | | | E, R, U | |
| 68 | 18 | 69 | 11 | | | | | E, R, U | |
| 76 | 3 | 76 | 11 | | | | | E, F, R, U | |
| 76 | 12 | 77 | 1 | | | | | E, F, R, U, OB | |

| Christopher White (September 24, 2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Peloton's Affirmative Designations | | | | NEC's Counter Designations | | | | Objected to Portion of Peloton's Affirmative Designations with Concise Explanation | Objected to Portion of NEC's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 6 | 8 | 6 | 17 | 9 | 15 | 10 | 3 | | |
| 8 | 11 | 8 | 18 | 10 | 21 | 11 | 6 | | |
| 15 | 22 | 16 | 8 | 18 | 24 | 19 | 1 | R, U | |
| 20 | 7 | 21 | 8 | 32 | 11 | 32 | 18 | R, U, F | |
| 21 | 18 | 22 | 18 | 40 | 3 | 40 | 20 | R, U, F, SC | 106, 402, 403, IC |
| 23 | 14 | 23 | 16 | 49 | 17 | 50 | 14 | R, U, F | 106, NT, 403 |
| 23 | 17 | 23 | 24 | 53 | 6 | 53 | 21 | R, U, F, O, SC | 106, 402, 403, IC |
| 24 | 12 | 24 | 13 | 56 | 24 | 57 | 12 | R, U, F, E, O, SC | 106, 402, 403, IC |
| 24 | 17 | 24 | 20 | 58 | 4 | 59 | 13 | R, U, F, E, O, SC | NT, MC, 403, 602/F |
| 32 | 6 | 32 | 10 | 59 | 14 | 60 | 17 | R, U, SC | NT, MC, 403, 602/F |
| 32 | 19 | 33 | 13 | 61 | 1 | 61 | 25 | R, U, SC, | NT, MC, 602/F |
| 33 | 25 | 34 | 25 | 70 | 2 | 70 | 16 | R, U, SC | 106, 602/F, 402, 403 |
| 35 | 5 | 36 | 6 | 71 | 6 | 71 | 13 | R, U, O, SC | 602/F |
| 42 | 10 | 42 | 14 | 75 | 7 | 75 | 19 | R, U, F, SC | 106, 602/F, 402, 403, 702 |
| 48 | 17 | 48 | 22 | 75 | 24 | 77 | 2 | R, U, SC | 106, 602/F, 402, 403, 702 |
| 55 | 1 | 55 | 9 | 77 | 18 | 78 | 5 | R, U | 402, 403, 602/F, IC |
| 60 | 18 | 60 | 23 | 79 | 12 | 80 | 10 | A, R, U | 402, 403, IC |
| 62 | 10 | 62 | 11 | | | | | R, U, F, E, O | |
| 62 | 13 | 62 | 15 | | | | | R, U, F, E, O | |
| 67 | 5 | 67 | 9 | | | | | R, U, F, E, SC | |
| 67 | 11 | 67 | 15 | | | | | R, U, F, E, SC | |
| 67 | 23 | 67 | 25 | | | | | R, U, E, SC | |
| 68 | 3 | 68 | 5 | | | | | R, U, E, SC | |
| 68 | 9 | 68 | 12 | | | | | A, R, U, F, E, SC | |
| 68 | 15 | 68 | 15 | | | | | A, R, U, F, E, SC | |
| 68 | 24 | 69 | 3 | | | | | A, R, U, F, E, SC | |
| 69 | 5 | 69 | 7 | | | | | A, R, U, F, E, SC | |
| 70 | 24 | 71 | 5 | | | | | R, U | |
| 71 | 14 | 71 | 20 | | | | | R, U, SC | |
| 72 | 4 | 72 | 16 | | | | | R, U, F, SC | |
| 72 | 20 | 73 | 25 | | | | | R, U, F, SC | |
| 74 | 7 | 74 | 21 | | | | | R, U, SC | |

| Hiroshi Yoshida (September 17, 2025) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Peloton's Affirmative Designations | | | | NEC's Counter Designations | | | | Objected to Portion of Peloton's Affirmative Designations with Concise Explanation | Objected to Portion of NEC's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 7 | 10 | 7 | 24 | 7 | 24 | 8 | 5 | | IC |
| 9 | 17 | 10 | 11 | 86 | 19 | 86 | 24 | | 602/F; 801 |
| 10 | 15 | 10 | 18 | | | | | | |
| 10 | 21 | 10 | 21 | | | | | | |
| 11 | 22 | 12 | 2 | | | | | | |
| 16 | 4 | 16 | 14 | | | | | | |
| 17 | 17 | 18 | 2 | | | | | | |
| 18 | 19 | 18 | 22 | | | | | | |
| 19 | 1 | 19 | 25 | | | | | R, U | |
| 20 | 1 | 20 | 21 | | | | | R, U | |
| 22 | 17 | 22 | 20 | | | | | E, LC, R, U | |
| 22 | 23 | 22 | 25 | | | | | E, LC, R, U | |
| 23 | 2 | 23 | 5 | | | | | E, LC, R, U | |
| 23 | 21 | 24 | 2 | | | | | E, LC, R, U | |
| 25 | 16 | 25 | 19 | | | | | E, LC, R, U | |
| 25 | 22 | 25 | 23 | | | | | E, LC, R, U | |
| 25 | 3 | 25 | 14 | | | | | E, LC, R, U, OB, IT | |
| 28 | 9 | 28 | 24 | | | | | | |
| 28 | 25 | 29 | 7 | | | | | R, U | |
| 29 | 10 | 29 | 15 | | | | | R, U | |
| 29 | 18 | 29 | 19 | | | | | R, U | |
| 29 | 21 | 29 | 25 | | | | | R, U | |
| 30 | 11 | 30 | 21 | | | | | E, R, U | |
| 30 | 3 | 30 | 4 | | | | | R, U | |
| 30 | 24 | 31 | 6 | | | | | E, R, U | |
| 30 | 6 | 30 | 10 | | | | | E, R, U | |
| 31 | 7 | 32 | 16 | | | | | E, H, LC, R, U | |
| 32 | 19 | 33 | 2 | | | | | E, H, LC, R, U | |
| 33 | 3 | 33 | 12 | | | | | E, LC, R, U | |
| 33 | 15 | 35 | 5 | | | | | E, H, LC, R, U | |
| 35 | 8 | 35 | 8 | | | | | E, LC, R, U | |
| 37 | 2 | 37 | 5 | | | | | E, LC, R, U | |
| 39 | 2 | 39 | 9 | | | | | | |
| 39 | 20 | 40 | 2 | | | | | | |
| 40 | 14 | 40 | 22 | | | | | E, R | |
| 40 | 23 | 41 | 2 | | | | | E, R | |
| 41 | 4 | 41 | 8 | | | | | E, R | |
| 41 | 10 | 41 | 25 | | | | | E, R | |
| 42 | 1 | 42 | 12 | | | | | E, R, OB, IT | |
| 42 | 16 | 44 | 17 | | | | | E, R, U | |
| 45 | 15 | 45 | 18 | | | | | E, H, R, U | |
| 45 | 20 | 45 | 21 | | | | | E, H, R, U | |
| 45 | 23 | 46 | 7 | | | | | E, H, R, U | |
| 55 | 18 | 56 | 10 | | | | | E, LC, R, U | |
| 58 | 2 | 58 | 9 | | | | | E, H, R, U | |
| 59 | 6 | 59 | 11 | | | | | E, H, LC, R, U | |
| 59 | 13 | 59 | 17 | | | | | E, H, LC, R, U | |
| 59 | 20 | 60 | 6 | | | | | E, H, LC, R, U | |
| 59 | 1 | 59 | 2 | | | | | E, H, LC, R, U | |
| 59 | 4 | 59 | 4 | | | | | E, H, LC, R, U | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 60 | 8 | 61 | 3 | | | | E, H, LC, R, U | |
| 62 | 9 | 63 | 6 | | | | E, R, U | |
| 63 | 16 | 63 | 23 | | | | E, R, U | |
| 63 | 25 | 63 | 25 | | | | E, R, U | |
| 64 | 2 | 64 | 20 | | | | E, H, ID, LC, R, U | |
| 65 | 20 | 66 | 12 | | | | E, LC, R, U | |
| 66 | 14 | 66 | 21 | | | | E, LC, R, U | |
| 66 | 22 | 66 | 25 | | | | E, LC, R, U | |
| 76 | 13 | 78 | 6 | | | | R, U | |
| 79 | 1 | 80 | 7 | | | | R, U | |
| 80 | 15 | 80 | 21 | | | | E, R, U | |
| 80 | 23 | 80 | 25 | | | | E, R, U | |
| 81 | 20 | 81 | 25 | | | | R, U | |
| 82 | 9 | 82 | 12 | | | | E, H, R, U | |
| 82 | 14 | 82 | 24 | | | | E, H, R, U | |
| 83 | 3 | 83 | 16 | | | | E, H, R, U | |
| 83 | 18 | 83 | 19 | | | | E, H, R, U | |
| 83 | 21 | 83 | 25 | | | | R, U | |
| 85 | 2 | 85 | 4 | | | | | |
| 85 | 6 | 85 | 14 | | | | | |
| 85 | 15 | 86 | 7 | | | | R, F, U | |
| 87 | 15 | 88 | 3 | | | | R, U | |
| 88 | 5 | 88 | 16 | | | | R, U | |
| 88 | 25 | 89 | 1 | | | | R, U | |
| 88 | 18 | 88 | 22 | | | | R, U | |
| 89 | 3 | 89 | 13 | | | | R, F, U | |
| 89 | 14 | 90 | 9 | | | | E, H, R, F, U | |
| 90 | 10 | 90 | 14 | | | | E, H, R, F, U | |
| 92 | 16 | 93 | 10 | | | | E, H, R, F, U | |
| 93 | 12 | 93 | 13 | | | | E, H, R, F, U | |
| 93 | 21 | 94 | 1 | | | | E, H, R, F, U | |
| 93 | 15 | 93 | 19 | | | | E, H, R, F, U | |
| 95 | 1 | 95 | 18 | | | | H, R, U | |
| 95 | 21 | 96 | 1 | | | | E, H, R, U | |
| 96 | 24 | 97 | 5 | | | | E, H, R, U | |
| 96 | 3 | 96 | 22 | | | | E, H, R, U, OB, IT | |
| 97 | 24 | 98 | 8 | | | | E, H, R, U | |
| 98 | 10 | 98 | 12 | | | | E, H, R, U | |
| 100 | 3 | 100 | 8 | | | | E, R, F, U | |
| 100 | 11 | 100 | 11 | | | | E, R, F, U | |
| 106 | 18 | 107 | 17 | | | | | |
| 107 | 18 | 108 | 1 | | | | | |
| 108 | 2 | 108 | 14 | | | | E, H, LC, R, U | |
| 108 | 17 | 109 | 6 | | | | E, H, LC, R, U | |
| 109 | 8 | 109 | 15 | | | | E, H, R, U | |
| 109 | 17 | 110 | 7 | | | | E, H, R, U | |
| 110 | 9 | 110 | 23 | | | | E, H, R, U, OB | |
| 113 | 2 | 113 | 15 | | | | R, U | |
| 114 | 5 | 116 | 3 | | | | E, H, LC, R, U, OB, IT | |
| 116 | 5 | 117 | 7 | | | | E, H, LC, R, U, OB, IT | |
| 116 | 4 | 116 | 4 | | | | E, H, LC, R, U | |
| 117 | 16 | 118 | 25 | | | | E, H, ID, R, U | |
| 119 | 10 | 119 | 17 | | | | E, H, R, U | |
| 121 | 6 | 121 | 17 | | | | E, H, ID, R, U | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 122 | 7 | 122 | 11 | | | | E, H, ID, R, U | |
| 122 | 13 | 122 | 20 | | | | E, H, ID, R, U | |
| 122 | 22 | 123 | 1 | | | | E, H, ID, R, U, OB, IT | |
| 123 | 10 | 124 | 5 | | | | R, U | |
| 125 | 18 | 125 | 22 | | | | R, F, U | |
| 125 | 23 | 126 | 1 | | | | R, F, U | |
| 126 | 21 | 126 | 22 | | | | | |
| 127 | 11 | 127 | 17 | | | | | |
| 128 | 7 | 131 | 14 | | | | E, R, F, U | |

| Florin Mirica (June 26, 2026) - Exchanged Deposition Designations and Objection | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Peloton's Affirmative Designations | | | | NEC's Counter Designations | | | | Objected to Portion of Peloton's Affirmative Designations with Concise Explanation | Objected to Portion of NEC's Counter Designations with Concise Explanation |
| Start Page | Start Line | End Page | End Line | Start Page | Start Line | End Page | End Line | | |
| 4 | 21 | 5 | 23 | 6 | 4 | 6 | 7 | | IC, INC, 602 |
| 7 | 5 | 7 | 15 | 8 | 23 | 9 | 1 | MSJ/D | IC, 402 |
| 8 | 4 | 8 | 8 | 12 | 12 | 12 | 15 | F, I, E, MSJ/D | IC |
| 8 | 12 | 8 | 22 | 12 | 23 | 13 | 1 | F, MSJ/D | IC |
| 9 | 2 | 10 | 1 | 13 | 10 | 13 | 22 | MSJ/D | IC |
| 12 | 16 | 12 | 22 | 14 | 7 | 14 | 14 | MSJ/D | IC |
| 13 | 2 | 13 | 9 | 15 | 3 | 15 | 10 | F, MSJ/D | IC |
| 14 | 15 | 15 | 2 | 15 | 16 | 15 | 18 | MSJ/D | IC |
| 15 | 11 | 15 | 15 | 16 | 2 | 16 | 12 | MSJ/D | IC |
| 15 | 9 | 16 | 1 | 19 | 19 | 19 | 21 | IH, U, MSJ/D | IC |
| 16 | 14 | 17 | 5 | 20 | 8 | 20 | 10 | F, MSJ/D | IC |
| 17 | 9 | 17 | 24 | 21 | 10 | 21 | 14 | F, O, MSJ/D | IC |
| 18 | 20 | 18 | 22 | 24 | 7 | 24 | 9 | AF, ARG, E, F, MSJ/D | IC |
| 19 | 3 | 19 | 18 | 25 | 20 | 26 | 1 | F, H, MSJ/D | IC |
| 19 | 22 | 20 | 7 | 27 | 3 | 28 | 1 | F, H, MSJ/D | IC |
| 20 | 11 | 20 | 24 | 28 | 9 | 28 | 18 | F, H, MSJ/D | IC |
| 21 | 5 | 21 | 9 | 29 | 8 | 29 | 12 | MSJ/D | IC |
| 21 | 24 | 22 | 22 | 30 | 5 | 30 | 13 | F, OB, MSJ/D, NR, U, R | IC |
| 22 | 5 | 22 | 5 | 31 | 8 | 31 | 17 | F, MSJ/D | IC |
| 22 | 7 | 22 | 9 | 31 | 22 | 32 | 6 | F, MSJ/D | IC |
| 24 | 3 | 24 | 6 | 34 | 1 | 34 | 10 | MSJ/D | IC |
| 24 | 24 | 25 | 3 | 34 | 17 | 34 | 23 | MSJ/D | IC |
| 26 | 10 | 27 | 2 | 35 | 2 | 35 | 14 | H, MSJ/D | IC |
| 28 | 19 | 28 | 22 | 35 | 19 | 36 | 18 | MSJ/D | IC |
| 29 | 13 | 30 | 4 | 37 | 5 | 37 | 8 | MSJ/D | IC |
| 30 | 14 | 31 | 7 | 37 | 17 | 38 | 5 | MSJ/D | IC |
| 31 | 18 | 31 | 21 | 39 | 1 | 39 | 5 | MSJ/D | IC |
| 32 | 15 | 32 | 23 | 39 | 33 | 40 | 2 | F, MSJ/D | IC |
| 33 | 4 | 33 | 11 | 40 | 7 | 40 | 10 | MSJ/D | IC |
| 34 | 11 | 34 | 16 | 41 | 7 | 41 | 20 | MSJ/D | IC |
| 38 | 6 | 38 | 8 | 43 | 5 | 43 | 12 | F, MSJ/D | IC |
| 40 | 3 | 40 | 6 | 44 | 9 | 44 | 21 | MSJ/D | IC |
| 44 | 1 | 44 | 8 | | | | | MSJ/D | |
| 46 | 3 | 46 | 16 | | | | | F, MSJ/D | |

| CODE | OBJECTION | APPLICABLE RULE(S) |
|---|---|---|
| A | Requires authentication or identification | FRE 901 |
| AF | Assumes Facts not in Evidence | |
| ARG | Argumentative, or attorney argument | FRE 611 |
| B | Best evidence rules prohibit introduction | FRE 1001-1002 |
| C | Improper compilation of separate documents | FRE 403, 901 |
| D | Duplicative / Cumulative Exhibit | |
| E | Improper examination (vague, ambiguous, loaded, leading, etc.) | FRE 402, 403, 602, 611 |
| F | Lack of foundation/personal knowledge (including calls for speculation) | FRE 402, 403, 602, 611 |
| H | Hearsay if offered for the truth of the matter asserted | FRE 801, 802 |
| I | Incomplete document or testimony | FRE 106, 403 |
| IC | Improper Counter-designation | |
| ID | Incorrect Description | |
| IH | Incomplete hypothetical | |
| ILL | Illegible | |
| IT | Improperly Provides Two Translations | |
| LC | Legal Conclusion | |
| LD | Late Disclosure | |
| M | Offer of discussion for settlement or compromise | FRE 408 |
| MIL | Subject of outstanding Motion in Limine or Motion to Strike | |
| MIS | Mischaracterization of testimony or evidence | |
| MSJ/D | Subject of outstanding Motion for Summary Judgement or *Daubert* Motion | |
| N | Exhibit not produced in discovery | FRE 403 |
| NAR | Narrative | |
| NR | Non-responsive | |
| NT | Contains text in a foreign language that is not translated into English | |
| O | Improper opinion testimony | FRE 701-704 |
| OB | Attorney Objection improperly designated/Improper designation | |

| P | Privileged or attorney work product | FRE 501, 502 |
|---|---|---|
| R | Lack of relevance | 401, 402 |
| S | Summary requiring underlying data or information | FRE 1006 |
| SC | Beyond the scope of the witness's testimony as a 30(b)(6) designee | |
| U | Unduly prejudicial, wasteful, confusing, misleading, or cumulative | FRE 403 |

Peloton's Objection Key for Objections to Exhibits and Testimony

| Code | Objection |
|---|---|
| 106 | This testimony/exhibit is objectionable because it is incomplete and the introduction of the remaining portions ought, in fairness, to be considered contemporaneously with it (*see* F.R.E. 106). |
| 402 | This testimony/exhibit is objectionable because it is not relevant or immaterial (*see* F.R.E. 401 and 402). |
| 403 | Misleading, confusion of issues, cumulative, and/or waste of time. This testimony/exhibit is objectionable because its probative value is substantially outweighed by the danger of unfair prejudice. |
| 404 | Improper character evidence. |
| 408 | *See* F.R.E. 408 (Compromise Offers and Negotiations). |
| 602/F | This testimony/exhibit is objectionable because it constitutes evidence on a matter as to which the witness lacks personal knowledge or competency and lacks foundation, calls for speculation (*see* F.R.E. 602). |
| 701 | This testimony/exhibit is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (*see* F.R.E. 701), and/or it calls for a legal conclusion, and/or it is attempted expert testimony from a witness who was not designated as an expert and who did not submit an expert report (*see* FRCP 26). |
| 702 | Improper expert opinion (*see* F.R.E. 702). |
| 703 | This testimony/exhibit is objectionable because while experts may rely on inadmissible evidence in forming their opinions, those materials are not to be shown to the jury unless their probative value substantially outweighs prejudicial effect. |
| 801 | Hearsay. This testimony/exhibit is objectionable because it is a statement made by one other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted and not subject to any hearsay exception (*see* F.R.E. 801 and 802). |
| 901 | This testimony/exhibit is objectionable because it concerns a document for which authentication is lacking (*see* F.R.E. 901 et seq.). |
| 1006 | Improper summary, chart or calculation (*see* F.R.E. 1006). |
| AA | Asked and answered. |
| AF | Assumes a fact not in evidence. |
| B | Best evidence (*see* F.R.E. 1002, 1003, 1004). |
| CQ | Compound question. |
| DUP | Duplicative or another exhibit on the exhibit list or cumulative of other testimony. |
| FL | Foreign language without certified translation. |

1

**Exhibit 8A and 10A to the Pretrial Order**                    **Peloton's Objection Key**

| Code | Objection |
|------|-----------|
| HYPO | Incomplete hypothetical question. |
| NT | Not testimony; improper deposition designation (*e.g.*, attorney objections not removed; attorney argument, correspondence, or argument improperly offered as evidence, etc.). |
| NA | Calls for narrative answer/response. |
| NE | Not evidence: pleadings, court orders, correspondence by counsel, depositions. |
| NR | Non-responsive or volunteered answer. |
| IC | Improper counter deposition designation (not related to initial designation). |
| ID | Insufficient/incorrect description. |
| Illeg | Illegible. |
| IM | Improper impeachment (*see* F.R.E. 613). |
| INC | Incomplete question/incomplete answer. |
| LC | Calls for legal conclusion; document contains legal opinions and/or attorney argument (e.g. pleadings, Court orders). |
| LDG | Leading question (F.R.E. 611). |
| MC | Mischaracterizes testimony, misleading or misstates evidence; nonresponsive/volunteered answer. |
| MD | Multiple documents listed as a single exhibit. |
| MIL | Subject to a pending motion, including a motion *in limine* or Daubert motion or summary judgment motion. |
| NPD | Not previously or untimely disclosed (FRCP 26, etc.). |
| OS | Outside scope of designated subject matter including outside scope of 30(b)(6) topics/initial disclosures. |
| P | Subject to privilege / attorney work product. |
| VG | Vague, ambiguous, and/or unclear. |

2

# EXHIBIT 10

NEC's Exhibit List with Peloton's Objections

| PTX | Description | Beginning Bates | End Bates | Objections |
|---|---|---|---|---|
| 1 | Official Ribbon copy of U.S. Patent No. 8,752,101 (excerpt of first page - physical copy maintained for whole document) | NEC_2022_DE_0000001 | NEC_2022_DE_0000001 | |
| 2 | Official Ribbon copy of U.S. Patent No. 8,909,809 (excerpt of first page - physical copy maintained for whole document) | NEC_2022_DE_0000002 | NEC_2022_DE_0000002 | 402, 403 |
| 3 | Certified File History of U.S. Patent No. 8,752,101 | NEC_2022_DE_0000003 | NEC_2022_DE_0000402 | |
| 4 | Certified File History of U.S. Patent No. 8,909,809 | NEC_2022_DE_0000403 | NEC_2022_DE_0000996 | 402, 403 |
| 5 | Japanese Patent Appl. No. 2009-252581 (Japanese) (with translation appended) | NEC_2022_DE_0000248 | NEC_2022_DE_0000288 | FL, ID |
| 6 | Japanese Patent App. No. 2009-015262 (Japanese) (with translation appended) | NEC_2022_DE_0000674 | NEC_2022_DE_0000725 | FL |
| 7 | ExoPlayer Source Code | ExoPlayer_0000001 | ExoPlayer_0163407 | |
| 8 | Hls.js Source Code | HLSjs_0000001 | HLSjs_0131355 | |
| 9 | Media3 Source Code | Media3_0000001 | Media3_0031071 | |
| 10 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0799 | AKAM-0799 | |
| 11 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0801 | AKAM-0801 | |
| 12 | Source Code - ███████ physical and/or electronic copies per PO) | AKAM-0802 | AKAM-0803 | |
| 13 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0804 | AKAM-0805 | |
| 14 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0806 | AKAM-0807 | |
| 15 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0817 | AKAM-0818 | |
| 16 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0823 | AKAM-0828 | |
| 17 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0880 | AKAM-0881 | |
| 18 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0882 | AKAM-0882 | |
| 19 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0888 | AKAM-0893 | |
| 20 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0898 | AKAM-0903 | |
| 21 | Source Code - ███████ (physical and/or electronic copies per PO) | AKAM-0904 | AKAM-0904 | |
| 22 | Apple Source Code (physical and/or electronic copies per PO) | APLNECvPEL_000001 | APLNECvPEL_000151 | |
| 23 | JWPlayer Source Code (physical and/or electronic copies per PO) | JW000001 | JW000101 | |
| 24 | Peloton Source Code (physical and/or electronic copies per PO) | PTON-NEC-SC-00001 | PTON-NEC-SC-00290 | |
| 25 | VisualOn Source Code (physical and/or electronic copies per PO) | VISUALON_SC_000001 | VISUALON_SC_000338 | |
| 26 | Peloton Premium Services & Support Monthly Review | AKAM-0154 | AKAM-0535 | |
| 27 | Akamai Adaptive Media Delivery Implementation Guide | AKAM-0536 | AKAM-0605 | |
| 28 | Exo - ███████ | ExoPlayer_0145834 | ExoPlayer_0145856 | DUP |
| 29 | Exo - ███████ | ExoPlayer_0145863 | ExoPlayer_0145871 | DUP |
| 30 | Patent License Agreement b/t NEC Corporation and ███████ | NEC_2022_DE_0002466 | NEC_2022_DE_0002482 | 402 |
| 31 | NEC Patent License Agreement b/t NEC Corp. and ███████ | NEC_2022_DE_0218929 | NEC_2022_DE_0218949 | 402 |
| 32 | NEC Patent License Agreement b/t NEC Corp. and ███████ | NEC_2022_DE_1064284 | NEC_2022_DE_1064299 | 402 |
| 33 | NEC Patent License Agreement b/t NEC Corp. and ███████ | NEC_2022_DE_1083204 | NEC_2022_DE_1083219 | 402, ID |
| 34 | Patent License Agreement b/t NEC Corporation and ███████ | NEC_2022_DE_1083220 | NEC_2022_DE_1083235 | 402, ID |
| 35 | NEC Patent License Agreement b/t NEC Corp. and ███████ | NEC_2022_DE_1093815 | NEC_2022_DE_1093828 | 402 |
| 36 | NEC Patent License and Release Agreement b/t NEC Corp. and ███████ | NEC_2022_DE_1095388 | NEC_2022_DE_1095400 | 402 |
| 37 | NEC Patent License Agreement b/t NEC Corp., ███████ | NEC_2022_DE_1095401 | NEC_2022_DE_1095412 | 402 |
| 38 | Excel spreadsheet - ███ financial statements | NEC_2022_DE_1093829 | NEC_2022_DE_1093829 | |
| 39 | ███████ profitability chart | ███_00000001 | ███_00000001 | |
| 40 | "The Peloton Story - Our Company and Mission" obtained from https://www.onepeloton.com/company | NA | NA | 402, 901 |
| 41 | 2006 IEEE Article titled "An Analysis of Constant Bitrate and Constant PSNR Video Encoding for Wireless Networks" by Tanir Ozcelebi, et al. | NA | NA | 402, 403, 602/F, 901 |
| 42 | ACM Digital Library article titled "Receiver Driven Rate Adaptation for Wireless Multimedia Applications" by Daniel Havey, et al. | NA | NA | 402, 403 |
| 43 | Adam McAmis GitHub repository page, https://github.com/mcamis/hls.js | NA | NA | 402, 602/F, 901 |
| 44 | Adam McAmis GitHub repository page, https://github.com/mcamis/hls.js/blob/master/src/controller/abr-controller.ts | NA | NA | 402, 403, 602/F, 901 |
| 45 | Adam McAmis GitHub repository page, https://github.com/mcamis/hls.js/blob/master/src/controller/abr-controller.ts | NA | NA | 402, 403, 602/F, 901 |
| 46 | Adam McAmis GitHub repository page, https://github.com/mcamis/hls.js/tree/master/src | NA | NA | 402, 403, 602/F, 901 |
| 47 | Adam McAmis GitHub repository page, https://github.com/mcamis/hls.js/tree/master/src/controller | NA | NA | 402, 403, 602/F, 901 |
| 48 | Adam McAmis GitHub repository page, https://github.com/mcamis?tab=repositories | NA | NA | 402, 403, 602/F, 901 |
| 49 | Apple webpage printout: https://apps.apple.com/us/app/peloton-fitness-workouts/id792750948 | NA | NA | |
| 50 | Apple webpage printout: https://apps.apple.com/us/app/peloton-strength/id6476712925 | NA | NA | |
| 51 | Business Insider Article titled "Peloton hit with issues during world-record ride attempt on Thanksgiving Day" | NA | NA | 402, 403, 602/F, 801, 901, OS |
| 52 | Commission Opinion in the Matter of Certain Fitness Devices, Streaming Components thereof, and Systems Containing Same, Inv. No. 337-TA-1265 | NA | NA | 402, 403, 602/F, 901, NE, MIL |
| 53 | Email from K. McLeod to R. Santos re IT > Buffering "Last Mile" Analytics Tool | NA | NA | 402, 602/F, 801, 901 |
| 54 | Email from Peloton re 'Welcome to the Peloton family' | NA | NA | |
| 55 | Email from R. Luick to D. Crossley re Android Architecture - 2021-05-05 Android Architecture Advisory Town Hall | NA | NA | 402, 602/F, 801, 901 |
| 56 | Google search of the definition of 'approximate' | NA | NA | 402, 403, 602/F, 901 |
| 57 | Journal of Computer and Communications article titled "Analysis of Video Quality Variation with Different Bit Rates of H.264 Compression" by Yen-Jen Chen, et al. | NA | NA | 402, 403, 602/F, 801, 901 |
| 58 | List of Peloton products and associated patents obtained from https://www.onepeloton.com/legal/patents | NA | NA | 402, 403, 602/F, 901 |
| 59 | List of Peloton products and associated patents obtained from Wayback Machine captured March 2025 | NA | NA | 402, 403, 602/F 901 |
| 60 | List of Peloton products and associated patents obtained from Wayback Machine captured Sept. 2024 | NA | NA | 402, 403, 602/F 901 |
| 61 | Microsoft document titled "Live and On-Demand Video with Silverlight and IIS Smooth Streaming " | NA | NA | 402, 901 |
| 62 | Peloton FY2025 highlights | NA | NA | 402, 403, 901 |
| 63 | Peloton News: "Motivation That Moves You: Peloton unveils new brand positioning, new campaign, and first-ever tagline" | NA | NA | |
| 64 | IPR2023-01239 - Combined Docket Entries | NA | NA | 402, 403, MD, DUP, NE, MIL |
| 65 | IPR2023-01239 - Ex 1004 (Chou - prior art reference) | NA | NA | 402, 403, DUP, MIL |
| 66 | IPR2023-01239 - Ex 1006 (Reader Declaration) | NA | NA | 402, 403, 702, DUP, MIL |
| 67 | IPR2023-01239 - Ex 1016 (Wang - prior art reference) | NA | NA | 402, 403, DUP, MIL |
| 68 | IPR2023-01239 - Ex 2015 (Reader Deposition Transcript) | NA | NA | 402, 403, DUP, IND, 702, MIL |
| 69 | IPR2023-01239 - Paper 15 (Revised Petition) | NA | NA | 402, 403, NE, DUP, MIL |
| 70 | IPR2023-01239 - Paper 43 (Final Written Decision Determining No Challenged Claims of U.S. Patent No. 8,752,101 Unpatentable) | NA | NA | 402, 403, DUP, NE, MIL |
| 71 | Raul Santo GitHub repository page, https://github.com/stars/Tecnico1931/lists/media-eng | NA | NA | 402, 901, ID |
| 72 | Raul Santo GitHub repository page, https://github.com/Tecnico1931?tab=repositories | NA | NA | 402, 901 |
| 73 | video downloaded from www.youtube.com/watch?app=desktop&v=BVr2tlK2w08 | NA | NA | |
| 74 | https://theclipout.com/peloton-investigates-streaming-performance-issue | NA | NA | 402, 403, 602/F, 801, 901 |
| 75 | Apple Business Records Declaration | NA | NA | |
| 76 | JWPlayer Business Records Declaration | NA | NA | |
| 77 | Peloton Interactive SEC Form 10-Q (Q1 FY2024) | NA | NA | 402, 403, 901 |
| 78 | Peloton Interactive SEC Form 10-Q (Q2 FY2024) | NA | NA | 402, 403, 901 |
| 79 | Peloton Interactive SEC Form 10-Q (Q1 FY2026) | NA | NA | 402, 403, 901 |
| 80 | Peloton Interactive SEC Form 10-Q (Q2 FY2026) | NA | NA | 402, 403, 901 |
| 81 | Peloton Interactive SEC Form 10-Q (Q3 FY2026) | NA | NA | 402, 403, 901 |
| 82 | Peloton Interactive Q4 FY2025 Shareholder Letter | NA | NA | 402, 403, 901 |
| 83 | Peloton Interactive Q1 FY2026 Earnings Release | NA | NA | 402, 403, 901 |
| 84 | Peloton Interactive Q2 FY2026 Earnings Release | NA | NA | 402, 403, 901 |
| 85 | Peloton Interactive Q3 FY2026 Earnings Release | NA | NA | 402, 403, 901 |
| 86 | Peloton Interactive Q3 FY2026 Earnings Presentation | NA | NA | 402, 403, 901 |
| 87 | Final Written Decision, Aylo v. DISH (IPR2024-00045) (Almeroth Depo Ex. 15) | NA | NA | 402, 403, 702, 901 |
| 88 | Final Written Decision, Aylo v. DISH (IPR2024-00146) (Almeroth Depo Ex. 14) | NA | NA | 402, 403, 702, 901 |
| 89 | Final Written Decision, FuboTV v. DISH (IPR2024-00917) (Almeroth Depo Ex. 16) | NA | NA | 402, 403, 901, NE |

| | | | | |
|---|---|---|---|---|
| 90 | Final Written Decision, FuboTV v. DISH (IPR2024-00918) (Almeroth Depo Ex. 13) | | NA | 402, 403, 901, NE |
| 91 | License Agreement b/t ███ and NEC Corporation | NEC_2022_DE_0002443 | NEC_2022_DE_0002461 | MIL |
| 92 | Patent Cross License Agreement b/t NEC Corporation and ████ | NEC_2022_DE_0002483 | NEC_2022_DE_0002504 | MIL |
| 93 | Patent Cross License Agreement b/t NEC Corporation and ████████ | NEC_2022_DE_0002505 | NEC_2022_DE_0002521 | MIL |
| 94 | Patent Cross License Agreement b/t NEC Corp. and ██████ | NEC_2022_DE_0002522 | NEC_2022_DE_0002539 | MIL |
| 95 | Patent Cross License Agreement b/t NEC Corporation and ████████ | NEC_2022_DE_0002540 | NEC_2022_DE_0002554 | MIL |
| 96 | Patent Cross License Agreement b/t NEC Corporation and ██████████ █ | NEC_2022_DE_0002555 | NEC_2022_DE_0002573 | MIL |
| 97 | Patent License Agreement for Mobile Products b/t NEC Corp. and ████████ | NEC_2022_DE_0002574 | NEC_2022_DE_0002608 | MIL |
| 98 | Patent License Agreement for Mobile Products b/t NEC Corporation and ████ | NEC_2022_DE_0002609 | NEC_2022_DE_0002623 | MIL |
| 99 | Letter from R. Maier to Peloton Interactive re NEC Corp. Patent Portfolio | NEC_2022_DE_0219019 | NEC_2022_DE_0219019 | 403, 901, NT, NE, LC |
| 100 | Fedex label re Letter from R. Maier to Peloton Interactive re NEC Corp. Patent Portfolio | NEC_2022_DE_0219020 | NEC_2022_DE_0219020 | 901 |
| 101 | Fedex receipt re Letter from R. Maier to Peloton Interactive re NEC Corp. Patent Portfolio | NEC_2022_DE_0219021 | NEC_2022_DE_0219021 | 901 |
| 102 | NEC Presentation titled "FY2009 Mid-Term Plan 'Media Communication'" (October 2009) (with translation appended) | NEC_2022_DE_0341242 | NEC_2022_DE_0341249 | 901, FL |
| 103 | NEC Presentation titled "FY2009 Mid-Term Plan 'Media Communication' #1" (December 2009) (with translation appended) | NEC_2022_DE_0341340 | NEC_2022_DE_0341344 | 901, FL |
| 104 | IEEE Best Paper Award Certificate to H. Yoshida | NEC_2022_DE_0370299 | NEC_2022_DE_0370299 | |
| 105 | IEICE Technical Report: Video Streaming Control based on Fluid Modeling of Video Packet (with tranlsation appended) | NEC_2022_DE_0561346 | NEC_2022_DE_0561351 | 402, 403, 801, 901 FL |
| 106 | Computer Networking, A Top Down Approach, 7th Edition | NEC_2022_DE_0608721 | NEC_2022_DE_0609568 | 402, 403, 801, 901 |
| 107 | Real Time Streaming Protocol Memorandum, The Internet Society | NEC_2022_DE_0610525 | NEC_2022_DE_0610616 | 402, 403, 801, 901 |
| 108 | Paper titled "An Experimental Evaluation of Rate-Adaptation Algorithms in Adaptive Streaming over HTTP" | NEC_2022_DE_0610617 | NEC_2022_DE_0610629 | 402, 403, DUP |
| 109 | NEC Presentation titled "Content sharing mid-term research plan" (2010.09.25) | NEC_2022_DE_0619302 | NEC_2022_DE_0619316 | FL, ID |
| 110 | IEEE Communications Society paper titled 'Proposal and Evaluation of Joint Rate Control for Stored Video Streaming' | NEC_2022_DE_0822031 | NEC_2022_DE_0822036 | |
| 111 | NEC 2021 Annual Report | NEC_2022_DE_1048779 | NEC_2022_DE_1048858 | 402, 801, 901 |
| 112 | NEC Corporation Patent Licensing Program Streaming Media Portfolio (2023-2024) | NEC_2022_DE_1054795 | NEC_2022_DE_1054803 | |
| 113 | NEC presentation titled "NEC Labs America" | NEC_2022_DE_1058169 | NEC_2022_DE_1058227 | |
| 114 | Akamai Product Brief - Adaptive Media Delivery | NEC_2022_DE_1081020 | NEC_2022_DE_1081021 | |
| 115 | Akamai Customer Innovation Survey, Measuring Video Quality and Its Impact to Your Bottom Line | NEC_2022_DE_1081022 | NEC_2022_DE_1081027 | |
| 116 | Akamai Press Release, New Study: Quality of OTT Video Streaming Experiences Directly Tied to Viewer Loyalty, Service Provider Success | NEC_2022_DE_1081028 | NEC_2022_DE_1081031 | |
| 117 | Akamai White Paper titled "Understanding the Value of Consistency in OTT Video Delivery" | NEC_2022_DE_1081032 | NEC_2022_DE_1081043 | |
| 118 | Akamai White Paper titled "Understanding the Value of Consistency in OTT Video Delivery" | NEC_2022_DE_1081044 | NEC_2022_DE_1081054 | |
| 119 | Adaptive Streaming Reference (Web) from JWPlayer.com | NEC_2022_DE_1081055 | NEC_2022_DE_1081060 | 403, 801, 901 |
| 120 | AdaptiveTrackSelection from developer.android.com | NEC_2022_DE_1081061 | NEC_2022_DE_1081083 | 403, 801, 901 |
| 121 | Peloton webpage https://members.onepeloton.com/classes/all | NEC_2022_DE_1081101 | NEC_2022_DE_1081102 | 403 |
| 122 | DASH webpage https://developer.android.com/media/media3/exoplayer/dash | NEC_2022_DE_1081103 | NEC_2022_DE_1081107 | 403, 801, 901 |
| 123 | HLS webpage https://developer.android.com/media/media3/exoplayer/hls | NEC_2022_DE_1081167 | NEC_2022_DE_1081178 | 403, 801, 901 |
| 124 | Live Streaming webpage https://developer.android.com/media/media3/exoplayer/live-streaming | NEC_2022_DE_1081185 | NEC_2022_DE_1081191 | 403, 801, 901 |
| 125 | Media Source Extensions, W3C Working Draft | NEC_2022_DE_1081199 | NEC_2022_DE_1081295 | 402, 403, 801, 901 |
| 126 | ██████████ | NEC_2022_DE_1081326 | NEC_2022_DE_1081334 | 402, 403, 801, 901 |
| 127 | ██████████ | NEC_2022_DE_1081335 | NEC_2022_DE_1081337 | 402, 403, 801, 901 |
| 128 | Peloton webpage https://onepeloton.com/app | NEC_2022_DE_1081464 | NEC_2022_DE_1081469 | 403, 901 |
| 129 | Peloton webpage "Your Way, Thousands of Classes, No Equipment Needed" from https:www.onepeloton.com/app | NEC_2022_DE_1081470 | NEC_2022_DE_1081476 | 403, 901 |
| 130 | Core Media, Represent time-based audio-visual assets with essential data types from developer.apple.com | NEC_2022_DE_1084850 | NEC_2022_DE_1084853 | 801, 901 |
| 131 | HTTP Live Streaming, Send audio and video to iOS, tvOS, and macOS devices from developer.apple.com | NEC_2022_DE_1084858 | NEC_2022_DE_1084862 | 801, 901 |
| 132 | Paper titled "HTTP Live Streaming" | NEC_2022_DE_1090686 | NEC_2022_DE_1090745 | 402, 403, 801, 901 |
| 133 | 2024 NEC Integrated Report | NEC_2022_DE_1090759 | NEC_2022_DE_1090810 | |
| 134 | [RESERVED] | | | |
| 135 | Abstract titled "HTTP Live Streaming" from developer.apple.com | NEC_2022_DE_1093768 | NEC_2022_DE_1093770 | 402, 801, 901 |
| 136 | Licensing Executives Society High Tech Sector Royalty Rate & Deal Terms Survey 2017 | NEC_2022_DE_1093771 | NEC_2022_DE_1093814 | |
| 137 | Peloton Interactive SEC Form 10-K | NEC_2022_DE_1093835 | NEC_2022_DE_1093949 | 402, 403 |
| 138 | Settlement Agreement b/t NEC Corp. and ████ | NEC_2022_DE_1095376 | NEC_2022_DE_1095387 | MIL |
| 139 | Chicago-Kent Journal of Intellectual Property article titled 'Patent Citation Analysis and Patent Damages' by P. Malaspina | PTON_PERRYMAN_000372 | PTON_PERRYMAN_000389 | |
| 140 | Peloton Interactive Draft SEC Form S-1 | PTON-NEC-00000001 | PTON-NEC-00000457 | 402, 403 |
| 141 | Peloton Interactive Draft SEC Form S-1 | PTON-NEC-00000458 | PTON-NEC-00000675 | 402, 403 |
| 142 | Peloton Interactive Draft SEC Form S-1 | PTON-NEC-00000676 | PTON-NEC-00000896 | 402, 403 |
| 143 | Peloton Interactive Draft SEC Form S-1 | PTON-NEC-00000897 | PTON-NEC-00001094 | 402, 403 |
| 144 | Peloton Interactive SEC Form S-1 | PTON-NEC-00001095 | PTON-NEC-00001681 | 402, 403 |
| 145 | Amendment No. 1 to Peloton Interactive SEC Form S-1 | PTON-NEC-00001682 | PTON-NEC-00002504 | 402, 403 |
| 146 | Amendment No. 2 to Peloton Interactive SEC Form S-1 | PTON-NEC-00002505 | PTON-NEC-00002727 | 402, 403 |
| 147 | Amendment No. 3 to Peloton Interactive SEC Form S-1 | PTON-NEC-00002728 | PTON-NEC-00002936 | 402, 403 |
| 148 | Peloton Prospectus | PTON-NEC-00002937 | PTON-NEC-00003138 | 402, 403 |
| 149 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003139 | PTON-NEC-00003241 | 402, 403 |
| 150 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003242 | PTON-NEC-00003305 | 402, 403 |
| 151 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003306 | PTON-NEC-00003375 | 402, 403 |
| 152 | Peloton Interactive SEC Form 10-K | PTON-NEC-00003376 | PTON-NEC-00003493 | 402, 403 |
| 153 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003494 | PTON-NEC-00003558 | 402, 403 |
| 154 | Peloton Interactive Annual Report | PTON-NEC-00003581 | PTON-NEC-00003676 | 402, 403 |
| 155 | Peloton Interactive Proxy Statement | PTON-NEC-00003677 | PTON-NEC-00003756 | 402, 403 |
| 156 | Peloton Interactive First Quarter Fiscal 2020 Financial Results | PTON-NEC-00003779 | PTON-NEC-00003779 | 402, 403 |
| 157 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003824 | PTON-NEC-00003988 | 402, 403 |
| 158 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00003989 | PTON-NEC-00004074 | 402, 403 |
| 159 | Peloton Interactive SEC Form 10-K | PTON-NEC-00004075 | PTON-NEC-00004192 | 402, 403 |
| 160 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00004193 | PTON-NEC-00004267 | 402, 403 |
| 161 | Peloton Interactive Proxy Statement | PTON-NEC-00004268 | PTON-NEC-00004355 | 402, 403 |
| 162 | Peloton Interactive Annual Report | PTON-NEC-00004356 | PTON-NEC-00004475 | 402, 403 |
| 163 | Peloton Interactive Q2 2021 Earnings Call | PTON-NEC-00004496 | PTON-NEC-00004511 | 402, 403 |
| 164 | Peloton Interactive Q3 2021 Earnings Call | PTON-NEC-00004512 | PTON-NEC-00004526 | 402, 403 |
| 165 | Peloton Interactive Q4 2021 Earnings Call | PTON-NEC-00004527 | PTON-NEC-00004542 | 402, 403 |
| 166 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00004604 | PTON-NEC-00004867 | 402, 403 |
| 167 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00004868 | PTON-NEC-00004919 | 402, 403 |
| 168 | Peloton Interactive SEC Form 10-K | PTON-NEC-00004920 | PTON-NEC-00005278 | 402, 403 |
| 169 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00005279 | PTON-NEC-00005332 | 402, 403 |
| 170 | Peloton Interactive Lender Presentation | PTON-NEC-00005333 | PTON-NEC-00005367 | 402, 403 |
| 171 | Peloton Interactive Annual Report 2022 | PTON-NEC-00005395 | PTON-NEC-00005518 | 402, 403 |
| 172 | Peloton Interactive Proxy Statement 2022 | PTON-NEC-00005519 | PTON-NEC-00005609 | 402, 403 |
| 173 | Peloton Interactive Q1 2022 Earnings Call | PTON-NEC-00005610 | PTON-NEC-00005624 | 402, 403 |
| 174 | Peloton Interactive Q2 2022 Earnings Call | PTON-NEC-00005625 | PTON-NEC-00005639 | 402, 403 |
| 175 | Peloton Interactive Q3 2022 Earnings Call | PTON-NEC-00005640 | PTON-NEC-00005653 | 402, 403 |
| 176 | Peloton Interactive Q4 2022 Earnings Call | PTON-NEC-00005654 | PTON-NEC-00005667 | 402, 403 |
| 177 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00005709 | PTON-NEC-00005759 | 402, 403 |
| 178 | Peloton Interactive Q1 2023 Earnings Call | PTON-NEC-00005760 | PTON-NEC-00005774 | 402, 403 |
| 179 | Peloton Interactive Q2 2023 Earnings Call | PTON-NEC-00005775 | PTON-NEC-00005787 | 402, 403 |
| 180 | Peloton Tread User Manual | PTON-NEC-00005828 | PTON-NEC-00005858 | |
| 181 | Peloton Row User Manual | PTON-NEC-00005859 | PTON-NEC-00005877 | |
| 182 | Peloton Guide User Manual | PTON-NEC-00005878 | PTON-NEC-00005926 | |
| 183 | Peloton Tread+ User Manual | PTON-NEC-00005927 | PTON-NEC-00005947 | |
| 184 | Peloton Bike+ User Manual | PTON-NEC-00005948 | PTON-NEC-00006005 | |
| 185 | Peloton Bike User Manual | PTON-NEC-00006006 | PTON-NEC-00006053 | |
| 186 | Peloton Console Product Advisement Notices | PTON-NEC-00006159 | PTON-NEC-00006160 | |
| 187 | Peloton Bike Manual | PTON-NEC-00006162 | PTON-NEC-00006183 | |
| 188 | Peloton Bike Product Advisement Notices | PTON-NEC-00006185 | PTON-NEC-00006186 | |
| 189 | Peloton Bike+ Quick Start Guide | PTON-NEC-00006193 | PTON-NEC-00006201 | |
| 190 | Peloton Tread Tablet User Manual, Model No. PLTN-TC1VS-2 | PTON-NEC-00006260 | PTON-NEC-00006274 | |
| 191 | Peloton Console User Manual, Model No. PLTN-RB1V1 | PTON-NEC-00006308 | PTON-NEC-00006321 | |
| 192 | Peloton Cycle Console User Manual, Model No. 001 | PTON-NEC-00006322 | PTON-NEC-00006333 | |
| 193 | Diagram: VOD Workflow V2 | PTON-NEC-00006334 | PTON-NEC-00006338 | |

| # | Description | Begin Bates | End Bates | Objections |
|---|---|---|---|---|
| 194 | Peloton Streaming Production Studio Flow Diagram, Ver. 1.0 | PTON-NEC-00006463 | PTON-NEC-00006465 | 901, ID |
| 195 | Peloton Streaming Production Studio Flow Diagram, Ver. 1.0 | PTON-NEC-00006469 | PTON-NEC-00006477 | 901, ID |
| 196 | Peloton Streaming Production Studio Flow Diagram, Ver. 2.0 | PTON-NEC-00006487 | PTON-NEC-00006495 | 901 |
| 197 | VisualOn OnStream MediaPlayer+ Product Release Notes, Ver. 3.13.0 | PTON-NEC-00006498 | PTON-NEC-00006507 | 402, 403, 801, 901 |
| 198 | Diagrams: Peloton System Architecture and Peloton Streaming Overview | PTON-NEC-00006508 | PTON-NEC-00006509 | |
| 199 | Peloton document titled "Peloton Video Streaming - Security" | PTON-NEC-00006832 | PTON-NEC-00006835 | |
| 200 | Peloton document titled "Peloton Video Streaming - Security" | PTON-NEC-00006836 | PTON-NEC-00006845 | |
| 201 | Akamai Root Cause Analysis | PTON-NEC-00006928 | PTON-NEC-00006930 | 402, 403, 801, 901 |
| 202 | Exoplayer Bike TestRail | PTON-NEC-00009893 | PTON-NEC-00009895 | 402, 901 |
| 203 | Exoplayer Thread TestRail | PTON-NEC-00009896 | PTON-NEC-00009898 | 402, 901 |
| 204 | Akamai Service Order Form, Order ID 127032 w/ Terms & Conditions | PTON-NEC-00009899 | PTON-NEC-00009902 | |
| 205 | Akamai Service Order Form, Order ID 83284 | PTON-NEC-00009903 | PTON-NEC-00009905 | |
| 206 | Akamai Service Order Form, Order ID 151966 | PTON-NEC-00009906 | PTON-NEC-00009908 | |
| 207 | Akamai Service Order Form, Order ID 172613 | PTON-NEC-00009909 | PTON-NEC-00009912 | |
| 208 | Akamai Service Order Form, Order ID 184883 | PTON-NEC-00009913 | PTON-NEC-00009916 | |
| 209 | YouBora Metrics & Dimensions | PTON-NEC-00009917 | PTON-NEC-00009939 | 402, 403, 801, 901 |
| 210 | AWS Private Pricing Addendum b/t Amazon Web Services, Inc. and Peloton Interactive, Inc. | PTON-NEC-00009940 | PTON-NEC-00009945 | |
| 211 | Akamai Terms and Conditions | PTON-NEC-00178789 | PTON-NEC-00178791 | 402, 901, MD |
| 212 | JW Player Enterprise Order Form for Peloton Interactive, Inc. | PTON-NEC-00009955 | PTON-NEC-00009957 | |
| 213 | AWS Private Pricing Addendum b/t Amazon Web Services, Inc. and Peloton Interactive, Inc. | PTON-NEC-00009958 | PTON-NEC-00009962 | ID |
| 214 | Akamai Service Order Form, Order ID 257195 | PTON-NEC-00009963 | PTON-NEC-00009966 | |
| 215 | Akamai Service Order Form, Order ID 127032 | PTON-NEC-00010005 | PTON-NEC-00010007 | |
| 216 | Document titled "What is AWS Elemental MediaConvert?" from https://docs.aws.amazon.com/mediaconvert/latest/ug/what-is.html | PTON-NEC-00010020 | PTON-NEC-00010021 | 402, 901 |
| 217 | YouBora Suite Product Integration and Implementation presentation | PTON-NEC-00010029 | PTON-NEC-00010052 | 402, 403, 801, 901 |
| 218 | JW Player Enterprise Order Form for Peloton Interactive, Inc. | PTON-NEC-00010053 | PTON-NEC-00010055 | |
| 219 | External Link Account Entitlement Addendum for Reader Apps to the Apple Developer Program License Agreement | PTON-NEC-00010056 | PTON-NEC-00010060 | |
| 220 | AWS Professional Services Statement of Work b/t Peloton Interactive and Amazon Web Services | PTON-NEC-00010061 | PTON-NEC-00010067 | 402, 901 |
| 221 | AWS Private Pricing Addendum b/t Amazon Web Services, Inc. and Peloton Interactive, Inc. | PTON-NEC-00010080 | PTON-NEC-00010086 | |
| 222 | Amendment to Akamai Order ID 289026 | PTON-NEC-00010092 | PTON-NEC-00010095 | 402, 901 |
| 223 | Akamai Statement of Work | PTON-NEC-00010096 | PTON-NEC-00010099 | 402, 901 |
| 224 | Akamai Service Order Form, Order ID 328139 | PTON-NEC-00010110 | PTON-NEC-00010112 | |
| 225 | JWPlayer Features, Fixes & Improvements Release 8.26.1 from https://github.com/jwplayer/jwplayer-documentation/releases | PTON-NEC-00010113 | PTON-NEC-00010140 | 402, 901 |
| 226 | NicePeopleAtWork Metrics, https://documentation.npaw.com/docs/analytics-metrics | PTON-NEC-00010262 | PTON-NEC-00010270 | 402, 901 |
| 227 | User Metrics from https://documentation.npaw.com/npaw/docs/user-metrics | PTON-NEC-00010271 | PTON-NEC-00010275 | 402, 901 |
| 228 | Elemental Technologies Inc. System Configuration & Specification, System Estimator, v. 1202 | PTON-NEC-00010297 | PTON-NEC-00010300 | 402, 901 |
| 229 | Peloton Case Study, Live Streaming & VOD Creation Workflows | PTON-NEC-00010842 | PTON-NEC-00010845 | 402, 403, 801, 901 |
| 230 | Subscribers and Sales Metrics from 6/24/22 to 6/30/22 | PTON-NEC-00010847 | PTON-NEC-00010847 | 402, 403, 901 |
| 231 | Weekly Sales Financing Penetration for July 2022 | PTON-NEC-00011105 | PTON-NEC-00011107 | 402, 403, 901 |
| 232 | Global Sales Weekly Overview | PTON-NEC-00011108 | PTON-NEC-00011113 | 402, 403, 901 |
| 233 | Walter Exhibit 6 (combined Voice of the Member Reports) | PTON-NEC-00012889 / PTON-NEC-00013106 / PTON-NEC-00016050 / PTON-NEC-00018388 / PTON-NEC-00018398 / PTON-NEC-00018471 / PTON-NEC-00018490 / PTON-NEC-00018501 / PTON-NEC-00018550 / PTON-NEC-00018630 / PTON-NEC-00018656 / PTON-NEC-00018701 / PTON-NEC-00018712 / PTON-NEC-00018747 / PTON-NEC-00018771 / PTON-NEC-00019041 / PTON-NEC-00019830 / PTON-NEC-00019837 / PTON-NEC-00029951 / PTON-NEC-00036301 / PTON-NEC-00042789 / PTON-NEC-00045313 / PTON-NEC-00056014 / PTON-NEC-00056848 / PTON-NEC-00091766 / PTON-NEC-00092651 / PTON-NEC-00092930 / PTON-NEC-00093134 | PTON-NEC-00012890 / PTON-NEC-00013107 / PTON-NEC-00016051 / PTON-NEC-00018389 / PTON-NEC-00018411 / PTON-NEC-00018479 / PTON-NEC-00018499 / PTON-NEC-00018514 / PTON-NEC-00018574 / PTON-NEC-00018642 / PTON-NEC-00018682 / PTON-NEC-00018710 / PTON-NEC-00018723 / PTON-NEC-00018759 / PTON-NEC-00018783 / PTON-NEC-00019042 / PTON-NEC-00019831 / PTON-NEC-00019838 / PTON-NEC-00029952 / PTON-NEC-00036303 / PTON-NEC-00042796 / PTON-NEC-00045315 / PTON-NEC-00056017 / PTON-NEC-00056850 / PTON-NEC-00091774 / PTON-NEC-00092659 / PTON-NEC-00092944 / PTON-NEC-00093142 | 106, 402, 403, 602/F, 801, 901, 1006, DUP, MD |
| 234 | Global Daily Metrics Report | PTON-NEC-00014290 | PTON-NEC-00014290 | 402, 901 |
| 235 | Email from K. Winn to D. Crossley re Android Team - Exoplayer Migration | PTON-NEC-00015799 | PTON-NEC-00015800 | 402, 403, 602/F, 801, 901 |
| 236 | Email from 'hot4-dev' to D. Crossley re A1-316 - enable exoplayer for inclass playback | PTON-NEC-00015829 | PTON-NEC-00015829 | 402, 403, 602/F, 801, 901 |
| 237 | Email from K. Zetterstrom re enable exoplayer for inclass playback | PTON-NEC-00015830 | PTON-NEC-00015831 | 402, 403, 602/F, 801, 901 |
| 238 | Email from K. Winn to D. Crossley re Dagger Modules for Injection ExoPlayer | PTON-NEC-00015963 | PTON-NEC-00015963 | 402, 403, 602/F, 801, 901 |
| 239 | Email from R. Luick to D. Crossley re [redacted] used for inclass playback with Exoplayer | PTON-NEC-00015975 | PTON-NEC-00015977 | 402, 403, 602/F, 801, 901 |
| 240 | Email from F. Yong to D. Crossley re Connected Fitness Application Team - CFX Feature Toggles | PTON-NEC-00016103 | PTON-NEC-00016106 | 402, 403, 602/F, 901 |
| 241 | Email (native file) from J. Konowitch to D. Crossley re [Confluence] Streaming Engineering > Product Platforms Contacts | PTON-NEC-00016758 | PTON-NEC-00016758 | 402, 403, 602/F, 901 |
| 242 | Email from W. Bonnefond to D. Crossley re Stop Exoplayer libraries from obfuscated | PTON-NEC-00016802 | PTON-NEC-00016802 | 402, 403, 602/F, 901 |
| 243 | Email from K. Grant to D. Crossley re Upgrade ExoPlayer for Home | PTON-NEC-00016831 | PTON-NEC-00016831 | 402, 403, 602/F, 901 |
| 244 | Email from M. Huang to S. Mankala re ExoPlayer Integration | PTON-NEC-00017108 | PTON-NEC-00017108 | 402, 403, 602/F, 901 |
| 245 | Email from K. Winn to S. Mantosh re. enable ExoPlayer for inclass playback | PTON-NEC-00017131 | PTON-NEC-00017131 | 402, 403, 602/F, 901 |
| 246 | Email from "hot4-dev" to "pelotoncycle/android" re enable ExoPlayer for inclass playback | PTON-NEC-00017135 | PTON-NEC-00017135 | 402, 403, 602/F, 901 |
| 247 | Email from E. Perez re ARCH-526-7: provide structure for each team to own exoplayer versions | PTON-NEC-00017271 | PTON-NEC-00017271 | 402, 403, 602/F, 901 |
| 248 | Bike Platform Update | PTON-NEC-00017873 | PTON-NEC-00017880 | 402, 901 |
| 249 | Email from K. Zetterstrom re AX-424 Drive Now Playing off of video stream, and sync video to timer after buffer | PTON-NEC-00018077 | PTON-NEC-00018078 | 402, 403, 602/F, 901 |
| 250 | Meeting invite re Post-Mortem: Inclass player video stutter issue | PTON-NEC-00018115 | PTON-NEC-00018115 | 402, 403, 602/F, 801, 901 |
| 251 | Peloton presentation titled "Voice of the Member" (NOV 2020) | PTON-NEC-00018398 | PTON-NEC-00018411 | 106 |
| 252 | Peloton presentation titled "Peloton Tread Launch Monthly" | PTON-NEC-00018444 | PTON-NEC-00018470 | 402, 901 |
| 253 | Peloton presentation titled "Voice of the Member" | PTON-NEC-00018501 | PTON-NEC-00018514 | 901 |
| 254 | Peloton presentation titled "Voice of the Member" | PTON-NEC-00018656 | PTON-NEC-00018668 | 901 |
| 255 | Email from J. Konowitch re Streaming Engineering > Product Platforms Contacts | PTON-NEC-00018903 | PTON-NEC-00018904 | 402, 403, 602/F, 801, 901 |
| 256 | Email notice from Akamai to R. Santos re Origin provisioning completion | PTON-NEC-00018927 | PTON-NEC-00018928 | 402, 403, 602/F, 901 |
| 257 | Akamai invoice to Peloton Interactive (Inv. No. 20110028775) | PTON-NEC-00018934 | PTON-NEC-00018936 | |
| 258 | Akamai invoice to Peloton Interactive (Inv. No. 21110014955) | PTON-NEC-00018974 | PTON-NEC-00018976 | |
| 259 | Email notice from Akamai to R. Santos re DataStream configuration "VOD" version 3 created successfully | PTON-NEC-00018977 | PTON-NEC-00018977 | 402, 403, 602/F, 901 |
| 260 | Email from Yashwanth T. to S. Sguigna, et al. re Issues today | PTON-NEC-00019235 | PTON-NEC-00019238 | 402, 403, 602/F, 901 |
| 261 | Email from E. Arkush to R. Santos et al. re Media Services Live - Stream Packing | PTON-NEC-00019297 | PTON-NEC-00019300 | 402, 403, 602/F, 901 |
| 262 | Email from F. Yong to F. Shanahan re cardio application team - cardio App Team OKRs | PTON-NEC-00019815 | PTON-NEC-00019817 | 402, 403, 602/F, 901 |
| 263 | Email from K. Zetterstrom to F. Shanahan re Cardio Application Team - CFX Feature Toggles | PTON-NEC-00019819 | PTON-NEC-00019826 | 402, 403, 602/F, 901 |
| 264 | Email from D. Raffone to S. Burch re Q1 Offer Testing to inform Holiday | PTON-NEC-00020111 | PTON-NEC-00020114 | 402, 403, 602/F, 801, 901 |
| 265 | Email from T. Hannan to W. Lynch, et al. re F3 - NA CFU Forecast | PTON-NEC-00022188 | PTON-NEC-00022189 | 402, 403, 602/F, 801, 901 |
| 266 | Peloton document titled "Peloton Cycle Customer Satisfaction Wave 2 Results" | PTON-NEC-00027907 | PTON-NEC-00027960 | |
| 267 | FQ2 2019 Engagement Software Roadmap Overview | PTON-NEC-00028007 | PTON-NEC-00028035 | 402, 901 |
| 268 | Email from K. Zetterstrom re add drift and validate heartbeat events for exoplayer | PTON-NEC-00028134 | PTON-NEC-00028135 | 402, 403, 602/F, 801, 901 |
| 269 | Email from K. Zetterstrom re Android Home Bike/Tread Release v2.2.252 | PTON-NEC-00028142 | PTON-NEC-00028143 | 403, 801, 901 |
| 270 | Email from K. Jiang to 'Android' et al. re ExoPlayer Migration Update and Timeline | PTON-NEC-00029411 | PTON-NEC-00029411 | 403, 801, 901 |
| 271 | Peloton Town Hall | PTON-NEC-00029413 | PTON-NEC-00029446 | 402, 403, 602/F, 801, 901 |
| 272 | Email from B. Healy to B. Olson et al. re Voice of the Member: April 2019 | PTON-NEC-00029951 | PTON-NEC-00029952 | 402, 403, 602/F, 801, 901 |
| 273 | Peloton Beta User Survey | PTON-NEC-00043948 | PTON-NEC-00043961 | |
| 274 | Email from J. Konowitch to A. McAmis re implement buffer metrics action | PTON-NEC-00044257 | PTON-NEC-00044257 | 403, 602/F, 801, 901 |

| No. | Description | Begin Bates | End Bates | Objections |
|---|---|---|---|---|
| 275 | Email from D. Wyatt to A. McAmis re add video quality state to Player | PTON-NEC-00044258 | PTON-NEC-00044258 | 403, 602/F, 801, 901 |
| 276 | Email from H. Hsu to A. McAmis re metrics v2 reporting | PTON-NEC-00044278 | PTON-NEC-00044278 | 401,402, 403, 602/F, 801, 901 |
| 277 | Peloton email re update on your Peloton All-Access Membership | PTON-NEC-00046202 | PTON-NEC-00046204 | 403, 602/F, 801, 901 |
| 278 | Peloton presentation titled "Product Software FY22 Planning Update" | PTON-NEC-00046846 | PTON-NEC-00046856 | 402, 403, 602/F, 801, 901 |
| 279 | Email from R. Santos to J. Sledge re first content delivery spec | PTON-NEC-00049274 | PTON-NEC-00049278 | 403, 602/F, 801, 901 |
| 280 | HLS Validation Report (General, tvOS, macOS, AirPlay2 | PTON-NEC-00051883 | PTON-NEC-00051885 | 403, 602/F, 801, 901 |
| 281 | Email from J. Konowitch to A. McAmis re Player buffer setup | PTON-NEC-00091158 | PTON-NEC-00091158 | 403, 602/F, 801, 901 |
| 282 | Jira update notification to A. McAmis re Player: Low Bitrate at Start | PTON-NEC-00091376 | PTON-NEC-00091376 | 403, 602/F, 801, 901 |
| 283 | Email from K. Zetterstrom re Simple video playback | PTON-NEC-00098269 | PTON-NEC-00098269 | 403, 801, 901 |
| 284 | Email from K. Zetterstrom re UI-2883 enable video player to take his streams | PTON-NEC-00102162 | PTON-NEC-00102162 | 403, 801, 901 |
| 285 | Email from D. Crossley to K. Zetterstrom re 2020 Team Goals | PTON-NEC-00102803 | PTON-NEC-00102804 | 403, 801, 901 |
| 286 | Email from F. Yong to D. Crossley re Dynamic scenic: Security + Basic stream playback | PTON-NEC-00104935 | PTON-NEC-00104935 | 403, 801, 901 |
| 287 | Meeting invite re Product x Product: Streaming & Blocking Improvements | PTON-NEC-00111827 | PTON-NEC-00111827 | 403, 801, 901 |
| 288 | Peloton document titled "Escalating a Fire / Critical Issue" | PTON-NEC-00123656 | PTON-NEC-00123658 | 403, 602/F, 801, 901 |
| 289 | Email from K. Jiang re OnDemand Video Streaming Resolution Update | PTON-NEC-00124295 | PTON-NEC-00124301 | 403, 801, 901 |
| 290 | Email from D. Packles to K. Jiang, et al. re Rolling Out 1080p to Sapphire Tablets | PTON-NEC-00125146 | PTON-NEC-00125146 | 403, 801, 901 |
| 291 | Email from B. Olson to J. Foley re My 100th ride was tonight with Jessica King | PTON-NEC-00126360 | PTON-NEC-00126361 | 403, 602/F, 801, 901 |
| 292 | Email from J. Foley re My 100th ride was tonight with Jessica King but… | PTON-NEC-00126379 | PTON-NEC-00126382 | 403, 602/F, 801, 901 |
| 293 | Message from A. McAmis | PTON-NEC-00126555 | PTON-NEC-00126555 | 403, 602/F, 801, 901 |
| 294 | Email from J. Yang to A. McAmis re hlsjs adapter | PTON-NEC-00126704 | PTON-NEC-00126704 | 403, 602/F, 801, 901 |
| 295 | Email from D. Wyatt to A. McAmis re Player buffer setup | PTON-NEC-00126978 | PTON-NEC-00126978 | 401, 402, 403, 602/F, 801, 901 |
| 296 | Email from J. Konowitch to A. McAmis re rely on Konowitch internals for video duration | PTON-NEC-00127043 | PTON-NEC-00127043 | 401, 402, 403, 602/F, 801, 901 |
| 297 | Email from E. Perez to 'engagement design reviews' re Android Mobile: Player Migration Design Documentation | PTON-NEC-00128201 | PTON-NEC-00128201 | |
| 298 | Email from J. Byrnes to L. Jesper re Apple Watch on Android TV, mobile, tablet | PTON-NEC-00128377 | PTON-NEC-00128377 | 403, 602/F, 801, 901 |
| 299 | Email from K. Jethwani to H. Thakkar, et al. re secure video content using granular Akamai tokens | PTON-NEC-00128401 | PTON-NEC-00128403 | 801, 901, DUP |
| 300 | Email from EJ Mablekos to H. Hayes, et al. re slow loading on live classes on iOS 15 | PTON-NEC-00128454 | PTON-NEC-00128455 | 403, 801, 901 |
| 301 | HLS Validation Report | PTON-NEC-00128456 | PTON-NEC-00128457 | 403, 801, 901 |
| 302 | Email from EJ Mablekos to R. Santos, et al. re slow loading on live classes on iOS 15 | PTON-NEC-00128522 | PTON-NEC-00128527 | 403, 801, 901 |
| 303 | Peloton document re Rendition Reduction w/ comments | PTON-NEC-00128813 | PTON-NEC-00128817 | 403, 801, 901 |
| 304 | Excel spreadsheet titled "2018 Tech Priorities" | PTON-NEC-00129242 | PTON-NEC-00129242 | 403, 801, 901 |
| 305 | Peloton presentation titled "Peloton Social Personas & Personal Connections - User Research 2021 | PTON-NEC-00129921 | PTON-NEC-00130007 | |
| 306 | Email from R. Santos to J. Mathiesen re slow loading on live classes on iOS 15 | PTON-NEC-00134600 | PTON-NEC-00134605 | 403, 801, 901 |
| 307 | Excel spreadsheet listing Peloton projects prioritized by tier | PTON-NEC-00130674 | PTON-NEC-00130674 | 403, 801, 901 |
| 308 | Email from D. Mulchandani re consolidating video players | PTON-NEC-00138300 | PTON-NEC-00138303 | 403, 801, 901 |
| 309 | Email from K. Winn to D. Mulchandani re video buffer | PTON-NEC-00144760 | PTON-NEC-00144761 | 403, 801, 901 |
| 310 | Email from K. Jiang to D. Winn re video buffer | PTON-NEC-00144762 | PTON-NEC-00144763 | |
| 311 | Email from R. Santos to F. Shanahan re streaming optimiz…this doesn't sound like an advantage | PTON-NEC-00146603 | PTON-NEC-00146603 | |
| 312 | Email from M. Higgins to F. Shanahan re commercial follow up | PTON-NEC-00146775 | PTON-NEC-00146775 | 402, 403, 801 |
| 313 | Email from K. Jethwani re secure video content using Granular Akamai Tokens | PTON-NEC-00146842 | PTON-NEC-00146844 | 801, 901, DUP |
| 314 | Email from K. Romaniuk to various recipients at Peloton re homecoming 2022 Day 1 Media Coverage Report | PTON-NEC-00147172 | PTON-NEC-00147172 | |
| 315 | Peloton Excel spreadsheet showing consolidated global income statement for the month of April 2022. | PTON-NEC-00150523 | PTON-NEC-00150523 | 402, 403 |
| 316 | Peloton Excel spreadsheet showing view of subscription margin over time that breaks out between a defined fixed versus variable cost. | PTON-NEC-00154002 | PTON-NEC-00154002 | |
| 317 | Draft KPMG presentation titled "Analysis of the Weighted Average Cost of Capital for Peloton Interactive, Inc. - Subscription Business" | PTON-NEC-00155241 | PTON-NEC-00155253 | 402, 403, 602/F, 801, 901 |
| 318 | Email from E. Perez | PTON-NEC-00156174 | PTON-NEC-00156188 | 402, 403, 602/F, 801, 901 |
| 319 | Email from L. Lin to D. Crossley re Upgrade ExoPlayer to 2.18.0 and migrate off SimpleExoPlayer | PTON-NEC-00158945 | PTON-NEC-00158945 | 403, 801, 901 |
| 320 | Email from J. Konowitch to A. McAmis | PTON-NEC-00175099 | PTON-NEC-00175099 | 403, 801, 901 |
| 321 | Email from M. Kaur to K. McNabb re live class: infinite spinner observed when trying to join live class | PTON-NEC-00175380 | PTON-NEC-00175381 | 403, 801, 901 |
| 322 | Email from A. Plukis to K. McNabb re add logging to Player for buffering reasons | PTON-NEC-00175383 | PTON-NEC-00175383 | 403, 801, 901 |
| 323 | Email from M. Akinnawonu to A. Ventura re App issues | PTON-NEC-00175615 | PTON-NEC-00175617 | |
| 324 | Email from G. Barlow to K. McNabb re programs is crediting after one minute of 'Player time' has passed, should be 'Real-World' time | PTON-NEC-00175763 | PTON-NEC-00175764 | 403, 801, 901 |
| 325 | Email from A. Carella to K. McNabb re work related to migrating Argon to use Akamai access control | PTON-NEC-00175790 | PTON-NEC-00175791 | 402, 403, 602/F, 801, 901 |
| 326 | Email from T. Chambers to K. McNabb re decouple Player from AVPlayer | PTON-NEC-00175825 | PTON-NEC-00175825 | 403, 801, 901 |
| 327 | Peloton PPT titled 'Welcome - EIT Ops Quarterly Meeting - FY2020 Q3' by Dave Brown | PTON-NEC-00176072 | PTON-NEC-00176164 | 402, 403, 602/F, 801, 901 |
| 328 | Peloton's Stream Delivery Platform Overview | PTON-NEC-00176433 | PTON-NEC-00176440 | 403, 801, 901 |
| 329 | Eggstrategy presentation titled "The Peloton Path to Purchase - Final Report" | PTON-NEC-00176891 | PTON-NEC-00177002 | |
| 330 | Peloton Data Review Report | PTON-NEC-00178427 | PTON-NEC-00178460 | |
| 331 | Email from S. Ramakrishna to R. Santos re server-side ABR Tech | PTON-NEC-00178842 | PTON-NEC-00178845 | 403, 801, 901 |
| 332 | Akamai Manage Content Protection Summary Report | PTON-NEC-00179094 | PTON-NEC-00179104 | 403, 801, 901 |
| 333 | Email to R. Santos re Invoice Approved | PTON-NEC-00179532 | PTON-NEC-00179533 | |
| 334 | Akamai Service Order Form for Peloton (Order ID 83284) | PTON-NEC-00186136 | PTON-NEC-00186138 | |
| 335 | Akamai Service Order Form for Peloton (Order ID 268911) | PTON-NEC-00186941 | PTON-NEC-00186945 | |
| 336 | Akamai Service Order Form for Peloton (Order ID 232850) | PTON-NEC-00188009 | PTON-NEC-00188014 | |
| 337 | Email from D. Crossley to E. Kiss re JK J Balvin check | PTON-NEC-00188984 | PTON-NEC-00188986 | |
| 338 | Akamai Service Order Form for Peloton (Order ID 268911) | PTON-NEC-00191286 | PTON-NEC-00191290 | |
| 339 | Email from K. Winn to D. Mulchandani re speedtest result | PTON-NEC-00192879 | PTON-NEC-00192881 | |
| 340 | Akamai Product Brief: Adaptive Media Delivery | PTON-NEC-00192979 | PTON-NEC-00192981 | |
| 341 | Email from Y. Abdallah to R. Santos re benchmark baseline | PTON-NEC-00193000 | PTON-NEC-00193003 | 801, 901 |
| 342 | Email from S. Thomas to various Peloton folks re changes to VOD workflow | PTON-NEC-00194477 | PTON-NEC-00194477 | 801, 901 |
| 343 | Peloton presentation titled "Board of Directors - Q4 Preliminary Results & FY 2022 Budget Update" | PTON-NEC-00196529 | PTON-NEC-00196560 | 402, 403 |
| 344 | Peloton Excel spreadsheet showing internal income statement from July 15 2016 through June 2025. | PTON-NEC-00199368 | PTON-NEC-00199368 | 402, 403 |
| 345 | Peloton Excel spreadsheet showing breakdown of U.S. subscription revenue across Connected Fitness app and studio revenue. | PTON-NEC-00199369 | PTON-NEC-00199369 | |
| 346 | Peloton presentation titled 'SW Workstream Status' | PTON-NEC-00209123 | PTON-NEC-00209205 | 403, 801, 901 |
| 347 | Peloton PPT titled 'Teams - Current Status & Recap - Next 60-90 Days' | PTON-NEC-00209649 | PTON-NEC-00209665 | 403, 801, 901 |
| 348 | Peloton Excel spreadsheet showing view of workouts by device by subscription type | PTON-NEC-00210263 | PTON-NEC-00210263 | |
| 349 | Akamai presentation titled "Peloton Premium Service & Support Monthly Review" | PTON-NEC-00214925 | PTON-NEC-00214964 | |
| 350 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00214989 | PTON-NEC-00215029 | |
| 351 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215069 | PTON-NEC-00215111 | |
| 352 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215112 | PTON-NEC-00215148 | |
| 353 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215149 | PTON-NEC-00215192 | |
| 354 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215193 | PTON-NEC-00215236 | |
| 355 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215237 | PTON-NEC-00215276 | |
| 356 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215352 | PTON-NEC-00215394 | |
| 357 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215395 | PTON-NEC-00215437 | |
| 358 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215518 | PTON-NEC-00215560 | |
| 359 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215561 | PTON-NEC-00215602 | |
| 360 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215681 | PTON-NEC-00215724 | |
| 361 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215725 | PTON-NEC-00215763 | |
| 362 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215802 | PTON-NEC-00215842 | |
| 363 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215843 | PTON-NEC-00215883 | |
| 364 | Akamai presentation titled "Premium Services & Support - Monthly Review" | PTON-NEC-00215884 | PTON-NEC-00215924 | |
| 365 | Peloton Interactive Q1 2020 Shareholder Letter | PTON-NEC-00215944 | PTON-NEC-00215965 | 402, 403 |
| 366 | Peloton Interactive Q2 2020 Shareholder Letter | PTON-NEC-00215966 | PTON-NEC-00215987 | 402, 403 |
| 367 | Peloton Interactive Q3 2020 Shareholder Letter | PTON-NEC-00215988 | PTON-NEC-00216008 | 402, 403 |
| 368 | Peloton Interactive Q4 2020 Shareholder Letter | PTON-NEC-00216009 | PTON-NEC-00216031 | 402, 403 |
| 369 | Peloton Interactive Q1 2021 Shareholder Letter | PTON-NEC-00216032 | PTON-NEC-00216051 | 402, 403 |
| 370 | Peloton Interactive Q2 2021 Shareholder Letter | PTON-NEC-00216052 | PTON-NEC-00216072 | 402, 403 |
| 371 | Peloton Interactive Q3 2021 Shareholder Letter | PTON-NEC-00216073 | PTON-NEC-00216091 | 402, 403 |
| 372 | Peloton Interactive Q4 2021 Shareholder Letter | PTON-NEC-00216092 | PTON-NEC-00216112 | 402, 403 |
| 373 | Peloton Interactive Q1 2022 Shareholder Letter | PTON-NEC-00216113 | PTON-NEC-00216131 | 402, 403 |
| 374 | Peloton Interactive Q2 2022 Shareholder Letter | PTON-NEC-00216132 | PTON-NEC-00216153 | 402, 403 |
| 375 | Peloton Interactive Q3 FY2022 Shareholder Letter | PTON-NEC-00216154 | PTON-NEC-00216165 | 402, 403 |
| 376 | Peloton Interactive Q4 FY2022 Shareholder Letter | PTON-NEC-00216166 | PTON-NEC-00216180 | 402, 403 |
| 377 | Peloton Interactive Q1 FY2023 Shareholder Letter | PTON-NEC-00216181 | PTON-NEC-00216193 | 402, 403 |
| 378 | Peloton Interactive Q2 FY2023 Shareholder Letter | PTON-NEC-00216194 | PTON-NEC-00216207 | 402, 403 |
| 379 | Peloton Interactive Q1 FY2024 Shareholder Letter | PTON-NEC-00216237 | PTON-NEC-00216249 | 402, 403 |

| No. | Description | Begin Bates | End Bates | Objections |
|---|---|---|---|---|
| 380 | Peloton Interactive Q2 FY2024 Shareholder Letter | PTON-NEC-00216250 | PTON-NEC-00216262 | 402, 403 |
| 381 | Settlement, Patent License, and Release Agreement b/t Dish DBS Corp., Dish Techs. and Peloton | PTON-NEC-00216263 | PTON-NEC-00216302 | 402, 403, MIL |
| 382 | Peloton Interactive Q2 FY2025 Shareholder Letter | PTON-NEC-00216600 | PTON-NEC-00216614 | 402, 403 |
| 383 | Peloton Interactive Q3 FY2024 Shareholder Letter | PTON-NEC-00216615 | PTON-NEC-00216627 | 402, 403 |
| 384 | Peloton Interactive Q4 FY2023 Shareholder Letter | PTON-NEC-00216628 | PTON-NEC-00216643 | 402, 403 |
| 385 | Peloton PPT titled '2021 Market Map - Annual Consumer & Competitive Landscape Report' | PTON-NEC-00216859 | PTON-NEC-00216975 | |
| 386 | Peloton presentation titled "CS&I x eCOMM" | PTON-NEC-00217293 | PTON-NEC-00217335 | |
| 387 | Peloton 2020 Market Map, Key Findings | PTON-NEC-00217368 | PTON-NEC-00217501 | |
| 388 | Peloton FY25 Consumer Holiday Retro | PTON-NEC-00217623 | PTON-NEC-00217686 | |
| 389 | Peloton Interactive SEC Form 10-K | PTON-NEC-00217945 | PTON-NEC-00218113 | 402, 403 |
| 390 | Peloton Interactive SEC Form 10-K | PTON-NEC-00218114 | PTON-NEC-00218283 | 402, 403 |
| 391 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00218284 | PTON-NEC-00218348 | 402, 403 |
| 392 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00218349 | PTON-NEC-00218401 | 402, 403 |
| 393 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00218402 | PTON-NEC-00218454 | 402, 403 |
| 394 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00218455 | PTON-NEC-00218506 | 402, 403 |
| 395 | Peloton Interactive SEC Form 10-Q | PTON-NEC-00218507 | PTON-NEC-00218559 | 402, 403 |
| 396 | Peloton Spreadsheet re. # of Workouts by Device & Subscription Tier | PTON-NEC-00218743 | PTON-NEC-00218743 | |
| 397 | Peloton Interactive Q3 FY2023 Shareholder Letter | PTON-NEC-00218744 | PTON-NEC-00218756 | 402, 403 |
| 398 | Peloton Interactive Q3 2023 Earnings Call | PTON-NEC-00218757 | PTON-NEC-00218771 | 402, 403 |
| 399 | Peloton Interactive Q4 2023 Earnings Call | PTON-NEC-00218772 | PTON-NEC-00218784 | 402, 403 |
| 400 | Peloton presentation titled "Global Brand Tracker - FY23 Q1" | PTON-NEC-00218785 | PTON-NEC-00218796 | |
| 401 | Peloton Interactive Q1 FY2025 Shareholder Letter | PTON-NEC-00218909 | PTON-NEC-00218923 | 402, 403 |
| 402 | Peloton Global Brand Tracker, FY22 Q2 | PTON-NEC-00218924 | PTON-NEC-00219028 | |
| 403 | Peloton presentation titled "Global Brand Tracker - FY23 Q2" | PTON-NEC-00219041 | PTON-NEC-00219171 | |
| 404 | Peloton presentation titled "Global Brand Tracker - FY22 Q3" | PTON-NEC-00219184 | PTON-NEC-00219295 | |
| 405 | Peloton Interactive Q3 FY2025 Shareholder Letter | PTON-NEC-00219308 | PTON-NEC-00219324 | 402, 403 |
| 406 | Peloton Q4 FY2024 Shareholder Letter | PTON-NEC-00219325 | PTON-NEC-00219338 | 402, 403 |
| 407 | Peloton presentation titled "Peloton Quarterly Member Survey - US" (NOV 2020) | PTON-NEC-00219339 | PTON-NEC-00219384 | |
| 408 | Peloton presentation titled "US Brand Tracker Q1 FY22" | PTON-NEC-00219471 | PTON-NEC-00219541 | |
| 409 | Peloton presentation titled "US Brand Tracker Q4 2021" | PTON-NEC-00219554 | PTON-NEC-00219626 | |
| 410 | Peloton webpage "Find the Peloton Membership that's Right for You - Peloton Apps" captured from https://www.onepeloton.com/membership | PTON-NEC-00219639 | PTON-NEC-00219639 | |
| 411 | Peloton presentation titled "Global Brand Tracker Report - Tracker Wave Q1 FY24" | PTON-NEC-00219984 | PTON-NEC-00220002 | |
| 412 | Peloton presentation titled "Global Brand Tracker Report - Q1 FY25 Report" | PTON-NEC-00220015 | PTON-NEC-00220042 | |
| 413 | Peloton presentation titled "Global Brand Tracker Report - Tracker Wave Q2 FY24" | PTON-NEC-00220089 | PTON-NEC-00220107 | |
| 414 | Peloton presentation titled "Global Brand Tracker - Q2 FY25 Report" | PTON-NEC-00220120 | PTON-NEC-00220145 | |
| 415 | Peloton presentation titled "Global Brand Tracker Report - Tracker Wave Q3 FY24" | PTON-NEC-00220192 | PTON-NEC-00220208 | |
| 416 | Peloton presentation titled "Global Brand Tracker  Q3 FY25 Report" | PTON-NEC-00220221 | PTON-NEC-00220262 | |
| 417 | Peloton presentation titled "Global Brand Tracker FY23 Q4" | PTON-NEC-00220303 | PTON-NEC-00220438 | |
| 418 | Peloton presentation titled "Global Brand Tracker Report - Tracker Wave Q4 FY24" | PTON-NEC-00220451 | PTON-NEC-00220471 | |
| 419 | Peloton Excel spreadsheet showing subscription products across All Access, App, AppOne, App+, Strength+ and Guide from July 2016 to June calendar 2025. | PTON-NEC-00220498 | PTON-NEC-00220498 | |
| 420 | Peloton Excel spreadsheet titled "Revenue and Subs by Tier by Month" providing monthly sub revenue and prorated sub counts by subscription (Annotated - Burch Dep. Ex. 8) | PTON-NEC-00220499 | PTON-NEC-00220499 | 403, 801, 901, DUP |
| 421 | Peloton Excel spreadsheet titled "Revenue and Subs by Tier by Month" providing monthly sub revenue and prorated sub counts by subscription | PTON-NEC-00220499 | PTON-NEC-00220499 | |
| 422 | Peloton webpage "Find the Peloton Membership that's Right for You - Peloton Equipment" captured from https://www.onepeloton.com/membership?toggleSelect=equipment | PTON-NEC-00220500 | PTON-NEC-00220502 | |
| 423 | Peloton Excel spreadsheet detailing subscriber build of Gross Additions is, Gross Churn, reactivations, Net Churn, by month, by subscription, tier prepared by Jake Abrams | PTON-NEC-00220503 | PTON-NEC-00220503 | |
| 424 | Peloton Excel spreadsheet showing subscription products across All Access, App, AppOne, App+, Strength+ and Guide from July 2016 to June calendar 2025 but also includes a breakout of our international markets for App, AppOne and App+. | PTON-NEC-00220504 | PTON-NEC-00220504 | |
| 425 | Peloton Excel Spreadsheet titled "US Monthly Income Statement July 2016 - June 2025" showing internal income statement from July 15 2016 through June 2025 | PTON-NEC-00220505 | PTON-NEC-00220505 | 402, 403 |
| 426 | Peloton Excel spreadsheet titled "Adds and Churn by Tier by Month 9.17.25" detailing subscriber build of Gross Additions is, Gross Churn, reactivations, Net Churn, by month, by subscription, tier prepared by Jake Abrams | PTON-NEC-00220506 | PTON-NEC-00220506 | |
| 427 | Excel spreadsheet showing subscriber churn data from July 2016 through June 2025 | PTON-NEC-00221279 | PTON-NEC-00221279 | |
| 428 | Excel spreadsheet showing revenue data from July 2016 through June 2025 | PTON-NEC-00221280 | PTON-NEC-00221280 | |
| 429 | VisualOn Business Records Certification | VISUALON_0000001 | VISUALON_0000001 | |
| 430 | VisualOn presentation titled " ████ Algorithm" | VISUALON_0000002 | VISUALON_0000017 | |
| 431 | Email from K. Jiang re "Could not play video after deep sleep" | VISUALON_0000048 | VISUALON_0000048 | 403, 602/F, 801, 901 |
| 432 | Email from S. Desproges re Peloton video stutter | VISUALON_0000063 | VISUALON_0000068 | 403, 602/F, 801, 901 |
| 433 | VisualOn OnStream MediaPlayer+ Introduction and Documentation Guide for Android Platforms, Ver. 1.1 | VISUALON_0027021 | VISUALON_0027027 | |
| 434 | VisualOn OnStream MediaPlayer+ User Guide | VISUALON_0027147 | VISUALON_0027394 | |
| 435 | Peloton document titled "Escalating a Fire / Critical Issue" (May 1, 2019) | PTON-NEC-00029895 | PTON-NEC-00029899 | 403, 602/F, 801, 901 |
| 436 | Peloton document titled "Escalating a Fire / Critical Issue" (June 12, 2019) | PTON-NEC-00050777 | PTON-NEC-00050781 | 403, 602/F, 801, 901 |
| 437 | Peloton document titled "Escalating a Fire / Critical Issue" | PTON-NEC-00124682 | PTON-NEC-00124685 | 403, 602/F, 801, 901 |
| 438 | Dr. Rubin's CV | NA | NA | 402, 901, NPD |
| 439 | Dr. Vellturo's CV | NA | NA | 402, 901, NPD |
| 440 | 101 Patent USPTO Assignment Records | NA | NA | 402, 901, NPD |
| 441 | 809 Patent USPTO Assignment Records | NA | NA | 402, 403, 901, NPD |
| 442 | Exhibit 3 to Dr. Vellturo's Opening Report - Peloton Global and U.S. Profit & Loss Statement Summary (FY2018-FY2025) | NA | NA | 402, 403, 901, NPD |
| 443 | Exhibit 4 to Dr. Vellturo's Opening Report - Summary of Patent Licenses under NEC's Licensing Program | NA | NA | 402, 901, NPD |
| 444 | Exhibit 5 to Dr. Vellturo's Opening Report - Summary of NEC Portfolio Cross-Licenses | NA | NA | 402, 901, NPD |
| 445 | Exhibit 6 to Dr. Vellturo's Opening Report - Summary of Peloton Produced Licenses | NA | NA | 402, 901, NPD |
| 446 | Exhibit 7 to Dr. Vellturo's Opening Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (2016-2025) | NA | NA | 402, 403, 901, NPD |
| 447 | Exhibit 8 to Dr. Vellturo's Opening Report - Profitability Comparison of Peloton, ████ and ████ (2019-2022) | NA | NA | 402, 403, 901, NPD |
| 448 | Exhibit 8-A to Dr. Vellturo's Opening Report ████ Profit and Loss Summary (July 2018 - November 2024) | NA | NA | 402, 901, NPD |
| 449 | Exhibit 8-B to Dr. Vellturo's Opening Report - ████ Profit & Loss Summary | NA | NA | 402, 901, NPD |
| 450 | Exhibit 8-C to Dr. Vellturo's Opening Report - ████ Global Revenue and Gross Profits | NA | NA | 402, 901, NPD |
| 451 | Exhibit 9 to Dr. Vellturo's Opening Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 452 | Exhibit 9-A to Dr. Vellturo's Opening Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 453 | Exhibit 9-B to Dr. Vellturo's Opening Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate (July 1, 2016 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 454 | Exhibit 10 to Dr. Vellturo's Opening Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 455 | Exhibit 10-A to Dr. Vellturo's Opening Reportt - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 456 | Exhibit 11 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share by Device | NA | NA | 402, 901, NPD |
| 457 | Exhibit 11-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share by Device | NA | NA | 402, 901, NPD |
| 458 | Exhibit 12 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Count by Device (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |
| 459 | Exhibit 12-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Count by Device (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |
| 460 | Exhibit 13 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |
| 461 | Exhibit 13-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |

| # | Description | | | Objections |
|---|---|---|---|---|
| 462 | Exhibit 14 to Dr. Vellturo's Opening Report - Peloton [Annual] Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |
| 463 | Exhibit 14-A to Dr. Vellturo's Opening Report - Peloton Monthly Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - June 30, 2025) | NA | NA | 402, 901, NPD |
| 464 | Exhibit 3.1 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Ms. Davis's Effective Rates | NA | NA | 402, 901, NPD |
| 465 | Exhibit 3.2 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Reduced Rates from ▉▉ and ▉ Licenses | NA | NA | 402, 901, NPD |
| 466 | Exhibit 4 to Dr. Vellturo's Reply Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (FY2017 - FY2025) | NA | NA | 402, 403, 901, NPD |
| 467 | Exhibit 5 to Dr. Vellturo's Reply Report - Peloton Market Capitalization History (2019-2025) | NA | NA | 402, 403, 901, NPD |
| 468 | Exhibit 6 to Dr. Vellturo's Reply Report - Peloton Pre-IP Funding Rounds | NA | NA | 402, 901, NPD |
| 469 | Exhibit 7 to Dr. Vellturo's Reply Report - Peloton's Financial Metrics Compared Against NEC's Licensees | NA | NA | 402, 403, 901, NPD |
| 470 | Exhibit 8 to Dr. Vellturo's Reply Report - Peloton U.S. Overall Subscription Share by Tier (July 2016 - June 2025) | NA | NA | 402, 901, NPD |
| 471 | Exhibit 9 to Dr. Vellturo's Reply Report - Peloton Subscriber Gross Deactivations as a Percentage of Subscribers (July 2016 - June 2025) | NA | NA | 402, 901, NPD |
| 472 | Exhibit 9-B to Dr. Vellturo's Opening Report (Corrected) - Peloton Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate (July 1, 2016 - July 31, 2026) | NA | NA | 402, 901, NPD |
| 473 | ▉ SEC Form 10-K (2017) | NA | NA | 402, 901, NPD |
| 474 | ▉ SEC Form 10-K (2019) | NA | NA | 402, 901, NPD |
| 475 | ▉ SEC Form 10-K (2021) | NA | NA | 402, 901, NPD |
| 476 | ▉ SEC Form 10-K (2023) | NA | NA | 402, 901, NPD |
| 477 | ▉ SEC Form 10-K (2024) | NA | NA | 402, 901, NPD |
| 478 | https://companiesmarketcap.com/peloton/marketcap | NA | NA | 402, 403, 801, 901, NPD |
| 479 | https://forgeglobal.com/peloton-interactive_ipo | NA | NA | 402, 403, 801, 901, NPD |
| 480 | ▉ SEC Form 10-K (2022) | NA | NA | 402, 801, 901, NPD |
| 481 | ▉ SEC Form 10-K/A (2020) | NA | NA | 402, 801, 901, NPD |
| 482 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 483 | ▉▉ | NA | NA | 402, 801, 901, NPD |
| 484 | https://finance.yahoo.com/news/peloton-prices-ipo-230106293.html | NA | NA | 402, 801, 901, NPD |
| 485 | https://www.prnewswire.com/news-releases/peloton-interactive-inc-announces-closing-of-1-0-billion-of-0-convertible-senior-notes-due-2026--including-full-exercise-of-initial-purchasers-125-0-million-option-to-purchase-additional-notes-301227245.html | NA | NA | 402, 403, 801, 901, NPD |
| 486 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 487 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 488 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 489 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 490 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 491 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 492 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 493 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 494 | ▉▉▉▉ | NA | NA | 402, 801, 901, NPD |
| 495 | Peloton Source Code Review Computer | | | |
| 496 | Rubin Opening Expert Report Exhibit B - Excerpt from Tanenbaum, Andrew S., and David Wetherall, Computer Networks. Prentice Hall, 2011 | | | 402, 901, NPD |
| 497 | Rubin Opening Expert Report Exhibit C - Excerpt from H. Schulzrinne et al., Real-Time Streaming Protocol (RTSP), RFC 2326, 1998. | | | 402, 901, NPD |
| 498 | Rubin Opening Expert Report Exhibit D - Excerpt from Kurose, James F., and Keith W. Ross, Computer Networking: A Top-down Approach, 2017 | | | 402, 901, NPD |
| 499 | Rubin Opening Expert Report Exhibit E - https://www.encyclopedia.com/economics/encyclopedias-almanacs-transcripts-and-maps/metcalfes-law, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 500 | Rubin Opening Expert Report Exhibit F - https://npaw.com/blog/how-video-streaming-quality-affects-user-engagement/, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 501 | Rubin Opening Expert Report Exhibit G - https://www.geeksforgeeks.org/exoplayer-in-android-with-example/, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 502 | Rubin Opening Expert Report Exhibit H - https://www.tothenew.com/blog/introduction-to-android-exoplayer/, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 503 | Rubin Opening Expert Report Exhibit I - ▉▉▉▉ last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 504 | Rubin Opening Expert Report Exhibit J - https://www.youtube.com/t/terms, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 505 | Rubin Opening Expert Report Exhibit K - https://developer.apple.com/documentation/http-live-streaming/video-on-demand-playlist-construction, last accessed Oct. 23, 2025 | | | 402, 901, NPD |
| 506 | Peloton Spreadsheet re. # of Workouts by Device & Subscription Tier through May 2026 (Updated July 2026) | PTON-NEC-00223806 | PTON-NEC-00223806 | |
| 507 | Peloton Excel Spreadsheet titled "US Monthly Income Statement May 2016 - June 2026" showing internal income statement from July 15 2016 through May 2026 (Updated July 2026) | PTON-NEC-00223807 | PTON-NEC-00223807 | |
| 508 | Excel spreadsheet showing revenue data from July 2016 through May 2026 (Updated July 2026) | PTON-NEC-00223808 | PTON-NEC-00223808 | |
| 509 | Exhibit 7 to Dr. Vellturo's Opening Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (2016-2026) (July 8, 2026) | NA | NA | |
| 510 | Exhibit 11 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share by Device (July 8, 2026) | NA | NA | |
| 511 | Exhibit 11-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share by Device (July 8, 2026) | NA | NA | |
| 512 | Exhibit 12 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Count by Device (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 513 | Exhibit 12-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Count by Device (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 514 | Exhibit 13 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 515 | Exhibit 13-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 516 | Exhibit 14 to Dr. Vellturo's Opening Report - Peloton [Annual] Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 517 | Exhibit 14-A to Dr. Vellturo's Opening Report - Peloton Monthly Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | NA | NA | |
| 518 | Exhibit 3.1 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Ms. Davis's Effective Rates (July 8, 2026) | NA | NA | |
| 519 | Exhibit 3.2 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Reduced Rates from ▉▉ and ▉ Licenses (July 8, 2026) | NA | NA | |
| 520 | Exhibit 4 to Dr. Vellturo's Reply Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (FY2017 - FY2026) (July 8, 2026) | NA | NA | |
| 521 | Exhibit 8 to Dr. Vellturo's Reply Report - Peloton U.S. Overall Subscription Share by Tier (July 2016 - May 2026) (July 8, 2026) | NA | NA | |

| | | | |
|---|---|---|---|
| 522 | Exhibit 9 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 523 | Exhibit 9.1 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 524 | Exhibit 9.2 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 525 | Exhibit 9-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 526 | Exhibit 9.1-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 527 | Exhibit 9.2-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 528 | Exhibit 9-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate (July 1, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 529 | Exhibit 9.1-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate '809 Patent Only (July 1, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 530 | Exhibit 9.2-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate '101 Patent Only (July 1, 2016 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 531 | Exhibit 10 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 532 | Exhibit 10.1 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 533 | Exhibit 10.2 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 534 | Exhibit 10-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 535 | Exhibit 10.1-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '809 Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |
| 536 | Exhibit 10.2-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '101 Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | NA | NA | |

Peloton's Objection Key for Objections to Exhibits and Testimony

| Code | Objection |
|------|-----------|
| 106 | This testimony/exhibit is objectionable because it is incomplete and the introduction of the remaining portions ought, in fairness, to be considered contemporaneously with it (*see* F.R.E. 106). |
| 402 | This testimony/exhibit is objectionable because it is not relevant or immaterial (*see* F.R.E. 401 and 402). |
| 403 | Misleading, confusion of issues, cumulative, and/or waste of time. This testimony/exhibit is objectionable because its probative value is substantially outweighed by the danger of unfair prejudice. |
| 404 | Improper character evidence. |
| 408 | *See* F.R.E. 408 (Compromise Offers and Negotiations). |
| 602/F | This testimony/exhibit is objectionable because it constitutes evidence on a matter as to which the witness lacks personal knowledge or competency and lacks foundation, calls for speculation (*see* F.R.E. 602). |
| 701 | This testimony/exhibit is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (*see* F.R.E. 701), and/or it calls for a legal conclusion, and/or it is attempted expert testimony from a witness who was not designated as an expert and who did not submit an expert report (*see* FRCP 26). |
| 702 | Improper expert opinion (*see* F.R.E. 702). |
| 703 | This testimony/exhibit is objectionable because while experts may rely on inadmissible evidence in forming their opinions, those materials are not to be shown to the jury unless their probative value substantially outweighs prejudicial effect. |
| 801 | Hearsay. This testimony/exhibit is objectionable because it is a statement made by one other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted and not subject to any hearsay exception (*see* F.R.E. 801 and 802). |
| 901 | This testimony/exhibit is objectionable because it concerns a document for which authentication is lacking (*see* F.R.E. 901 et seq.). |
| 1006 | Improper summary, chart or calculation (*see* F.R.E. 1006). |
| AA | Asked and answered. |
| AF | Assumes a fact not in evidence. |
| B | Best evidence (*see* F.R.E. 1002, 1003, 1004). |
| CQ | Compound question. |
| DUP | Duplicative or another exhibit on the exhibit list or cumulative of other testimony. |
| FL | Foreign language without certified translation. |

1

**Exhibit 8A and 10A to the Pretrial Order**                                      **Peloton's Objection Key**

| Code | Objection |
|---|---|
| HYPO | Incomplete hypothetical question. |
| NT | Not testimony; improper deposition designation (*e.g.*, attorney objections not removed; attorney argument, correspondence, or argument improperly offered as evidence, etc.). |
| NA | Calls for narrative answer/response. |
| NE | Not evidence: pleadings, court orders, correspondence by counsel, depositions. |
| NR | Non-responsive or volunteered answer. |
| IC | Improper counter deposition designation (not related to initial designation). |
| ID | Insufficient/incorrect description. |
| Illeg | Illegible. |
| IM | Improper impeachment (*see* F.R.E. 613). |
| INC | Incomplete question/incomplete answer. |
| LC | Calls for legal conclusion; document contains legal opinions and/or attorney argument (e.g. pleadings, Court orders). |
| LDG | Leading question (F.R.E. 611). |
| MC | Mischaracterizes testimony, misleading or misstates evidence; nonresponsive/volunteered answer. |
| MD | Multiple documents listed as a single exhibit. |
| MIL | Subject to a pending motion, including a motion *in limine* or Daubert motion or summary judgment motion. |
| NPD | Not previously or untimely disclosed (FRCP 26, etc.). |
| OS | Outside scope of designated subject matter including outside scope of 30(b)(6) topics/initial disclosures. |
| P | Subject to privilege / attorney work product. |
| VG | Vague, ambiguous, and/or unclear. |

# EXHIBIT 11

Peloton's Exhibit List with NEC's Objections

NEC v. Peloton - C.A. No. 22-987
**Defendant's Trial Exhibit List**

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0001 | Akami Service Order Form Order ID 289026 (Binder 1) | AKAM-0001 | AKAM-0029 | |
| DTX-0002 | Peloton Server Side ABR Concept with Linode October 2022 (Binder 2) | AKAM-0030 | AKAM-0098 | |
| DTX-0003 | Peloton Set up Slide Deck (Binder 3) | AKAM-0099 | AKAM-0147 | |
| DTX-0004 | Slide Deck "Peloton Pioneered The Connected Fitness Category" (Binder 4) | AKAM-0148 | AKAM-0153 | |
| DTX-0005 | Slide Deck "Peloton: Premium Services & Support Monthly Review January 2023" (Binder 5) | AKAM-0154 | AKAM-0535 | |
| DTX-0006 | Adaptive Media Delivery Implementation Guide (Binder 6) | AKAM-0536 | AKAM-0605 | |
| DTX-0007 | Property Manager Group Adaptive Media Delivery (Binder 7) | AKAM-0606 | AKAM-0718 | |
| DTX-0008 | Edge Server Metadata Syntax (Binder 8) | AKAM-0719 | AKAM-0798 | |
| DTX-0009 | ████████████ | AKAM-0799 | AKAM-0799 | |
| DTX-0010 | ████████████ | AKAM-0800 | AKAM-0800 | |
| DTX-0011 | ████████████ | AKAM-0801 | AKAM-0801 | |
| DTX-0012 | ████████████ | AKAM-0802 | AKAM-0803 | |
| DTX-0013 | ████████████ | AKAM-0804 | AKAM-0805 | |
| DTX-0014 | ████████████ | AKAM-0806 | AKAM-0807 | |
| DTX-0015 | ████████████ | AKAM-0808 | AKAM-0809 | |
| DTX-0016 | ████████████ | AKAM-0810 | AKAM-0811 | |
| DTX-0017 | ████████████ | AKAM-0812 | AKAM-0812 | |
| DTX-0018 | ████████████ | AKAM-0813 | AKAM-0813 | |
| DTX-0019 | ████████████ | AKAM-0814 | AKAM-0815 | |
| DTX-0020 | ████████████ | AKAM-0816 | AKAM-0816 | |
| DTX-0021 | ████████████ | AKAM-0817 | AKAM-0818 | |
| DTX-0022 | ████████████ | AKAM-0819 | AKAM-0819 | |
| DTX-0023 | ████████████ | AKAM-0820 | AKAM-0820 | |
| DTX-0024 | ████████████ | AKAM-0821 | AKAM-0822 | |
| DTX-0025 | ████████████ | AKAM-0823 | AKAM-0828 | |
| DTX-0026 | ████████████ | AKAM-0829 | AKAM-0830 | |
| DTX-0027 | ████████████ | AKAM-0831 | AKAM-0833 | |
| DTX-0028 | ████████████ | AKAM-0834 | AKAM-0836 | |
| DTX-0029 | ████████████ | AKAM-0837 | AKAM-0838 | |
| DTX-0030 | ████████████ | AKAM-0839 | AKAM-0842 | |
| DTX-0031 | ████████████ | AKAM-0843 | AKAM-0860 | |
| DTX-0032 | ████████████ | AKAM-0861 | AKAM-0864 | |
| DTX-0033 | ████████████ | AKAM-0865 | AKAM-0868 | |
| DTX-0034 | ████████████ | AKAM-0869 | AKAM-0870 | |
| DTX-0035 | ████████████ | AKAM-0871 | AKAM-0876 | |
| DTX-0036 | ████████████ | AKAM-0877 | AKAM-0878 | |
| DTX-0037 | ████████████ | AKAM-0879 | AKAM-0879 | |
| DTX-0038 | ████████████ | AKAM-0880 | AKAM-0881 | |
| DTX-0039 | ████████████ | AKAM-0882 | AKAM-0882 | |
| DTX-0040 | ████████████ | AKAM-0883 | AKAM-0884 | |
| DTX-0041 | ████████████ | AKAM-0885 | AKAM-0887 | |
| DTX-0042 | ████████████ | AKAM-0888 | AKAM-0893 | |
| DTX-0043 | ████████████ | AKAM-0894 | AKAM-0895 | |
| DTX-0044 | ████████████ | AKAM-0896 | AKAM-0896 | |
| DTX-0045 | ████████████ | AKAM-0897 | AKAM-0897 | |
| DTX-0046 | ████████████ | AKAM-0898 | AKAM-0903 | |
| DTX-0047 | ████████████ | AKAM-0904 | AKAM-0904 | |
| DTX-0048 | ████████████ | AKAM-0905 | AKAM-0906 | |
| DTX-0049 | ████████████ | AKAM-0907 | AKAM-0907 | |
| DTX-0050 | ████████████ | AKAM-0908 | AKAM-0909 | |
| DTX-0051 | ████████████ | AKAM-0910 | AKAM-0915 | |
| DTX-0052 | ████████████ | AKAM-0916 | AKAM-0916 | |

NEC v. Peloton - C.A. No. 22-987
**Defendant's Trial Exhibit List**

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0053 | ███████ | AKAM-0917 | AKAM-0917 | |
| DTX-0054 | ███████ | AKAM-0918 | AKAM-0919 | |
| DTX-0055 | ███████ | AKAM-0920 | AKAM-0921 | |
| DTX-0056 | AdaptiveEdge Streaming Platform Design - Phase 1 (Binder 1) | AKAM-0922 | AKAM-0950 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0057 | Joint Marketing Agreement (Binder 2) | AKAM-0951 | AKAM-0975 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0058 | AdaptiveEdge On-Demand Streaming for Microsoft Silverlight (Binder 3) | AKAM-0976 | AKAM-1044 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0059 | AdaptiveEdge Streaming for Microsoft Silverlight Ccare Training (Binder4) | AKAM-1045 | AKAM-1061 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0060 | Token Authorization for AdaptiveEdge Requirements Checklist 4.29.2009 (Binder 5) | AKAM-1062 | AKAM-1071 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0061 | Microsoft: Mix 09 The Next Web Now (Binder 6) | AKAM-1072 | AKAM-1115 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0062 | Microsoft: Mix 09 The Next Web Now (Binder 7) | AKAM-1116 | AKAM-1152 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0063 | Delivering Media with IIS Media Services (Binder 8) | AKAM-1153 | AKAM-1191 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0064 | Microsoft: Mix 09 The Next Web Now (Binder 9) | AKAM-1192 | AKAM-1241 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0065 | Declaration of David Judson (Oct. 9, 2025) (Authentication of Akamai Production) | | | 401-403; 403 (late); 802; 901 |
| DTX-0066 | Declaration of David Judson (Oct. 16, 2025) (Authentication of Akamai Production) | | | 401-403; 403 (late); 802; 901 |
| DTX-0067 | AV Player Source Code | APLNECvPEL_000001 | APLNECvPEL_000003 | |
| DTX-0068 | AV Player Source Code | APLNECvPEL_000017 | APLNECvPEL_000018 | |
| DTX-0069 | AV Player Source Code | APLNECvPEL_000041 | APLNECvPEL_000048 | |
| DTX-0070 | AV Player Source Code | APLNECvPEL_000051 | APLNECvPEL_000052 | |
| DTX-0071 | AV Player Source Code | APLNECvPEL_000053 | APLNECvPEL_000054 | |
| DTX-0072 | AV Player Source Code | APLNECvPEL_000073 | APLNECvPEL_000073 | |
| DTX-0073 | AV Player Source Code | APLNECvPEL_000103 | APLNECvPEL_000105 | |
| DTX-0074 | AV Player Source Code | APLNECvPEL_000106 | APLNECvPEL_000108 | |
| DTX-0075 | AV Player Source Code | APLNECvPEL_000130 | APLNECvPEL_000132 | |
| DTX-0076 | AV Player Source Code | APLNECvPEL_000161 | APLNECvPEL_000200 | |
| DTX-0077 | Spreadsheet Produced by ███ | ███0012406 | | |
| DTX-0078 | Spreadsheet Produced by ███ | ███0014028 | | |
| DTX-0079 | Expert Report of Mr. Alex Zambelli Regarding Microsoft's Smooth Streaming Product, dated October 24, 2025, with Exhibits. | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0080 | Report of Dr. Kevin Almeroth Regarding Non-Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809, dated November 21, 2025 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0081 | Appendix I to Report of Dr. Kevin Almeroth Regarding Non-Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809 (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0082 | Appendix II to Report of Dr. Kevin Almeroth Regarding Non-Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809 (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0083 | Appendix III to Report of Dr. Kevin Almeroth Regarding Non-Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809 (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0084 | Appendix IV to Report of Dr. Kevin Almeroth Regarding Non-Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809 (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0085 | Report of Dr. Kevin Almeroth Regarding Invalidity of U.S. Patent Nos. 8,752,101 and 8,909,809, dated October 24, 2025 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0086 | Appendix A to Opening Invalidity Report of Dr. Kevin Almeroth (Oct. 24, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0087 | Appendix B to Opening Invalidity Report of Dr. Kevin Almeroth (Oct. 24, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0088 | Appendix C to Opening Invalidity Report of Dr. Kevin Almeroth (Oct. 24, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0089 | Appendix D to Opening Invalidity Report of Dr. Kevin Almeroth (Oct. 24, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0090 | Reply Report of Dr. Kevin Almeroth Regarding Invalidity of U.S. Patent Nos. 8,752, 101 & 8,909,809 (Dec. 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0091 | Appendix A to Reply Invalidity Report of Dr. Kevin Almeroth (Dec. 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0092 | Appendix B to Reply Invalidity Report of Dr. Kevin Almeroth (Dec. 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0093 | Appendix C to Reply Invalidity Report of Dr. Kevin Almeroth (Dec. 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0094 | Appendix D to Reply Invalidity Report of Dr. Kevin Almeroth (Dec. 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0095 | *Expert Report of M. Ray Perryman, Ph.D., dated November 21, 2025, with Exhibits. | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0096 | *Supplemental Expert Report of M. Ray Perryman, dated January 22, 2026 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0097 | *Perryman Supplemental Exhibit 2.3: Foward Citation Analysis of DISH License Patents | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0098 | Opening Expert Report of Aviel D. Rubin, Ph.D., Regarding Infringement, dated October 24, 2025, with Exhibits. | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0099 | Rebuttal Expert Report of Dr. Aviel D. Rubin Regarding Validity of U.S. Patent Nos. 8,752,101 and 8,909,809 and Exhibits | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0100 | Reply Expert Report of Dr. Aviel D. Rubin Regarding Infringement of U.S. Patent Nos. 8,752,101 and 8,909,809 and Exhibits | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0101 | Expert Report of Christopher A. Vellturo, Ph.D., dated October 24, 2025, with Exhibits. | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0102 | Supplement to Opening Expert Report of Christopher A. Vellturo, Ph.D., dated November 18, 2025. | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0103 | Second Supplement to Opening Expert Report of Christopher A. Vellturo, Ph.D., dated December 1, 2025 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0104 | Reply Expert Report of Christopher A. Vellturo, Ph.D. (December 19, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0105 | Supplemental Rebuttal Expert Report and Disclosure of Julie L. Davis with Attachments, dated December 11, 2025 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0106 | Index to Documents Considered in Forming Opinions - Received Subsequent to November 21, 2025, Supplemental Exhibit 2 to Davis Supplemental Expert Report and Disclosure (December 11, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0107 | NEC Agreement Summary Excluding Cross Licenses - Received Subsequent to November 21, 2025, Supplemental Appendix A to Davis Supplemental Expert Report and Disclosure (December 11, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0108 | Second Supplemental Rebuttal Expert Report and Disclosure of Julie L. Davis with Attachments, dated January 22, 2026 | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0109 | *Dish / DDBS / Sling / Peloton Agreement Adjustment for License Scope, Updated Exhibit 3 to Davis Second Supplemental Rebuttal Expert Report and Disclosure (January 22, 2026) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |

NEC v. Peloton - C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0110 | Rebuttal Expert Report and Disclosures of Julie R. Davis | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0111 | Curriculum Vitae of Julie L. Davis, Exhibit 1 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0112 | Index to Documents Considered in Forming Opinions, Exhibit 2 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0113 | *Dish / DDBS / Sling / Peloton Agreement Adjustment for License Scope, Exhibit 3 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0114 | Effective Royalty Rate Analysis, Exhibit 4 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0115 | Profitability Comparison Analysis, Exhibit 5 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0116 | Adjustments to Dr. Vellturo's Royalty Base, Exhibit 6 to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0117 | NEC Agreement Summary Excluding Cross Licenses, Appendix A to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0118 | NEC Agreement Summary – Cross Licenses, Appendix B to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0119 | Peloton Agreement Summary, Appendix C to Davis Rebuttal Expert Report and Disclosure (November 21, 2025) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0120 | Peloton's Responses to NEC's First Set of Common Interrogatories (Nos. 1-5) (dated Apr. 24, 2023) | | | 401-403; 403 (late); 802; 901 |
| DTX-0121 | Defendant Peloton Interactive, Inc.'s Fifth Set of Interrogatories to Plaintiff NEC Corporation (Nos. 16-22), dated September 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0122 | Defendant Peloton Interactive, Inc.'s Fifth Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0123 | Defendant Peloton Interactive, Inc.'s First Supplemental and Amended Responses to Plaintiff's Sixth Set of Interrogatories (No. 11), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0124 | Defendant Peloton Interactive, Inc.'s First Supplemental Responses to Plaintiff's Fifth Set of Interrogatories (Nos. 9-10), dated August 4, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0125 | Defendant Peloton Interactive, Inc.'s First Supplemental Responses to Plaintiff's First Set of Common Interrogatories (Nos. 1-5), dated August 4, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0126 | Defendant Peloton Interactive, Inc.'s Second Supplemental Responses to Plaintiff's First Set of Common Interrogatories (Nos. 1-5), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0127 | Defendant Peloton Interactive, Inc.'s First Supplemental Responses to Plaintiff's First Set of Interrogatories (Nos. 1-4), dated December 15, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0128 | Defendant Peloton Interactive, Inc.'s First Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated December 15, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0129 | Defendant Peloton Interactive, Inc.'s First Supplemental Responses to Plaintiff's Third Set of Interrogatories (No. 7), dated December 22, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0130 | Defendant Peloton Interactive, Inc.'s Fourth Supplemental Responses to Plaintiff's First Set of Interrogatories (Nos. 1-4), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0131 | Defendant Peloton Interactive, Inc.'s Fourth Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated August 13, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0132 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Eighth Set of Interrogatories (No. 14), dated September 19, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0133 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Fifth Set of Interrogatories (Nos. 9-10), dated March 28, 2024. | | | 401-403; 403 (late); 802; 901 |
| DTX-0134 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's First Set of Common Interrogatories (Nos. 1-5), dated April 24, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0135 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's First Set of Interrogatories (Nos. 1-4), dated April 24, 2023. | | | 401-403; 403 (late); 802; 901 |

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0136 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Fourth Set of Interrogatories (No. 8), dated December 27, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0137 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated July 7, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0138 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Seventh Set of Interrogatories (Nos. 12-13), dated August 4, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0139 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Sixth Set of Interrogatories (No. 11), dated July 30, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0140 | Defendant Peloton Interactive, Inc.'s Responses to Plaintiff's Third Set of Interrogatories (No. 7), dated October 26, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0141 | Defendant Peloton Interactive, Inc.'s Second Supplemental Responses to Plaintiff's Fifth Set of Interrogatories (Nos. 9-10), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0142 | Defendant Peloton Interactive, Inc.'s Second Supplemental Responses to Plaintiff's First Set of Interrogatories (Nos. 1-4), dated August 4, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0143 | Defendant Peloton Interactive, Inc.'s Second Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated December 22, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0144 | Defendant Peloton Interactive, Inc.'s Second Supplemental Responses to Plaintiff's Seventh Set of Interrogatories (Nos. 12-13), dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0145 | Defendant Peloton Interactive, Inc.'s Supplemental Disclosure of Unmarked Patented Articles Subject to 35 U.S.C. § 287, dated October 3, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0146 | Defendant Peloton Interactive, Inc.'s Third Supplemental Responses to Plaintiff's Second Set of Interrogatories (Nos. 5-6), dated August 4, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0147 | Defendant Peloton Interactive, Inc.'s Third Supplemental Responses to Plaintiff's First Set of Interrogatories (Nos. 1-4), dated August 13, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0148 | Peloton's Fifth Supplemental Responses to NEC's Second Set of Interrogatories (Nos. 5-6) (dated Oct. 3  2025) | | | 401-403; 403 (late); 802; 901 |
| DTX-0149 | Plaintiff's Fifth Set of Requests for Production of Documents and Things to Defendant (Nos. 82-87), dated June 16, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0150 | Plaintiff's Final Infringement Contentions, dated September 11, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0151 | Plaintiff's First Supplemental Objections and Responses to Defendant's Fifth Set of Interrogatories (Nos. 16-22), dated September 15, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0152 | Plaintiff's First Supplemental Objections and Responses to Defendant's First Set of Common Interrogatories (Nos. 1-5), dated August 29, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0153 | Plaintiff's First Supplemental Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-9), dated June 24, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0154 | Plaintiff's First Supplemental Objections and Responses to Defendant's Fourth Set of Interrogatories (Nos. 14-15), dated August 29, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0155 | Plaintiff's First Supplemental Objections and Responses to Defendant's Second Set of Interrogatories (No. 10), dated August 29, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0156 | Plaintiff's Objections and First Supplemental Responses to Defendant's Third Set of Interrogatories (Nos. 11-13), dated February 21, 2024. | | | 401-403; 403 (late); 802; 901 |
| DTX-0157 | Plaintiff's Objections and Responses to Defendant's Fifth Set of Interrogatories (Nos. 16-22), dated September 12, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0158 | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-9), dated November 8, 2023. | | | 401-403; 403 (late); 802; 901 |
| DTX-0159 | Plaintiff's Second Supplemental Objections and Responses to Defendants' First Set of Common Interrogatories (Nos. 1-5), dated September 15, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0160 | Plaintiff's Second Supplemental Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-9), dated September 15, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0161 | Plaintiff's Seventh Set of Interrogatories to Defendant (Nos. 12-13), dated June 16, 2025. | | | 401-403; 403 (late); 802; 901 |
| DTX-0162 | Stipulation of Partial Voluntary Dismissal and Agreement Not to Appeal, dated April 25, 2025. | | | 401-403; 403 (late); 802; 901 |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0163 | Japanese Patent App. No. 2009/253581 **& CERTIFIED TRANSLATION FORTHCOMING** | NEC_2022_DE_0000248 | NEC_2002_DE_0000288 | |
| DTX-0164 | Japanese Patent App. No. 2009/015262 **& CERTIFIED TRANSLATION FORTHCOMING** | NEC_2022_DE_0000674 | NEC_2022_DE_0000726 | |
| DTX-0165 | License Agreement - ███ and NEC 2006 | NEC_2022_DE_0002443 | NEC_2022_DE_0002461 | |
| DTX-0166 | Cross-Licensing Agreement Between ███ and NEC Corporation (Mar. 28, 2012) & Certified Translation | NEC_2022_DE_0002462 | NEC_2022_DE_0002465 | |
| DTX-0167 | NEC Patent Agreement with ███ dated January 27, 2023 | NEC_2022_DE_0002466 | NEC_2022_DE_0002482 | |
| DTX-0168 | Patent Cross License Agreement Between NEC and ███ | NEC_2022_DE_0002483 | NEC_2022_DE_0002504 | |
| DTX-0169 | Patent Cross License Agreement between NEC and ███ | NEC_2022_DE_0002505 | NEC_2022_DE_0002521 | |
| DTX-0170 | 2019 NEC ███ Patent Cross License Agreement (March 29, 2019) | NEC_2022_DE_0002522 | NEC_2022_DE_0002539 | |
| DTX-0171 | Patent Cross License Agreement between NEC and ███ | NEC_2022_DE_0002540 | NEC_2022_DE_0002554 | |
| DTX-0172 | Patent Cross License Agreement between NEC and ███ | NEC_2022_DE_0002555 | NEC_2022_DE_0002573 | |
| DTX-0173 | Patent License Agreement for 28 Mobile Products between NEC and ███ | NEC_2022_DE_0002574 | NEC_2022_DE_0002608 | |
| DTX-0174 | Patent License Agreement for Mobile Products, June 2004 | NEC_2022_DE_0002609 | NEC_2022_DE_0002623 | |
| DTX-0175 | Cross-Licensing Agreement Between NEC Corporation and ███ (Jan. 27, 2016) & Certified Translation | NEC_2022_DE_0002624 | NEC_2022_DE_0002633 | |
| DTX-0176 | Cross-Licensing Agreement Between NEC Corporation, NEC Electronics Corporation, and ███ (Jan. 1, 2009) & Certified Translation | NEC_2022_DE_0002634 | NEC_2022_DE_0002644 | |
| DTX-0177 | Cross-Licensing Agreement Between ███ and NEC Corporation (Feb. 15, 2006) & Certified Translation | NEC_2022_DE_0002645 | NEC_2022_DE_0002648 | |
| DTX-0178 | Research Report dated March 31, 2009 & CERTIFIED TRANSLATION | NEC_2022_DE_0004932 | NEC_2022_DE_0004960 | Unk (translation not provided) |
| DTX-0179 | Patent License Agreement between NEC and ███ dated October 6, 2023 | NEC_2022_DE_0218929 | NEC_2022_DE_0218949 | |
| DTX-0180 | *NEC Corp. v. Tone It Up, Inc* ., C.A. No. 22-988-CJB, NEC's Opening Brief in Support of Motion for Default Judgment (D. Del. Oct. 13, 2023) | NEC_2022_DE_0218950 | NEC_2022_DE_0219013 | 401-403; 802 |
| DTX-0181 | *NEC Corp. v. Tone It Up, Inc.* , C.A. No. 22-988-CJB, NEC's Motion for Default Judgment (D. Del. Oct. 13, 2023) | NEC_2022_DE_0219014 | NEC_2022_DE_0219017 | 401-403; 802 |
| DTX-0182 | *NEC Corp. v. Tone It Up, Inc* ., C.A. No. 22-988-CJB, Amended Judgment (D. Del. Sep. 5, 2023) | NEC_2022_DE_1091515 | XXXX | 401-403; 802 |
| DTX-0183 | *NEC Corp. v. Tone It Up, Inc.* , C.A. No. 22-988-CJB, Memorandum Order (D. Del. Sep. 5, 2023) | NEC_2022_DE_1091516 | NEC_2022_DE_1091519 | 401-403; 802 |
| DTX-0184 | *NEC Corp. v. Tone It Up, Inc.* , C.A. No. 22-988-CJB, Default Judgment (D. Del. Sep. 30, 2023) | NEC_2022_DE_1093763 | XXXX | 401-403; 802 |
| DTX-0185 | *NEC Corp. v. Tone It Up, Inc.* , C.A. No. 22-988-CJB, Order dated September 30, 2024. | | | 401-403; 403 (late); 802; 901 |
| DTX-0186 | Adaptive TCP Streaming dated 2011/02/23 | NEC_2022_DE_0221456 | NEC_2022_DE_0221467 | 401-403 |
| DTX-0187 | Video Streaming Control Based on Fluid Modeling of Video Packet (Japanese) & CERTIFIED TRANSLATION | NEC_2022_DE_0365827 | NEC_2022_DE_0365832 | Unk (translation not provided) |
| DTX-0188 | Best Paper Award to H. Yoshida, K. Nogami, and K. Satoda on "Proposal and Evaluation of Joint Rate Control for Stored Video Streaming," June 9, 2010 | NEC_2022_DE_0370299 | XXXX | |
| DTX-0189 | A Transparent Rate Adaptation Algorithm for Streaming Video over the Internet | NEC_2022_DE_0560826 | NEC_2022_DE_0560831 | 401-403 |
| DTX-0190 | Proposal and Evaluation of Joint Rate Control for Stored Video Streaming | NEC_2022_DE_0822031 | NEC_2022_DE_0822036 | |
| DTX-0191 | NEC Integrated Report 2019. | NEC_2022_DE_1048641 | NEC_2022_DE_1048708 | |
| DTX-0192 | NEC Corporation Patent 39 Licensing Program Streaming Media Portfolio, 2023 - 2024 | NEC_2022_DE_1054795 | NEC_2022_DE_1054803 | |
| DTX-0193 | Presentation NEC Labs America | NEC_2022_DE_1058169 | NEC_2022_DE_1058227 | |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0194 | NEC Patent License Agreement between NEC and ▮▮▮ dated December 6, 2024 | NEC_2022_DE_1064284 | NEC_2022_DE_1064299 | |
| DTX-0195 | Explanation of the Fairness and Reasonableness of HEVC Advance's Royalty Rates, November 12, 2018 | NEC_2022_DE_1066524 | NEC_2022_DE_1066571 | 401-403 |
| DTX-0196 | May 1, 2018 AVC Profile Chart, Revised June 8, 2018 | NEC_2022_DE_1067524 | XXXX | 401-403 |
| DTX-0197 | May 1, 2018 AVC Royalty Cap Chart, Revised June 8, 2018 | NEC_2022_DE_1067525 | XXXX | 401-403 |
| DTX-0198 | AAC Patent License Agreement 56 dated January 12, 2018 | NEC_2022_DE_1068586 | NEC_2022_DE_1068634 | 401-403 |
| DTX-0199 | HEVC Advanced Agreement Among 54 Licensors and Licensing Administrator Regarding the HEVC Standard | NEC_2022_DE_1068689 | NEC_2022_DE_1068729 | 401-403 |
| DTX-0200 | Agreement Among Licensor regarding the AVC Standard | NEC_2022_DE_1069279 | NEC_2022_DE_1069296 | 401-403 |
| DTX-0201 | HEVC Advance LLC Revenue & Distribution Forecast: 2019-2032 | NEC_2022_DE_1075504 | XXXX | 401-403 |
| DTX-0202 | HEVC Advance LLC Licensing Revenue and Distribution Forecast (2017–2026) | NEC_2022_DE_1076116 | XXXX | 401-403 |
| DTX-0203 | Unified AAC Quarterly Revenue Distribution Report (March 17, 2018) | NEC_2022_DE_1079160 | NEC_2022_DE_1079164 | 401-403 |
| DTX-0204 | Peloton Annual Report 2023 | NEC_2022_DE_1080666 | NEC_2022_DE_1080789 | |
| DTX-0205 | Peloton Quarterly Report - December 31, 2024 | NEC_2022_DE_1080790 | NEC_2022_DE_1080842 | |
| DTX-0206 | Peloton Quarterly Report - March 31, 2025 | NEC_2022_DE_1080843 | NEC_2022_DE_1080895 | |
| DTX-0207 | Peloton Annual Report - June 30, 2024 | NEC_2022_DE_1080896 | NEC_2022_DE_1081019 | |
| DTX-0208 | Akamai Product Brief: Adaptive Media Delivery | NEC_2022_DE_1081020 | NEC_2022_DE_1081021 | |
| DTX-0209 | Measuring Video Quality and Its Impact to Your Bottom Line: A Customer Innovation Story with WUAKI.TV, a Takuten company | NEC_2022_DE_1081022 | NEC_2022_DE_1081027 | |
| DTX-0210 | Akamai Press Release: New Study: Quality of OTT Video Streaming Experiences Directly Tied to Viewer Loyalty, Service Provider Success (June 20, 2017) | NEC_2022_DE_1081028 | NEC_2022_DE_1081031 | |
| DTX-0211 | Akamai White Paper: Understanding the Value of Consistency in OTT Video Delivery (October 2020) | NEC_2022_DE_1081032 | NEC_2022_DE_1081043 | |
| DTX-0212 | Akamai, Understanding the Value of Consistency in OTT Video Delivery, April 2019 | NEC_2022_DE_1081044 | NEC_2022_DE_1081054 | |
| DTX-0213 | Deposition of Hiroshi Yoshida taken on February 13, 2025 | NEC_2022_DE_1083093 | NEC_2022_DE_1083203 | 401-403; 802; Dep |
| DTX-0214 | Exhibit 1 - HIGHLY CONF AEO Hiroshi Yoshida - 02-13-2025 | NEC_2022_DE_1082986 | NEC_2022_DE_1083017 | |
| DTX-0215 | Exhibit 2 - HIGHLY CONF AEO Hiroshi Yoshida - 02-13-2025 | NEC_2022_DE_1083018 | NEC_2022_DE_1083067 | Unk (translation not provided) |
| DTX-0216 | Exhibit 3 - HIGHLY CONF AEO Hiroshi Yoshida - 02-13-2025 | NEC_2022_DE_1083068 | NEC_2022_DE_1083073 | |
| DTX-0217 | Exhibit 4 - HIGHLY CONF AEO Hiroshi Yoshida - 02-13-2025 | NEC_2022_DE_1083074 | NEC_2022_DE_1083087 | 401-403; 802; 901 |
| DTX-0218 | Exhibit 5 - HIGHLY CONF AEO Hiroshi Yoshida - 02-13-2025 | NEC_2022_DE_1083088 | NEC_2022_DE_1083092 | 401-403; 802; 901 |
| DTX-0219 | NEC Patent License Agreement 82 between NEC and ▮▮▮ | NEC_2022_DE_1083204 | NEC_2022_DE_1083219 | |
| DTX-0220 | NEC Patent License Agreement with ▮▮▮ dated June 23, 2025 | NEC_2022_DE_1083220 | NEC_2022_DE_1083235 | |
| DTX-0221 | *NEC Corp. v. Becker Pro. Dev. Corp* ., No. 4:24-cv-00647-O, Expert Report of Candice Cornelius (N.D. Tex. March 24, 2025) | NEC_2022_DE_1083236 | NEC_2022_DE_1083442 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0222 | *NEC v Becker* - Rubin Expert Report | NEC_2022_DE_1083489 | NEC_2022_DE_1083789 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0223 | Exhibit A - Rubin Curriculum Vitae | NEC_2022_DE_1083443 | NEC_2022_DE_1083466 | |
| DTX-0224 | Exhibit B - Tanenbaum - excerpt | NEC_2022_DE_1083467 | NEC_2022_DE_1083474 | 106; 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0225 | Exhibit C - Schul - excerpt | NEC_2022_DE_1083475 | NEC_2022_DE_1083478 | 106; 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0226 | Exhibit D - Kurose - excerpt | NEC_2022_DE_1083479 | NEC_2022_DE_1083484 | 106; 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0227 | Exhibit E - videojs http-streaming | NEC_2022_DE_1083485 | NEC_2022_DE_1083486 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0228 | Exhibit F - video-dev hlsjs | NEC_2022_DE_1083487 | NEC_2022_DE_1083488 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0229 | *NEC Corp. v. Becker Pro. Dev. Corp.* , No. 4:24-cv-00647-O, Rebuttal Expert Report of Dr. Aviel Rubin Regarding Invalidity (N.D. Tex. March 24, 2025) | NEC_2022_DE_1083792 | NEC_2022_DE_1084038 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0230 | Exhibit A - Rubin Rebuttal Report Materials Considered | NEC_2022_DE_1083790 | NEC_2022_DE_1083791 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0231 | *NEC Corp. v. Becker Pro. Dev. Corp.* , No. 4:24-cv-00647-O, Expert Report of Christopher Vellturo (N.D. Tex. Feb. 21, 2025) | NEC_2022_DE_1084039 | NEC_2022_DE_1084082 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0232 | Vellturo NEC Becker Report Exhibits | NEC_2022_DE_1084083 | NEC_2022_DE_1084125 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0233 | *NEC Corp. v. Becker Pro. Dev. Corp.* , No. 4:24-cv-00647-O, Shamos Rebuttal Non-Infringement Report (N.D. Tex. March 24, 2025) | NEC_2022_DE_1084534 | NEC_2022_DE_1084761 | 401-403; 703; 802; FRCP 26(a)(2) |

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0234 | *NEC Corp. v. Becker Pro. Dev. Corp.*, No. 4:24-cv-00647-O, Shamos Invalidity Report (N.D. Tex. Feb. 21, 2025) | NEC_2022_DE_1084126 | NEC_2022_DE_1084273 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0235 | Exhibit A - Shamos CV | NEC_2022_DE_1084274 | NEC_2022_DE_1084349 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0236 | Exhibit B - Shamos Materials Considered | NEC_2022_DE_1084350 | NEC_2022_DE_1084354 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0237 | Exhibit C - Shamos 779 Chart - Ellis II | NEC_2022_DE_1084355 | NEC_2022_DE_1084377 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0238 | Exhibit D - Shamos 779 Chart - Acharya | NEC_2022_DE_1084378 | NEC_2022_DE_1084406 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0239 | Exhibit E - Shamos 779 Chart - Kalmanje | NEC_2022_DE_1084407 | NEC_2022_DE_1084433 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0240 | Exhibit F - Shamos 809 Chart - Ogawa | NEC_2022_DE_1084434 | NEC_2022_DE_1084472 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0241 | Exhibit G - Shamos 809 Chart - Luo | NEC_2022_DE_1084473 | NEC_2022_DE_1084504 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0242 | Exhibit H - Shamos 809 Chart - Su | NEC_2022_DE_1084505 | NEC_2022_DE_1084533 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0243 | Exhibit I - Shamos Materials Considered | NEC_2022_DE_1084762 | NEC_2022_DE_1084766 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0244 | Exhibit J - Assignment History | NEC_2022_DE_1084767 | NEC_2022_DE_1084770 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0245 | Exhibit K - US 9,262,545 | NEC_2022_DE_1084771 | NEC_2022_DE_1084798 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0246 | Exhibit L - videojs, Adaptive Switching Behavior | NEC_2022_DE_1084799 | NEC_2022_DE_1084804 | 401-403; 703; 802; FRCP 26(a)(2) |
| DTX-0247 | Agreement Among Licensors 63 Regarding the AVC Standard | NEC_2022_DE_1090486 | NEC_2022_DE_1090503 | 401-403; 802; 901 |
| DTX-0248 | NEC Integrated Report 2024 | NEC_2022_DE_1090759 | NEC_2022_DE_1090810 | |
| DTX-0249 | LES High Tech Sector Royalty 80 Rate & Deal Terms Survey 2017 dated March 29, 2018 | NEC_2022_DE_1093771 | NEC_2022_DE_1093814 | |
| DTX-0250 | NEC Patent License Agreement between NEC and ▮▮▮ dated September 12, 2025 | NEC_2022_DE_1093815 | NEC_2022_DE_1093828 | |
| DTX-0251 | ▮▮▮ Financial Statements (▮▮▮▮▮▮ | NEC_2022_DE_1093829 | XXXX | |
| DTX-0252 | Email from S. Davis to T. Natsume & M. Giguere dated May 30, 2024 | NEC_2022_DE_1093830 | NEC_2022_DE_1093833 | 401-403; 802 |
| DTX-0253 | NEC Settlement Agreement between NEC and ▮▮▮▮▮ dated November 13, 2025 | NEC_2022_DE_1095376 | NEC_2022_DE_1095387 | |
| DTX-0254 | NEC Patent License and Release Agreement with ▮▮▮ dated November 19, 2025 | NEC_2022_DE_1095388 | NEC_2022_DE_1095400 | |
| DTX-0255 | NEC Patent License Agreement between NEC and ▮▮▮▮ dated November 25, 2025 | NEC_2022_DE_1095401 | NEC_2022_DE_1095412 | |
| DTX-0256 | Email from A. Wong to T. Natsume, J. Tempesta & A. Hass dated September 10, 2024 ▮▮▮▮▮ | NEC_2022_DE_1095413 | NEC_2022_DE_1095416 | 401-403; 802 |
| DTX-0257 | *Strathern, Marilyn, 'Improving Ratings': Audit in the British University System, European Review, Vol. 5, No. 3, 305-321 (1997). | PTON_PERRYMAN_000001 | PTON_PERRYMAN_000017 | 401-403; 403 (late); 703; 802 |
| DTX-0258 | *201 Types of Applications [R-07.2015], Manual of Patent Examination Procedure, U.S. Patent and Trademark Office, (n.d.), https://www.uspto.gov/web/offices/pac/mpep/s201.html#ch200_d1ff70_2cc79_146. | PTON_PERRYMAN_000018 | PTON_PERRYMAN_000051 | 401-403; 403 (late); 703; 802 |
| DTX-0259 | *905 Cooperative Patent Classification [R-07.2015], U.S. Patent and Trademark Office, (n.d.), https://www.uspto.gov/web/offices/pac/mpep/s905.html. | PTON_PERRYMAN_000052 | PTON_PERRYMAN_000057 | 401-403; 403 (late); 703; 802 |
| DTX-0260 | *Bessen, James, The Value of U.S. Patents by Owner and Patent Characteristics, Research Policy | PTON_PERRYMAN_000058 | PTON_PERRYMAN_000099 | 401-403; 403 (late); 703; 802 |
| DTX-0261 | *Black's Law Dictionary, 6th Ed, (1991), St. Paul, MN: West Publishing Co. | PTON_PERRYMAN_000100 | PTON_PERRYMAN_000102 | 401-403; 403 (late); 703; 802 |
| DTX-0262 | *Fischer, Timo and Jan Leidinger, Testing Patent Value Indicators on Directly Observed Patent Value – An Empirical Analysis of Ocean Tomo Patent Auctions, Research Policy, Vol. 43 (2014). | PTON_PERRYMAN_000103 | PTON_PERRYMAN_000113 | 401-403; 403 (late); 703; 802 |
| DTX-0263 | *Gambardella, Alfonso, Dietmar Harhoff, and Bart Verspagen, The Value of Patents, European Management Review, Vol. 5, Is. 2 (Summer 2008). | PTON_PERRYMAN_000114 | PTON_PERRYMAN_000154 | 401-403; 403 (late); 703; 802 |
| DTX-0264 | *Hall, Bronwyn H., Adam Jaffe, and Manuel Trajtenberg, Market Value and Patent Citations, The RAND Journal of Economics, Vol. 36, No.1 (Spring 2005). | PTON_PERRYMAN_000155 | PTON_PERRYMAN_000204 | 401-403; 403 (late); 703; 802 |
| DTX-0265 | *Hall, Bronwyn H., Adam B. Jaffe, and Manuel Trajtenberg, The NBER Patent Citations Data File: Lessons, Insights and Methodological Tools, NBER Working Paper 8498, 2001. | PTON_PERRYMAN_000205 | PTON_PERRYMAN_000278 | 401-403; 403 (late); 703; 802 |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0266 | *Harhoff, Dietmar, Fredric M. Scherer, and Katrin Vopel, Citations, Family Size, Opposition, and the Value of Patent Rights, Research Policy, September 2003. | PTON_PERRYMAN_000279 | PTON_PERRYMAN_000300 | 401-403; 403 (late); 703; 802 |
| DTX-0267 | *Jaffe, Adam B. and Gaetan de Rassenfosse, Patent Citation Data in Social Science Research: Overview and Best Practices, Journal of the Association for Information Science and Technology, Vol. 68, No. 6, (2017). | PTON_PERRYMAN_000301 | PTON_PERRYMAN_000315 | 401-403; 403 (late); 703; 802 |
| DTX-0268 | *Lanjouw, Jean O. and Mark Schankerman, Stylized Facts of Patent Litigation: Value, Scope, and Ownership, NBER Working Paper Series, December 1997, https://www.nber.org/system/files/working_papers/w6297/w6297.pdf. | PTON_PERRYMAN_000316 | PTON_PERRYMAN_000358 | 401-403; 403 (late); 703; 802 |
| DTX-0269 | *Lin, Zhang, Huang Ying, and Chen Lixin, Patent Citation Inflation: The Phenomena, Measurement Methods, and Proposed Solutions Based on Relative Citation Indicators, STI 2018 Conference Proceedings. | PTON_PERRYMAN_000359 | PTON_PERRYMAN_000371 | 401-403; 403 (late); 703; 802 |
| DTX-0270 | *Malaspina, Peter A., Patent Citation Analysis and Patent Damages, Chicago-Kent Journal of Intellectual Property, Vol. 18:1, 2019. | PTON_PERRYMAN_000372 | PTON_PERRYMAN_000389 | 401-403; 403 (late); 703; 802 |
| DTX-0271 | *Dr. Peter A. Malaspina, *Patent Citation Analysis and Patent Damages*, 18 Chicago-Kent J. of Intell. Prop. 323 | PTON_PERRYMAN_000372 | PTON_PERRYMAN_000389 | 401-403; 403 (late); 703; 802 |
| DTX-0272 | *NEC at a Glance, NEC Corporation, (n.d.), https://www.nec.com/en/global/about/fact/index.html#anc-section01. | PTON_PERRYMAN_000390 | PTON_PERRYMAN_000400 | 401-403; 403 (late); 703; 802 |
| DTX-0273 | *Patent Family, IamIP Sverige AB, (n.d.), https://iamip.com/wiki/patent-family/. | PTON_PERRYMAN_000401 | PTON_PERRYMAN_000403 | 401-403; 403 (late); 703; 802 |
| DTX-0274 | *Patent Public Search Basic (PPUBS Basic), U.S. Patent and Trademark Office, (n.d.), https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html. | PTON_PERRYMAN_000404 | XXXX | 401-403; 403 (late); 703; 802 |
| DTX-0275 | *Patent Terminology: Patent Family, Baker Library, Harvard Business School, May 8, 2024, https://asklib.library.hbs.edu/faq/267630. | PTON_PERRYMAN_000405 | PTON_PERRYMAN_000405 | 401-403; 403 (late); 703; 802 |
| DTX-0276 | *Mohn, Elizabeth, Peloton Interactive, Inc., 2025, https://www.ebsco.com/researchstarters/business-and-management/peloton-interactive-inc. | PTON_PERRYMAN_000530 | PTON_PERRYMAN_000536 | 401-403; 403 (late); 703; 802 |
| DTX-0277 | *The Peloton Story, Peloton Interactive, Inc., (n.d.), https://www.onepeloton.com/company. | PTON_PERRYMAN_000537 | PTON_PERRYMAN_000545 | |
| DTX-0278 | *Profile, NEC Corporation, (n.d.), https://www.nec.com/en/global/about/profile.html. | PTON_PERRYMAN_000546 | PTON_PERRYMAN_000549 | 401-403; 403 (late); 703; 802 |
| DTX-0279 | *Schankerman, Mark, How Valuable is Patent Protection? Estimates by Technology Field, The RAND Journal of Economics, Vol. 29, No. 1 (Spring 1998). | PTON_PERRYMAN_000550 | PTON_PERRYMAN_000581 | 401-403; 403 (late); 703; 802 |
| DTX-0280 | *Vigil, Robert L., and Xiao Zhang, Apportioning Value in Patent Portfolio License and Sale Agreements, les Nouvelles, (December 2020). | PTON_PERRYMAN_000645 | PTON_PERRYMAN_000665 | 401-403; 403 (late); 703; 802 |
| DTX-0281 | *Werner, Dan and Huy Dang, Patent Valuation Using Citations: A Review and Sensitivity Analysis, Journal of Business Valuation and Economic Loss Analysis, Vol. 16, No. 1 (2021), https://doi.org/10.1515/jbvela-2020-0025. | PTON_PERRYMAN_000666 | PTON_PERRYMAN_000672 | 401-403; 403 (late); 703; 802 |
| DTX-0282 | *What Are Good Indicators of Patent Value?, European Patent Office, (n.d.), https://www.epo.org/en/service-support/faq/searching-patents/patentmanagement-and-valuation/what-are-good-indicators. | PTON_PERRYMAN_000673 | XXXX | 401-403; 403 (late); 703; 802 |
| DTX-0283 | Peloton Interactive, Inc. S-1 Registration Statement | PTON-NEC-00000001 | PTON-NEC-00000457 | |
| DTX-0284 | Peloton Interactive, Inc. S-1 Registration Statement | PTON-NEC-00000458 | PTON-NEC-00000675 | |
| DTX-0285 | Peloton Interactive, Inc. S-1 Registration Statement | PTON-NEC-00000676 | PTON-NEC-00000896 | |
| DTX-0286 | Peloton Interactive, Inc. S-1 Registration Statement | PTON-NEC-00000897 | PTON-NEC-00001094 | |
| DTX-0287 | Peloton Interactive, Inc. S-1 Registration Statement | PTON-NEC-00001095 | PTON-NEC-00001681 | |
| DTX-0288 | Peloton Interactive, Inc. S-1 filed on August 27, 2019 | | | |
| DTX-0289 | Peloton Interactive, Inc. Amendment No. 1 to S-1 Registration Statement | PTON-NEC-00001682 | PTON-NEC-00002504 | |
| DTX-0290 | Peloton Interactive, Inc. Amendment No. 2 to S-1 Registration Statement | PTON-NEC-00002505 | PTON-NEC-00002727 | |
| DTX-0291 | Peloton Interactive, Inc. Amendment No. 3 to S-1 Registration Statement | PTON-NEC-00002728 | PTON-NEC-00002936 | |
| DTX-0292 | Initial Public Offering of shares of Class A Common Stock | PTON-NEC-00002937 | PTON-NEC-00003138 | |
| DTX-0293 | Peloton Interactive, Inc. Form 10-Q Sept. 30, 2019 | PTON-NEC-00003139 | PTON-NEC-00003241 | |
| DTX-0294 | Peloton Interactive, Inc. Form 10-Q Dec. 31, 2019 | PTON-NEC-00003242 | PTON-NEC-00003305 | |
| DTX-0295 | Peloton Interactive, Inc. Form 10-Q Mar. 31, 2020 | PTON-NEC-00003306 | PTON-NEC-00003375 | |

NEC v. Peloton – C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0296 | Peloton Interactive, Inc. Form 10-K for the fiscal year ended June 30, 2020 | PTON-NEC-00003376 | PTON-NEC-00003493 | |
| DTX-0297 | Peloton Interactive, Inc. Form 10-Q Sept. 30, 2020 | PTON-NEC-00003494 | PTON-NEC-00003558 | |
| DTX-0298 | Peloton Interactive, Inc. Form 10-Q Dec. 31, 2020 | PTON-NEC-00003824 | PTON-NEC-00003988 | |
| DTX-0299 | Peloton Interactive, Inc. Form 10-Q Mar. 31, 2021 | PTON-NEC-00003989 | PTON-NEC-00004074 | |
| DTX-0300 | Peloton Interactive, Inc. Form 10-K for the fiscal year ended June 30, 2021 | PTON-NEC-00004075 | PTON-NEC-00004192 | |
| DTX-0301 | Peloton Interactive, Inc. Form 10-Q Sept. 30, 2021 | PTON-NEC-00004193 | PTON-NEC-00004267 | |
| DTX-0302 | Peloton Annual Report 2020 | PTON-NEC-00003581 | PTON-NEC-00003676 | |
| DTX-0303 | Peloton Proxy Statement 2020 | PTON-NEC-00003677 | PTON-NEC-00003756 | |
| DTX-0304 | Peloton First Quarter Fiscal 2020 Financial Results | PTON-NEC-00003779 | XXXX | |
| DTX-0305 | Peloton Final Shareholder Letter Quarter 1 2020 | PTON-NEC-00003559 | PTON-NEC-00003580 | |
| DTX-0306 | Peloton Shareholder Letter 2020 Quarter 2 | PTON-NEC-00003757 | PTON-NEC-00003778 | |
| DTX-0307 | Shareholder Letter 2020 Quarter 3 | PTON-NEC-00003803 | PTON-NEC-00003823 | |
| DTX-0308 | Peloton 2020 Shareholder Letter Quarter 4 | PTON-NEC-00003780 | PTON-NEC-00003802 | |
| DTX-0309 | Peloton Shareholder Letter 2021 Quarter 1 | PTON-NEC-00004476 | PTON-NEC-00004495 | |
| DTX-0310 | Peloton Earnings Call 2021 Quarter 2, Edited Transcript (February 4, 2021) | PTON-NEC-00004496 | PTON-NEC-00004511 | |
| DTX-0311 | Peloton Earnings Call 2021 Quarter 3, Edited Transcript (May 6, 2021) | PTON-NEC-00004512 | PTON-NEC-00004526 | |
| DTX-0312 | Peloton Earnings Call 2021 Quarter 4, Edited Transcript (August 26, 2021) | PTON-NEC-00004527 | PTON-NEC-00004542 | |
| DTX-0313 | Shareholder Letter 2021 Quarter 2 | PTON-NEC-00004543 | PTON-NEC-00004563 | |
| DTX-0314 | Shareholder Letter 2021 Quarter 3 | PTON-NEC-00004564 | PTON-NEC-00004582 | |
| DTX-0315 | Shareholder Letter 2021 Quarter 4 | PTON-NEC-00004583 | PTON-NEC-00004603 | |
| DTX-0316 | Peloton Interactive, Inc. Form 10-Q Dec. 31, 2021 | PTON-NEC-00004604 | PTON-NEC-00004867 | |
| DTX-0317 | Peloton Interactive, Inc. Form 10-Q Mar. 31, 2022 | PTON-NEC-00004868 | PTON-NEC-00004919 | |
| DTX-0318 | Peloton Interactive, Inc. Form 10-K for the fiscal year ended June 30, 2022 | PTON-NEC-00004920 | PTON-NEC-00005278 | |
| DTX-0319 | Peloton Interactive, Inc. Form 10-Q Sept. 30, 2022 | PTON-NEC-00005279 | PTON-NEC-00005332 | |
| DTX-0320 | Peloton 2021 Proxy Statement | PTON-NEC-00004268 | PTON-NEC-00004355 | |
| DTX-0321 | Peloton 2021 Annual Report | PTON-NEC-00004356 | PTON-NEC-00004475 | |
| DTX-0322 | Peloton Lender Presentation (May 2022) | PTON-NEC-00005333 | PTON-NEC-00005367 | |
| DTX-0323 | Peloton Shareholder Letter 2022 Quarter 3 | PTON-NEC-00005368 | PTON-NEC-00005379 | |
| DTX-0324 | Peloton Shareholder Letter 2022 Quarter 4 | PTON-NEC-00005380 | PTON-NEC-00005394 | |
| DTX-0325 | Peloton Annual Report 2022 | PTON-NEC-00005395 | PTON-NEC-00005518 | |
| DTX-0326 | Peloton Proxy Statement 2022 | PTON-NEC-00005519 | PTON-NEC-00005609 | |
| DTX-0327 | Peloton Earnings Call 2022 Quarter 1, Edited Transcript (November 4, 2021) | PTON-NEC-00005610 | PTON-NEC-00005624 | |
| DTX-0328 | Peloton Earnings Call 2022 Quarter 2, Edited Transcript (February 8, 2022) | PTON-NEC-00005625 | PTON-NEC-00005639 | |
| DTX-0329 | Peloton Earnings Call 2022 Quarter 3, Edited Transcript (May 10, 2022) | PTON-NEC-00005640 | PTON-NEC-00005653 | |
| DTX-0330 | Peloton Earnings Call 2022 Quarter 4, Edited Transcript (August 25, 2022) | PTON-NEC-00005654 | PTON-NEC-00005667 | |
| DTX-0331 | Shareholder Letter 2022 Quarter 1 | PTON-NEC-00005668 | PTON-NEC-00005686 | |
| DTX-0332 | Shareholder Letter 2022 Quarter 2 | PTON-NEC-00005687 | PTON-NEC-00005708 | |
| DTX-0333 | Peloton Interactive, Inc. Form 10-Q Dec. 31, 2022 | PTON-NEC-00005709 | PTON-NEC-00005759 | |
| DTX-0334 | Peloton Earnings Call 2023 Quarter 1, Edited Transcript (November 3, 2023) | PTON-NEC-00005760 | PTON-NEC-00005774 | |
| DTX-0335 | Peloton Earnings Call 2023 Quarter 2, Edited Transcript (February 1, 2023) | PTON-NEC-00005775 | PTON-NEC-00005787 | |
| DTX-0336 | Shareholder Letter 2023 Quarter 3 | PTON-NEC-00005788 | PTON-NEC-00005800 | |
| DTX-0337 | Shareholder Letter 2023 Quarter 1 | PTON-NEC-00005801 | PTON-NEC-00005813 | |
| DTX-0338 | Shareholder Letter 2023 Quarter 2 | PTON-NEC-00005814 | PTON-NEC-00005827 | |
| DTX-0339 | Peloton Shareholder Letter 2020 Quarter 1 | PTON-NEC-00215944 | PTON-NEC-00215965 | |
| DTX-0340 | Peloton Shareholder Letter 2020 Quarter 2 | PTON-NEC-00215966 | PTON-NEC-00215987 | |
| DTX-0341 | Peloton Shareholder Letter 2020 Quarter 3 | PTON-NEC-00215988 | PTON-NEC-00216008 | |
| DTX-0342 | Peloton Shareholder Letter 2020 Quarter 4 | PTON-NEC-00216009 | PTON-NEC-00216031 | |
| DTX-0343 | Peloton Shareholder Letter 2021 Quarter 1 | PTON-NEC-00216032 | PTON-NEC-00216051 | |
| DTX-0344 | Peloton Shareholder Letter 2021 Quarter 2 | PTON-NEC-00216052 | PTON-NEC-00216072 | |
| DTX-0345 | Peloton Shareholder Letter 2021 Quarter 3 | PTON-NEC-00216073 | PTON-NEC-00216091 | |
| DTX-0346 | Peloton Shareholder Letter 2021 Quarter 4 | PTON-NEC-00216092 | PTON-NEC-00216112 | |
| DTX-0347 | Peloton Shareholder Letter 2022 Quarter 1 | PTON-NEC-00216113 | PTON-NEC-00216131 | |
| DTX-0348 | Peloton Shareholder Letter 2022 Quarter 2 | PTON-NEC-00216132 | PTON-NEC-00216153 | |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0349 | Peloton Shareholder Letter 2022 Quarter 3 | PTON-NEC-00216154 | PTON-NEC-00216165 | |
| DTX-0350 | Peloton Shareholder Letter 2022 Quarter 4 | PTON-NEC-00216166 | PTON-NEC-00216180 | |
| DTX-0351 | Peloton Shareholder Letter 2023 Quarter 1 | PTON-NEC-00216181 | PTON-NEC-00216193 | |
| DTX-0352 | Peloton Shareholder Letter 2023 Quarter 2 | PTON-NEC-00216194 | PTON-NEC-00216207 | |
| DTX-0353 | Peloton Shareholder Letter 2023 Quarter 3 | PTON-NEC-00216208 | PTON-NEC-00216220 | |
| DTX-0354 | Peloton Shareholder Letter 2023 Quarter 4 | PTON-NEC-00216221 | PTON-NEC-00216236 | |
| DTX-0355 | Peloton Shareholder Letter 2024 Quarter 1 | PTON-NEC-00216237 | PTON-NEC-00216249 | |
| DTX-0356 | Peloton Shareholder Letter 2024 Quarter 2 | PTON-NEC-00216250 | PTON-NEC-00216262 | |
| DTX-0357 | Annual Report, Peloton Interactive, Inc., August 22, 2024. | PTON_PERRYMAN_000406 | PTON_PERRYMAN_000529 | |
| DTX-0358 | Peloton Interactive, Inc. Form 10-K for the fiscal year ended June 30, 2025 | NEC_2022_DE_1093835 | NEC_2022_DE_1093949 | |
| DTX-0359 | VOD Workflow v2 Overview | PTON-NEC-00006334 | PTON-NEC-00006338 | |
| DTX-0360 | Peloton System Architecture Graphic | PTON-NEC-00006508 | PTON-NEC-00006509 | |
| DTX-0361 | Peloton Video Streaming Security Overview | PTON-NEC-00006832 | PTON-NEC-00006835 | |
| DTX-0362 | Peloton Video Streaming Security Overview | PTON-NEC-00006836 | PTON-NEC-00006845 | |
| DTX-0363 | Akamai Service Order Form, Order ID 232850, effective date April 1, 2019 | PTON-NEC-00009887 | PTON-NEC-00009892 | |
| DTX-0364 | Akamai Terms and Conditions sheet and Service Order Form, effective date June 23, 2015 | PTON-NEC-00009899 | PTON-NEC-00009902 | |
| DTX-0365 | Akamai Service Order Form, Order ID 83284, effective date October 1, 2013 | PTON-NEC-00009903 | PTON-NEC-00009905 | |
| DTX-0366 | Akamai Service Order Form, Order ID 151966, effective date May 19, 2016 | PTON-NEC-00009906 | PTON-NEC-00009908 | |
| DTX-0367 | Akamai Service Order Form, Order ID 184883, effective date July 1, 2017 | PTON-NEC-00009913 | PTON-NEC-00009916 | |
| DTX-0368 | Amazon Web Services Private Pricing Addendum | PTON-NEC-00009940 | PTON-NEC-00009945 | |
| DTX-0369 | Amazon Web Services Professional Services - Statement of Work, dated February 19, 2019 | PTON-NEC-00009946 | PTON-NEC-00009951 | |
| DTX-0370 | JW Player Enterprise Order Form | PTON-NEC-00009955 | PTON-NEC-00009957 | |
| DTX-0371 | Amazon Web Services Private Pricing Addendum, dated December 19, 2019 | PTON-NEC-00009958 | PTON-NEC-00009962 | |
| DTX-0372 | Akamai Beta Service Order Form Order ID 257195, effective date March 11, 2020 | PTON-NEC-00009963 | PTON-NEC-00009966 | |
| DTX-0373 | JW Player Enterprise Order Form | PTON-NEC-00009967 | PTON-NEC-00009969 | |
| DTX-0374 | Akamai Service Order Form, Order ID 268911, effective date October 1, 2020 | PTON-NEC-00009970 | PTON-NEC-00009974 | |
| DTX-0375 | Amazon Web Services Private Pricing Addendum (November 2020) | PTON-NEC-00009975 | PTON-NEC-00009979 | |
| DTX-0376 | Peloton MFi License, dated December 2, 2020 | PTON-NEC-00009980 | PTON-NEC-00009996 | 401-403 |
| DTX-0377 | Peloton JW Player Enterprise Order Form | PTON-NEC-00009997 | PTON-NEC-00009999 | |
| DTX-0378 | TMA Video Authorization and Release | PTON-NEC-00010000 | XXXX | 401-403 |
| DTX-0379 | Peloton GymKit Supplement to Contract, Mfi Development License | PTON-NEC-00010001 | PTON-NEC-00010004 | 401-403 |
| DTX-0380 | Akamai Service Order Form, Order ID 127032, effective date June 23, 2015 | PTON-NEC-00010005 | PTON-NEC-00010007 | |
| DTX-0381 | AWS Enterprise Discount Program Addendum | PTON-NEC-00010008 | PTON-NEC-00010012 | |
| DTX-0382 | Amendment with Amazon Web Services Private Pricing Addendum, dated July 28, 2021 | PTON-NEC-00010013 | PTON-NEC-00010019 | |
| DTX-0383 | Purchase Order with JW Player - Longtail Ad Solutions Inc. | PTON-NEC-00010053 | PTON-NEC-00010055 | |
| DTX-0384 | Software Development Agreement with Apple Inc | PTON-NEC-00010056 | PTON-NEC-00010060 | |
| DTX-0385 | Peloton and Akamai Addendum Order ID 320579 | PTON-NEC-00010068 | PTON-NEC-00010073 | |
| DTX-0386 | Akamai Service Order Form Order ID 320579, effective date November 1, 2022 | PTON-NEC-00010074 | PTON-NEC-00010079 | |
| DTX-0387 | Amazon Web Services and Peloton Private Pricing Addendum (November 2022) | PTON-NEC-00010080 | PTON-NEC-00010086 | |
| DTX-0388 | Amendment No. 1 to Amazon Web Services Statement of Work, dated November 22, 2022 | PTON-NEC-00010087 | PTON-NEC-00010088 | |
| DTX-0389 | Akamai Service Order Form Order ID 323470, effective date December 1, 2022 | PTON-NEC-00010089 | PTON-NEC-00010091 | |
| DTX-0390 | JW Player Order Form 2023 | PTON-NEC-00010105 | PTON-NEC-00010109 | |
| DTX-0391 | Akamai Service Order Form, Order ID 328139, effective date February 17, 2023 | PTON-NEC-00010110 | PTON-NEC-00010112 | |
| DTX-0392 | ExoPlayer \| Android Developers | PTON-NEC-00010226 | PTON-NEC-00010226 | 401-403; 802; 901 |
| DTX-0393 | VisualOn License Agreement (2013) | PTON-NEC-00010276 | | 401-403 |
| DTX-0394 | Voice of the Member (November 2020) | PTON-NEC-00018398 | PTON-NEC-00018411 | |
| DTX-0395 | Voice of the Member (April 2019) | PTON-NEC-00018550 | PTON-NEC-00018561 | |
| DTX-0396 | Akami Invoice dated November 12, 2020 | PTON-NEC-00018934 | PTON-NEC-00018936 | |

NEC v. Peloton - C.A. No. 22-987
**Defendant's Trial Exhibit List**

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0397 | Akami Invoice dated June 11, 2021 | PTON-NEC-00018974 | PTON-NEC-00018976 | |
| DTX-0398 | Peloton Cycle Presentation Customer Satisfaction Wave 2 results | PTON-NEC-00027907 | PTON-NEC-00027960 | |
| DTX-0399 | Peloton Cycle Customer Satisfaction Wave 2 Results (Oct. 30, 2017) | PTON-NEC-00042998 | PTON-NEC-00043051 | |
| DTX-0400 | Peloton Beta User Survey, Date Created: September 15, 2016 | PTON-NEC-00043948 | PTON-NEC-00043961 | |
| DTX-0401 | Email from F. Yong copying D. Crossley dated May 23, 2019 | PTON-NEC-00060700 | XXXX | |
| DTX-0402 | Peloton Annual Member Survey (January 2018) | PTON-NEC-00124857 | PTON-NEC-00124909 | |
| DTX-0403 | Email from E. Perez BCC to K. McNabb dated February 9, 2021 regarding Android Mobile: Player Migration Design Documentation | PTON-NEC-00128201 | XXXX | |
| DTX-0404 | Peloton Social Personas + Personal Connections, User Research 2021 | PTON-NEC-00129921 | PTON-NEC-00130007 | |
| DTX-0405 | Email from K. Jiang to K. Winn dated December 13, 2018 Re: Video Buffer | PTON-NEC-00144762 | PTON-NEC-00144763 | |
| DTX-0406 | R. Santos comment on Streaming Optimization Live dated January 28, 2022 | PTON-NEC-00146603 | XXXX | |
| DTX-0407 | Homecoming 2022 Day 1 Media Coverage Report | PTON-NEC-00147172 | XXXX | |
| DTX-0408 | SEC-Income Statement - 5.16 5.30pm with slip sheet | PTON-NEC-00150523 | XXXX | |
| DTX-0409 | Sub Margin (Fixed vs. Variable Analysis) with slip sheet | PTON-NEC-00154002 | XXXX | |
| DTX-0410 | In-Class Experience Exploratory Study (September 2021) | PTON-NEC-00176812 | PTON-NEC-00176890 | |
| DTX-0411 | Egg Strategy Peloton Path to Purchase Report, December 14, 2016 | PTON-NEC-00176891 | PTON-NEC-00177002 | |
| DTX-0412 | NPAW Consulting Peloton Data Review Report: The Video Intelligence Company (March 2021) | PTON-NEC-00178427 | PTON-NEC-00178460 | |
| DTX-0413 | Akamai Terms and Conditions, July 2019 | PTON-NEC-00178789 | PTON-NEC-00178791 | |
| DTX-0414 | Invoice #22110009250 Approved | PTON-NEC-00179532 | PTON-NEC-00179533 | |
| DTX-0415 | Akamai Service Order Form Order ID 83284, effective date October 1, 2013 | PTON-NEC-00186136 | PTON-NEC-00186138 | |
| DTX-0416 | Akamai Service Order Form Order ID 268911, effective date October 1, 2020 | PTON-NEC-00186941 | PTON-NEC-00186945 | |
| DTX-0417 | Akamai Service Order Form Order ID 232850, effective date April 1, 2019 | PTON-NEC-00188009 | PTON-NEC-00188014 | |
| DTX-0418 | Email from D. Crossley to E. Kiss dated September 18, 2020 Re: JK J Balvin check | PTON-NEC-00188984 | PTON-NEC-00188986 | |
| DTX-0419 | Redline with tracked changes - Akamai Peloton Advanced Support | PTON-NEC-00191286 | PTON-NEC-00191290 | |
| DTX-0420 | Akamai Adaptive Media Delivery Solutions: Product Brief | PTON-NEC-00192979 | PTON-NEC-00192981 | |
| DTX-0421 | Peloton Board of Directors Quarter 4 Preliminary Results & 2022 Budget Update, dated July 20, 2021 | PTON-NEC-00196529 | PTON-NEC-00196560 | |
| DTX-0422 | US Monthly Subscription Pricing with slip sheet | PTON-NEC-00199367 | XXXX | 401-403 (updated version produced as PTON-NEC-00220498) |
| DTX-0423 | US Monthly Income Statement July 2016 - Dec 2023 with slip sheet | PTON-NEC-00199368 | XXXX | |
| DTX-0424 | US Sub Revenue July 2016 - July 2022 with slip sheet | PTON-NEC-00199369 | XXXX | |
| DTX-0425 | Financial Data Analytics requests with slip sheet | PTON-NEC-00210263 | XXXX | |
| DTX-0426 | Peloton - Premium Services & Support Monthly Review, June 2022 | PTON-NEC-00214925 | PTON-NEC-00214964 | |
| DTX-0427 | Akamai Premium Monthly Service Report (September 2022) | PTON-NEC-00214882 | PTON-NEC-00214924 | |
| DTX-0428 | Akamai Premium Monthly Service Report (March 2022 Part 2) | PTON-NEC-00214965 | PTON-NEC-00214988 | |
| DTX-0429 | Akamai Premium Monthly Service Report (October 2022) | PTON-NEC-00214989 | PTON-NEC-00215029 | |
| DTX-0430 | Akamai Premium Monthly Service Report (August 2022) | PTON-NEC-00215030 | PTON-NEC-00215068 | |
| DTX-0431 | Akamai Premium Monthly Service Report (June 2023) | PTON-NEC-00215069 | PTON-NEC-00215111 | |
| DTX-0432 | Akamai Premium Monthly Service Report (December 2022) | PTON-NEC-00215112 | PTON-NEC-00215148 | |
| DTX-0433 | Akamai Premium Monthly Service Report (May 2023) | PTON-NEC-00215149 | PTON-NEC-00215192 | |
| DTX-0434 | Akamai Premium Monthly Service Report (November 2023) | PTON-NEC-00215193 | PTON-NEC-00215236 | |
| DTX-0435 | Akamai Premium Monthly Service Report (December 2023) | PTON-NEC-00215237 | PTON-NEC-00215276 | |
| DTX-0436 | Akamai Premium Monthly Service Report (February 2022) | PTON-NEC-00215277 | PTON-NEC-00215313 | |
| DTX-0437 | Akamai Premium Monthly Service Report (January 2024) | PTON-NEC-00215314 | PTON-NEC-00215351 | |
| DTX-0438 | Akamai Premium Monthly Service Report (October 2023) | PTON-NEC-00215352 | PTON-NEC-00215394 | |
| DTX-0439 | Akamai Premium Monthly Service Report (September 2023) | PTON-NEC-00215395 | PTON-NEC-00215437 | |
| DTX-0440 | Akamai Premium Monthly Service Report (March 2024) | PTON-NEC-00215438 | PTON-NEC-00215477 | |
| DTX-0441 | Akamai Premium Monthly Service Report (May 2022) | PTON-NEC-00215478 | PTON-NEC-00215517 | |
| DTX-0442 | Akamai Premium Monthly Service Report (August 2023) | PTON-NEC-00215518 | PTON-NEC-00215560 | |
| DTX-0443 | Akamai Premium Monthly Service Report (April 2023) | PTON-NEC-00215561 | PTON-NEC-00215602 | |
| DTX-0444 | Akamai Premium Monthly Service Report (July 2022) | PTON-NEC-00215603 | PTON-NEC-00215642 | |
| DTX-0445 | Akamai Premium Monthly Service Report (March 2022) | PTON-NEC-00215643 | PTON-NEC-00215680 | |

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0446 | Akamai Premium Monthly Service Report (July 2023) | PTON-NEC-00215681 | PTON-NEC-00215724 | |
| DTX-0447 | Akamai Premium Monthly Service Report (November 2022) | PTON-NEC-00215725 | PTON-NEC-00215763 | |
| DTX-0448 | Akamai Premium Monthly Service Report (February 2024) | PTON-NEC-00215764 | PTON-NEC-00215801 | |
| DTX-0449 | Akamai Premium Monthly Service Report (January 2023) | PTON-NEC-00215802 | PTON-NEC-00215842 | |
| DTX-0450 | Akamai Premium Monthly Service Report (February 2023) | PTON-NEC-00215843 | PTON-NEC-00215883 | |
| DTX-0451 | Akamai Premium Monthly Service Report (March 2023) | PTON-NEC-00215884 | PTON-NEC-00215924 | |
| DTX-0452 | *DISH Settlement Agreement, Public Version, dated May 1, 2023 | PTON-NEC-00216263 | PTON-NEC-00216302 | |
| DTX-0453 | Order Form with JW Player - Longtail Ad Solutions, dated December 14, 2023 | PTON-NEC-00216303 | PTON-NEC-00216305 | |
| DTX-0454 | Patent License Agreement between ███ and Peloton, dated May 22, 2023 | PTON-NEC-00216306 | PTON-NEC-00216313 | 401-403 |
| DTX-0455 | ███ Settlement Agreement Between ███ and Peloton, dated October 1, 2019 | PTON-NEC-00216314 | PTON-NEC-00216327 | 401-403 |
| DTX-0456 | ███ and Peloton Tech License and Distribution Agreement, dated November 22, 2013 | PTON-NEC-00216328 | PTON-NEC-00216348 | 401-403 |
| DTX-0457 | AAC Patent License Agreement Between Peloton and ███ (2019) | PTON-NEC-00216349 | PTON-NEC-00216459 | 401-403 |
| DTX-0458 | Peloton Interactive Addendum to AAC Patent License Agreement | PTON-NEC-00216460 | PTON-NEC-00216463 | 401-403 |
| DTX-0459 | Financing Incrementality Slide Deck 4.11.25 | PTON-NEC-00216464 | PTON-NEC-00216465 | 401-403 |
| DTX-0460 | 100DHT Results Post Purchase Survey Slide Deck | PTON-NEC-00216498 | PTON-NEC-00216503 | 401-403 |
| DTX-0461 | Annual Peloton US Member Survey Report, January 2020 | PTON-NEC-00216516 | PTON-NEC-00216579 | |
| DTX-0462 | US Peloton Membership Terms, Updated December 4, 2024 | PTON-NEC-00216596 | PTON-NEC-00216599 | |
| DTX-0463 | Peloton Shareholder Letter 2025 Quarter 2 | PTON-NEC-00216600 | PTON-NEC-00216614 | |
| DTX-0464 | Peloton Shareholder Letter 2024 Quarter 3 | PTON-NEC-00216615 | PTON-NEC-00216627 | |
| DTX-0465 | Peloton Shareholder Letter 2023 Quarter 4 | PTON-NEC-00216628 | PTON-NEC-00216643 | |
| DTX-0466 | Amendment to Technology License Agreement and Order No. DSP-0542, dated March 12, 2023 | PTON-NEC-00216644 | XXXX | 401-403 |
| DTX-0467 | Annual Survey of Members, Consumers, Leads (AMCL) -  Spring 2021 US Report | PTON-NEC-00216645 | PTON-NEC-00216741 | |
| DTX-0468 | Annual Survey of Members, Consumers, Leads (AMCL) - Spring 2021 International Report | PTON-NEC-00216742 | PTON-NEC-00216846 | |
| DTX-0469 | Peloton Market Map 2021: Annual Consumer and Competitive Landscape Report | PTON-NEC-00216859 | PTON-NEC-00216975 | |
| DTX-0470 | Peloton Market Map: Phase II, dated January 22, 2018 | PTON-NEC-00216996 | PTON-NEC-00217023 | |
| DTX-0471 | Peloton Market Map: Phase I, dated December 17, 2018 | PTON-NEC-00217036 | PTON-NEC-00217062 | |
| DTX-0472 | Peloton 2019 Market Map Discussion | PTON-NEC-00217075 | PTON-NEC-00217236 | |
| DTX-0473 | Post Purchase Survey Analysis, February 2025 | PTON-NEC-00217249 | PTON-NEC-00217258 | |
| DTX-0474 | Copy of CS&I Ecomm Offsite Jan.31.2024.pptx | PTON-NEC-00217293 | PTON-NEC-00217335 | |
| DTX-0475 | Peloton 2020 Market Cap Key Findings, January 2021 | PTON-NEC-00217368 | PTON-NEC-00217501 | |
| DTX-0476 | Peloton Post Purchase Survey Insights 10.12.24 | PTON-NEC-00217514 | PTON-NEC-00217517 | |
| DTX-0477 | Peloton Secondary Market Members & Market Dynamics Consumer Strategy & Insights, December 2023 | PTON-NEC-00217550 | PTON-NEC-00217581 | |
| DTX-0478 | Peloton Consumer Holiday Retro March 2025 | PTON-NEC-00217623 | PTON-NEC-00217686 | |
| DTX-0479 | US Holiday Buyer Demographics Analysis, Consumer Strategy & Insights, dated January 2024 | PTON-NEC-00217719 | PTON-NEC-00217741 | |
| DTX-0480 | Harman Embedded Audio Product Purchase Agreement and Software License 6-22-18 | PTON-NEC-00217772 | PTON-NEC-00217803 | 401-403 |
| DTX-0481 | Master Services Agreement with DSP Concepts Order No. DSP-0542 Technology License Agreement, dated September 7, 2021 | PTON-NEC-00217804 | PTON-NEC-00217809 | 401-403 |
| DTX-0482 | ███ Technology License Agreement, dated September 7, 2021 | PTON-NEC-00217810 | PTON-NEC-00217834 | 401-403 |
| DTX-0483 | Membership Strategy Retrospective, December 2024 | PTON-NEC-00217835 | PTON-NEC-00217888 | |
| DTX-0484 | Order Form with JW Player - Longtail Ad Solutions, Authorized January 8, 2025 | PTON-NEC-00217937 | PTON-NEC-00217944 | 401-403 |
| DTX-0485 | Peloton 10K, June 2023 | PTON-NEC-00217945 | PTON-NEC-00218113 | |
| DTX-0486 | Peloton 10K, June 2024 | PTON-NEC-00218114 | PTON-NEC-00218283 | |
| DTX-0487 | Peloton 10Q, March 2023 | PTON-NEC-00218284 | PTON-NEC-00218348 | |
| DTX-0488 | Peloton 10Q, March 2024 | PTON-NEC-00218349 | PTON-NEC-00218401 | |
| DTX-0489 | Peloton 10Q, March 2025 | PTON-NEC-00218402 | PTON-NEC-00218454 | |
| DTX-0490 | Peloton 10Q, September 2024 | PTON-NEC-00218455 | PTON-NEC-00218506 | |
| DTX-0491 | Peloton 10Q, December 2024 | PTON-NEC-00218507 | PTON-NEC-00218559 | |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0492 | Peloton Global Consumer Segmentation, 2021 Refresh | PTON-NEC-00218560 | PTON-NEC-00218704 | |
| DTX-0493 | Peloton Segmentation 2.0, May 2018 | PTON-NEC-00218705 | PTON-NEC-00218742 | |
| DTX-0494 | Peloton Workouts by Month with slip sheet | PTON-NEC-00218743 | XXXX | |
| DTX-0495 | Peloton Shareholder Letter 2023 Quarter 3 | PTON-NEC-00218744 | PTON-NEC-00218756 | |
| DTX-0496 | Peloton Earnings Call 2023 Quarter 3, Edited Transcript (May 4, 2023) | PTON-NEC-00218757 | PTON-NEC-00218771 | |
| DTX-0497 | Peloton Earnings Call 2023 Quarter 4, Edited Transcript (August 23, 2023) | PTON-NEC-00218772 | PTON-NEC-00218784 | |
| DTX-0498 | Global Brand Tracker 2023 Quarter 1 | PTON-NEC-00218785 | PTON-NEC-00218896 | |
| DTX-0499 | Peloton Shareholder Letter 2025 Quarter 1 | PTON-NEC-00218909 | PTON-NEC-00218923 | |
| DTX-0500 | Peloton Global Brand Tracker 2022 Quarter 2 | PTON-NEC-00218924 | PTON-NEC-00219028 | |
| DTX-0501 | Peloton Global Brand Tracker 2023 Quarter 2 | PTON-NEC-00219041 | PTON-NEC-00219171 | |
| DTX-0502 | Peloton Global Brand Tracker 2022 Quarter 3 | PTON-NEC-00219184 | PTON-NEC-00219295 | |
| DTX-0503 | Peloton Highlights 2025 Quarter 3 | PTON-NEC-00219308 | PTON-NEC-00219324 | |
| DTX-0504 | Peloton Shareholder Letter 2024 Quarter 4 | PTON-NEC-00219325 | PTON-NEC-00219338 | |
| DTX-0505 | Quarterly Member Survey Report - Wave 1, November 2020 | PTON-NEC-00219339 | PTON-NEC-00219384 | |
| DTX-0506 | Roku Distribution Agreement, last updated August 27, 2024 | PTON-NEC-00219397 | PTON-NEC-00219425 | 401-403; 901 |
| DTX-0507 | Roku Amendment No. 1 to Distribution Agreement, dated June 8, 2020 | PTON-NEC-00219426 | XXXX | 401-403; 901 |
| DTX-0508 | Peloton Private Pricing Addendum with Amazon Web Services, dated April 28, 2025 | PTON-NEC-00219427 | PTON-NEC-00219438 | |
| DTX-0509 | Secondary Marketplace Update: Consumer Strategy & Insights (March 2024) | PTON-NEC-00219439 | PTON-NEC-00219446 | |
| DTX-0510 | US Brand Tracker Report 2022 Quarter 1 | PTON-NEC-00219471 | PTON-NEC-00219541 | |
| DTX-0511 | US Brand Tracker Report 2021 Quarter 4 (Peloton Internal Version) | PTON-NEC-00219554 | PTON-NEC-00219626 | |
| DTX-0512 | Peloton App Subscriptions Comparison Chart | PTON-NEC-00219639 | XXXX | |
| DTX-0513 | App Tiering Optimization First Look at Data & Future Analysis Discussion (Draft Not for Distribution) | PTON-NEC-00219640 | PTON-NEC-00219726 | |
| DTX-0514 | Market Map: Consumer Strategy & Insights, 2024 | PTON-NEC-00219747 | PTON-NEC-00219965 | |
| DTX-0515 | Global Brand Tracker 2024 Quarter 1 | PTON-NEC-00219984 | PTON-NEC-00220002 | |
| DTX-0516 | Global Brand Tracker 2025 Quarter 1 | PTON-NEC-00220015 | PTON-NEC-00220042 | |
| DTX-0517 | Global Brand Tracker 2024 Quarter 2 | PTON-NEC-00220089 | PTON-NEC-00220107 | |
| DTX-0518 | Global Brand Tracker 2025 Quarter 2 | PTON-NEC-00220120 | PTON-NEC-00220145 | |
| DTX-0519 | Global Brand Tracker 2024 Quarter 3 | PTON-NEC-00220192 | PTON-NEC-00220208 | |
| DTX-0520 | Global Brand Tracker 2025 Quarter 3 | PTON-NEC-00220221 | PTON-NEC-00220262 | |
| DTX-0521 | Global Brand Tracker 2023 Quarter 4 | PTON-NEC-00220303 | PTON-NEC-00220438 | |
| DTX-0522 | Global Brand Tracker 2024 Quarter 4 | PTON-NEC-00220451 | PTON-NEC-00220471 | |
| DTX-0523 | Monthly Subscription Pricing with slip sheet | PTON-NEC-00220498 | XXXX | |
| DTX-0524 | Revenue and Subs by Tier by Month with slip sheet | PTON-NEC-00220499 | XXXX | |
| DTX-0525 | Peloton Equipment Subscriptions, captured July 31, 2025 | PTON-NEC-00220500 | PTON-NEC-00220502 | |
| DTX-0526 | Adds and Churn by Tier by Month with slip sheet | PTON-NEC-00220503 | XXXX | |
| DTX-0527 | Monthly Subscription Pricing with slip sheet | PTON-NEC-00220504 | XXXX | |
| DTX-0528 | US Monthly Income Statement July 2016 - June 2025 with slip sheet | PTON-NEC-00220505 | XXXX | |
| DTX-0529 | Adds and Churn by Tier by Month 9.17.25 with slip sheet | PTON-NEC-00220506 | XXXX | |
| DTX-0530 | JW Player NetSuite Export with slip sheet | PTON-NEC-00220507 | XXXX | 401-403 |
| DTX-0531 | VisualOn NetSuite Export with slip sheet | PTON-NEC-00220508 | XXXX | 401-403 |
| DTX-0532 | A Brief History of Multi-Bitrate Streaming: Alex Zambelli's Streaming Media Blog, December 17, 2008 | PTON-NEC-00220509 | PTON-NEC-00220512 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0533 | Siglin, T. "Akamai and Microsoft Attempt to Stream HD Smoothly," Streaming Media, Oct. 28, 2008. [Online]. Available: https://www.streamingmedia.com/Articles/Editorial/Featured-Articles/Akamai-and-Microsoft-Attempt-to-Stream-HD-Smoothly-65328.aspx. [Accessed: Oct. 19, 2025]. | PTON-NEC-00220513 | PTON-NEC-00220516 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0534 | Beet.TV, *Akamai CTO: Adaptive Streaming from Adobe and Microsoft Will be Big in 2009* | PTON-NEC-00220517 | PTON-NEC-00220533 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0535 | Alex Zambelli's Silverlight Media Blog, *Microsoft at NAB 2009: IIS Smooth Streaming Released to Web*, April 23, 2009 | PTON-NEC-00220534 | PTON-NEC-00220535 | 401-403; 703; 802; 901; MSJ/D |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0536 | Alex Zambelli's Silverlight Media Blog, *NASCAR Racing in 3D on Your PC!*, June 29, 2010 | PTON-NEC-00220536 | PTON-NEC-00220539 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0537 | Zambelli, A. "NBC Sunday Night Football Powered by Silverlight and Smooth Streaming," Alex Zambelli's Streaming Media Blog, Sep. 10, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/09/10/nbc-sunday-night-football-powered-by-silverlight-and-smooth-streaming/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220540 | PTON-NEC-00220542 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0538 | Alex Zambelli's Silverlight Media Blog, *Smooth Streaming 3D concept previewed at NAB*, April 16, 2010 | PTON-NEC-00220543 | PTON-NEC-00220546 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0539 | Alex Zambelli's Silverlight Media Blog, *Smooth Streaming White Paper*, March 27, 2009 | PTON-NEC-00220547 | PTON-NEC-00220549 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0540 | Zambelli, A. "Silverlight 3, IIS Media Services 3.0, Olympics 2010 – Wow, It Truly Is March Madness!" Alex Zambelli's Streaming Media Blog, Mar. 19, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/03/19/silverlight-3-iis-media-services-30-olympics-2010-wow-it-truly-is-march-madness/. [Accessed: Oct. 20, 2025] | PTON-NEC-00220550 | PTON-NEC-00220554 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0541 | Alex Zambelli's Silverlight Media Blog, *Microsoft at NAB 2009: IIS Smooth Streaming Released to Web*, April 23, 2009 | PTON-NEC-00220555 | PTON-NEC-00220571 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0542 | Zambelli, A. "An Inside Look at NBC Olympics Video Player," Alex Zambelli's Streaming Media Blog, Aug. 21, 2008. [Online]. Available: https://alexzambelli.com/blog/2008/08/21/an-inside-look-at-nbc-olympics-video-player/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220572 | PTON-NEC-00220575 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0543 | BeetTV, "ABC.com Readies Online HD Shows as 'Streamlettes' from Move," YouTube, May 22, 2007. [Online video]. Available: https://www.youtube.com/watch?v=sYk9eVS8Sck. [Accessed: Oct. 19, 2025] | PTON-NEC-00220576 | XXXX | 401-403; 703; 802; 901; MSJ/D |
| DTX-0544 | Akamai CTO Adaptive Streaming from Adobe and Microsoft  (360p) with slip sheet | PTON-NEC-00220577 | PTON-NEC-00220577 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0545 | BeetTV, "John Edwards, Move Networks," YouTube, Jul. 30, 2008. [Online video]. Available: https://www.youtube.com/watch?v=2yl5XLHr_w0. [Accessed: Oct. 19, 2025] | PTON-NEC-00220578 | XXXX | 401-403; 703; 802; 901; MSJ/D |
| DTX-0546 | Zambelli, A."Microsoft Silverlight Media End-to-End," presented at MIX09 Conference, Las Vegas, NV, USA, Mar. 18–20, 2009. [Online video]. Available: http://web.archive.org/web/20090411041129/http://mschannel9.vo.msecnd.net/o9/mix/09/wmv-hq/t43f.wmv. [Accessed: Oct. 19, 2025] | PTON-NEC-00220579 | XXXX | 401-403; 703; 802; 901; MSJ/D |
| DTX-0547 | Bocharov, J. "Beta Release of Smooth Streaming Now Available," IIS.net Blogs, Feb. 24, 2009. [Online]. Available: https://web.archive.org/web/20090604163237/http://blogs.iis.net/jboch/archive/2009/02/24/beta-release-of-smooth-streaming-now-available.aspx. [Accessed: Oct. 19, 2025] | PTON-NEC-00220580 | PTON-NEC-00220583 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0548 | R. Scott Raynovich, *Cuban on Streaming HD: It Won't Work*, Contentinople, July 31, 2008 | PTON-NEC-00220584 | PTON-NEC-00220589 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0549 | MIX Videos, *Delivering Media with Internet Information Services 7 (IIS) Media Services and Microsoft Silverlight*, March 20, 2009 | PTON-NEC-00220590 | PTON-NEC-00220591 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0550 | Alex Zambelli's Silverlight Media Blog, *DNC powered by Silverlight and Move*, August 25, 2008 | PTON-NEC-00220592 | PTON-NEC-00220592 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0551 | Zambelli, A. "IIS Media Services 3.0 and Player SDK Released," Alex Zambelli's Streaming Media Blog, Oct. 12, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/10/12/iis-media-services-3-0-and-player-sdk-released/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220593 | PTON-NEC-00220594 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0552 | Zambelli, A. "IIS Smooth Streaming Technical Overview," Microsoft, Redmond, WA, USA, Mar. 25, 2009. [Online]. Available: https://web.archive.org/web/20090402042137/http://www.microsoft.com/downloads/details.aspx?displaylang=en&FamilyID=03d22583-3ed6-44da-8464-b1b4b5ca7520. [Accessed: Oct. 19, 2025] | PTON-NEC-00220595 | PTON-NEC-00220611 | 401-403; 703; 802; 901; MSJ/D |

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0553 | Bocharov, J. "I've Seen the Future and the Future is… Smooth!" IIS.net Blogs, Oct. 28, 2008. [Online]. Available: https://web.archive.org/web/20090605235019/http://blogs.iis.net/jboch/archive/2008/10/28/i-ve-seen-the-future-and-the-future-is-smooth.aspx. [Accessed: Oct. 19, 2025] | PTON-NEC-00220612 | PTON-NEC-00220616 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0554 | Microsoft Corporation, "Microsoft and Akamai Innovate on Consumer Video Experiences Using Silverlight," Yahoo! Finance, Oct. 28, 2008. [Online]. Available: https://web.archive.org/web/20081105112604/http://biz.yahoo.com/prnews/081028/aqtu537.html?.v=26. [Accessed: Oct. 19, 2025] | PTON-NEC-00220617 | PTON-NEC-00220621 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0555 | Zambelli, A. "Microsoft Silverlight Media End-to-End," presented at MIX09 Conference, Las Vegas, NV, USA, Mar. 18–20, 2009. [Online]. Available: http://web.archive.org/web/20090411041129/http://mschannel9.vo.msecnd.net/o9/mix/09/pptx/t43f.pptx. [Accessed: Oct. 19, 2025] | PTON-NEC-00220622 | PTON-NEC-00220623 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0556 | Zambelli, A. "Smooth Streaming Architecture," Alex Zambelli's Streaming Media Blog, Feb. 10, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/02/10/smooth-streaming-architecture/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220624 | PTON-NEC-00220630 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0557 | Zambelli, A. Smooth Streaming Beta Released," Alex Zambelli's Streaming Media Blog, Feb. 25, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/02/25/smooth-streaming-beta-released/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220631 | PTON-NEC-00220632 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0558 | John A. Bocharov's Blog, *Smooth Streaming Questions? We've Got Answers!, The Official Microsoft IIS Site*, February 19, 2005 | PTON-NEC-00220633 | PTON-NEC-00220635 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0559 | Ozer, J. "Streaming Gets Smarter: Evaluating the Adaptive Streaming Technologies," Streaming Media, Jul. 31, 2009. [Online]. Available: https://www.streamingmedia.com/Articles/Editorial/Featured-Articles/Streaming-Gets-Smarter-Evaluating-the-Adaptive-Streaming-Technologies-65544.aspx. [Accessed: Oct. 19, 2025] | PTON-NEC-00220636 | PTON-NEC-00220639 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0560 | Microsoft Mix 09, The Next Web Now | PTON-NEC-00220640 | PTON-NEC-00220689 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0561 | Bocharov, J. "Delivering Media with IIS Media Services," presented at MIX09 Conference, Las Vegas, NV, USA, Mar. 18–20, 2009. [Online]. Available: https://web.archive.org/web/20090426001804/http://mschannel9.vo.msecnd.net/o9/mix/09/pptx/t56f.pptx. [Accessed: Oct. 19, 2025] | PTON-NEC-00220690 | PTON-NEC-00220728 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0562 | Zambelli, A. "The Birth of Smooth Streaming," Alex Zambelli's Streaming Media Blog, Feb. 4, 2009. [Online]. Available: https://alexzambelli.com/blog/2009/02/04/the-birth-of-smooth-streaming/. [Accessed: Oct. 19, 2025] | PTON-NEC-00220729 | PTON-NEC-00220738 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0563 | U.S. Patent No. 6,389,473 (Carmel) | PTON-NEC-00220739 | PTON-NEC-00220763 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0564 | U.S. Patent No. 7,818,444 (Brueck) | PTON-NEC-00220764 | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0565 | U.S. Patent No. 7,925,774 (Zhang) | PTON-NEC-00220792 | PTON-NEC-00220820 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0566 | Exhibit 1008 - Unexamined JP 2005-191786 & Certified Translation (PTON-NEC-00220874–890) | PTON-NEC-00220821 | PTON-NEC-00220836 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0567 | Japanese Patent App. No. 2007/13705 (Nobuyoshi) & Certified Translation | PTON-NEC-00220837 | PTON-NEC-00220856 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0568 | Japanese Patent App. No. 2004/172830 Peloton & Certified Translation | PTON-NEC-00220857 | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0569 | SmoothHD: 2008.10.31 | PTON-NEC-00220912 | PTON-NEC-00220912 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0570 | SmoothHD: 2008.12.20 | PTON-NEC-00220913 | PTON-NEC-00220913 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0571 | SmoothHD: 2009.02.03 | PTON-NEC-00220914 | PTON-NEC-00220914 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0572 | Percentage of Inactive Subscribers by Month with slip sheet | PTON-NEC-00220915 | XXXX | 401-403; 802; 901; 1002; 1003; 1006 |
| DTX-0573 | Reno Gazette-Journal, *Check out These Cool Summer Programs for Your Computer* August 11, 2008 | PTON-NEC-00220932 | PTON-NEC-00220933 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0574 | PR Newswire, *Digital Rapids to Provide Encoding, Transcoding and Streaming Systems for NBC 's Online Coverage of Beijing Games*, March 27, 2008 | PTON-NEC-00220934 | PTON-NEC-00220936 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0575 | The Seattle Times, *Download Interesting bits and bytes*, August 11, 2008 | PTON-NEC-00220937 | PTON-NEC-00220938 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0576 | The Boston Globe, *Getting the big picture*, August 22, 2008 | PTON-NEC-00220939 | PTON-NEC-00220940 | 401-403; 703; 802; 901; MSJ/D |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0577 | Data monitor NewsWire, *Gotuit sues Microsoft over Silverlight video search*, July 7, 2008 | PTON-NEC-00220941 | PTON-NEC-00220941 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0578 | Daily News (New York), *I Wake Up Streaming: The Games via the Web*, August 13, 2008 | PTON-NEC-00220942 | PTON-NEC-00220943 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0579 | Business Wire, *Keynote Streaming Perspective Selected by Microsoft and CCTV to Monitor Performance of 2008 Beijing*, August 27, 2008 | PTON-NEC-00220944 | PTON-NEC-00220946 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0580 | Communications Daily, *Mass Media Notes*, January 8, 2008 | PTON-NEC-00220947 | PTON-NEC-00220947 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0581 | The Seattle Post-Intelligencer, *Microsoft, NBC Collaborate to Make Olympic History Thousands of Hours of Video Online*, August 7, 2008 | PTON-NEC-00220948 | PTON-NEC-00220949 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0582 | MediaNet Press Release Wire, *Microsoft Releases Silverlight 2, Already Reaching One in Four Consumers Worldwide*, October 14, 2008 | PTON-NEC-00220950 | PTON-NEC-00220953 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0583 | FierceOnlineVideo, *NBC Gets Flamed for Vista-Only Olympic Distribution*, June 23, 2008 | PTON-NEC-00220954 | PTON-NEC-00220954 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0584 | The Stamford Advocate (Connecticut), *NBC gets Microsoft 's help for Olympics site*, January 19, 2008 | PTON-NEC-00220955 | PTON-NEC-00220956 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0585 | Flashpoint, *NBC holding Olympic videos hostage*, August 14, 2008 | PTON-NEC-00220957 | PTON-NEC-00220958 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0586 | PR Newswire, *NBC Universal and Microsoft Team Up On Unprecedented Web Offering for 2008 Beijing Olympic Games NBC*, January 7, 2008 | PTON-NEC-00220959 | PTON-NEC-00220961 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0587 | Television Week, *News briefs*, August 25, 2008 | PTON-NEC-00220962 | PTON-NEC-00220963 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0588 | Computeractive, January 24, 2008 | PTON-NEC-00220964 | PTON-NEC-00220965 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0589 | Chattanooga Times Free Press (Tennessee), *Online Olympics coverage notable*, August 26, 2008 | PTON-NEC-00220966 | PTON-NEC-00220967 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0590 | Product News Network Rockwell, *Automation Launches Web-HMI*, December 9, 2008 | PTON-NEC-00220968 | PTON-NEC-00220969 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0591 | Business Wire, *Schematic Brings NBC 'S Coverage of the 2008 Beijing Olympic Games to Millions of Americans With Development of Silverlight-based Online Video Channel for NBCOlympics.com on MSN*, July 2, 2008 | PTON-NEC-00220970 | PTON-NEC-00220971 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0592 | Dow Jones Business New, *SPECIAL REPORT_ U.S., European Firms Compete For Prestige And Profit In Olympics*, March 27, 2008 | PTON-NEC-00220972 | PTON-NEC-00220974 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0593 | Streaming Media Magazine, *STREAMING THE 2008 BEIJING OLYMPICS*, June 2008-July 2008 | PTON-NEC-00220975 | PTON-NEC-00220980 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0594 | InfoWorld Daily News, *Test Center review: Silverlight, for real this time*, November 18, 2008 | PTON-NEC-00220981 | PTON-NEC-00220983 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0595 | Market Wire, *Welcome to Beijing 2008: The First Olympics Where Viewers Are in Charge*, August 8, 2008 | PTON-NEC-00220984 | PTON-NEC-00220985 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0596 | Microsoft Corporation, "Delivering Live and On-Demand Smooth Streaming," Microsoft, Redmond, WA, USA, 2009. [Online]. Available: https://download.microsoft.com/download/4/E/5/4E599FBB-6E34-4A74-B3C5-1391CB0FD55F/Delivering_Live_and_On-Demand_Smooth_Streaming.pdf. [Accessed: Oct. 23, 2025] | PTON-NEC-00220986 | PTON-NEC-00221013 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0597 | Download RealPlayer or RealPlayer Plus (August 1999 - RealPlayer G2 & G2 Plus) | PTON-NEC-00221014 | PTON-NEC-00221014 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0598 | Microsoft Windows Server Team, *IIS SMOOTH STREAMING_ NOW PLAYING ON AN INTERNET NEAR YOU - Microsoft Windows Server Blog*, April 22, 2009 | PTON-NEC-00221015 | PTON-NEC-00221017 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0599 | Microsoft Learn, *Inside the Olympics: An Architecture and Development Review*, October 29, 2008 | PTON-NEC-00221018 | PTON-NEC-00221018 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0600 | Microsoft Corporation, "Live and On-Demand Video with Silverlight and IIS Smooth Streaming," Microsoft, Redmond, WA, USA, Feb. 2010. [Online]. Available: https://download.microsoft.com/download/3/A/4/3A4A066C-6543-4BC1-A8BA-965D0E55F296/Live_and_On_Demand_Video_with_Silverlight_and%20IIS_Smooth_Streaming_FINAL.pdf. [Accessed: Oct. 23, 2025] | PTON-NEC-00221019 | PTON-NEC-00221033 | 401-403; 802; 901; MSJ/D |
| DTX-0601 | Microsoft, *Media Alert: Visit NBCOlympics.com on MSN and Watch the Summer Games You Want, When You Want*, August 7, 2008 | PTON-NEC-00221034 | PTON-NEC-00221038 | 401-403; 703; 802; 901; MSJ/D |

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0602 | Microsoft, *Microsoft Announces New Support for Silverlight by Content Companies Worldwide*, April 14, 2008 | PTON-NEC-00221039 | PTON-NEC-00221047 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0603 | Tim Conneally, *Microsoft promises Web-based 1080p with 'Smooth Streaming'*, BetaNews | PTON-NEC-00221048 | PTON-NEC-00221054 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0604 | Microsoft Corporation, "Microsoft Smooth Streaming Provides True High-Definition Video Delivery," Microsoft News Center, Apr. 20, 2009. [Online]. Available: https://web.archive.org/web/20090501182432/http://www.microsoft.com/presspass/press/2009/apr09/04-20SmoothStreamingPR.mspx. [Accessed: Oct. 19, 2025] | PTON-NEC-00221055 | PTON-NEC-00221060 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0605 | Brad Reed, *Microsoft, Akamai team up for 'no-buffer' video streaming*, NYTimes October 28, 2008 | PTON-NEC-00221061 | PTON-NEC-00221061 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0606 | Real.com: Download RealPlayer 7 Plus or RealPlayer 7 Basic (May 2000 - RealPlayer 7 & 7 Plus) | PTON-NEC-00221062 | PTON-NEC-00221063 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0607 | Real.com: Download RealPlayer 8 Plus beta or RealPlayer 8 Basic beta (June 2000 - RealPlayer 8 & 8 Plus Beta) | PTON-NEC-00221064 | PTON-NEC-00221064 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0608 | Real.com: Download RealPlayer 8 Plus or RealPlayer 8 Basic (December 2000 - Real Player 8 & 8 Plus) | PTON-NEC-00221065 | PTON-NEC-00221066 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0609 | RealNetworks - The Home of Streaming Media (Feb. 1999 - Real Player G2 & G2 Plus) | PTON-NEC-00221067 | PTON-NEC-00221067 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0610 | RealNetworks.com - The Home of Streaming Media (May 2000 - RealPlayer 7) | PTON-NEC-00221068 | PTON-NEC-00221068 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0611 | Microsoft Corporation, "Silverlight 2 Technical Reviewers Guide," Microsoft, Redmond, WA, USA, Oct. 2008. [Online]. Available: https://download.microsoft.com/download/8/e/4/8e4a41a0-4b29-49b6-8e17-0da540f27d1b/Silverlight_2_Reviewers_Guide.pdf. [Accessed: Oct. 23, 2025] | PTON-NEC-00221069 | PTON-NEC-00221127 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0612 | Silverlight 2 Customer Evidence and Quote Sheet | PTON-NEC-00221128 | PTON-NEC-00221130 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0613 | Knowlton, C. "Live Broadcasting with Silverlight and Windows Media," presented at Streaming Media West conference, San Jose, CA, USA, Nov. 17-19, 2009. [Online]. Available: https://download.microsoft.com/download/a/a/b/aabeb56e-45b7-4145-bdb1-595de745f61f/smwest09-msft-workshop.pdf [Accessed: Oct. 23, 2025] | PTON-NEC-00221131 | PTON-NEC-00221238 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0614 | Apple launches HTTP Live Streaming standard in iPhone 3, July 8, 2009 | PTON-NEC-00221239 | PTON-NEC-00221255 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0615 | G. Conklin et al., *Video Coding for Streaming Media Delivery on the Internet*, 2 IEEE Transactions on Circuits & Systems for Video Tech. 3 (March 2001) | PTON-NEC-00221256 | PTON-NEC-00221268 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0616 | Flash Players - Bandwidth Checking Examples | PTON-NEC-00221269 | PTON-NEC-00221269 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0617 | JW Players 3.12 ReadMe | PTON-NEC-00221270 | PTON-NEC-00221275 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0618 | A. Lippman, *Video Coding for Multiple Target Audiences*, IS&T/SPIE Conference on Vidual Communications and Image Processing (January 1999) | PTON-NEC-00221276 | PTON-NEC-00221278 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0619 | Adds and Churn by Tier by Month 9.30.25 with slip sheet | PTON-NEC-00221279 | XXXX | |
| DTX-0620 | Revenue and Subs by Tier by Month 9.30.25 with slip sheet | PTON-NEC-00221280 | XXXX | |
| DTX-0621 | US Only Percentage of Inactive Subscribers by Month with slip sheet | PTON-NEC-00221281 | PTON-NEC-00221281 | 401-403; 802; 901; 1002; 1003; 1006 |
| DTX-0622 | Smooth Streaming Deployment Guide by David M. Nelson, August 2010 | PTON-NEC-00221282 | PTON-NEC-00221347 | 401-403; 703; 802; 901; MSJ/D |
| DTX-0623 | Peloton Shareholder Letter 2025 Quarter 4 | PTON-NEC-00221348 | PTON-NEC-00221363 | |
| DTX-0624 | Spreadsheet of Default Starting Bitrate for tablets and reference code with native slip | PTON-NEC-00221364 | XXXX | 401-403; 802; 901 |
| DTX-0625 | Spreadsheet of Workouts with Buffering Events with native slip | PTON-NEC-00221365 | XXXX | 401-403; 802; 901 |
| DTX-0626 | Financial Sheets for Board Meeting with slip sheet | PTON-NEC-00221366 | XXXX | 401-403; 802; 901 |
| DTX-0627 | Financial Sheets for September 2015 Board Meeting | PTON-NEC-00221367 | XXXX | 401-403 |
| DTX-0628 | Spreadsheet of Playback Time at Track Resolutions for VOD and Live with native slip | PTON-NEC-00221368 | XXXX | 401-403; 802; 901 |
| DTX-0629 | Compilation of Select Peloton Financial Data (2014–2018) | PTON-NEC-00221369 | XXXX | 401-403; 802; 901 |
| DTX-0630 | ExoPlayer Integration Android, October 25, 2021 | PTON-NEC-00221370 | PTON-NEC-00221378 | 401-403; 802; 901 |
| DTX-0631 | ████████ User Manual | PTON-NEC-00221379 | PTON-NEC-00221570 | 401-403; 802; 901 |
| DTX-0632 | ████ User Guide, 2019 | PTON-NEC-00221571 | PTON-NEC-00221772 | 401-403; 802; 901 |
| DTX-0633 | ████ Manual English | PTON-NEC-00221773 | PTON-NEC-00221970 | 401-403; 802; 901 |
| DTX-0634 | ███ User Guide, 2020 | PTON-NEC-00221971 | PTON-NEC-00222143 | 401-403; 802; 901 |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0635 | ▮▮▮ User Guide, 2020 | PTON-NEC-00222144 | PTON-NEC-00222333 | 401-403; 802; 901 |
| DTX-0636 | ▮▮▮ User Guide, 2919 | PTON-NEC-00222334 | PTON-NEC-00222495 | 401-403; 802; 901 |
| DTX-0637 | ▮▮▮ User Manual | PTON-NEC-00222496 | PTON-NEC-00222686 | 401-403; 802; 901 |
| DTX-0638 | ▮▮▮ User Manual | PTON-NEC-00222687 | PTON-NEC-00222867 | 401-403; 802; 901 |
| DTX-0639 | ▮▮▮ User Manual | PTON-NEC-00222868 | PTON-NEC-00223077 | 401-403; 802; 901 |
| DTX-0640 | ▮▮▮ User Manual | PTON-NEC-00223078 | PTON-NEC-00223313 | 401-403; 802; 901 |
| DTX-0641 | ▮▮▮ User Guide, 2017 | PTON-NEC-00223314 | PTON-NEC-00223471 | 401-403; 802; 901 |
| DTX-0642 | ▮▮▮ User Guide, 2020 | PTON-NEC-00223472 | PTON-NEC-00223635 | 401-403; 802; 901 |
| DTX-0643 | ▮▮▮ User Manual | PTON-NEC-00223636 | PTON-NEC-00223804 | 401-403; 802; 901 |
| DTX-0644 | Global User Peloton Workouts Not Associated with a Subscription with slip sheet | PTON-NEC-00223805 | XXXX | 401-403; 802; 901; 1002; 1003; 1006 |
| DTX-0645 | Email from Peloton BCC K. McNabb dated April 14, 2022 | PTON-NEC-004626202 | PTON-NEC-004626204 | (typo in bates number; correct bates range of this document, PTON-NEC-00046202 - PTON-NEC-00046204 added to Joint Exhibit List) |
| DTX-0646 | Peloton Source Code | PTON-NEC-SC-00006 | | |
| DTX-0647 | Peloton Source Code | PTON-NEC-SC-0001 | PTON-NEC-SC-0005 | |
| DTX-0648 | Peloton Source Code | PTON-NEC-SC-000290 | | |
| DTX-0649 | Peloton Source Code | PTON-NEC-SC-00060 | PTON-NEC-SC-00082 | |
| DTX-0650 | Peloton Source Code | PTON-NEC-SC-00080 | PTON-NEC-SC-00081 | |
| DTX-0651 | Peloton Source Code | PTON-NEC-SC-00082 | | |
| DTX-0652 | Peloton Source Code | PTON-NEC-SC-00085 | PTON-NEC-SC-00092 | |
| DTX-0653 | Peloton Source Code | PTON-NEC-SC-00117 | | |
| DTX-0654 | Peloton Source Code | PTON-NEC-SC-00124 | | |
| DTX-0655 | Peloton Source Code | PTON-NEC-SC-00175 | PTON-NEC-SC-00179 | |
| DTX-0656 | Peloton Source Code | PTON-NEC-SC-00182 | | |
| DTX-0657 | Peloton Source Code | PTON-NEC-SC-00216 | PTON-NEC-SC-00234 | |
| DTX-0658 | Peloton Source Code | PTON-NEC-SC-00246 | PTON-NEC-SC-00250 | |
| DTX-0659 | Peloton Source Code | PTON-NEC-SC-00251 | PTON-NEC-SC-00256 | |
| DTX-0660 | Peloton Source Code | PTON-NEC-SC-00257 | PTON-NEC-SC-00270 | |
| DTX-0661 | Peloton Source Code | PTON-NEC-SC-00282 | PTON-NEC-SC-00284 | |
| DTX-0662 | Peloton Source Code | PTON-NEC-SC-00287 | | |
| DTX-0663 | Peloton Source Code | PTON-NEC-SC-00288 | PTON-NEC-SC-00289 | |
| DTX-0664 | Embedded Realplayer Extended Functionality Guide, Revised July 21, 2000 | RN_00000001 | RN_00000096 | 401-403; 802; 901; MSJ/D |
| DTX-0665 | Realplayer Plus: Realplayer 7 Plus User Manual | RN_00000097 | RN_00000220 | 401-403; 802; 901; MSJ/D |
| DTX-0666 | Realplayer 7 Plus: Realplayer 7 Plus User Manual | RN_00000221 | RN_00000328 | 401-403; 802; 901; MSJ/D |
| DTX-0667 | Keyboard Shortcuts: RealPlayer Plus G2 Manual | RN_00000329 | RN_00000330 | 401-403; 802; 901; MSJ/D |
| DTX-0668 | Realnetworks: Glossary | RN_00000331 | RN_00000336 | 401-403; 802; 901; MSJ/D |
| DTX-0669 | Realnetworks: About this Manual | RN_00000337 | RN_00000338 | 401-403; 802; 901; MSJ/D |
| DTX-0670 | Installing Realplayer Plus G2: Chapter 1 | RN_00000339 | RN_00000342 | 401-403; 802; 901; MSJ/D |
| DTX-0671 | Where to go for Help and Information: Chapter 2 | RN_00000343 | RN_00000344 | 401-403; 802; 901; MSJ/D |
| DTX-0672 | Realplayer Plus G2 Visual Tour: Chapter 3 | RN_00000345 | RN_00000350 | 401-403; 802; 901; MSJ/D |
| DTX-0673 | Quick Start: Chapter 4 | RN_00000351 | RN_00000358 | 401-403; 802; 901; MSJ/D |
| DTX-0674 | New Features in G2: Chapter 5 | RN_00000359 | RN_00000366 | 401-403; 802; 901; MSJ/D |
| DTX-0675 | What is Streaming Media and How Does it Work?: Chapter 6 | RN_00000367 | RN_00000384 | 401-403; 802; 901; MSJ/D |
| DTX-0676 | Preferences: Chapter 7 | RN_00000385 | RN_00000398 | 401-403; 802; 901; MSJ/D |
| DTX-0677 | Troubleshooting: Chapter 8 | RN_00000399 | RN_00000410 | 401-403; 802; 901; MSJ/D |
| DTX-0678 | Realplayer Plus G2 Manual | RN_00000411 | RN_00000412 | 401-403; 802; 901; MSJ/D |
| DTX-0679 | Realplayer Plus G2 Manual: Index | RN_00000413 | RN_00000416 | 401-403; 802; 901; MSJ/D |
| DTX-0680 | Realnetworks: Glossary | RN_00000417 | RN_00000424 | 401-403; 802; 901; MSJ/D |
| DTX-0681 | Where to go for Help and Information: Chapter 2 | RN_00000425 | RN_00000426 | 401-403; 802; 901; MSJ/D |
| DTX-0682 | About this Manual | RN_00000427 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0683 | Installing Realplayer: Chapter 1 | RN_00000428 | RN_00000431 | 401-403; 802; 901; MSJ/D |
| DTX-0684 | Keyboard Shortcuts: Appendix A | RN_00000432 | RN_00000433 | 401-403; 802; 901; MSJ/D |
| DTX-0685 | A Quick Look at Realplayer: Chapter 3 | RN_00000434 | RN_00000441 | 401-403; 802; 901; MSJ/D |

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0686 | Realplayer - The Basics: Chapter 4 | RN_00000442 | RN_00000455 | 401-403; 802; 901; MSJ/D |
| DTX-0687 | The *Plus* In Realplayer Plus: Chapter 5 | RN_00000456 | RN_00000463 | 401-403; 802; 901; MSJ/D |
| DTX-0688 | Preferences: Chapter 7 | RN_00000464 | RN_00000481 | 401-403; 802; 901; MSJ/D |
| DTX-0689 | Realnetworks Privacy Statements: RealNetworks Consumer Software Privacy Statement: Appendix B | RN_00000482 | RN_00000491 | 401-403; 802; 901; MSJ/D |
| DTX-0690 | Realplayer Plus: Realplayer 8 Plus User Manual | RN_00000492 | RN_00000611 | 401-403; 802; 901; MSJ/D |
| DTX-0691 | Realnetworks: Index | RN_00000612 | RN_00000617 | 401-403; 802; 901; MSJ/D |
| DTX-0692 | Realnetworks: Index | RN_00000618 | RN_00000621 | 401-403; 802; 901; MSJ/D |
| DTX-0693 | Realplayer Plus: Realplayer 8 Plus User Manual | RN_00000622 | RN_00000733 | 401-403; 802; 901; MSJ/D |
| DTX-0694 | Realplayer Plus: Realplayer 8 Plus User Manual | RN_00000734 | RN_00000735 | 401-403; 802; 901; MSJ/D |
| DTX-0695 | Troubleshooting: Chapter 8 | RN_00000736 | RN_00000748 | 401-403; 802; 901; MSJ/D |
| DTX-0696 | What is Streaming Media and How Does it Work?: Chapter 6 | RN_00000749 | RN_00000766 | 401-403; 802; 901; MSJ/D |
| DTX-0697 | Keyboard Shortcuts: Appendix A | RN_00000767 | RN_00000768 | 401-403; 802; 901; MSJ/D |
| DTX-0698 | Realnetworks: Glossary | RN_00000769 | RN_00000774 | 401-403; 802; 901; MSJ/D |
| DTX-0699 | About this Manual | RN_00000775 | RN_00000776 | 401-403; 802; 901; MSJ/D |
| DTX-0700 | Installing Realplayer Plus G2: Chapter 1 | RN_00000777 | RN_00000778 | 401-403; 802; 901; MSJ/D |
| DTX-0701 | Where to go for Help and Information: Chapter 2 | RN_00000779 | RN_00000780 | 401-403; 802; 901; MSJ/D |
| DTX-0702 | Realplayer Plus G2 Visual Tour: Chapter 3 | RN_00000781 | RN_00000784 | 401-403; 802; 901; MSJ/D |
| DTX-0703 | Quick Start: Chapter 4 | RN_00000785 | RN_00000792 | 401-403; 802; 901; MSJ/D |
| DTX-0704 | New Features in G2: Chapter 5 | RN_00000793 | RN_00000800 | 401-403; 802; 901; MSJ/D |
| DTX-0705 | What is Streaming Media and How Does it Work?: Chapter 6 | RN_00000801 | RN_00000818 | 401-403; 802; 901; MSJ/D |
| DTX-0706 | Preferences: Chapter 7 | RN_00000819 | RN_00000832 | 401-403; 802; 901; MSJ/D |
| DTX-0707 | Troubleshooting: Chapter 8 | RN_00000833 | RN_00000842 | 401-403; 802; 901; MSJ/D |
| DTX-0708 | Realplayer Plus G2 Manual | RN_00000843 | RN_00000844 | 401-403; 802; 901; MSJ/D |
| DTX-0709 | Realplayer Plus G2 Manual: Index | RN_00000845 | RN_00000848 | 401-403; 802; 901; MSJ/D |
| DTX-0710 | Realproxy G2 Software Development Kit Test Plan | RN_00000849 | RN_00000870 | 401-403; 802; 901; MSJ/D |
| DTX-0711 | Realnetworks G2 Certification Test for Streaming Media Cache Products, Version 2.0, Revised August 8, 2000 | RN_00000871 | RN_00000898 | 401-403; 802; 901; MSJ/D |
| DTX-0712 | Realnetworks Certification Test for Streaming Media Cache Products, Version 3.0, Revised  November 16, 2000 | RN_00000899 | RN_00000928 | 401-403; 802; 901; MSJ/D |
| DTX-0713 | "ASM" | RN_00000929 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0714 | █████████ | RN_00000930 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0715 | ████████████ | RN_00000931 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0716 | ██████████████ | RN_00000932 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0717 | ██████████████ | RN_00000933 | xxxx | 401-403; 802; 901; MSJ/D |
| DTX-0718 | Real Networks Source Code ████████ | | | 401-403; 802; 901; MSJ/D |
| DTX-0719 | Real Networks Source Code ████████ | | | 401-403; 802; 901; MSJ/D |
| DTX-0720 | Email from F. Abulawy on June 15, 2021 regarding 'Voice of the Member Compilation' | Various | | |
| DTX-0721 | VisualOn: OSMP + BA Algorithm | VISUALON_0000002 | VISUALON_0000017 | (missing ending bates, which is VISUALON_0000017, as included for this exhibit in the Joint Exhibit List) |
| DTX-0722 | OnStream MediaPlayer+ User Guide, VisualOn, Inc. dated April 2017 | VISUALON_0027147 | VISUALON_0027394 | |
| DTX-0723 | CS176A: Introduction to Computer Communication Networks Spring 2017 | | | |
| DTX-0724 | Defendant Peloton Interactive, Inc.'s Responsive Claim Construction Brief (Dec. 1, 2023) | | | 401-403; 403 (late); 802; 901 |
| DTX-0725 | *NEC Corp v. Peloton Interactive, Inc.*, C.A. No. 22-987, Declaration of Dr. Dan Schonfeld Regarding Claim Construction of U.S. Patent Nos. 8,752,101 and 8,909,809 (D. Del. Dec. 21 , 2023) | | | 401-403; 403 (late); 802; 901 |
| DTX-0726 | Defendant Peloton Interactive, Inc.'s Responsive Claim Construction Brief (May 15, 2025) | | | 401-403; 403 (late); 802; 901 |
| DTX-0727 | Declaration of Dr. Kevin C. Almeroth Regarding Claim Construction of U.S. Patent Nos. 8,752,101, 8,909,809, 9,769,427 (Dec. 1, 2023) | | | 401-403; 403 (late); 802; 901 |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0728 | Declaration of Dr. Kevin Almeroth ISO Peloton's Sur-Reply Regarding Claim Construction of U.S. Patents Nos. 8,752,202 8,909,809 & 9,769,427 (Jan. 17, 2024) | | | 401-403; 403 (late); 802; 901 |
| DTX-0729 | Plaintiff NEC Corporation's Reply Claim Construction Brief (Dec. 21, 2023) | | | 401-403; 403 (late); 802; 901 |
| DTX-0730 | Supplemental Appendix to the Supplemental Joint Claim Construction Brief (Ex. A-N) | | | 401-403; 403 (late); 802; 901 |
| DTX-0731 | Amended Joint Claim Construction Chart (Feb. 5, 2024) | | | 401-403; 403 (late); 802; 901 |
| DTX-0732 | Joint Claim Construction Chart (Oct. 11, 2023) | | | 401-403; 403 (late); 802; 901 |
| DTX-0733 | Second Amended Joint Claim Construction Chart (June 5, 2025) | | | 401-403; 403 (late); 802; 901 |
| DTX-0734 | Joint Appendix on Claim Construction Chart (Volume I) | | | 401-403; 403 (late); 802; 901 |
| DTX-0735 | Joint Appendix on Claim Construction Chart (Volume II) | | | 401-403; 403 (late); 802; 901 |
| DTX-0736 | Joint Appendix on Claim Construction Chart (Volume III) | | | 401-403; 403 (late); 802; 901 |
| DTX-0737 | Joint Appendix on Claim Construction Chart (Volume IV) | | | 401-403; 403 (late); 802; 901 |
| DTX-0738 | Transcript of Audio File of "Peloton Tutorial (FINAL).mp4" | | | 401-403; 403 (late); 802; 901 |
| DTX-0739 | Markman Hearing Transcript | | | 401-403; 403 (late); 802; 901 |
| DTX-0740 | U.S. Patent No. 10,469,554 (Brueck) | | | 401-403; 403 (late); 802; 901 |
| DTX-0741 | Peloton Product Patents Website (captured January 22, 2026) | | | 401-403; 403 (late); 802; 901 |
| DTX-0742 | U.S. Patent No. 8,379,851 | | | 401-403; 403 (late); 802; 901 |
| DTX-0743 | Peloton Advertising Video | | | 401-403; 403 (late); 802; 901 |
| DTX-0744 | LinkedIn Profile of Santhosh Mankala | | | 401-403; 403 (late); 802; 901 |
| DTX-0745 | App Store page for Peloton App | | | 401-403; 403 (late); 802; 901 |
| DTX-0746 | App Store Page for Peloton Strength+ App | | | 401-403; 403 (late); 802; 901 |
| DTX-0747 | ██████████ File | | | 401-403; 403 (late); 802; 901 |
| DTX-0748 | ██████████ File | | | 401-403; 403 (late); 802; 901 |
| DTX-0749 | ██████████ File | | | 401-403; 403 (late); 802; 901 |
| DTX-0750 | Declaration of Francis Shanahan in Support of Peloton Interactive Inc.'s Letter to Judge Burke Re Discovery Dispute | | | 401-403; 403 (late); 802; 901 |
| DTX-0751 | The Peloton Story: Our Company and Mission | | | |
| DTX-0752 | Peloton email to new members, October 2025 | | | |
| DTX-0753 | Peloton, *Motivation That Moves You: Peloton unveils new brand positioning, new campaign, and first-ever tagline* , May 9, 2022 | | | |
| DTX-0754 | Peloton Enters New Era with AI-Powered Peloton IQ and New Product Portfolio, the Peloton Cross Training Series October 1, 2025 at 7:00 AM EDT | | | 401-403; 403 (late); 802; 901 |
| DTX-0755 | Press release about the launch of Commercial Equipment Line Pro Series October 1, 2025 at 7:00 AM EDT | | | 401-403; 403 (late); 802; 901 |
| DTX-0756 | E-mail chain, top e-mail from Tilwa Stutti to Megan Hare and others dated Friday, September 5, 2025, 2:08 p.m. | | | 401-403; 403 (late); 802; 901 |
| DTX-0757 | IIS Smooth Streaming Client Manifest - SmoothStreamingMedia Element | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0758 | LinkedIn for Alex (Aleksandar) Zambelli | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0759 | Alex Zambelli's Streaming Media Blog, *An inside look at NBC Olympics video player* , August 21, 2008 | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0760 | Eric Lai, *NBC scored Olympic gold with Silverlight, but online ads failed to place – Computerworld* , ComputerWorld September 9, 2008 | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0761 | Streaming the Olympics How We Got Here  Alex Zambelli Streaming Media Blog, February 16, 2010 | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0762 | Appleby, Steve et al., *Video coding and delivery challenges for next generation IPTV* , 24 BT Technology Journal 174 (2006) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0763 | Bentaleb, Abdelhak et al., *A Survey on Bitrate Adaptation Schemes for Streaming Media Over HTTP* , 21 IEEE COMMC'NS SURVS. TUTORIALS 562 (2019) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0764 | Cheng, Liang & Ivan Marsic, *Modeling and Prediction of Session Throughput of Constant Bit Rate Streams in Wireless Data Networks* , 3 2003 IEEE Wireless Communications and Networking 1733 (2003) | | | 401-403; 703; 802; 901; MSJ/D |

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0765 | U.S. Patent App. No. 2004/0153951 (Walker) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0766 | U.S. Patent App. No. 2005/0172028 (Nilsson) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0767 | U.S. Patent App. No. 2006/0143678 (Chou II 2006) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0768 | U.S. Patent App. No. 2007/0133405 (Bowra) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0769 | U.S. Patent App. No. 2008/0109865 (Su) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0770 | U.S. Patent App. No. 2008/0133766 (Luo) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0771 | U.S. Patent No. 6,637,031 (Chou I) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0772 | U.S. Patent No. 7,606,928 (Wang) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0773 | U.S. Patent No. 7,987,284 (Ogawa) | | | 401-403; 703; 802; 901; MSJ/D |
| DTX-0774 | *15 min core strength free workout video* available at https://members.onepeloton.corn/classes/free?modal=classDetailsModal&classid=d2c36 c99358d484b877ca85b94a5aad7 | | | 401-403; 403 (late); 802; 901 |
| DTX-0775 | *Enabling Low-Latency HTTP Live Streaming (HLS): Add Low-Latency HLS to your content streams to maintain scalability,* https://developer.apple.com/documentation/http-live-streaming/enabling-low-latency-http-live-streaming-hls | | | 401-403; 403 (late); 802; 901 |
| DTX-0776 | *ExoPlayer follows the HLS (HTTP Live Streaming) protocol*, available at https://developer.android.com/media/media3/exoplayer/hls | | | 401-403; 403 (late); 802; 901 |
| DTX-0777 | *ExoPlayer: Flexible media playback for Android (Google 1/0 '17)* available at https://www.youtube.com/watch?v=jAZn-J1I8Eg | | | 401-403; 403 (late); 802; 901 |
| DTX-0778 | *HTTP Live Streaming* (Aug. 2017), https://datatracker.ietf.org/doc/html/rfc8216 | | | 401-403; 403 (late); 802; 901 |
| DTX-0779 | *HTTP Live Streaming 2nd Edition* (Aug. 20, 2025), https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis | | | 401-403; 403 (late); 802; 901 |
| DTX-0780 | *JWP, Advanced Options Web* https://docs.jwplayer.com/players/docs/player-advanced-options#media-preloading | | | 401-403; 403 (late); 802; 901 |
| DTX-0781 | *Licensing Microsoft Smooth Streaming Client Porting Kit,* available at https://web.archive.org/web/20120503225519/http://www.microsoft.com/en-us/mediaplatform/sspk.aspx | | | 401-403; 403 (late); 802; 901 |
| DTX-0782 | Source Code produced by Akamai | AKAM-0799 | AKAM-0921 | Unk |
| DTX-0783 | Source Code produced by Apple | APLNECvPEL_000001 | APLNECvPEL_000200 | Unk |
| DTX-0784 | Source Code produced by JW Player | JW000001 | JW000101 | Unk |
| DTX-0785 | Source Code produced by Peloton | PTON-NEC-SC-00001 | PTON-NEC-SC-00290 | Unk |
| DTX-0786 | Source Code produced by VisualOn | VISUALON_SC_000001 | VISUALON_SC_000338 | Unk |
| DTX-0787 | U.S. Patent No. 10,469,555 (Brueck) | | | 401-403; 403 (late); 802; 901 |
| DTX-0788 | U.S. Patent No. 10,757,156 (Major) | | | 401-403; 403 (late); 802; 901 |
| DTX-0789 | U.S. Patent No. 8,868,772 | | | 401-403; 403 (late); 802; 901 |
| DTX-0790 | U.S. Patent No. 9,407,564 (Major) | | | 401-403; 403 (late); 802; 901 |
| DTX-0791 | Helix Universal Server Administration Guide, version 9.0, Revised July 17, 2002 | | | 401-403; 403 (late); 802; 901 |
| DTX-0792 | K. Kerschbaumer, *RealNetworks Launches Helix*, July 28, 2002 | | | 401-403; 403 (late); 802; 901 |
| DTX-0793 | TVTechnology, *RealNetworks Debuts Helix Open Standard System for Digital Media Delivery*, July 24, 2002 | | | 401-403; 403 (late); 802; 901 |

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0794 | ZDNET, *A Year Ago Real Networks Releases G2 Player*, November 24, 1998 | | | 401-403; 403 (late); 802; 901 |
| DTX-0795 | *3423.4 Japanese Yen to US Dollar as of March 31, 2025*, https://www.oanda.com/currency-converter/en/?from=JPY&to=USD&amount=1 | | | 401-403; 403 (late); 802; 901 |
| DTX-0796 | AIPLA 2023 Report of the Economic Survey | | | 401-403; 403 (late); 802; 901 |
| DTX-0797 | *Choose Your Peloton App Fitness Membership*, https://www.onepeloton.com/app-membership. | | | 401-403; 403 (late); 802; 901 |
| DTX-0798 | *Compare Membership Tiers For Apps and Equipment*, https://www.onepeloton.com/membership. | | | 401-403; 403 (late); 802; 901 |
| DTX-0799 | Complaint for Patent Infringement, NEC Corporation v. Becker Professional Development Corporation, Civil Action No. 3:25-cv-00836, dated March 28, 2025 | | | 401-403; 403 (late); 802; 901 |
| DTX-0800 | Defendant Peloton Interactive, Inc.'s Disclosure of Unmarked Patented Articles Subject to 35 U.S.C. § 287, dated January 31, 2024. | | | 401-403; 403 (late); 802; 901 |
| DTX-0801 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2017. | | | |
| DTX-0802 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2018. | | | |
| DTX-0803 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2019. | | | |
| DTX-0804 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2020. | | | |
| DTX-0805 | ▮, Inc. Form 10-K for the fiscal year ended December 31, 2021. | | | |
| DTX-0806 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2022. | | | |
| DTX-0807 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2023. | | | |
| DTX-0808 | ▮ Inc. Form 10-K for the fiscal year ended December 31, 2024. | | | |
| DTX-0809 | *How Rule-Driven Routing Makes Retrieval-Augmented Generation Smarter*, https://www.nec-labs.com/ (August 18, 2022) | | | 401-403; 403 (late); 802; 901 |
| DTX-0810 | *Message from CEO: About NEC*, https://www.nec.com/en/global/about/topmessage.html. | | | 401-403; 403 (late); 802; 901 |
| DTX-0811 | *NEC Worldwide*, https://www.nec.com/en/global/office/index.html. | | | |
| DTX-0812 | *Peloton Membership: Membership Fee Changes*, https://support.onepeloton.com/s/article/Peloton-Membership-Membership-Fee-Changes?language=en_US. | | | 401-403; 403 (late); 802; 901 |
| DTX-0813 | *Peloton Membership: Peloton App Membership vs. Peloton All-Access Membership*, https://support.onepeloton.com/s/article/Peloton-Membership-Peloton-App-Memberships-vs-Peloton-All-Access-Membership?language=en_US. | | | 401-403; 403 (late); 802; 901 |
| DTX-0814 | *Peloton Membership: Understanding Your Peloton Guide Membership*, https://support.onepeloton.com/s/article/Peloton-Membership-Understanding-Your-Peloton-Guide-Membership?language=en_US. | | | 401-403; 403 (late); 802; 901 |
| DTX-0815 | *Profile: About NEC*, https://www.nec.com/en/global/about/profile.html. | | | 401-403; 403 (late); 802; 901 |
| DTX-0816 | *The Peloton Guide is no Longer Available for Sale*, https://www.pelobuddy.com/guide-sale-ending/ (July 30, 2025) | | | |
| DTX-0817 | *Try the All-New Peloton Strength+ App*, https://www.onepeloton.com/blog/peloton-strength-plus-app (September 3, 2024) | | | 401-403; 403 (late); 802; 901 |
| DTX-0818 | Screen capture of Chrome Browser's Developer Tool View of Peloton live class available at https://members.onepeloton.com/classes | | | 401-403; 403 (late); 802; 901 |
| DTX-0819 | Summary of NEC License Agreements | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0820 | *Perryman Appendix A: Perryman CV | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0821 | *Perryman Appendix B: Perryman Testimony List | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0822 | *Perryman Appendix C: Perryman Documents Relied Upon | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |

NEC v. Peloton – C.A. No. 22-987
**Defendant's Trial Exhibit List**

June 25, 2026

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0823 | *Perryman Exhibit 1.1: Forward Citation Analysis of the Patents-in-Suit | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0824 | *Perryman Exhibit 1.2: Forward Citation Analysis of the Patents-in-Suit (Excluding Self-Citations) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0825 | *Perryman Exhibit 2.1: Foward Citation Analysis of DISH License Patent Families | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0826 | *Perryman Exhibit 2.2: Forward Citation Analysis of DISH License Patent Families (Excluding Self-Citations) | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0827 | *Perryman Exhibit 2.3: Forward Citation Analysis of DISH License Patents | | | 401-403; 403 (late); 703; 802; 901; 1002; 1003; 1006; FRCP 26(a)(2) |
| DTX-0828 | Peloton's Final Invalidity Contentions (Sept. 29, 2025) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0829 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-01 Claim Charts for '101 Patent (Chou '678) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0830 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-02 Claim Chart for '101 Patent (Nishida) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0831 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-03 Claim Charts for '101 Patent (Su) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0832 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-04 Claim Charts for '101 Patent (Sriram) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0833 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-05 Claim Charts for '101 Patent (Walker) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0834 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-06 Claim Charts for '101 Patent (Chou '031) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0835 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-07 Claim Charts for '101 Patent (Wang '928) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0836 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-08 Claim Charts for '101 Patent (Bogdan 034) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0837 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-09 Claim Charts for '101 Patent (Nobuyoshi) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0838 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-10 Claim Charts for '101 Patent (Petracca 2006) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0839 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-11 Claim Charts for '101 Patent (Bowra) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0840 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-12 Claim Charts for '101 Patent (Luo) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0841 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-13 Claim Charts for '101 Patent (Ogawa) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0842 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT A-14 Claim Charts for '101 Patent (Zhang) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0843 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-01 Claim Charts for '809 Patent (Chou '678) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0844 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-02 Claim Charts for '809 Patent (Nishida) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0845 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-03 Claim Charts for '809 Patent (Su) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0846 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-04 Claim Charts for '809 Patent (Sriram) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0847 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-05 Claim Charts for '809 Patent (Walker) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0848 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-06 Claim Charts for '809 Patent (Chou '031) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0849 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-07 Claim Charts for '809 Patent (Wang '928) | | | 401-403; 403 (late); 802; 901; 1006 |

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0850 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-08 Claim Charts for '809 Patent (Bowra 405) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0851 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-09 Claim Charts for '809 Patent (Luo 766) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0852 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-10 Claim Charts for '809 Patent (Ogawa 284) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0853 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-11 Claim Charts for '809 Patent (Zhang 774) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0854 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-12 Claim Charts for '809 Patent (Sakasawa) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0855 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT B-13 Claim Charts for '809 Patent (Nilsson) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0856 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT P-1 Claim Chart for '101 Patent (Microsoft IIS Smooth Streaming) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0857 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT P-2 HIGHLY CONFIDENTIAL Claim Charts for '101 Patent (RealNetworks) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0858 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT P-3 Claim Charts for '101 Patent (JWPlayer) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0859 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT P-4 Claim Charts for '101 Patent (Apple) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0860 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT Q-1 Claim Charts for '809 Patent (Microsoft Smooth Streaming) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0861 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT Q-2 HIGHLY CONFIDENTIAL Claim Charts for '809 Patent (RealNetworks) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0862 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT Q-3 Claim Charts for '809 Patent (JWPlayer) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0863 | Peloton's Final Invalidity Contentions (Sept. 29, 2025)  EXHIBIT Q-4 Claim Charts for '809 Patent (Apple) | | | 401-403; 403 (late); 802; 901; 1006 |
| DTX-0864 | NEC's Final Infringement Contentions (Sept. 11, 2025) | | | 401-403 |
| DTX-0865 | BeetTV, "News From NAB: Microsoft Rolls Out "Adaptive Streaming" for HD Video," YouTube, Apr. 23, 2009. [Online video]. Available: https://www.youtube.com/watch?v=5U0TPv9Bc1k. [Accessed: Oct. 22, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0866 | Ghosh, J. "IIS Smooth Streaming - Enhancing Silverlight Video Experiences with Contextual Data," Microsoft Learn – MSDN Magazine, Mar. 2010. [Online]. Available: https://learn.microsoft.com/en-us/archive/msdn-magazine/2010/march/iis-smooth-streaming-enhancing-silverlight-video-experiences-with-contextual-data. [Accessed: Oct. 20, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0867 | IIS Smooth Streaming Transport Protocol, [MS-SMTH] - v20090908, Microsoft Corporation, Redmond, WA, USA, Sep. 8, 2009. [Online]. Available: https://web.archive.org/web/20120907004742/https://www.iis.net/community/files/media/smoothspecs/[MS-SMTH].pdf. [Accessed: Oct. 20, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0868 | Jiang, J., V. Sekar, H. Zhang, "Improving Fairness, Efficiency, and Stability in HTTP-based Adaptive Video Streaming with FESTIVE," CoNEXT'12, Dec. 10-13, 2012. [Online]. Available: https://www.andrew.cmu.edu/user/vsekar/papers/conext12_festive.pdf. [Accessed: Oct. 20, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0869 | Johnston, G. "ABC.com Unveils 'HD' Video Player," Broadcasting & Cable, Apr. 2, 2007. [Online]. Available: https://web.archive.org/web/20070509114928/http://www.broadcastingcable.com/article/CA6429850.html. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |

June 25, 2026

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0870 | Kinney, A., E. Schmidt, "Building NBCOlympics.com with Silverlight," Channel 9, Aug. 7, 2008. [Online video]. Available: https://web.archive.org/web/20080908055952/http://mschnlnine.vo.llnwd.net/d1/ch9/9/2/9/9/1/4/TCS2NBCOlympics_2MB_ch9.wmv. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0871 | National Association of Broadcasters, "High Definition Internet Streaming Video," TV TechCheck, Jul. 30, 2007. [Online]. Available: https://www.nab.org/xert/scitech/pdfs/tv073007.pdf. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0872 | Silverlight Team, "French International Tennis Tournament at Roland Garros Broadcast Live on the Web Using IIS 7 Smooth Streaming," Silverlight.net Blog, Jun. 9, 2009. [Online]. Available: https://web.archive.org/web/20091107070314/http://team.silverlight.net/lighthouse-wins/french-international-tennis-tournament-at-roland-garros-broadcast-live-on-the-web-using-iis-7-smooth-streaming/. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0873 | Silverlight Team, "Michael Jackson: The King of Pop – A Memorial Live in HD," Silverlight.net Blog, Jul. 7, 2009. [Online]. Available: https://web.archive.org/web/20091030163134/http://team.silverlight.net/announcement/michael-jackson-the-king-of-pop-a-memorial-ndash-live-in-hd/. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0874 | Silverlight Team, "Wimbledon is Here – We're Giving the Championships to You Live," Silverlight.net Blog, Jun. 25, 2009. [Online]. Available: https://web.archive.org/web/20091105141851/http://team.silverlight.net/lighthouse-wins/wimbledon-is-here-and-we-rsquo-re-giving-the-championships-to-you-live/. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0875 | Waggoner, B. "NAB Day 1: Smooth Streaming Released, 1080p in Silverlight, New VC-1 and More," On10.net Blogs, Apr. 20, 2009. [Online]. Available: https://web.archive.org/web/20090501182432/http://on10.net/blogs/benwagg/NAB-Day-1-Smooth-Streaming-released-1080p-in-Silverlight-new-VC-1-and-more/. [Accessed: Oct. 19,2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0876 | Wallenstein, A. "Microsoft and NBC Universal partner on Olympics," Reuters, Jan. 7, 2008. [Online]. Available: https://www.reuters.com/article/lifestyle/microsoft-and-nbc-universal-partner-on-olympics-idUSN07371119/. [Accessed: Oct. 19, 2025] | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0877 | Defendant Peloton Interactive, Inc.'s Notice of Deposition of Dr. Donald Turnbull | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0878 | Defendant Peloton Interactive, Inc.'s Amended Deposition Notice to Plaintiff NEC Corporation pursuant to Federal Rule of Civil Procedure 30(b)(6) | | | 401-403; 403 (late); 802; 901 |
| DTX-0879 | Deposition of Alex Zambelli, dated January 7, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0880 | Deposition of Aviel Rubin, dated January 19, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0881 | Deposition of Aviel Rubin, dated January 20, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0882 | Deposition of Christopher Vellturo, dated January 7, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0883 | Deposition of Dan Schonfeld, dated January 11, 2024 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0884 | Deposition of Donald Turnbull, dated January 10, 2024 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0885 | Deposition of Julie Davis, dated January 16, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0886 | Deposition of Kevin Almeroth, dated December 18, 2023 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0887 | Deposition of Kevin Almeroth, dated February 2, 2024 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0888 | Deposition of Kevin Almeroth, dated January 22, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0889 | Deposition of Kevin Almeroth, dated January 23, 2026 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0890 | Deposition of Adam McAmis, dated October 3, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0891 | Deposition of Christopher White, Ph.D., dated September 24, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0892 | Deposition of Douglas Crossley, dated October 10, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0893 | Deposition of Francis Shanahan, dated September 23, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0894 | Deposition of Hiroshi Yoshida, dated September 17, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0895 | Deposition of Katie McNabb, dated October 7, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0896 | Deposition of Kevin Zetterstrom, dated October 15, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0897 | Deposition of Koji Katsube, dated September 18, 2025 | | | 401-403; 403 (late); 802; 901; Dep |

June 25, 2026

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0898 | Deposition of Raul Santos, dated October 10, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0899 | Deposition of Sam Walter, dated October 17, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0900 | Deposition of Santhosh Mankala, dated October 14, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0901 | Deposition of Scott Burch, dated September 25, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0902 | Deposition of Takeo Onishi, dated September 19, 2025 | | | 401-403; 403 (late); 802; 901; Dep |
| DTX-0903 | Fed. R. Civ. P. 56(d) Declaration of Anupam Sharma in Opposition to NEC Corporation's Motion for Summary Judgment of No Invalidity Based on Microsoft's Smooth Streaming System | | | 401-403; 403 (late); 802; 901 |
| DTX-0904 | Fed. R. Civ. P. 56(d) Declaration of Nathan Hoeschen in Opposition to NEC Corporation's Motion for Summary Judgment of No Invalidity Based on Microsoft's Smooth Streaming System | | | 401-403; 403 (late); 802; 901 |
| DTX-0905 | Fed. R. Civ. P. 56(d) Sur-Reply Declaration of Nathan Hoeschen in Opposition to NEC Corporation's Motion for Summary Judgment of No Invalidity Based on Microsoft's Smooth Streaming System | | | 401-403; 403 (late); 802; 901 |
| [REMOVED] | [REMOVED] | [REMOVED] | [REMOVED] | |
| DTX-0907 | *Peloton Interactive, Inc. v. NEC Corp.* , IPR Case No. IPR2023-01239,, Patent No. 8,752,101, Deposition of Clifford Reader (taken May 16, 2024)* | | | Dep |
| [REMOVED] | [REMOVED] | [REMOVED] | [REMOVED] | |
| DTX-0909 | Internet Access Services: Status as of June 30, 2025, FCC (2026) | | | 401-403; 403 (late); 802; 901 |
| DTX-0910 | Internet Access Services: Status of December 31, 2009, FCC (2010) | | | 401-403; 403 (late); 802; 901 |
| DTX-0911 | Smooth Streaming Source Code Produced by Microsoft (physical exhibit) | MSFT_PELOTON_000001 | MSFT_PELOTON_000193 | 401-403; 403 (late); 602/F; 701; 703; 802; 901; MSJ/D; Unk |
| DTX-0912 | NEC's Amended 30(b)(6) Deposition Topics | | | 401-403; 403 (late); 802; 901 |
| DTX-0913 | U.S. Patent No. 6,185,736 | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0914 | U.S. Patent No. 6,370,688 | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0915 | U.S. Patent App. No. 2003/0229902 | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0916 | U.S. Patent App. No. 2006/0168632 | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0917 | U.S. Patent App. No. 2007/0076754 | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0918 | Network Information Based Rate Controls | | | 401-403; 403 (late); 703; 802; 901; MSJ/D |
| DTX-0919 | Peloton Interactive, Inc. v. NEC Corp., IPR Case No. IPR2023-01239, Patent No. 8,752,101, Ex. 1037 Revised Declaration of Dr. Clifford Reader* | | | 403; 703; 801 |
| DTX-0920 | Peloton Bike (physical exhibit) | | | 401-403; 403 (late); Unk |
| DTX-0921 | Peloton Workouts by Month with slip sheet (Updated July 2026) | PTON-NEC-00223806 | | |
| DTX-0922 | US Monthly Income Statement July 2016 - May 2026 with slip sheet (Updated July 2026) | PTON-NEC-00223807 | | |
| DTX-0923 | Revenue and Subs by Tier by Month with slip sheet (Updated July 2026) | PTON-NEC-00223808 | | |
| DTX-0923 | US Only Percentage of Inactive Subscribers by Month with slip sheet (Updated July 2026) | PTON-NEC-00223809 | | 401-403; 403 (late); 703; 802; 901 |
| DTX-0924 | Exhibit 7 to Dr. Vellturo's Opening Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (2016-2026) (July 8, 2026) | | | |
| DTX-0925 | Exhibit 11 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share by Device (July 8, 2026) | | | |
| DTX-0926 | Exhibit 11-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share by Device (July 8, 2026) | | | |
| DTX-0927 | Exhibit 12 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Count by Device (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |
| DTX-0928 | Exhibit 12-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Count by Device (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |
| DTX-0929 | Exhibit 13 to Dr. Vellturo's Opening Report - Peloton U.S. Annual Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |

NEC v. Peloton - C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0930 | Exhibit 13-A to Dr. Vellturo's Opening Report - Peloton U.S. Monthly Completed Workout Share Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |
| DTX-0931 | Exhibit 14 to Dr. Vellturo's Opening Report - Peloton [Annual] Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |
| DTX-0932 | Exhibit 14-A to Dr. Vellturo's Opening Report - Peloton Monthly Completed Workout Count Associated with the Usage of Each Infringing Video Player (July 28, 2016 - May 31, 2026) (July 8, 2026) | | | |
| DTX-0933 | Exhibit 3.1 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Ms. Davis's Effective Rates (July 8, 2026) | | | |
| DTX-0934 | Exhibit 3.2 to Dr. Vellturo's Reply Report - Damages Owed by Peloton Using Reduced Rates from ████████ and ███ Licenses (July 8, 2026) | | | |
| DTX-0935 | Exhibit 4 to Dr. Vellturo's Reply Report - Peloton U.S. Total and Subscription Profit & Loss Statement Summary (FY2017 - FY2026) (July 8, 2026) | | | |
| DTX-0936 | Exhibit 8 to Dr. Vellturo's Reply Report - Peloton U.S. Overall Subscription Share by Tier (July 2016 - May 2026) (July 8, 2026) | | | |
| DTX-0937 | Exhibit 9 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0938 | Exhibit 9.1 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0939 | Exhibit 9.2 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0940 | Exhibit 9-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0941 | Exhibit 9.1-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0942 | Exhibit 9.2-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0943 | Exhibit 9-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate (July 1, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0944 | Exhibit 9.1-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate '809 Patent Only (July 1, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0945 | Exhibit 9.2-B to Dr. Vellturo's Third Supplemental Report - Peloton Monthly Subscriber Count and Associated Reasonable Royalty Rate '101 Patent Only (July 1, 2016 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0946 | Exhibit 10 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0947 | Exhibit 10.1 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '809 Patent Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0948 | Exhibit 10.2 to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Annual Reasonable Royalty Damages by Subscription Tier '101 Patent Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |

June 25, 2026

NEC v. Peloton, C.A. No. 22-987
**Defendant's Trial Exhibit List**

| DTX | Document Description | BeginBates | EndBates | Objections |
|---|---|---|---|---|
| DTX-0949 | Exhibit 10-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0950 | Exhibit 10.1-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '809 Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0951 | Exhibit 10.2-A to Dr. Vellturo's Third Supplemental Report - Peloton Estimated Monthly Reasonable Royalty Damages by Subscription Tier '101 Only (July 28, 2022 - July 31, 2026) (July 8, 2026) | | | |
| DTX-0952 | [[PLACEHOLDER FOR DAVIS UPDATED EXHIBITS]] | | | |

*\* Indicates the document is subject to a pending motion in limine or objection.*

| CODE | OBJECTION |
|---|---|
| 106 | Incomplete document or evidence |
| 401, 402 | Relevance |
| 403 | Probative value of relevant evidence substantially outweighed by danger of unfair prejudice, confusion, misleading the jury, or wasting time / delay / cumulative. |
| 403 (late) | Not properly produced, printed, or identified during discovery |
| 408 | Settlement |
| 602 | Personal knowledge |
| 702 | Inadmissible expert opinion |
| 703 | Expert serving as conduit/mouthpiece for impermissible hearsay |
| 802 | Hearsay / Hearsay within Hearsay (FRE 802, 805) |
| 901 | Lack of authenticity |
| 1002 | Best evidence rule |
| 1003 | Copy does not reflect original document |
| 1006 | Improper summary |
| FRCP 26(a)(2) | Expert report is a disclosure not evidence |
| Dep | Deposition not designated in accordance with pretrial stipulation |
| MIL | Subject of outstanding Motion in Limine or Motion to Strike |
| MSJ/D | Subject of outstanding Motion for Summary Judgement or *Daubert* Motion |
| Unk | Document unknown or not identifiable |

516798629.2

# EXHIBIT 12

Joint Exhibit List

| JTX | Description | Beginning Bates | End Bates |
|---|---|---|---|
| 1 | Official Ribbon copy of U.S. Patent No. 8,752,101 (excerpt of first page - physical copy maintained for whole document) | NEC_2022_DE_0000001 | NEC_2022_DE_0000001 |
| 2 | Official Ribbon copy of U.S. Patent No. 8,909,809 (excerpt of first page - physical copy maintained for whole document) | NEC_2022_DE_0000002 | NEC_2022_DE_0000002 |
| 3 | Certified File History of U.S. Patent No. 8,752,101 | NEC_2022_DE_0000003 | NEC_2022_DE_0000402 |
| 4 | Certified File History of U.S. Patent No. 8,909,809 | NEC_2022_DE_0000403 | NEC_2022_DE_0000996 |

# EXHIBIT 13

## NEC's Motion in *Limine* #1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT NO. 13
NEC'S MOTION IN *LIMINE* ("MIL") NO. 1
TO PRECLUDE REFERENCE TO THE PRESENCE OR ABSENCE
OF AN NEC CORPORATE REPRESENTATIVE, MR. KATSUBE**

The Court should preclude Peloton from raising any argument, evidence, testimony, or reference regarding the absence of NEC's corporate representative on certain 30(b)(6) topics, Mr. Koji Katsube, at trial—in other words, "trying the empty chair."[1] The presence or absence of Mr. Katsube is irrelevant, and references to attendance or lack thereof are only likely to confuse the jury, distract from the substantive issues, and unfairly prejudice NEC. Fed. R. Evid. 401, 403. Peloton, therefore, should be precluded from making any speculation at trial as to the reason(s) for the physical presence or absence of Mr. Katsube at trial.

"[I]rrelevant evidence is not admissible." Fed. R. Evid. 402. The presence or absence of a party's particular corporate representative, employee, or other fact witness does not have "any tendency to make a fact more or less probable than it [otherwise] would be[.]" Fed. R. Evid. 401. And courtroom attendance is not a "fact . . . of consequence in determining the action." *Id.*; *see Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704-MAK, 2022 WL 17403104, at *2 (D. Del. Aug. 9, 2022) ("We turn to the lack of Mr. Deepak's testimony. Evidence or argument regarding his absence is not relevant."); *Ray v. Ford Motor Co.*, Civil Action No. 3:07cv175-WHA-TFM, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011) ("the presence or absence of a corporate representative will not make the existence of any fact necessary to the Plaintiffs' claims any more or less probable"). As a result, there is no reason that Mr. Katsube's trial attendance should be mentioned in front of the jury. *See In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, Case No. 14 C 1748, 2017 WL 5029601, at *3 (N.D. Ill. Nov. 3, 2017)

---

[1] NEC notes that it intends to have three other employee representatives appear live at trial. Further, NEC offered to make this motion in limine reciprocal to attempt to reach agreement with Peloton (i.e., to agree that both parties would not comment on the absence of fact witnesses at trial), but Peloton declined.

1

(precluding reference to a corporate representative's presence or absence where the party opposing the MIL failed to explain how it was relevant under Rule 401).

Reference to the presence or absence of Mr. Katsube would be unduly prejudicial and unnecessarily distract the jury. Fed. R. Evid. 403; *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11538713, at *23 (E.D. Tex. Feb. 26, 2010). Here, it would be unfair for Peloton to make such references in an attempt to suggest that Mr. Katsube's presence or absence is indicative of the strength or weakness of NEC's case or licensing efforts. This sort of negative impression would unfairly impact the jury's ability to apply the facts of this case in a neutral manner, particularly since Mr. Katsube was deposed as a 30(b)(6) witness, and his testimony may be presented at trial via video recording.

The Third Circuit makes clear that "[d]eposition testimony is entitled to the same consideration and is to be judged . . . in the same way as if the witness had been present to testify." Third Circuit Model Jury Instructions at § 2.5 (2026) (attached as Ex. A). So "[c]ommentary on a video-deponent's absence from trial at best invites unnecessary prejudice and is not clearly probative of any factual question." *Ericcson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, Case No. 2:15-cv-00011-RSP, D.I. 377 at 6 (E.D. Tex. Nov. 29, 2017) (attached as Ex. B).

Moreover, "when a corporate representative fails to attend trial, counsel opposite may seek to inflame the jury suggesting that the company does not care about [the lawsuit]. This . . . would be improper." *See Stubblefield v. Suzuki Motor Corp.*, No.: 3:15-CV-18-HTW-LRA, 2018 WL 4610895, at *6 (S.D. Miss. Sept. 25, 2018). "At best, such commentary would allow the jury to speculate about the meaning of 'non-evidence'[.]" *Ericcson Inc.*, Case No. Case No. 2:15-cv-00011-RSP, D.I. 377 at 6 (internal quotation marks and citation omitted); *see also Torkie-Tork v. Wyeth*, No. 1:04cv945, 2010 WL 11431846, at *2 (E.D. Va. Nov. 17, 2010) ("Mention of the

2

corporate representative's presence has virtually no probative value, and in any event, to the extent such an observation has any probative value, that value is substantially outweighed by the danger of unfair prejudice.").

For these reasons, this Court and other district courts typically preclude a party from making arguments regarding live attendance at trial. *See e.g.*, *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH, D.I. 455 at 4 (D. Del. Apr. 11, 2023) (attached as Ex. C) ("Google's third MIL . . . requesting the Court preclude Arendi from commenting on absent witnesses was GRANTED. Neither party shall reference the presence or absence of any party's corporate representative, employee, or other witness."); *Promptu Sys. Corp. v. Comcast Corp.*, CIVIL ACTION No. 16-6516, D.I. 606 at 1 & n.1 (E.D. Pa. Jan. 13, 2026) (attached as Ex. D); *Immersion Corp. v. Samsung Elecs. Am., Inc.*, CIVIL ACTION NO. 2:17-CV-00572-JRG, D.I. 188 at 6 (E.D. Tex. May 2, 2019) (attached as Ex. E); *IPA Techs. Inc. v. Microsoft Corp.*, Civil Action No. 18-1-RGA, D.I. 344 at 2 (D. Del. Apr. 26, 2024) (attached as Ex. F).

Peloton should therefore be precluded from commenting on or otherwise arguing regarding the presence or absence of Mr. Katsube at trial.

# EXHIBIT A

## NEC's MIL No. 1

**General Instructions for Civil Cases**

**Numbering of General Instructions**

**1. Preliminary Instructions For Use at Commencement of Trial and/or at End of Trial.**

1.1  Introduction; Role of Jury

1.2  Description of Case; Summary of Applicable Law

1.3  Conduct of Jury

1.4  Bench Conferences

1.5  Evidence

1.6  Direct and Circumstantial Evidence

1.7  Credibility of Witnesses

1.8  Jury Questions for Witnesses

1.9  Note-Taking By Jurors

1.10  Preponderance of the Evidence

1.11  Clear and Convincing Evidence

1.12  Description of Trial Proceedings

**2. General Instructions For Use During Trial**

2.1  Impeachment of Witness's Character for Truthfulness

2.2  Judicial Notice

2.3  Stipulation of Testimony

2.4  Stipulation of Fact

*Last updated March 2026*

2.5    Use of Deposition

2.6    Use of Interrogatories

2.7     Charts and Summaries in Evidence

2.8     Charts and Summaries Not Admitted in Evidence

2.9     Striking Evidence

2.10    Evidence Admitted for a Limited Purpose

2.11    Opinion Testimony

2.12     Foreign Language Testimony or Audio Recording

2.13     Transcript of Audio-Recorded Conversation

2.14     Recess Admonition

**3.    General Instructions For Use At End of Trial**

3.1     Deliberations

3.2     Number of Witnesses

3.3     Read-Backs of Trial Testimony

3.4     Deadlock

*Last updated March 2026*

## 2.5   General Instructions For Use During Trial  — Use of Deposition

### Model

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you [by a video] [by reading the transcript]. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

### Comment

This instruction should be given when deposition testimony is admissible and offered as substantive evidence. *See* Fed.R.Evid. 804(b)(1), 801(d)(2); Fed.R.Civ.P. 32(a).  It should be given before the testimony is read to the jury.  The instruction can be modified to be given at the beginning of the trial, as well as when the evidence is presented.

This instruction is not appropriate if answers are being used for impeachment only.

If more than one deposition is read into evidence or otherwise presented during the trial, the jury may be reminded of how depositions are taken. But it is not necessary to repeat the entire instruction.

24

*Last updated March 2026*

# EXHIBIT B

# NEC's MIL No. 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, | § § § § | |
| | § | Case No. 2:15-cv-00011-RSP |
| *Plaintiffs*, | § § | |
| v. | § § | |
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED,  TCT MOBILE (US) INC., | § § § § | |
| *Defendants*. | § § | |

**<u>UPDATED ORDER ON MOTIONS *IN LIMINE*</u>**

A party must approach the bench before introducing evidence or argument about the subject matter of a motion *in limine* that has been granted.

### I.    Joint Motions *in Limine* (Dkt. Nos. 335 and 375)

(1)    Other Cases Involving Ericsson or TCL – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial to other cases involving Ericsson or TCL (including the Central District of California Action between the parties and the arbitration between the parties related to the 2007 license), but the parties may still rely on testimony or evidence from other cases if it is otherwise admissible, so long as the testimony or evidence is presented in a way that does not disclose the parties to the other cases.

(2)    Investigations of Ericsson or TCL by Government Or Regulatory Agencies – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial to investigations of Ericsson or TCL by government or regulatory agencies.

(3)    Arguments that TCL Does Not Infringe Because It Has Its Own Patents – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial that TCL does not infringe because it has its own patents. However, TCL may otherwise refer to or discuss its own patents.

(4)    Ericsson's Divestitures of Patents to Third Parties – <u>granted</u>.

1

The parties agree that they are precluded from offering evidence, argument or references at trial to Ericsson's divestitures of patents to third parties.

(5)    Suggestions that Ericsson Intentionally Misled the USPTO During Prosecution – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or suggestions at trial that Ericsson intentionally misled the U.S. Patent and Trademark Office during prosecution of the '510 patent.

(6)    Reference to Document Retention Policies, Compliance Therewith, or Allegations of Spoliation of Evidence – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial to either party's document retention policies or practices, each respective party's compliance therewith, or allegations of spoliation of evidence.

(7)    A Party's or Witness's Nationality or Country of Origin – <u>granted</u>.

The parties agree that they are precluded from using pejorative language to describe a party's or witness's nationality or country of origin.

(8)    Prior Rulings of This Court – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial to prior rulings of this Court (except for the Court's claim constructions), procedures with respect to such rulings, and whether any party filed for summary judgment.

(9)    Doctrine of Equivalent Opinions as to the '510 Patent – <u>granted</u>.

The parties agree that Dr. Jones is precluded from offering evidence, argument or references at trial to any doctrine of equivalent opinions as to the '510 patent, unless the Court issues any further claim constructions.

(10)    Opinions of Counsel – <u>granted</u>.

The parties agree that they are precluded from offering evidence, argument or references at trial to any opinions of counsel required to be disclosed by P.R. 3-7.

The parties agree that they are precluded from offering evidence, argument or references at trial that TCL failed to obtain the advice of counsel or present the advice of counsel to the Court or jury to prove that TCL willfully infringed the '510 patent or that TCL intended to induce infringement of the '510 patent.

(11)    Good faith belief of invalidity – <u>granted</u>.

The parties agree that neither party shall present evidence or argument regarding TCL's alleged good-faith belief regarding claim construction or regarding invalidity of the '510 patent,

2

or offer evidence or argument regarding the substance or existence of any inter partes review proceedings related to the '510 patent. *See* Dkt. No. 375.

## II.    Ericsson's Motions *in Limine* (Dkt. No. 337)

(1)  Any evidence, testimony, reference, or argument relating to dropped or stayed patents or patent claims – <u>granted in part and denied in part</u>.

TCL may not present evidence or argument that a patent that was once asserted is no longer asserted. The Court understands that deposition testimony may refer to patents that are no longer asserted. If the parties are unable to reach an agreement concerning this deposition testimony, any objections may be raised with the Court by the procedures set forth in the Pretrial Order.

TCL may not present evidence or argument that a patent not asserted at trial has been subject to inter partes review (IPR) or found unpatentable by the Patent Trial and Appeal Board (PTAB). This evidence may have marginal relevance to TCL's position that it had a good faith belief that it was not infringing valid patents, but the patents that were found unpatentable by the PTAB are not so closely related to the '510 patent to warrant presenting the evidence to the jury. IPR evidence related to non-asserted patents risks misleading the jury and confusing the issues. *See* Fed. R. Evid. 403.

With respect to the '510 patent (the patent that will be asserted at trial), TCL is not precluded from presenting evidence or argument that it believed the '510 patent to be invalid. The PTAB's decision instituting IPR is evidence of the reasonableness of that belief. *See WesternGeco L.L.C. v. Ion Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016) (even after Halo, the objective reasonableness of the accused infringer's positions can still be relevant to the § 284 issue). If TCL presents such evidence, Ericsson is not precluded from presenting evidence that the PTAB ultimately concluded that TCL did not prove that the '510 patent claims would have been obvious, and if Ericsson does so, TCL is not precluded from informing the jury that the PTAB's decisions are not final and have been appealed.

If the parties are unable to reach an agreement concerning which portions of the PTAB's written decisions should be admitted, the Court will be inclined to admit only the relevant portions. For example, in one of the PTAB's final decisions, the PTAB includes an extensive discussion of the prior art (Usui, Gong, etc.). In the Court's view, this portion of the PTAB's decision should be excluded. This guidance will hopefully allow the parties to reach a suitable agreement.

(2)  Any evidence, testimony, reference, or argument comparing the accused products with the written description of the '510 patent - <u>denied</u>.

The parties agree that an accused product must be compared to the claims of the '510 patent to determine infringement or noninfringement. The Court will monitor the evidence and argument presented at trial to determine, in the event of a timely objection, whether an improper comparison is being made.

(3)  Any evidence, testimony, reference, or argument that practicing the prior art is a defense to patent infringement - <u>denied</u>.

The parties agree that an accused infringer cannot escape liability for patent infringement by practicing the prior art. The Court will monitor the evidence and argument presented at trial to determine, in the event of a timely objection, whether TCL is suggesting that it does not infringe because it practices the prior art.

(4)   Any evidence, testimony, or argument regarding claim constructions not in the claim the construction order – <u>granted in part and denied in part</u>.

TCL may not present a claim construction argument to the jury. TCL is not, however, precluded from contending that it does not infringe because the accused product does not include a particular claim element as that claim element is understood in ordinary usage. For example, TCL is not precluded from presenting evidence or argument that the accused software does not include an "interception module" because the accused interception code is scattered throughout the software platform, as opposed to being a self-contained unit. TCL may not, however, contend that "module" has anything other than its ordinary meaning, for example by referencing a dictionary definition that includes a unique (i.e., not ordinary) meaning. In addition, TCL may not argue that the term "module" has a particular meaning in light of the specification or prosecution history. These arguments could have been made during claim construction but were not, and for that reason they are waived. *See* Dkt. No. 359 at 30-34.

(5)   Any evidence, testimony, reference, or argument regarding the possible consequences of a verdict in any parties' favor – <u>granted in part and denied in part</u>.

TCL may not present evidence or argument that a damages award would affect consumers, TCL employees, or the general public. This includes any evidence or argument suggesting that TCL may have to raise the price of its phones or discontinue certain phones in response to a verdict. *See* Fed. R. Evid. 403. TCL is not, however, precluded from presenting evidence or argument that there would not have been enough profit on sales of the accused products to support a royalty as large as Ericsson is seeking.

(6)   Any evidence, testimony, or reference to Ericsson's standard-essential patent portfolio rates, including any argument that they are comparable to rates for Ericsson's implementation portfolio or the patent-in-suit – <u>denied</u>.

The parties agree that TCL will not present evidence or argument that the '510 patent is encumbered by a FRAND obligation. The trial will nevertheless involve the presentation of evidence and argument related to standard essential patents (SEPs) and FRAND-related issues, and the Court will provide the jury an explanation of SEPs and FRAND obligations where properly requested and necessary. As for the reference rates discussed at the pretrial conference, the Court will carefully monitor the evidence and argument presented at trial.

(7)   Any evidence, testimony, reference, or argument by TCL disclosing the royalty amounts included in TCL's patent licenses – <u>granted in part and denied in part</u>.

TCL may not present evidence or argument regarding the amount or other financial terms of a TCL license with a third-party, unless the license involves technology comparable to that claimed by the '510 patent. TCL is not, however, precluded from using its past licenses to explain the structure or type of a license that it would have considered during the hypothetical negotiation.

4

(8)    Any evidence, testimony, reference, or argument concerning an expert's previous and/or current retention by counsel – <u>granted in part and denied in part</u>.

The parties may not present evidence or argument highlighting an expert's relationship with counsel. A party is not precluded from presenting evidence or argument about an expert's record, such as evidence that an expert typically testifies for plaintiffs or defendants.

(9)    Any evidence, testimony, reference, or argument that Ericsson's reasonable royalty request is too high in light of the average sales price or profit margin of the accused products - <u>withdrawn</u>.

(10)   Any evidence, testimony, reference, or argument concerning the 2007 Ericsson/TCL standard-essential patent license agreement – <u>denied</u>.

## III.    TCL's Motions *in Limine* (Dkt. No. 336)

(1)    Evidence of TCL's Worldwide Sales Revenues, Gross Profits, Operating Profits, and Total Accused Sales Revenues and Profits – <u>granted in part and denied in part</u>.

Ericsson is not permitted to present evidence or argument suggesting that the royalty Ericsson seeks is a small portion of TCL's total telecommunications revenue or otherwise highlight TCL's total revenue. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."). However, because TCL's damages model relates to an Ericsson license with a third party that is based on the third party's total telecommunications revenue, Ericsson is permitted to compare the third party's total telecommunications revenue to TCL's total telecommunications revenue, but only for the purpose of illustrating the differences, i.e., to explain Ericsson's view that the third party license is not comparable.

(2)    Evidence of the Total Amount of Payments Made or To Be Made under Ericsson's Portfolio License Agreements – <u>conditionally granted in part and denied in part</u>.

Absent an appropriate stipulation by TCL regarding the method of calculating the financial terms of Ericsson's licenses, Ericsson is not precluded from presenting evidence or argument regarding those terms because the method is in dispute. If, however, TCL stipulates to the method used in the relevant Ericsson licenses, Ericsson is precluded from referencing the dollar amounts (other than the Samsung license). Ericsson is not otherwise precluded from discussing the terms of the other licenses without referencing the amounts involved.

(3)    Evidence or Argument Relating to the Absence of Any Witness At Trial – <u>granted</u>.

TCL wishes to preclude Ericsson from presenting evidence or argument referring to the absence of any witness at trial, such as suggesting that the absence is due to the fact that the testimony of the absent witness would be detrimental or harmful to TCL's defense. The "uncalled witness rule" has been summarized as follows:

> Before a party can properly argue to the jury the possibility of drawing such an inference from the absence of a witness, the party must establish that the missing witness was peculiarly within the adversary's power to produce by showing either that the witness is physically available only to the opponent or that the witness has the type of relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party.

*Stockton East Water District v. U.S.*, 78 Fed.Cl. 497, 505 (Ct. Fed. Cl. 2007) (quoting *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir.1983)). The Fifth Circuit has expressed doubt as to whether the uncalled witness rule continues to have a place in the modern trial, which culminates after liberal discovery. *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1048 (5th Cir. 1990).

At the second pretrial conference, Ericsson's counsel indicated a desire to make comments related to two categories of TCL personnel. The first category relates to witnesses that TCL or Ericsson may call at trial by deposition but that will not appear live at trial. Ericsson's counsel indicated that it would be proper to comment about any such witness's absence at trial. The Court does not agree. The Fifth Circuit has all but equated live trial testimony with videotaped deposition testimony, *see Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000), and the Fifth Circuit pattern jury instructions explain that deposition testimony is entitled to the same weight as live testimony, *see* Fifth Circuit Pattern Jury Instructions § 2.13 (2014). Commentary on a video-deponent's absence from trial at best invites unnecessary prejudice and is not clearly probative of any factual question. *See* Fed. R. Civ. P. 403. Ericsson's counsel can, of course, make arguments or comments about what the deponent did or did not say during the deposition.

The second category relates to an in-house TCL lawyer that will be present at trial (seated at counsel's table) in addition to other TCL employees that may not attend trial at all, in other words, TCL personnel that will not be called to testify live or by deposition and that were never identified as witnesses. The question is whether Ericsson may comment on the absence of such personnel, e.g., that TCL did not bother to bring this person or that person to trial, "to look the jury in the eyes," as Ericsson's counsel put it.

Because Ericsson had full opportunity during discovery to obtain deposition testimony from corporate witnesses with knowledge, it would be unfairly prejudicial to allow commentary on who all is not present at trial. At best, such commentary would allow the jury to speculate about the meaning of "non-evidence," as the Seventh Circuit phrased it in the context of a criminal case. *See United States v. Keplinger*, 776 F.2d 678, 703 (7th Cir. 1985). The inference Ericsson would like the jury to draw is that a certain person did not come to testify at trial because the person's testimony would have been unfavorable—a flavor of the uncalled witness rule, a rule that has been narrowed and subject to extensive criticism by the Fifth Circuit. Finally, what is perhaps most troubling about such commentary in this case is that it relates to willfulness. Ericsson has the burden of proving culpable and egregious (i.e., shocking) infringing conduct, and it would be improper for the jury to infer that a witness's absence at trial indicates that TCL is hiding from this lawsuit, or that TCL knows its behavior was egregious and thus chose not to confront the jury in person, to avoid shame. These inferences have nothing to do with the underlying merits question

6

and only risk misleading the jury. *See* Fed. R. Evid. 403. Accordingly, commentary about a TCL employee's absence from trial is not permitted.

(4)    Evidence of the Patent Trial and Appeal Board ("PTAB")'s Final Written Decision in the '510 Patent Inter Partes Reviews - <u>conditionally denied</u>.

If TCL presents evidence or argument regarding its petition for IPR of the '510 patent, or the PTAB's institution decisions, Ericsson may present evidence or argument regarding the PTAB's final decisions. If TCL does not present such evidence or argument, Ericsson may not refer to the PTAB's final decisions.

(5)    Evidence or Argument Relating to TCL's Alleged Failure to Produce or Disclose Any Evidence During Discovery – <u>granted</u>.

(6)    Reference to the "Presumption of Validity" – <u>withdrawn</u>.

(7)    Evidence or Argument Relating to the Validity of the '510 Patent or the "Presumption of Validity" – If the Issue of Willfulness Is Bifurcated from the Other Issues of Liability – <u>withdrawn</u> (subject to TCL's request for a bench trial on willfulness).

**SIGNED this 29th day of November, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT C

## NEC's MIL No. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARENDI S.A.R.L.,

        Plaintiff,

    v.

GOOGLE LLC,

        Defendant.

C.A. No. 13-919-JLH

## ORDER AFTER PRETRIAL CONFERENCE

Now, this 11 day of April 2023, upon consideration of the Proposed Pretrial Order (D.I. 442; D.I. 443) and for the reasons extensively discussed at the pretrial conference held on April 6, 2023, **IT IS HEREBY ORDERED** that:

1.      The Proposed Pretrial Order (D.I. 442; D.I. 443) will be ADOPTED as modified by this order and any discussion at the pretrial conference, which the parties are expected to incorporate into a revised pretrial order that must be filed on or before April 14, 2023.

2.      A jury trial will begin with jury selection and preliminary jury instructions on Friday, April 21, 2023, at 9:00 a.m.  Opening statements and trial will begin on Monday, April 24 at 9:00 a.m.  **Due to a public event being held at the courthouse on April 28, 2023, trial will conclude for the week on Thursday, April 27 and resume the following Monday, May 1.**  Each party should be prepared to present its case until 4:30 p.m. of each trial day.

3.      The trial is timed.  Each side is allowed 14.5 hours for its opening statement, its direct and cross examination of witnesses, and closing statements.  Time during the trial day that

1

does not neatly fit into one of those categories will be attributed to one side or the other as the Court thinks most appropriate.

4.      Trial counsel are to be present and ready to proceed at 8:30 a.m. on April 21 and on each and every day thereafter of trial.  Counsel should understand that there may be long lines to enter the courthouse (particularly when the jury is being selected) and should plan accordingly.  There will be up to an hour for lunch and a fifteen-minute break in both the morning and the afternoon.

5.      Issues that need to be addressed outside the presence of the jury will be taken up at 8:30 a.m., at the lunch break, at the end of the day, or at such other time that the Court determines.  As explained at the pretrial conference, issues related to deposition designations must be brought to the attention of the Court's Courtroom Deputy by 6:00 p.m. the night before the witness is to be called.  The parties shall provide the Court with the following: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Other issues, including objections to anticipated exhibits or demonstratives, must be brought to the Court's attention by 7:00 a.m. on the day on which the evidence objected to will be adduced.

6.      As explained at the Pretrial Conference, the parties must provide the Court on or before noon on Friday, April 21 with electronic versions of all trial exhibits on the exhibit list in a single folder.  The trial exhibits should be named with their exhibit numbers (*i.e.*, JTX, PTX, or DTX) and organized in ascending numerical order.  Additionally, at the beginning of each trial day, the parties shall provide to the Court three additional copies of any witness binders

containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination of any witnesses expected to be called that day.

7.      On or before April 19, the parties must file a letter attaching a list of witness names and a glossary of technical terms for the court reporter.

8.      The Court expects to hold a charge conference after the close of testimony on Monday, May 1.  Unless otherwise ordered, Plaintiff is responsible for the preparation and revising of the jury instructions and verdict form that will be given to the jury.  The Court expects to give the bulk of the jury instructions before the closing arguments are made.

9.      The motions *in limine* ("MIL") were discussed at the pretrial conference.  Most were resolved.  Arendi's first MIL (D.I. 442, Ex. 8P) concerning damages models from other judicial actions was DENIED.  The parties must rely upon the transcript for a full understanding of the ruling.  Arendi's second MIL (*id.*) requesting the Court preclude Google's fact witnesses from presenting expert testimony is DENIED without prejudice to reraise at the appropriate time should specific concerns arise.  The parties must rely upon the transcript for a full understanding of the ruling.  Arendi's third MIL (*id.*) to preclude Google from acting inconsistent with the Court's prior orders was taken under advisement after it became clear that Arendi was specifically concerned about certain prior art that may or may not be implicated depending on Google's obviousness combinations.  The Court ordered the parties to meet and confer after Google discloses its obviousness combinations and submit a letter to the Court if a dispute remains.  Google's first MIL (D.I. 443, Ex. 8D) was GRANTED-IN-PART.  Arendi shall not ask Mr. Weinstein about revenue Google earns from selling or monetizing user data or reference or introduce the article that Mr. Weinstein submitted for the first time in his supplemental reply report to support his claim that Google monetizes user data (*see id.*, Ex. 8D-1).  Arendi may ask

3

Mr. Weinstein in general terms about revenue Google earns from advertising but shall not, in any way, put a number on Google's advertising revenue.  The parties must rely upon the transcript for a full understanding of the ruling.  Google's second MIL (*id.*) concerning asserted claims 1 and 8 was DENIED.  Google's third MIL (*id.*) requesting the Court preclude Arendi from commenting on absent witnesses was GRANTED.  Neither party shall reference the presence or absence of any party's corporate representative, employee, or other witness.  If a party wants to make an argument that it could not call an opposing party's absent witness itself and wants to instruct the jury to draw an inference from the witness's absence, the party shall raise the issue with the Court before any argument is made.

10.     Any trial logistics should be coordinated through the Courtroom Deputy.

**IT IS FURTHER ORDERED**, upon consideration of the parties' briefing, and for the reasons discussed at the pretrial conference:

11.     Google's Motion to Strike Portions of Mr. Roy Weinstein's Supplemental Expert Reports Regarding Damages (D.I. 419) is **DENIED**.

12.     Google's Motion for Clarification of Claim Construction (D.I. 421) is **DENIED**.

13.     The transcript from the April 6, 2023 hearing shall serve as the Order of the Court.

Date: April 11, 2023

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge

4

# EXHIBIT D

## NEC's MIL No. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROMPTU SYSTEMS CORPORATION      :      CIVIL ACTION

     :

v.      :      No. 16-6516

     :

COMCAST CORPORATION, et al.      :

## ORDER

AND NOW, this 13th day of January, 2026, upon consideration of Plaintiff Promptu Systems Corporation's Motion in Limine to Preclude References to a Party's Failure to Call Any Witnesses (ECF No. 461), the parties' briefings, and the parties' arguments at the January 8, 2026 Pretrial Conference, it is ORDERED the Motion (ECF No. 461) is GRANTED.[1]

---

[1]      Promptu seeks to preclude any mention of the absence of certain of its witnesses because these references would be irrelevant, unduly prejudicial, and distracting to the jury. Comcast claims Third Circuit law allows a missing witness inference, and it should be allowed to draw the inference for Promptu's failure to call witnesses.

Comcast cites to *Lin v. Rohm & Haas Co.*, for the proposition that if a party fails to present a witness under its control whose testimony bears on an issue, it must be presumed that such witness testimony would be detrimental. 685 F. App'x 125, 132 (3d Cir. 2017). The *Lin* decision cites to *United States v. Hines*, 470 F.2d 225, 230 (3d Cir. 1972). The missing witness inference, therefore, seems to mainly originate in criminal law. In the criminal context, the missing witness inference is only applicable when the witness is not equally available to both parties (or is unavailable) and the testimony would not be cumulative. *See Hines*, 470 F.2d at 230; *United States v. Drozdowski*, 313 F.3d 819, 825 n.3 (3d Cir. 2002); *see also* Third Circuit Model Criminal Jury Instruction 4.16. In civil law, the extent to which the criminal law missing witness inference requirements are still applicable is unclear. *Compare Mozingo v. Oil States Energy Servs., L.L.C.*, 341 F. Supp. 3d 534, 557 (W.D. Pa. 2018) (rejecting claim that counsel's references to a missing witness during closing arguments, when the witness was equally available to both sides, was prejudicial enough to require a new trial), *with Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.*, No. 5:23-CV-0802, 2024 WL 6935134, at *1 n.2 (E.D. Pa. Apr. 8, 2024) ("A missing witness inference cannot be used where the uncalled witness is equally available to both parties or is not available." (cleaned up)).

The Court finds a missing witness inference is only applicable when the witness was not available to both parties and the testimony would not be cumulative. Under this standard, Comcast cannot use a missing witness inference because it has not shown the uncalled witnesses are not available to it. Counsel for Comcast did not attempt to subpoena or otherwise call these witnesses. Additionally, both parties have access to depositions of these witnesses. The Court will accordingly grant the motion and preclude references from all parties about missing witnesses.

BY THE COURT:


 /s/ Juan R. Sánchez 
Juan R. Sánchez, J.

# EXHIBIT E

# NEC's MIL No. 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **IMMERSION CORPORATION,** | § | |
| | § | |
| *Plaintiff*, | § | **CIVIL ACTION NO.  2:17-CV-00572-JRG** |
| | § | **(LEAD)** |
| **v.** | § | |
| | § | |
| **SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD.,** | § | **CIVIL ACTION NO. 2:17-CV-00055-JRG** |
| | § | **(MEMBER)** |
| | § | |
| | § | |
| *Defendants*. | § | |

## ORDER ON PRETRIAL MOTIONS AND MOTIONS *IN LIMINE*

The Court held an Initial Pretrial Conference and Final Pretrial Conference in the above-captioned cases on April 22, 2019 and April 23, 2019, respectively, regarding pretrial motions and motions *in limine* ("MIL") filed by Plaintiff Immersion Corporation ("Immersion") and Defendants Samsung Electronics America, Inc. and Samsung Electronics Co. Ltd. (collectively "Samsung"). (Dkt. Nos. 180, 183.)  This Order summarizes and memorializes the Court's rulings and reasons therefor on the aforementioned motions as announced into the record, including additional instructions that were given to the Parties.  While this Order summarizes the Court's rulings during the pretrial hearings, this Order in no way limits or constrains such rulings from the bench.  Accordingly, it is hereby **ORDERED** as follows:

1

## PRETRIAL MOTIONS

1. Defendants Samsung's Motion for Partial Summary Judgment of No Pre-Suit Damages for the '051 and '332 Patents, (Dkt. No. 108)

This motion is **DENIED**.  (Dkt. No. 185 at 39:1–2.)

2. Defendants Samsung's Motion for Partial Summary Judgment that the '720 and '181 Certificates of Correction Regarding Chain of Priority Are Invalid, (Dkt. No. 109)

This motion is **DENIED**.  (Dkt. No. 185 at 53:19–22.)

3. Defendants Samsung's Motion to Exclude the Opinions and Testimony of Immersion's Damages Expert Patrick Kennedy Under Fed. R. Evid. 702 and Daubert, (Dkt. No. 110)

This motion is **DENIED**.  (Dkt. No. 185 at 70:5–6.)

4. Plaintiff Immersion's Motion to Strike Undisclosed Invalidity Theory and Prior Art References from Wolfe Expert Report, (Dkt. No. 111)

This motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.  (Dkt. No. 185 at 90:3–91:21.)    It is **ORDERED** that the sentence "It is discussed, for example, in my own patent, U.S. patent 6,037,930, filed in 1984, which discusses but does not claim, both types of coordinate reporting," is hereby **STRICKEN** from page 20 of Exhibit 3A, page 9 of Exhibit 3B, page 19 of Exhibit 3D, page 2 of Exhibit 4A, page 3 of Exhibit 4B, page 2 of Exhibit 5A, page 3 of Exhibit 5B, and page 4 of Exhibit 5D of the Expert Report of Dr. Andrew Wolfe, Ph.D. on the Invalidity of U.S. Patent Nos. 6,429,846; 7,982,720; 8,031,181; 8,619,051.  (*Id.* at 91:18–21.)  All other relief sought in the motion is **DENIED**.  (*Id.* at 90:24–91:9.)

5. Plaintiff Immersion's Daubert Motion to Exclude Testimony by Mr. W. Christopher Bakewell, (Dkt. No. 112)

This motion is **DENIED**.  (Dkt. No. 185 at 93:16–17.)

2

## MOTIONS *IN LIMINE*

It is **ORDERED** that the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following before the venire panel or the jury without prior leave of the Court:

### I.    Agreed Motions *in Limine* (Dkt. No. 149)

The following motions *in limine* are **GRANTED-BY-AGREEMENT OF THE PARTIES**:

Agreed MIL #1: No argument or evidence of any witness or party employee or officer having personal legal issues or being involved in personal legal proceedings, either criminal or civil. For clarity, this would not prevent, on cross-examination, inquiry into specific instances of a witness's conduct if they are probative of the character for truthfulness or untruthfulness of the witness.

Agreed MIL #2: No argument or evidence regarding Samsung's total company-wide profits or revenues.

Agreed MIL #3: No argument or evidence stating or suggesting that the U.S. trial system favors any particular party because of its size, legal budget or legal team, including any suggestion from Plaintiff that any Defendant has "unlimited resources," "unlimited power," or the capability to put more money or more lawyers into defending this litigation. For clarity, this would not prevent general testimony that Samsung is a relatively larger company than Immersion, or that Immersion is a relatively smaller company than Samsung, for instance with respect to the number of people employed by each company.

Agreed MIL #4: No argument or evidence that Defendant infringes or does not infringe any non-asserted claim or any non-asserted patent. For clarity, this does not preclude the

3

introduction of documentary evidence that incidentally includes statements regarding infringement or non-infringement of non-asserted claims or patents.

Agreed MIL #5: No argument or evidence regarding a party's or a party's law firm's prior retention of the same experts in previous litigation (e.g., number of cases, or how much the expert was paid over the course of those cases).

Agreed MIL #6: No mention of the fact that any expert's opinions were excluded.

Agreed MIL #7: No disparaging any witness on the basis of the witness's native language or the witness's choice to testify in the witness's native language, regardless of whether accompanied by an interpreter at deposition or trial.

Agreed MIL #8: No disparaging or commenting unnecessarily on the nationality or place of residence of a party or witness, or otherwise differentiating the nationality or place of residence of a party or witness.  For clarity, this will not prevent testimony regarding a witness's location of residence or business, for example to explain where a meeting occurred.

Agreed MIL #9: No argument or evidence regarding the use of jury studies, jury consultants, focus group studies, mock trial teams, or shadow juries.

Agreed MIL #10: No mention of any expert witness's "win/loss" record, retention of any expert by a party or its counsel in other matters, how often juries agreed with any expert in other matters, or any expert's work or payment by a party or its counsel in other matters.

Agreed MIL #11: No argument or evidence stating or suggesting that Immersion is litigious, is in the business of filing lawsuits, and/or engages in aggressive or abusive litigation.

Agreed MIL #12: No argument or evidence regarding claims or prior art that were previously asserted in this case, but which have been dropped in conjunction with the Court's narrowing procedures or the parties' agreements to narrow the case.

Agreed MIL #13: Exclude argument or evidence regarding whether or not Samsung obtained legal advice (including without limitation formal opinions of counsel) regarding whether or not the accused products practice Immersion's patents.

Agreed MIL #14: No excessively glorifying or criticizing the performance, reliability, or credibility of the USPTO or the examiners that work at the USPTO. This shall not limit making mere factual representations consistent with the video provided by the Federal Judicial Center entitled, "The Patent Process: An Overview for Jurors."

## II.   Defendants Samsung's Opposed Motions *in Limine* (Dkt. No. 151)

Samsung MIL #1: Preclude Immersion's fact witnesses from providing testimony regarding patent infringement, invalidity, or the scope of the claims. However, this would not preclude the inventors of the asserted patents from testifying about their inventions to the extent such testimony is based on their personal experience.

This motion *in limine* is **DENIED**. (Dkt. No. 185 at 103:2–3.) The Court will enforce the existing Federal Rules of Evidence at trial. Pursuant to those rules, fact witnesses are precluded from offering expert testimony. (*Id.* at 103:4–25.)

Samsung MIL #2: Preclude Immersion from presenting fact testimony regarding the relative value of the patents-in-suit as compared to other patents in Immersion's portfolio.

This motion *in limine* is **DENIED**. (Dkt. No. 185 at 113:9–11.)

Samsung MIL #3: Preclude Immersion from presenting evidence or testimony regarding certain portfolio licenses with third parties where there is no reliable testimony on comparability to the license from the hypothetical negotiation, including licenses to LG, Motorola, Kyocera, Fujitsu, Emblaze, and Sony.

This motion *in limine* was **WITHDRAWN**. (Dkt. No. 185 at 113:13–14.)

Samsung MIL #4: Preclude Immersion's experts from offering a new infringement theory regarding user touch input regions that was not disclosed in their reports.

This motion *in limine* was **WITHDRAWN**.  (Dkt. No. 185 at 113:13–14.)

Samsung MIL #5: Preclude Dr. Balakrishnan and Immersion from providing testimony or evidence of secondary considerations of non-obviousness based on Immersion's products or any device that incorporates Immersion's products.

This motion *in limine* is **DENIED**.  (Dkt. No. 185 at 115:16–18.)

Samsung MIL #6: Preclude the parties from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding (1) the identity or (2) the presence or absence from the courtroom of any party's corporate representatives, employees, or officers.  This would not include introduction to the jury of each party by such party's counsel during opening statements or any witnesses who would need to be called by video deposition (the presenting party would need to call such a video witness by name, thereby inferring that witness's absence from the courtroom).

This motion *in limine* is **GRANTED-IN-PART** and **DENIED-IN-PART**.  (Dkt. No. 185 at 119:8–121:21.) The motion is **DENIED** with respect to references made regarding the identity of a party's corporate representatives, employees, or officers.  (*Id.* at 119:9–14.)  The motion is **GRANTED** with respect to references made regarding the presence or absence from the courtroom of any party's corporate representatives, employees, or officers.  (*Id.* at 119:15–120:9.)  The Court explained that, as with all motions *in limine*, the Parties may approach the bench and seek leave from the Court if they wish to elicit testimony, introduce evidence, or otherwise engage in conduct that would potentially violate this motion *in limine* order.  (*Id.* at 120:10–121:21.)

6

Samsung MIL #7: Preclude Immersion from designating the deposition testimony of its own corporate designees where Immersion has not shown those employees to be unavailable.

This motion *in limine* was **WITHDRAWN**.  (Dkt. No. 185 at 121:22–24.)

### III.    Plaintiff Immersion's Opposed Motions *in Limine* (Dkt. No. 152)

Immersion MIL #1: Preclude argument and evidence regarding ongoing IPR proceedings, including the following, which to date are not instituted and none have reached a final decision: IPR2018-01467, IPR2018-01468, IPR2018-01469, IPR2018-01470, IPR2018-01499, IPR2018-01500, IPR2018-01501, and IPR2018-01502.

This motion *in limine* is **GRANTED-AS-MODIFIED**.  (Dkt. No. 185 at 132:2–136:6.) The Parties are precluded from raising, mentioning, or referencing before the jury the existence, outcome, or result of any parallel proceeding before the Patent Trial and Appeal Board, the Patent and Trademark Office, or other similar post-AIA sanctioned proceeding without seeking prior leave of the Court.  (*Id*. at 132:4–12.)  To the extent there are any documents that emanate from the aforementioned proceedings that a party believes can be used for impeachment, the party must approach the bench and seek leave from the Court before the documents may be presented to the jury.  (*Id*. at 134:12–24.)  Notwithstanding the above, the Court explained that it will instruct the jury that the claim language at the end of some of the issued patents asserted in this case have been subsequently amended.  (*Id*. at 133:10–16.)  With regard to both exhibits and the juror notebooks, the Court ordered the Parties to attach any certificates regarding these amendments to the appropriate patents.  Further, the Parties are to meet-and-confer on how those attached certificates should be reasonably redacted.  (*Id*.)

Immersion MIL #2: Preclude argument or evidence relating to Samsung's patents, especially those that cover haptic feedback.  This includes the following defense exhibits: DTX-

451; DTX-452; DTX-453; DTX-726; DTX-727; DTX-728; DTX-729; DTX-730; DTX-731; DTX-732; DTX-733; DTX-734.

This motion *in limine* is **DENIED**.   (Dkt. No. 185 at 141:16–143:21.)   The Court emphasized to the Parties that it is improper to attribute the value of patents-in-suit to the Defendants' own patents and cautioned Defendants to use care in presenting their patents to the jury.  (*Id.* at 142:15–18.)  Any disputes over the specific exhibits referenced in this motion were discussed during the Court's preadmission process for exhibits.  (Dkt. No. 183.)

Immersion MIL #3: Preclude Samsung from presenting evidence or argument relating to a previous arbitration between Immersion and Samsung in ICC Case Nos. 21580/RD and 21742/RD. Accordingly, Samsung should be precluded from presenting at least DTX-089; DTX-195; DTX-777-DTX-780; or any other material relating to these proceedings.

This motion *in limine* is **GRANTED**.  (Dkt. No. 185 at 147:15–149:16.)  The Parties are precluded from raising, mentioning, or referencing before the jury any previous or current parallel proceedings between the parties, including but not limited to, the previous arbitration between Immersion and Samsung in ICC Case Nos. 21580/RD and 21742/RD, without first approaching the bench and seeking leave from the Court.  (*Id.* at 147:21–148:2.)  The Court explained that any dispute over a particular proposed exhibit is to be resolved during the Court's preadmission process for exhibits.  (*Id.* at 149:8–11.)

Immersion MIL #4: Preclude Samsung from presenting evidence and argument regarding the lawsuit between Samsung and Tactile Feedback Technology LLC ("TFT") and the resulting settlement agreement.  Accordingly, Samsung should be precluded from presenting at least DTX-080; DTX-197-DTX-199; DTX-204; DTX-266; DTX-397; DTX-434; DTX-438; DTX-772; DTX-794; and other material related to TFT.

This motion *in limine* is **GRANTED**.  (Dkt. No. 185 at 150:8–11.)  The Parties are precluded from raising, mentioning, or referencing before the jury any previous or current parallel proceedings between the parties, including but not limited to, the lawsuit between Samsung and Tactile Feedback Technology LLC, without first approaching the bench and seeking leave from the Court.  (*Id.*) The Court explained that any dispute over a particular proposed exhibit is to be resolved during the Court's preadmission process for exhibits.  (*Id.*)  The Court understands that certain experts in this case cite to, discuss, and/or rely upon the settlement agreement that resulted from the lawsuit between Samsung and TFT.  Such experts may rely upon those materials at trial so long as the expert's testimony is confined within the scope of his or her report.

Immersion MIL #5: Preclude Samsung from presenting argument or evidence comparing the accused products to preferred embodiments of the patents-in-suit.

This motion *in limine* is **GRANTED-BY-AGREEMENT OF THE PARTIES**. (Dkt. No. 185 at 150:12–14.)

Immersion MIL #6: Preclude Samsung from introducing evidence or testimony comparing the accused products to the prior art.

This motion *in limine* is **GRANTED-BY-AGREEMENT OF THE PARTIES**. (Dkt. No. 185 at 150:12–14.)

Immersion MIL #7: Preclude Samsung from publishing, introducing into evidence, or substantively discussing any uncharted prior art reference before the jury.  This would include the uncharted patent that is the subject of Immersion's Motion to Strike at Dkt. No. 111.

This motion *in limine* is **DENIED**.  (Dkt. No. 185 at 154:1–3.)

Immersion MIL #8: Preclude Samsung from introducing non-infringement evidence and argument based on facts not included in Samsung's response to non-infringement contention interrogatory No. 6.

This motion *in limine* was **WITHDRAWN**.  (Dkt. No. 185 at 154:4–5.)

Immersion MIL #9: Preclude Samsung from presenting evidence or argument suggesting that an award of damages may drive up the price of products to end customers, cause people to lose jobs, and or have other similar economic consequences.

This motion *in limine* is **DENIED**.  (Dkt. No. 185 at 162:2–4.)  However, this does not allow or invite a typical royalty stacking argument, which would be improper.

**So ORDERED and SIGNED this 2nd day of May, 2019.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

10

# EXHIBIT F

# NEC's MIL No. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IPA TECHNOLOGIES, INC.,                    :
                                           :
                   Plaintiff,              :
                                           :
         v.                                :          Civil Action No. 18-1-RGA
                                           :
MICROSOFT CORPORATION,                     :
                                           :
                   Defendant.              :


**ORDER AFTER PRETRIAL CONFERENCE**

Now, this 26th day of April, 2024, after a pretrial conference, and upon consideration of

the proposed pretrial order (D.I. 313) and the discussion at the pretrial conference held this day,

IT IS HEREBY ORDERED that:

1.  The Proposed Pretrial Order (D.I. 313) is **ADOPTED** as modified by any discussion

at the pretrial conference.  The parties were directed to file an updated version of the Pretrial

Order by the COB April 30, 2024, which the Court will then so order.

2.  A jury trial will begin on May 6, 2023, at 9:30 a.m. **The Court will meet with the**

**attorneys at 8:30 a.m. on May 6th to discuss any evidentiary objections or other trial-**

**related issues.**  On each day of trial, each party should be prepared to present its case from 9:30

a.m. to 5:00 p.m., although the end of the trial day may, in the discretion of the Court, be earlier

than 5:00 p.m.

3.  The trial is timed.  Each side is allowed **eleven (11) hours** for its opening statement

and its direct and cross-examination of witnesses.  Time during the trial day that does not neatly

fit into one of those categories will be attributed to one side or the other as the Court thinks most

appropriate.  The amount of time allowed for closing argument will be decided during trial.

4. Trial counsel are to be present and ready to proceed at 9:00 a.m. on May 7th and on each and every day thereafter of trial. **COUNSEL SHOULD UNDERSTAND THAT THERE MAY BE LONG LINES (PARTICULARLY ON May 6th) TO ENTER THE COURTHOUSE AND SHOULD PLAN ACCORDINGLY.** There will be up to about 45 minutes for lunch and a fifteen-minute break in both the morning and the afternoon. The Court does not generally want to use the lunch and break time to take up issues that need to be addressed outside the presence of the jury.

5. The Court anticipates that closing arguments will be Friday morning, May 10th.

6. Defendant states it would file a partial motion to reconsider today, and Plaintiff was directed to respond to it by the COB next Tuesday, April 30th.

7. The Court ruled on five of the six pending motions in limine. In brief, Plaintiff's first motion (D.I. 318) was DISMISSED as moot. Plaintiff's second motion (D.I. 320), regarding comment on missing witnesses, was GRANTED. Plaintiff's third motion (D.I. 322), which relied upon Fed. R. Evid. 403, was POSTPONED. There is to be no reference to Cortana's discontinuance pending further order of the Court. Defendant may renew its motion before Plaintiff's damages experts testify or if Defendant thinks Plaintiff has "opened the door." Defendant's first motion (D.I. 324), relating to the Martin paper, was DENIED. Defendant's third motion (D.I. 328), relating to the factual basis for the hypothetical negotiation date, was DENIED. Defendant's second motion (D.I. 326), relating to Siri, was taken under advisement.

8. Any trial logistics should be coordinated through the Courtroom Deputy.

/s/ Richard G. Andrews
_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-987-CJB |
| | ) | |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| PELOTON INTERACTIVE, INC., | ) | **ATTORNEYS' EYES ONLY** |
| | ) | |
| Defendant. | ) | |

**PELOTON'S OPPOSITION TO NEC'S MOTION *IN LIMINE* #1**

**(TO PRECLUDE REFERENCE TO THE PRESENCE OR ABSENCE
OF AN NEC CORPORATE REPRESENTATIVE, MR. KATSUBE)**

**Exhibit 13 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #1**

NEC's Motion seeks to preclude Peloton from making a routine and highly probative point at trial: NEC chose not to present its own designated corporate representative on licensing, a topic central to its damages theory. The Motion should be denied for three independent reasons.

*First*, Mr. Katsube's absence from trial is relevant to the reliability and credibility of NEC's licensing-based damages case, including as to the evidentiary sufficiency of NEC's own damages theory. NEC contends that a reasonable royalty rate in this case should be based on the rates established by NEC's purported "licensing program." *See* Ex. A (Vellturo Op.) ¶¶ 99–100, 110 ("I find that NEC's established licensing program—and each of the license agreements based on it— provide significant insight into the outcome of the hypothetical negotiation."). Mr. Katsube was designated as NEC's only corporate representative regarding, among other topics, "NEC's licensing program for NEC's streaming media patent portfolio, including the Asserted Patents . . . and any royalty rate established through NEC's licensing program." Ex. B (Peloton's Amended 30(b)(6) Notice) at Topic No. 37; Ex. C (Katsube) at 37:7–19. However, when questioned at his deposition, Mr. Katsube could not answer basic questions about the program: he did not know how the rates in NEC's program were determined, who was involved in preparing the program's rate card or approving any licenses purportedly covered by the program, and he had never personally been involved with any license negotiations. *See* Ex. C (Katsube) at 39:16–40:17, 44:6–12, 48:7–11, 50:8–11. Thus, even if "[d]eposition testimony is entitled to the same consideration and is to be judged . . . in the same way as if the witness had been present to testify," NEC MIL 1 at 2, at trial, Peloton should be able to point to NEC's decision not to bring its own corporate representative (or any other knowledgeable witness) to avoid answering questions about its purported "licensing" program.[1]

---

[1] Though NEC notes it intends to bring three other employees to trial, NEC MIL 1 at 1 n.1, none (continued…)

1

**Exhibit 13 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #1**

*Second*, contrary to NEC's suggestion, federal courts, including in this District, routinely permit parties to comment on the absence of witnesses at trial, particularly where, as here, the witness is an employee within the party's control. *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 1051 (D. Del. Aug. 22, 2017) (Pretrial Conf. Tr. at 10:20–18:17, 17:8–19 (July 20, 2017)) (Ex. D) ("[A]t this point I'm not granting the relief that AVX is seeking. . . . *I think you can, and I certainly have seen it done many times and I don't think improperly, comment on witnesses that were not brought here [to trial]*.") (emphasis added); *see also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 3536797, at *1 (N.D. Cal. Aug. 13, 2012) ("The Court has not found . . . any case law supporting Samsung's requested blanket prohibition on testimony or attorney comment regarding either party's failure to call particular witnesses. To the contrary, . . . counsel may comment to the jury on the failure to call a witness.") (citation modified); *Dillon v. City of Chicago*, 2012 U.S. Dist. LEXIS 46150, at *1 (N.D. Ill. Apr. 2, 2012) (denying motion to preclude evidence or argument about defendants' uncalled witnesses and permitting plaintiff to comment on their absence). Likewise, the Federal Circuit has recognized that "the drawing of an adverse inference based on failure to call a witness is discretionary with the trial court." *White Buffalo Constr., Inc. v. United States*, 546 F. App'x 952, 956 (Fed. Cir. 2013); *see also Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1362–63 (Fed. Cir. 2010) ("[I]f [a] party chooses to not call [witnesses within its control to produce], the fact finder may draw the inference that the testimony would be unfavorable.").

*Third*, NEC's alleged support does not suggest otherwise and is readily distinguishable. Indeed, in each of the District of Delaware cases NEC cites, the absent witness was not within a party's control, which as just described is not the case here. *See Allscripts Healthcare, LLC v.*

---

of those witnesses were designated to represent NEC regarding licensing. Nor would that provide a basis to preclude Peloton from pointing out the decision not to bring Mr. Katsube.

2

**Exhibit 13 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #1**

*Andor Health, LLC*, No. 21-704-MAK, D.I. 606 at 11–12 (D. Del. June 20, 2022) (Resp. Br. Opposing MIL) (Ex. E) (explaining unavailability of party's former employee who resigned before he could be deposed and "subsequently refused to become involved"); *Arendi S.A.R.L. v. Google LLC*, C.A. No. 13-919-JLH, D.I. 502 (D. Del. Apr. 28, 2023) (Pretrial Conf. Tr. at 57:6–59:12 (April 6, 2023)) (Ex. F) (discussing availability of third-party witness and deferring decision until trial based on "whether or not the other side had control of that person and whether you could have subpoenaed them"); *IPA Techs. Inc. v. Microsoft Corp.*, C.A. No. 18-1-RGA, D.I. 320 at 2 (D. Del. Apr. 22, 2024) (Op. Br. in Support of MIL) (Ex. G) ("[N]o party ha[d] more or less control in presenting [the absent inventors'] testimony at trial").[2] In contrast to the cases NEC cites, Mr. Katsube is an NEC employee and within NEC's control, but outside the subpoena power of this Court. He is the Director of NEC's Patent Division and NEC's chosen corporate representative regarding licensing.

Here, pointing out the conspicuous absence of NEC's corporate witness on licensing is neither unfair nor prejudicial—it is probative of the deficiencies in NEC's own damages case. References to such absences are routinely made at trial. For these reasons, NEC's Motion should be denied.

---

[2] NEC's out-of-district cases are also inapposite. They involved non-testifying corporate representatives—not 30(b)(6) witnesses—whose relevance had not been clearly articulated. *See Ray v. Ford Motor Co.*, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Procs.*, 2017 WL 5029601, at *3 (N.D. Ill. Nov. 3, 2017). And *Torkie-Tork v. Wyeth* would *permit* reference to a corporate representative's absence if "absent for the entirety of the trial," as Mr. Katsube would be here. 2010 WL 11431846, at *2 (E.D. Va. Nov. 17, 2010). Otherwise, NEC's cases acknowledge that preclusion depends on whether a witness has probative testimony and is within a party's control—both of which are true here. *See DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *13 (E.D. Tex. Feb. 26, 2010); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, D.I. 377 at 6 (E.D. Tex. Nov. 29, 2017) (NEC MIL 1, Ex. B).

**Exhibit 13 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #1**

Dated: July 1, 2026

OF COUNSEL:                                              Respectfully submitted,

COVINGTON & BURLING LLP                                 MORRIS, NICHOLS, ARSHT & TUNNELL
                                                        LLP

Robert Haslam (*pro hac vice*)
3000 El Camino Real                                     /s/    *Michael J. Flynn*
5 Palo Alto Square 10th Floor
Palo Alto, CA 94306-2112                                Karen Jacobs (#2881)
(650) 632-4700                                          Michael J. Flynn (#5333)
rhaslam@cov.com                                         Cameron P. Clark (#6647)
                                                        1201 North Market Street
                                                        P.O. Box 1347
Philip Irwin (*pro hac vice*)                           Wilmington, DE 19899
30 Hudson Yards                                         (302) 658-9200
New York, NY 10001-2170                                 kjacobs@morrisnichols.com
(212) 841-1000                                          mflynn@morrisnichols.com
pirwin@cov.com                                          cclark@morrisnichols.com

Richard Rainey (*pro hac vice*)
Emily Mondry (*pro hac vice*)                           *Attorneys for Defendant*
One City Center                                         *Peloton Interactive, Inc.*
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
rrainey@cov.com
emondry@cov.com

4

# EXHIBIT A

# REDACTED IN ITS ENTIRETY

# EXHIBIT B

# REDACTED IN ITS ENTIRETY

# EXHIBIT C

# REDACTED IN ITS ENTIRETY

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

GREATBATCH LTD.,

                                    :        CIVIL ACTION
          Plaintiff,                :
                                    :
          v.                        :
                                    :
AVX CORPORATION, and                :
AVX FILTER CORPORATION,             :
                                    :        NO. 13-723-LPS
          Defendants.
                                - - -

                      Wilmington, Delaware
                      Thursday, July 20, 2017
                      *Pretrial Conference*

                              - - -

BEFORE:           HONORABLE LEONARD P. STARK, Chief Judge

APPEARANCES:                  - - -


          FARNAN, LLP
          BY:  BRIAN E. FARNAN, ESQ.

               and

          HARRIS BEACH, PLLC
          BY:  JAMES R. MULDOON, ESQ.
               (Syracuse, New York)

               and

          HARRIS BEACH, PLLC
          BY:  NEAL F. SLIFKIN, ESQ.,
               LAURA W. SMALLEY, ESQ., and
               STEVEN P. NONKES, ESQ.
               (Pittsford, New York)

                    Counsel for Greatbatch Ltd.


                         Brian P. Gaffigan
                         Official Court Reporter

APPEARANCES:   (Continued)


                RICHARDS LAYTON & FINGER, P.A.
                BY:   ROBERT W. WHETZEL, ESQ.,
                      TODD ANTHONY COOMES, ESQ.,
                      JASON JAMES RAWNSLEY, ESQ., and
                      SELENA E. MOLINA, ESQ.

                      and

                NUTTER McCLENNEN & FISH, LLP
                BY:   RONALD E. CAHILL, ESQ.,
                      HEATHER B. REPICKY, ESQ.
                      (Boston, Massachusetts)

                          Counsel for AVX Corporation
                          and AVX Filter Corporation




                            - oOo -

                        P R O C E E D I N G S

                (REPORTER'S NOTE:  The following pretrial

conference was held in open court, beginning at 2:40 p.m.)

                THE COURT:  Good afternoon, everyone.

                (The attorneys respond, "Good afternoon, Your

Honor.")

                THE COURT:  I'll have you put your appearances

on the record for us, please.

MR. FARNAN:  Good afternoon, Your Honor.  Brian Farnan on behalf of the plaintiff.  With me today is Jim Muldoon, Laura Smalley, Neal Slifkin, Steve Nonkes, all from Harris Beach; and also at counsel table is Kristen Ryan who is here today.

THE COURT:  Welcome.  Welcome to all of you.

MR. FARNAN:  Thank you, Your Honor.

THE COURT:  Good afternoon.

MR. WHETZEL:  Good afternoon, Your Honor.  Robert Whetzel for the defendants.  With me today is Heather Repicky, Ron Cahill, Jason Rawnsley, Todd Coomes, and Selena Molina.

THE COURT:  Okay.

MR. WHETZEL:  I think Your Honor met their acquaintance earlier in the case.

THE COURT:  I believe I have.  Welcome to all of you.

So we're here for the pretrial conference as you will have seen we docketed two opinions today.  One earlier today dealt with the motions in limine as well as some other things we saw in the pretrial order.  And one that I had Mr. Looby bring in to you moments ago dealt with the *Daubert* motions.  So I believe that takes care of all of the motion.

My agenda for today is a number of outstanding issues, some of which I flagged in the opinion earlier today,

trial to include the willfulness portion; correct?

MS. REPICKY:  Exactly.  And then we can plan accordingly with some amount of time ahead of time.

THE COURT:  All right.  What is plaintiff's position?

MS. SMALLEY:  Thank you, Your Honor.

Yes, our main concern has been that we didn't want to play deposition designations of people in our case-in-chief who are then called live, but given that AVX has offered to let us know a week ahead of time on the condition that we also let them know a week ahead of time who we're calling live and they're making those witnesses available in our case-in-chief and then on willfulness, that is acceptable to us.

THE COURT:  All right.  It sounds like they have accepted had you proposed; correct, Ms. Repicky?

MS. REPICKY:  Yes.

THE COURT:  All right.  Then we will proceed that way.  That takes care of that issue.

That brings me to the missing witnesses issue, and whether comment may be made on that.  It looks like Mr. Whetzel is going to address that.

MR. WHETZEL:  Yes, Your Honor.  Thank you.

Your Honor, AVX 's position quite simply is at this stage, in the absence of a demonstration that a missing

witness instruction is appropriate and will be given, it's premature and inappropriate for counsel to make arguments, suggestion or implication to the jury about the absence of a witness from trial.

We're a little bit ahead of the curve as to the missing witness instruction as such because we won't know who will have testified, and the Court does not at this point have a record from which it could make the determinations that are required in order to give an adverse witness instruction or a missing witness adverse inference instruction.

We talked about this some at the first trial, although the Court was spared ruling on the issue because the request for the instruction was withdrawn.

As the Court may recall from that colloquy or otherwise, the missing witnesses instructions as such go back to the late 1800s Supreme Court case, and the rule has been very narrowly circumscribed.  There are several essential findings that the Court has to make to give a missing witness instruction or an adverse inference. They're not present here most notably because each of these witnesses have been deposed and in some cases deposed for many, many days.

It creates an issue of jury confusion, potentially misleading and prejudicial to AVX for lengthy deposition transcripts and videos to be played.  And the Court then

goes on to instruct the jury that deposition testimony is to be treated in the same way as live testimony.  And to pile on top of that a missing witness instruction we think is inappropriate under established case law.

More to the point of today's discussion, unless and until the Court reaches the determination that a missing witness instruction is appropriate, we believe there is no proper purpose for intimating and insinuating, suggesting that there is a potential for adverse testimony or the witness's testimony would be adverse just because they're not present in the courtroom.

The cases in this area caution the District Courts against turning the absence of evidence into substantive evidence.  We think at least at this stage of the case, that is what allowing this kind of argument or allowing this suggestion would do.

THE COURT:  So for a particular witness, if nobody calls them live and nobody plays a deposition for them, do you have a concern about somebody making reference in that situation?

MS. REPICKY:  I think it depends on ticking through the factors, Your Honor.  The witness isn't missing if there is a deposition transcript that is available to both sides and either side can make an effort.

THE COURT:  So let's start it this way.  A

witness who we all know about, not brought here live, not brought here by deposition and, in fact, never was deposed. Is there any concern about -- and I take your point this is premature. I don't know if any of this is going to happen.

MR. WHETZEL: Understood.

THE COURT: Do you have a concern about someone making a reference to that person?

MR. WHETZEL: There is a concern there, Your Honor, because the standard that is applicable requires the determination that a witness is peculiarly available to one side or the other which will not be satisfied here as to any of the witnesses as to which this might arise. And,

Secondly, the cases suggest that the Court needs to make a determination that the witness's testimony would be adverse, not simply unhelpful or unbalanced, more unhelpful than helpful, but that the witness's testimony would be adverse and the cases do suggest there is something in the nature of a gatekeeper role here. And,

Finally, the parties are struggling with meeting the Court's time limits to try and telescope this presentation to the jury. Understandably, the Court and the jury has limited time and that also I think creates some problems with going down the road with this witness instruction without a parallel instruction to the jury that in fact the parties have limited amount of time and, therefore, the Court and counsel

have to make decisions on what they believe will be most helpful to the jury.

THE COURT:  Well, now we know.  First off, I made certain rulings including with respect to Panlener earlier today and we now have an agreement which is now Court Ordered that you are all going to now disclose at least your live witnesses a week before.

MR. WHETZEL:  Correct.

THE COURT:  Where does that leave you concretely? What would you have me do or not do at this point?

MR. WHETZEL:  At this juncture, we would request the Court to rule that there should be no argument or suggestion or examination of witnesses that would create an inference of unfavorable testimony from a missing witness until such time as the Court makes a determination that the missing witness instruction is appropriate.

THE COURT:  All right.  Thank you very much.

MR. WHETZEL:  Thank you, Your Honor.

THE COURT:  I'll hear from Greatbatch.

MS. SMALLEY:  Hello, Your Honor.

If I understand Mr. Whetzel's argument, he is concentrating on questioning that would implicate the adverse witness rule, not questioning in general about the absence of a witness.

There is a line of cases, including the *Apple*

case and the *Dylan* case where you are allowed to say, you know, is Mr. Panlener -- you know, not to say we would bring him up, but is Mr. Panlener still employed by AVX? The person can answer yes or no. And we're allowed to comment on the absence of the witness.

I think that to go further and then imply or not even imply but say that the witness's testimony would be adverse is the testimony that would require the Court to determine that the adverse witness instruction is warranted.

I think in general, comments on whether a witness is or is not here or is or is not still employed by AVX is permissible under the cases that we cited in Exhibit 14 to the proposed Joint Pretrial Order.

THE COURT: So do you object or oppose the relief as Mr. Whetzel just characterized it?

MS. SMALLEY: I think at this point it's premature because we don't know what witnesses they are or are not, or AVX is or is not bringing. And I think it should be addressed perhaps at the initial charging conference when we know what witnesses they're bringing.

I mean I do disagree with his assertion that an adverse witness charge or comment would not be warranted if, for example, they were not to bring Rigoberto Rios. He is still employed by AVX. He is easily accessible to them. And I do think his testimony is detrimental to them, but at

this point, I don't know whether he is intending to bring Mr. Rios or not, or AVX is.

THE COURT:  On the point about being the time to trial, does Greatbatch have any objection to the jury hearing right from the beginning this is a timed trial and maybe a sentence of explanation:  Therefore, the parties have had to make decisions about what evidence to present in a limited amount of time?

MS. SMALLEY:  I guess not in principle, but the issue is I guess it would depend on the importance of the witness.  Then we should be free to argue, for example, that Mr. Rios is the principal engineer for the products at issue, and he is not here.

THE COURT:  All right.  Thank you.  Do you want to come back?

Sorry.  Not Ms. Smalley.  You probably will have another chance, but ...

MR. WHETZEL:  Just on a single point, Your Honor.

I heard the argument that it would be appropriate to comment on the absence of a witness.  We have no principle objection to questions to witnesses as to whether Dr. X or Mr. Y are employed or not employed by AVX at this point in time if it stops there.  But to go further and to make an affirmative comment on the significance of that or the

inferences that the jury ought to draw does strike us as premature and inappropriate. And it simply is too fine a line to say, ladies and gentlemen of the jury, "you will notice that Mr. So-and-so hasn't been called" because that implies the very adverse inference that the more circumscribed law surrounding the Court giving instructions intended to address.

That's all.

THE COURT: All right. Well, at this point I'm not granting the relief that AVX is seeking. I think the last argument Mr. Whetzel just made, I don't agree with that. That is a too broad of a proposition. I think you can, and I certainly have seen it done many times and I don't think improperly, comment on witnesses that were not brought here. And you can, oftentimes the response is, well, it's a timed trial. And I do try to let the jury know that these cases are timed. I don't usually give much explanation about that, but parties are free to argue a reasonable inference such as we couldn't bring the one we wanted to.

I appreciate you flagged the issue. I know there was some concern about what happened at the last trial. We're going to have time to deal with this including, if need be, the morning of jury selection as you have all refined your cases more so and you know who the live witnesses are.

At the moment, I don't think it is something I'm

going to need to instruct the jury on preliminarily other than telling them it is a timed trial, but what I'm saying now is not meant to prejudice either side from saying you need to do more affirmatively now or at least put the other side on notice now that they shouldn't do this.  Right now I'm not persuaded that I need to do that but you can always try again. All right?

All right.  Let's move on.  There was an issue about providing jurors individual copies of certain images or exhibits.

I take it this is opposed, is that right?  And, if so, come help me understand why.

MR. RAWNSLEY:  That's correct, Your Honor.  AVX does oppose that request.  We have three reasons.

One, we don't see that typically done.

Second, it raises the importance of certain evidence in that it is being handed out to the jury and it may lead them to make unwarranted inferences as to the value they should accord that evidence as to other evidence for which they weren't handed individual copies.  And,

Third is simply if the jury is handed books and they're handed images themselves, they will in all likelihood be flipping through that and looking at those images themselves and not following the presentation.

And for those three reasons, we think that is

we're together as far as Greatbatch is concerned?

MR. MULDOON:  Nothing, Your Honor.

THE COURT:  Okay.  How about AVX?

MS. REPICKY:  Nothing, Your Honor.

THE COURT:  All right.  Thank you all very much.
We will be in recess.

(Pretrial conference ends at 3:22 p.m.)


I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.


                         /s/ Brian P. Gaffigan
                         Official Court Reporter
                         U.S. District Court

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Allscripts Healthcare, LLC, a North Carolina LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Andor Health, LLC, a Delaware Corporation, et al., | ) ) ) | |
| Defendants. | ) ) | C.A. No. 1:21-cv-00704-MAK |
| Andor Health, LLC, et al, | ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| Allscripts Healthcare, LLC, et al., | ) ) ) | |
| Counterclaim Defendants. | ) ) ) | |

**RESPONSE TO DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE UNDER RULES 401, 402 AND 403**

**BARNES & THORNBURG LLP**

Chad S.C. Stover (No. 4919)
William J. Burton (No. 6243)
1000 North West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3434
Fax: (302) 300-3456

Mark L. Durbin (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel: (404) 264-4046

Heather B. Repicky (admitted *pro hac vice*)
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5317

*Attorneys for Plaintiffs/Counter-Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

I.  Defendants' Prior Wrongful Conduct is Directly Related to Allscripts' Affirmative Claims and Defendants' Earn-Out Claim, and Such Evidence is Clearly Admissible. ....... 1

    A.  Defendants' Prior Wrongful Conduct is Relevant to Allscripts' Affirmative Claims........................................................................................................................ 3

    B.  Defendants' Prior Wrongful Conduct Goes Directly to Defending Against Their Earn-Out Claim ....................................................................................................... 5

II.  Evidence that Defendants Fabricated Documents is Admissible ......................................... 8

III.  Evidence Subject to Prior Discovery Motions ................................................................... 10

    A.  Evidence Relating to Mahathi's Hard Drives......................................................... 10

    B.  Evidence Relating to Venkat Deepak's Mysterious and Abrupt Departure........... 11

IV.  Evidence that Defendants Leveraged an Indian Reseller .................................................... 13

V.  Evidence that Defendants Used the Indian Criminal Proceeding to Gain a "Collateral Advantage" in the Current Litigation ................................................................................. 14

VI.  Evidential Support For Allscripts' Abuse of Process Claim Should Not be Excluded...... 16

VII.  Evidence of Corruption and Mahathi's Influence of the Vizag Police is Relevant and Admissible and is Essential to Allscripts' Abuse of Process Claim. ................................. 16

CONCLUSION........................................................................................................................... 19

supplemented them based on last-minute documents produced by Defendants showing that Mahathi gave KGN the language to use for the certificate. Whether or not an expert has changed his testimony in light of newly discovered evidence, or "walked back" portions thereof for like reasons, is a matter of credibility, ***not*** admissibility. For the foregoing reasons, this Court should reject Defendants' arguments and permit testimony concerning the fabricated SOW #5 and KGN certificate.

## III. Evidence Subject to Prior Discovery Motions

Next, Defendants argue that "Allscripts may seek to present argument and evidence regarding issues already raised and disposed of through discovery motions," and the Court should exclude such evidence because it is "not relevant to any claim" and "is potentially prejudicial and risks confusion of the issues." (D.I. 576 at 8.) Allscripts disagrees that such evidence is not relevant and admissible, but intends to offer it for reasons other than those identified by Defendants.

### a. Evidence Relating to Mahathi's Hard Drives

The first category of evidence that was subject to a discovery motion is Mr. Maddi's testimony, and related evidence, that 30 to 40 employee computers were reformatted to ensure complete deletion of all source code during the time Mahathi was preparing its criminal complaint accusing Allscripts of stealing its only copy of the source code. Defendants seek exclusion of evidence "that Mahathi destroyed evidence." (D.I. 576 at 9.) But, Allscripts has no intention on arguing the information contained on the laptops was destroyed. It does, however, intend on presenting evidence that these 30 to 40 laptops contained copies of Mahathi's standard user interface ("UI")—which is highly relevant to the claims in this case.

As the Court is aware, Mahathi has maintained throughout this litigation that the only place it stored its supposedly most critical intellectual property, its standard UI code, was within one of

10

Allscripts' Microsoft Azure subscriptions, and that Allscripts "stole this UI." (D.I. 12 ¶¶ 198-199, 201, 206, 210, 315; D.I. 277 Ans. ¶302, Counterclaim ¶¶ 186, 189, 199, 234-235.) Mahathi contends that it had no copies of that code on any local computers, including computers used to work on source code for Allscripts' MPE applications that was stored in Allscripts' Microsoft Azure subscriptions. (D.I. 277 ¶¶ 190, 199, 224, 229, 234-235.) In fact, Mahathi filed a criminal complaint in India against certain of the individual counterclaim defendants, other Allscripts' employees, and third parties affiliated with Allscripts with no relation to this dispute, as well as counterclaims in this litigation, based on these very allegations—that Allscripts stole Mahathi's *only* copy of the UI and that Mahathi did not have a copy of that purportedly proprietary code on any of its local computers. (*Id.*; D.I. 64-3, 64-6.) Allscripts, of course, has always denied these allegations and is pursuing an abuse of process claim against Defendants for, among other things, pursuing a criminal complaint in India based on these false allegations.

As a result, it is self-evident that testimony from Mahathi's Vice President of Engineering that 30-40 Mahathi local computers (*i.e.*, its developer's laptops) may have had a copy of Mahathi's standard UI code on them is critical to defending against Mahathi's claims that Allscripts' stole its only copy. And if that was not enough, this evidence further proves Allscripts' abuse of process claim. It goes to show that the allegations Defendants lodged against Allscripts and its affiliates in India were baseless, suggesting the criminal complaint was lodged for an improper purpose (i.e., to gain leverage against Allscripts in this action). This evidence is highly relevant and Defendants have failed to put forth any justification for why it should be excluded.

### b. Evidence Relating to Venkat Deepak's Mysterious and Abrupt Departure

Defendants' second category of evidence that was the subject of a discovery motion is the unavailability of Venkat Deepak. As detailed in prior papers, Allscripts had all intentions of seeking to depose Mr. Deepak about his involvement in payments Mahathi made for the Vizag

11

police to further a criminal complaint Mahathi filed against Allscripts and its affiliates. Mr. Deepak, unfortunately, resigned from Mahathi before that deposition could take place and subsequently refused to become involved in the instant litigation. There is no question, however, that he possesses highly relevant information. For example, Mr. Deepak set, booked, and paid for the Indian police to travel across India to investigate Mahathi's criminal complaint against Allscripts' employees and corporate cousins, travelled with the Indian police to conduct the raid, and traveled to other parts of India participating with the police in their investigation and criminal proceedings. Reference of Mr. Deepak's unavailability is thus important to explain why someone with so much knowledge and relevant information is not testifying. Absent an explanation, the jury will be left wondering where he is and why none of the parties has presented his testimony. The jury could draw an unfavorable and incorrect inference that Allscripts did not seek out his testimony. Not only would that be extremely prejudicial but explaining his whereabouts would avoid jury confusion.

Testimony regarding Mr. Deepak's involvement in this case is inevitable. Allscripts' Certified Fraud Examiner, Mark Jenkins, will testify regarding the Indian police and Mahathi travel and travel documents, purported evidence of reimbursement, and authentication or badges of fraud associated therewith. (*See* D.I. 555 at 24.) Mr. Jenkins will also rebut the testimony of Defendants' forensic accountant, Ken Mathieu, who will testify about his forensic analysis of payments for travel expenses in the Indian criminal investigation. Part of Mr. Jenkins' criticism of Mr. Mathieu's analysis is his failure to seek out additional, corroborating information from Defendants to support a claim that the Vizag police fully reimbursed Mahathi, or paid, for their travel expenses. Squarely at the center of these criticisms is Mr. Mathieu's failure to interview or

12

even talk with Mr. Deepak.  The jury should not be left wondering why Allscripts similarly failed to interview or talk with Mr. Deepak.

**IV.     Evidence that Defendants Leveraged an Indian Reseller**

Defendants also move to bar Allscripts from arguing that Defendants "leveraged" an Indian reseller in order to restore Mahathi's global administrative access to the Mahathi Tenant on May 20, 2021. (D.I. 576.)  Specifically, Defendants take issue with the word "leverage" or similar terms as it would "imply to the jury that Mahathi used some sort of advantage or influence to regain access to the Mahathi Tenant." (*Id.*)  In their motion, Defendants suggest that such language is prejudicial, however they do not support this aspect of their argument with any legal authority. (*See* D.I. 575; 576.)  To the extent Defendants believe the term "leverage" is prejudicial, they are free to use their own terms to describe the disputed activity.  *See Sec. & Exch. Comm'n v. Todd*, 2006 WL 5201386, at \*6 (S.D. Ca. Oct. 17, 2006) (permitting the term "gap closure" to describe record keeping activity).

Defendants also argue Allscripts "never adduced any evidence that Mahathi 'leveraged' Ingram Micro or that either Mahathi or Ingram Micro did anything wrong in getting global administrative access back to Mahathi." (D.I. 576.)  Not true.  The evidence will show that Ingram Micro first told Mahathi it could not grant Mahathi access, that access would need to be "provided by your IT/admin team or you need to contact Microsoft."  Mahathi then turned to Microsoft to regain global administrative rights.  When Microsoft said it could not do so, Mahathi went back to Ingram Micro and told Ingram Micro, without any proof, that Microsoft said only Ingram Micro could grant global administrative access.  Ingram Micro determined it could give administrative rights, but only asked for confirmation from Mahathi via email of the relevant user name/email that needed rights.  Microsoft itself confirmed that it had no hand in elevating global admin privileges or adding any users back into this tenant and described the method by which Mahathi

13

processes. The jury should hear the totality of the evidence and be empowered to make their own determination of what truly transpired in India and what influenced the investigation. Limiting the evidence presented to the jury simply because Defendants are unable to effectively and efficiently manage their time is improper. The jury should weigh all the facts and reach its own conclusions.

## CONCLUSION

For the foregoing reasons, the Court should deny the relief requested in Defendants' Motion in Limine No. 1 to Exclude Evidence under Federal Rules of Evidence 401, 402, and 403, and grant Allscripts all other just and proper relief.

Dated: June 20, 2022

BARNES & THORNBURG LLP

/s/ *William J. Burton*
Chad S.C. Stover (No. 4919)
William Burton (No. 6243)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
E-mail: chad.stover@btlaw.com
Email: William.burton@btlaw.com

Mark L. Durbin (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Email: mark.durbin@btlaw.com
Email: speloza@btlaw.com
Email: Christine.skoczylas@btlaw.com
Email: megan.krivoshey@btlaw.com

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel:  (404) 264-4046
E-mail:   CBaugh@btlaw.com

Heather B. Repicky (admitted *pro hac vice*)
One Marina Park Drive, Suite 1530
Boston, MA  02210
Phone:  (617) 316-5317
Email:  heather.repicky@btlaw.com

*Attorneys for Plaintiffs*

20

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARENDI S.A.R.L.,,                )
                                 )
          Plaintiff,             )
                                 )  C.A. No. 12-1601-JLH
     v.                          )
                                 )
MOTOROLA MOBILITY LLC            )
(f/k/a MOTOROLA MOBILITY,)
INC.),                           )
                                 )
          Defendant.             )
                                 )
ARENDI S.A.R.L.,                 )
                                 )
          Plaintiff,             )
                                 )  C.A. No. 13-919-JLH
     v.                          )
                                 )
GOOGLE LLC,                      )
                                 )
          Defendant.             )

Thursday, April 6, 2023
3:00 p.m.
Pretrial Conference

844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JENNIFER L. HALL
United States Magistrate Judge

APPEARANCES:

SMITH, KATZENSTEIN & JENKINS LLP

BY: NEAL C. BELGAM, ESQ.

BY: DANIEL TAYLOR, ESQ.

-and-


SUSMAN GODFREY, LLP
BY: JOHN LAHAD, ESQ.
BY: KEMPER DIEHL, ESQ,
BY: MAX STRAUS, ESQ.
BY: SETH ARD, ESQ.
BY: KALPANA SRINIVASAN, ESQ.

                Counsel for the Plaintiff


APPEARANCES CONTINUED:


        POTTER ANDERSON & CORROON
        BY: DAVID ELLIS MOORE, ESQ.

        -and-

        PAUL HASTINGS
        BY: ROBERT W. UNIKEL, ESQ.
        BY: CHAD J. PETERMAN, ESQ.
        BY: MATTHIAS A. KAMBER, ESQ.
        BY: ANDREA ROBERTS, ESQ.
                Counsel for the Defendants


                - - - - - - - - - -


            P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 3:00 p.m.)

THE COURT: Please have a seat. Let's get situated. I have this paper here. They are still building my courtroom, so I rotate around the building to different places.

Good to see everybody. Let's have appearances please.

MR. TAYLOR: Good afternoon, Your Honor. Daniel Taylor, Smith Katzenstein & Jenkins for Arendi. With me are cocounsel from Susman Godfrey, John Lahad, Kemper Diehl, Seth Ard, and Max Straus.

THE COURT: Good afternoon, everyone.

MR. TAYLOR: On the phone we have Kalpana Srinivasan, also from Susman Godfrey, and my colleague Neal Belgam from Smith Katzenstein is here in the back.

THE COURT: Great. Good afternoon, everybody.

MR. MOORE: Good afternoon, Your Honor.

THE COURT: Hi.

MR. MOORE: David Moore from Potter Anderson on behalf of Google. I'm joined by Rob Unikel, Chad Peterman, and also Andrea Roberts is on the phone. They're all from Paul Hastings. We are also joined by

advertising.

THE COURT: Right. That's my understanding --

MR. UNIKEL: Thank you, Your Honor.

THE COURT: -- of what the agreement was. All right.

All right. Defendant's Motion in Limine Number 2. This one I don't need to hear argument on. I appreciate the motion, but this is essentially a motion for summary judgment. So that's going to be denied. It's a motion for summary judgment.

Let's turn to Motion in Limine Number 3 from Google. So this is a motion to preclude Arendi from making any commentary or argument regarding the absence of any witness at trial.

Let me hear from Arendi on this. Is there a witness that you wanted to call that they have control of that they wouldn't bring?

MR. LAHAD: There's a question as whether or not they have control of Mr. Pinkerton.

THE COURT: And so you want to be able -- you want to be able to make an argument that Mr. Pinkerton is not here and where is he? Is that --

MR. LAHAD: Correct.

THE COURT: All right. Why don't you have a seat. Let's hear from --

**MR. STRAUS:** As well, Your Honor, and as many software engineers from Google who do not appear, but Mr. Pinkerton would be the main concern.

**THE COURT:** Okay. All right.

**MR. UNIKEL:** Your Honor, Mr. Pinkerton was not deposed by them. He's on our witness list as somebody who may be available, but he is a third-party witness, and I'm not sure if he's going to be available to be at trial. And, frankly, I'm not sure if we're going to have time to be able to present him at trial depending on what the trial time looks like.

The mere fact that we can't present all of our witnesses live seems to be an impossible thing for us, especially given both time limits and the fact that we have -- there's, like, 25 different products and functionality combinations that are at issue here.

We need to make sure that we have the witnesses who can deal with the most of them come. And I can't bring them all, necessarily. And so they shouldn't be able to cast aspersions or say, well, he would say something negative if he were to be here.

**THE COURT:** Right. Okay. That's fine. All right. Have a seat.

Here's going to be the default. The default is going to be that neither side can reference the presence

or absence of any parties' corporate representative or employee or other witness.

If you have a person that you want to tell the jury: Where are they? Why aren't they here? And you want to make an argument about that and you want to suggest to the jury that their testimony would have been bad, you need to raise it with the Court before you make the argument, and we can talk about whether or not the other side had control of that person and whether you could have subpoenaed them. If they couldn't have subpoenaed them either, I'm not going to let you make that argument.

So that's the default rule. But we've got an escape hatch if somebody wants to raise it at trial. Yes?

MR. STRAUS: Your Honor, with respect to Mr. Pinkerton.

THE COURT: Yes.

MR. STRAUS: Mr. Pinkerton, we don't even know if he's coming to trial. He's on their "may call" list, and we did not have an opportunity to depose him and partly because Google only added him to their disclosures on what was then the final day of fact discovery?

Fact discovery was then extended for some limited purposes by, I think, about a month and a half. I don't have the exact calendar in front of me. But he was

disclosed, I think it was October 28 of 2019, when they served updated initial disclosures.

So if they are going to bring him, we really need to know, so we can just depose him.

**THE COURT:** Yeah. Did you object to that, him being on the witness list in the pretrial order?

**MR. STRAUS:** I don't believe that was specifically raised, Your Honor.

**THE COURT:** All right. Thanks.

Can I hear from the other side on this?

**MR. UNIKEL:** As of right now, I don't believe Mr. Pinkerton is going to be at trial because I think the time limits of trial are going to be such that we just can't get all the witnesses that we need here to testify.

If for some reason that were to change, I certainly will let you and them know. At the time that we put the witness list together, there was still a hope and expectation that we might have time to include him, but I don't believe he's coming to trial as of right now.

**THE COURT:** All right. All right. Thanks very much. So defendant's motion is essentially granted for this one, to the extent stated.

All right. So let's go through the miscellaneous items in the pretrial order. And I'll be asking, based on whatever rulings I made today, that the

MR. MOORE:  Thank you, Your Honor.

MR. LAHAD:  Your Honor, does the Court have a preference as to final jury instructions and how we work with the Court on that?

THE COURT:  Let us get back with you on that once we've had a chance to get our edits.  Were you thinking about, like, how that copies and things like that or were you talking about just the charge conference?

MR. LAHAD:  Correct.  The overall process, charge conference, if there's any back-and-forth we need to have between ourselves and the Court.

THE COURT:  Let's see where we're at when we get closer.

MR. LAHAD:  Thank you.

THE COURT:  Anything else?

All right.  Fantastic.  It's great to see everyone.  We look forward to seeing you soon.

(The proceedings concluded at 4:51 p.m.)

CERTIFICATE OF COURT REPORTER


     I hereby certify that the foregoing is a true and
accurate transcript from my stenographic notes in the
proceeding.

                              /s/ Bonnie R. Archer
                              Bonnie R. Archer
                              Official Court Reporter
                               U.S. District Court

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

IPA TECHNOLOGIES INC.,

                Plaintiff,

v.

MICROSOFT CORPORATION,

                Defendant.

C. A. No. 1:18-cv-00001-RGA-SRF

**IPA MOTION *IN LIMINE* #2:
EXCLUDE TESTIMONY, ARGUMENT, OR COMMENTARY REGARDING MISSING
WITNESSES OR WITNESSES NOT APPEARING IN PERSON**

Pursuant to Fed. R. Evid. 403, IPA respectfully moves to preclude Microsoft from introducing testimony, argument, or commentary regarding any missing witnesses or witnesses not appearing in person at trial. Specifically, IPA believes Microsoft intends to comment on the absence of the inventors of the Asserted Patents if either or both do not testify live at trial. As an initial matter, even assuming Microsoft could meet the stringent test to allow use of the missing witness rule (which it cannot, as described below), the Court should not allow it on FRE 401/403 grounds.

First, commentary on missing witnesses would not be relevant to any claim or defense in this case. Inventor testimony would only be arguably relevant to Microsoft's validity defense. But a validity determination requires the jury to compare the prior art to the asserted claims and, as the Federal Circuit has explained, "an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application." *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008). Accordingly, inventor testimony itself has limited relevance in this case and commenting on the availability of the inventors would not make any claim or defense—including validity—more or less likely.

Second, in civil cases, federal courts have widely denounced the archaic "missing witness" or "uncalled witness" rule, which creates a presumption that the witness' testimony, if produced, would be unfavorable. *Compare Graves v. U.S.*, 150 U.S. 118 (1893) with *Herbert v. Wal-Mart Stores, inc.*, 911 F.2d 1044, 1048 (1990) ("In short, there is no justification for perpetuating the uncalled-witness rule in civil cases."); *Allstate Ins. Co. v. Shuler*, 53 F.3d 331, (6th Cir. 1995) ("We agree with the Fifth Circuit that the 'missing witness' or 'uncalled witness' rule is inapplicable in federal court.").

1

Importantly, the underpinning of the missing witness rule, to discover potentially adverse information on the party refusing to call the witness, is not triggered where the party seeking the inference has already had an opportunity, through deposition, to discover any information and play it at trial through video deposition. *See Herbert*, 911 F.2d at 1048. For example, in this case, neither of the inventors of the Asserted Patents are "missing" witnesses—Microsoft has access to the deposition transcripts of Adam Cheyer and David Martin from both the Amazon litigation and the PTAB proceedings. Microsoft also re-deposed Mr. Cheyer in this case and had the opportunity to re-depose Mr. Martin during discovery. And Microsoft has designated a significant amount of deposition testimony from both inventors. As a result, no party has more or less control in presenting their testimony at trial. *See id.* at 1049 (ruling generally that no negative inferences could be drawn by the absence of a witness and counsel could not argue to the jury that such an inference is permissible); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 701 (S.D.N.Y. 2014) ("An adverse inference is not warranted, for example, where the controlling or related party makes the missing witness available to its opponent, the party seeking the adverse inference equally could obtain the missing witness's testimony, or the party seeking the adverse inference made no attempt to obtain the witness's testimony."). Microsoft also would not be prejudiced by the absence of either or both inventors at trial. *See Bayer AG v. Sony Electornics, Inc.*, 229 F. Supp. 2d 332, 368 (D. Del. 2002) ("the Sony Defendants have not identified any testimony that only these witnesses could have provided and have not established to the Court's satisfaction that the absence of these witnesses prejudiced their defense.").

IPA would be unduly prejudiced if the Court allows Microsoft to comment on witnesses not appearing live at trial. For example, should Microsoft offer deposition testimony from either inventor at trial, and then comment to the jury about the fact that the inventor is not appearing

2

live, the jury could become confused by this inconsistency and/or infer that the inventor's live testimony would be harmful to IPA. Such commentary would also violate the standard jury instruction often given in this Court: "[Deposition] testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify at trial." *See, e.g., Alarm.com v. SecureNet Technologies LLC*, No. 1:15-00807-RGA, D.I. 251, Preliminary Jury Instructions, at No. 6 (D. Del. Jan. 28, 2019); *In re Chanbond*, No. 15-842-RGA, D.I. 502, Proposed Preliminary Jury Instructions, at 6 (D. Del Apr. 19, 2021). In addition, if either inventor does not appear live at trial, Microsoft's commentary on this fact could encourage the jury to infer that IPA did not subpoena the inventor for fear of adverse testimony. *See Jackson v. Rotach*, No. Civ.A. 99C-01-001, 2000 WL 1211516, at *9 (Del. Super. June 8, 2000) ("While a party, for economic or strategic reasons, may decide not to subpoena a witness, litigation is not risk free. There is no reason to infer that testimony of [a non-employee] would be adverse to Rotach.").

As such, the Court should preclude Microsoft from making any statements regarding the availability of any witness or the lack of live testimony of any witness at trial.

3

Dated: April 10, 2024

*Of Counsel*:

Paul J. Skiermont
Jaime K. Olin
Steven W. Hartsell
Kevin P. Potere
Todd A. Martin
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
(214) 978-6600
pskiermont@skiermontderby.com
jolin@skiermontderby.com
shartsell@skiermontderby.com
kpotere@skiermontderby.com
tmartin@skiermontderby.com

Mieke K. Malmberg
SKIERMONT DERBY LLP
633 West 5th Street, Suite 5800
Los Angeles, CA 90071
(213) 788-4500
mmalmberg@skiermontderby.com

Respectfully submitted,

**BAYARD, P.A.**

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff,*
*IPA Technologies Inc.*

4

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IPA TECHNOLOGIES INC.,

      Plaintiff,

      v.

MICROSOFT CORPORATION,

      Defendant.

C.A. No. 18-01 (RGA) (SRF)

**MICROSOFT CORPORATION'S RESPONSE
TO IPA'S MOTION *IN LIMINE* NO. 2 RE MISSING WITNESSES**

IPA's motion seeks to improperly preclude Microsoft from introducing testimony, argument, or commentary regarding any missing witnesses or witnesses not appearing in person at trial. Because IPA's motion misstates the applicable legal standard and incorrectly characterizes the relevance and Microsoft's use of such commentary, IPA's motion should be denied.

IPA argues that commentary on missing witnesses would not be relevant to any claim or defense in this case, IPA MIL 2 at 1, but commentary on the absence of the named inventors would be relevant to issues in this proceeding, such as the importance of the invention claimed in the patents. The jury should be able to consider the fact that the inventors chose not to defend their work in person and draw the inference that it was not important enough for them to do so.

Furthermore, the testimony of the named inventors, Adam Cheyer and David Martin, is relevant to the prior art status of the Martin reference, which is contested in these proceedings. *See e.g.*, D.I. 238, Ex. O (Sycara Opening Report) at ¶¶ 102-105 (arguing Martin is prior art); ¶¶ 603-608 (arguing Asserted Claims are invalid for failure to name a contributing inventor for the Asserted Patents). The issue is whether non-inventor Douglas Moran contributed to key portions of that paper, which he co-authored with Messrs. Cheyer and Martin. *See id.* Microsoft should be able to argue that the jury can consider the failure of the inventors to appear and address that issue.

Next, although IPA claims that federal courts have widely denounced the "missing witness" or "uncalled witness" rule, the Third Circuit has more recently held that asking or permitting the jury to draw an adverse inference for failing to call a witness to trial is permissible even when the parties had equal access to the witness. *United States* v. *Ugwu*, 539 F. App'x 35, at *7 (3d Cir. 2013)("Asking or permitting the jury to draw the conclusion that, had an available

1

4883-7374-8407v.3

but uncalled witness been called by the defense, his testimony would have been harmful, is permissible[.]") The Federal Circuit and other circuit courts have recently held that "the drawing of an adverse inference based on failure to call a witness is discretionary with the trial court," even where a party had the opportunity depose a witness who did not appear at trial and/or had the ability to produce such a witness.[1] *White Buffalo Constr., Inc.* v. *United States*, 546 F. App'x 952 at *5 (Fed. Cir. 2013) ("[T]he drawing of an adverse inference based on failure to call a witness is discretionary with the trial court.")(citing *Plus, Inc. v. Cingular Wireless Corp.,* 614 F.3d 1354, 1362-63 (Fed. Cir. 2010) and *Bo-gosian v. Woloohojian Realty Corp.,* 323 F.3d 55, 67 (1st Cir. 2003)). And the Fifth Circuit precedent cited by IPA, *Herbert*, did not overrule the cases relying on the missing witness rule. *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1049 (5th Cir. 1990) ("we do not undertake to overrule the cases that rely on the [missing witness] rule"). Thus, Microsoft should be permitted to comment on the absence of witnesses.

IPA's motion further states that the missing witness rule is "not triggered where the party seeking the inference has already had an opportunity, through deposition, to discover any information." IPA MIL No. 2 at 2. But, as stated above, use of the missing witness rule is permissible whether or not a party had an opportunity to depose the missing witnesses.[2]

---

[1] IPA has a written agreement with at least one named inventor who is unlikely to appear at trial, Mr. Adam Cheyer. Ex. A (Excerpt of Cheyer Microsoft Dep. Tr.) at 11:18-21 ("Q: Do you have a written agreement with either IPA or its lawyers obligating them to pay you for your time?" "A: Yes"). Such an agreement presumably suggests that IPA has the ability to bring Mr. Cheyer to trial, if necessary.

[2] IPA also argues that Microsoft would not be prejudiced by the absence of the inventors at trial, IPA MIL No. 2 at 2, citing *Bayer AG v. Sony Electronics, Inc*., 229 F.Supp. 2d 332, 368 (D. Del. 2002). But *Bayer* was a laches case, not a missing witness case, so prejudice was relevant there. It is not here.

2

4883-7374-8407v.3

Finally, IPA argues it would be unduly prejudiced if the Court permits Microsoft to comment on witnesses not appearing because the jury might draw inferences from that fact against IPA.  IPA MIL 2 at 2-3.  But that is the whole point of the rule permitting a party to comment on a missing witness – to permit the jury to weigh that fact and draw inferences accordingly. Prejudice from such inferences is not undue, it is simply the normal result of a jury trial.  *Ugwu*, 539 F. App'x 35 at *7.

4883-7374-8407v.3

Dated:   April 16, 2024

Respectfully submitted,

*Of Counsel:*

Joseph A. Micallef (#3161)
Matthew Mahoney
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000
jmicallef@sidley.com
mmahoney@sidley.com

Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
nlove@sidley.com

Mike Bettinger
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
(415) 772-1200
mbettinger@sidley.com

Richard A. Cederoth
546 N. Euclid Ave.
Oak Park, IL 60302
(312) 925-5728
rick@cederothlaw.com

Scott Border
WINSTON & STRAWN LLP
1901 L St. NW
Washington, DC 20036
(202) 282-5054
sborder@winston.com

*/s/        Rodger D. Smith II*
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com

*Counsel for Defendant Microsoft Corporation*

4

4883-7374-8407v.3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IPA TECHNOLOGIES INC.,

           Plaintiff,

v.

MICROSOFT CORPORATION,

           Defendant.

C. A. No. 1:18-cv-00001-RGA-SRF

## IPA TECHNOLOGIES INC.'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #2: EXCLUDE TESTIMONY, ARGUMENT, OR COMMENTARY REGARDING MISSING WITNESSES OR WITNESSES NOT APPEARING IN PERSON

First, Microsoft claims that inventor testimony may be relevant to certain issues in the case. But *IPA's decision* to bring an inventor to testify at trial is not relevant to those issues. Whether an inventor's absence at trial is based on strategic or logistic considerations, it does not undermine the importance of the invention. And, with respect to the prior art status of the Martin reference, both inventors (along with Dr. Moran) have been deposed at length about this very question. In addition, Microsoft re-deposed Mr. Cheyer in this case and could have re-deposed Mr. Martin. If Microsoft had unanswered questions about the Martin reference that were not addressed in the earlier depositions, Microsoft had ample opportunity to ask.

Second, Microsoft bases its argument about the permissibility of adverse inferences on an unpublished decision in a criminal case. *See U.S. v. Ugwu*, 539 Fed. Appx. 35 (3d Cir. 2013). Courts have cautioned that the missing witness rule has limited, if any, applicability in civil cases. *See, e.g., Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1048 (5th Cir. 1990) ("In short, there is no justification for perpetuating the uncalled-witness rule in civil cases.").

Third, Microsoft argues that whether to allow an adverse inference is discretionary with the district court. Yet all of Microsoft's cited cases involve the Federal Circuit affirming district court decisions **not to** allow an adverse inference. *See White Buffalo Const., Inc. v. U.S.*, 546 Fed. Appx. 952, 956 (Fed. Cir. 2013) (no adverse inference); *see also Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1363 (Fed. Cir. 2010) (same); *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 67-68 (Fed. Cir. 2003) (same).

Finally, Microsoft argues that "prejudice from such inferences is not undue, it is simply the normal result of a jury trial." Opp. at 3 (citing *Ugwu*). But even *Ugwu*, a criminal matter, stands for no such proposition. Whether to apply the missing witness rule in civil cases must still be weighed against the safeguards of Fed. R. Evid. 403.

1

Dated: April 19, 2024

*Of Counsel*:

Paul J. Skiermont
Jaime K. Olin
Steven W. Hartsell
Kevin P. Potere
Todd A. Martin
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
(214) 978-6600
pskiermont@skiermontderby.com
jolin@skiermontderby.com
shartsell@skiermontderby.com
kpotere@skiermontderby.com
tmartin@skiermontderby.com

Mieke K. Malmberg
SKIERMONT DERBY LLP
633 West 5th Street, Suite 5800
Los Angeles, CA 90071
(213) 788-4500
mmalmberg@skiermontderby.com

Respectfully submitted,

**BAYARD, P.A.**

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (No. 4952)
600 North King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff,*
*IPA Technologies Inc.*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-987-CJB |
| PELOTON INTERACTIVE, INC., | ) ) | |
| Defendant. | ) ) ) | |

**NEC'S REPLY IN SUPPORT OF MOTION IN *LIMINE* ("MIL") NO. 1
TO PRECLUDE REFERENCE TO THE PRESENCE OR ABSENCE
OF AN NEC CORPORATE REPRESENTATIVE, MR. KATSUBE**

Peloton's argument that Mr. Katsube is integral to NEC's damages theory is incorrect. NEC's damages expert, Dr. Vellturo, will testify about, and enter into evidence, the NEC licenses at issue, which do not require related NEC witness testimony. JPTO ¶ 70. Thus, Mr. Katsube's presence or absence at trial has no probative value and Peloton concedes that it intends to refer to Mr. Katsube's absence in an effort to unduly prejudice NEC by arguing to the jury that "NEC chose not to present its own designated corporate representative on licensing" at trial. As to the points Peloton intends to make regarding Mr. Katsube's testimony, Peloton can do so via designated deposition testimony, without prejudicial commentary on the live-versus-video distinction.

Peloton's cited case law does not support denial of the Motion. *See, e.g.*, *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, D.I. 1051 at 17:21-18:6 (D. Del. Aug. 22, 2017) (declining to rule until later in proceedings); *White Buffalo Const. v. U.S.*, 546 F. App'x 952, 955-56 (Fed. Cir. 2013) (affirming Court of Federal Claims' decision not to grant a missing-witness inference); *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1362-63 (Fed. Cir. 2010) (declining to draw inference that absent witness's testimony would be unfavorable in inequitable conduct case).

Peloton's attempt to distinguish certain NEC cited cases misses the mark. The *Allscripts* Court found "[e]vidence or argument regarding [the subject witness's] absence is not relevant"— not that it was only irrelevant because the witness was no longer a party employee. 2022 WL 17403104, *2 (D. Del. Aug. 9, 2022). In *IPA*, the movant provided multiple reasons to grant the MIL beyond the sentence Peloton cites related to a party's control of the witness, including that "courts have widely denounced the archaic 'missing witness' rule" in civil cases, and that a witness's deposition is entitled to the same weight as trial testimony. Peloton Ex. G at 1, 3.[1]

---

[1] Peloton's arguments for *Adrendi* and *IPA* rely on party briefing—not the Court's ruling—it is therefore unclear whether those decisions agreed with the specific arguments cited by Peloton.

# EXHIBIT 14

NEC's Motion in *Limine* #2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEC CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-987-CJB |
| PELOTON INTERACTIVE, INC., | ) ) ) | |
| Defendant. | ) | |

**EXHIBIT NO. 14
NEC'S MOTION IN *LIMINE* ("MIL") NO. 2
TO EXCLUDE ANY PREVIOUSLY UNDISCLOSED EVIDENCE OR ARGUMENT
THAT PELOTON HAD A GOOD FAITH BELIEF OF NON-INFRINGEMENT OR
<u>INVALIDITY</u>**

NEC respectfully moves to preclude Peloton from presenting at trial any evidence, testimony, or argument regarding any purported good faith belief of non-infringement or invalidity, or any reliance on advice of counsel, in defense of NEC's willful infringement claim, to the extent Peloton has not disclosed such evidence in fact discovery.

"The Federal Rules of Civil Procedure seek to eliminate the element of 'surprise' in litigation. … 'It should be no surprise that courts do not like surprises. Parties must be up front about their claims, theories, and evidence. If not, there are consequences. There ought to be no trials by ambush in federal civil cases.'" *Donnelly v. Propharma Grp. Topco LLC*, Civil Action No. 21-894-MAK, 2023 WL 5037786, at *12 (D. Del. Aug. 8, 2023) (internal citations omitted). Thus, a party may not present at trial evidence or argument that it failed to disclose during discovery pursuant to Rule 26. *See Blue Sky Innovation Grp., Inc. v. Forcome Co.*, C.A. No. 23-129 (MN), D.I. 236 at 3 n.7 (D. Del. Aug. 7, 2025) (attached as Ex. A).

Throughout discovery, Peloton never disclosed any factual basis for its Eighth Defense against NEC's willfulness allegations and enhanced damages claim ("Peloton has acted in good faith and without intent to infringe at all times"). D.I. 125 at 26. For example, Peloton did not make a corporate witness available for NEC's Rule 30(b)(6) deposition Topics 4 (internal and external communications regarding the Asserted Patents or this Action), 6 (Patent assessments by Peloton's engineers), and 7 (Patent assessments by Peloton related to any Asserted Patents). Ex. B at 14, 17, 18. Nor did Peloton describe any basis for its assertion of good faith and lack of intent in response to the relevant interrogatories, such as NEC's Interrogatory No. 1 (bases for affirmative defenses), Ex. C, and Common Interrogatory No. 1 (first awareness of asserted patents and identification of documents relating to awareness of the patents), Ex. D at 11. And, Peloton never produced nor relied on an opinion of counsel in defense of the willful infringement charges. The only witnesses

1

who addressed anything arguably touching Peloton's good faith belief uniformly disclaimed any knowledge about the NEC Asserted Patents. Peloton's designee on NEC's Rule 30(b)(6) deposition Topic 2 (policies and practices of Peloton regarding the intellectual property of others), Mr. Shanahan, testified that he had never seen either Asserted Patent. Ex. E at 59:19–25. Other Peloton witnesses echoed Mr. Shanahan's testimony and denied having reviewed the patents. Ex. G (Santos Tr.) at 220:20–22; Ex. H (Crossley Tr.) at 10:25–11:4; Ex. I (Mankala Tr.) at 11:16–18; Ex. J (Burch Tr.) at 20:6–8.

Accordingly, any argument, evidence, or testimony that Peloton now offers at trial to establish good faith in response to NEC's willful infringement claim would necessarily be new and never disclosed in any interrogatory response, Rule 26(a) disclosure, or deposition. Peloton had every opportunity during discovery to develop and disclose such evidence of a good faith belief but never did. It cannot properly pull such evidence out of a hat for the first time at trial— especially because any reliance on good faith belief inherently would likely come with some waiver of privilege and work product, to the extent any lawyer was involved, and NEC has never had opportunity to take discovery on such communications and issues.

To the extent Peloton would intend to rely on the existence of its litigation defenses as the basis for good faith, this too must be precluded. Allowing Peloton to rely on such an argument will be prejudicial to NEC because such an argument would come with a waiver of privilege of all communications with Peloton's trial counsel, and NEC would never have had opportunity to take such discovery. "The logic is simple: if you plan to tell the jury that your lawyers said you weren't infringing, then the jury gets to find out exactly what your lawyers said." *A.L.M. Holding Co. v. Zydex Indus. Private Ltd.,* No. 25-cv-155, D.I. 211 at 2 (D. Del. Apr. 29, 2026) (attached as Ex. K). Yet, despite raising good faith as its affirmative defense, (D.I. 125 at 26), Peloton did not waive

2

privilege and did not provide a witness for NEC's Rule 30(b)(6) deposition Topic 7 (Patent assessments by Peloton), Ex. B at 18, and it declined to waive privilege to produce documents in response to NEC's Request for Production No. 4 (seeking documents "relating to any opinion … regarding the infringement, validity … of any claim of the Asserted Patents "), Ex. L. It is now too late to remedy this. *See Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 15-cv-152-RGA, D.I. 371 at 1 (D. Del. Oct. 12, 2018) (attached as Ex. M) ("Defendant disclaimed any reliance on advice of counsel in its response to interrogatories. . . . Defendant's disclaimer of reliance on advice of counsel cannot be withdrawn piecemeal to Defendant's advantage.").

Second, reliance on litigation defenses as the basis for good faith at trial is also legally impermissible and would be irrelevant, confusing and unduly prejudicial. The Federal Circuit has made clear that "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Because every accused infringer will invariably raise defenses in litigation, allowing reliance on those defenses would essentially allow an accused infringer to "insulate itself from liability for enhanced damages." *Id.* Therefore, such evidence and argument carry minimal probative value and present substantial risk of jury confusion and unfair prejudice. *See Zimmer Surgical, Inc. v. Stryker Corp.*, Civil Action No. 16-679-RGA, 2019 WL 9171205, at *2 (D. Del. Mar. 13, 2019) (excluding evidence based on lack of relevance to willfulness and the prejudice and likelihood of confusion).

Accordingly, Peloton should be precluded from surprising NEC with any new good faith defense at trial. Peloton should also be precluded from relying on its non-infringement and invalidity defenses that it presents at trial as also supporting a good faith defense against the willful infringement claim.

3

# EXHIBIT A

## NEC's MIL No. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLUE SKY INNOVATION GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-129 (MN) |
| | ) | |
| FORCOME CO., LTD., and | ) | |
| FORCOME (SHANGHAI) CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AFTER PRETRIAL CONFERENCE</u>

AND NOW, this 7th day of August 2025, after a Pretrial Conference (D.I. 231) and upon consideration of the Proposed Pretrial Order (D.I. 224) and the discussion at the August 4, 2025 Pretrial Conference, IT IS HEREBY ORDERED that:

1.      The Proposed Pretrial Order is ADOPTED as modified by any discussion at the Pretrial Conference.  (*See* D.I. 224; D.I. 231).

2.      An up to five-day jury trial will begin on August 11, 2025, at 9:30 a.m. with jury selection.[1]  Subsequent trial days will begin at 9:00 a.m.[2]  Each side should be prepared to present its case until 4:45 p.m. or 5:00 p.m. of each trial day, although the end of the trial day may, at the discretion of the Court, be earlier or later.

3.      The trial will be timed.  Each side is allowed up to ten (10) hours trial for its opening statement, its direct and cross-examination of witnesses, closing arguments and argument of

---

[1]      Plaintiff is responsible for providing enough copies of the *voir dire* and a writing utensil for each member of the jury pool, which is estimated to be 50 people.  These materials must be delivered to the Clerk's office by noon on August 8, 2025.

[2]      As noted at the Pretrial Conference, trial days will begin at 9:00 am with the exception of August 14, 2025, on which trial will begin in the afternoon.  (D.I. 231 at 73:25-74:7).

evidentiary issues. Each side should reserve 30 minutes of its ten (10) hours for closing arguments. Time during the trial day that does not neatly fit into one of these categories will be attributed to one side or the other as the Court deems appropriate.

4.      Issues that need to be addressed outside the presence of the jury will be taken up before the jury arrives in the morning, at lunch, or at the end of the day as the Court deems appropriate. Those issues – including objections to anticipated exhibits or demonstratives – must be brought to the attention of the Court's Judicial Administrator and the Courtroom Deputy by 7:00 a.m. on the day on which the objected-to evidence will be adduced. There will be thirty to forty-five minutes for lunch and a fifteen-minute break in the morning and in the afternoon.

5.      For the reasons stated at the Pretrial Conference, Plaintiff's Motion *in Limine* No. 1 (D.I. 224-8) is GRANTED-IN-PART and DENIED-IN-PART,[3] Plaintiff's Motion *in Limine* No. 2 (D.I. 224-8) is GRANTED,[4] Plaintiff's Motion *in Limine* No. 3 (D.I. 224-8) is GRANTED,[5]

---

[3]      Plaintiff's first motion *in limine* seeks to preclude Defendants from offering evidence, testimony, or arguments regarding its dismissal of claims for infringement of the '080 Patent. (D.I. 224-8 at 3). As discussed at the Pretrial Conference, Defendants may state that a patent infringement case was filed. Defendants may also present the Blue Sky internal email at trial, as Plaintiff has not objected to that. Plaintiff has agreed to stipulate that the patent infringement case was dismissed. Defendants may not, however, argue that dismissal was indicative of the patent infringement lawsuit being a sham lawsuit, or that dismissal is indicative of Plaintiff's alleged knowledge of invalidity. The covenant not to sue may not be admitted or discussed by Defendants at trial, unless later permitted by the Court should Defendant raise the issue again with the added context of evidence at trial. (D.I. 231 at 27:21-28:18).

[4]      Plaintiff's second motion *in limine* seeks to preclude Defendants from offering evidence, testimony, or arguments to claim that '080 Patent was found to be invalid, unenforceable, not infringed or dissimilar. (D.I. 224-8 at 18). As discussed at the Pretrial Conference, this motion was granted in light of its limited scope, as represented by Plaintiff. (D.I. 231 at 32:15-16).

[5]      Plaintiff's third motion *in limine* seeks to preclude Defendants from offering evidence, testimony, or arguments only relevant to whether the '080 Patent is invalid, unenforceable,

Defendant's Motion *in Limine* No. 1 (D.I. 224-9) is GRANTED,[6] Defendant's Motion *in Limine* No. 2 (D.I. 224-9) is GRANTED-IN-PART and DENIED-IN-PART,[7] and Defendant's Motion *in Limine* No. 3 (D.I. 224-9) is DENIED.[8]

6.      As explained at the Pretrial Conference, the parties may not provide witness binders or physical copies of documents (demonstratives, deposition transcripts, etc.) to the Court, but the parties must provide witness binders to the witnesses. The parties shall provide electronic copies of ALL trial exhibits to the Courtroom Deputy by NOON on Friday, August 8. The trial exhibits must be labeled with JTX, DTX or PTX prefixes with exhibit numbers, and the trial exhibits must be organized in a single folder. Additionally, at the beginning of each trial day, the parties shall provide to the Court's Judicial Administrator and Courtroom Deputy electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination[9] of any witnesses expected to be called that day.

---

or not infringed. (D.I. 224-8 at 42). The motion is granted to the same extent as Plaintiff's first motion *in limine*. (D.I. 231 at 33:24-34:1).

[6]      (*See id.* at 43:13-25).

[7]      Defendants' second motion *in limine* seeks to exclude evidence of an "undisclosed" damages theory and "unidentified" trade secrets. (D.I. 224-9 at 14). The motion is granted with respect to exclusion of redesign cost damages. There was no disclosure of those reported costs in Rule 26 disclosures, responses to requests for interrogatories, or in Plaintiff's damages expert's report. (D.I. 231 at 55:11-24). Plaintiff points to one answer to a deposition question mentioning redesign costs that was provided by a Rule 30(b)(6) witness (D.I. 224-9 at 45). The Court does not find this to be a fair or sufficient disclosure, particularly given Plaintiff's failure to supplement any discovery responses seeking this information or address it in expert discovery. (D.I. 231 at 55: 18-56:4). The motion is denied with respect to the "unidentified trade secrets." (*Id.* at 56:4-7).

[8]      (*See* D.I. 231 at 58:7-19).

[9]      This includes any deposition transcripts or expert reports to be used with witnesses.

3

7.      Transcripts of sealed testimony and exhibits will remain under seal until fourteen (14) calendar days after the conclusion of trial.

8.      The parties should be in the courtroom and prepared to discuss all outstanding issues at 9:00 a.m. on August 11, 2025.

9.      Any trial logistics should be coordinated through the Courtroom Deputy.

_____
The Honorable Maryellen Noreika
United States District Judge

4

# EXHIBIT B

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT C

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT D

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT E

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT F

# IINTENTIONALLY OMITTED

# NEC's MIL No. 2

# EXHIBIT G

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT H

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT I

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 2

# EXHIBIT J

## NEC's MIL No. 2

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Case No. 22-987-CJB

NEC CORPORATION,                                        :
                                                       :
          Plaintiff,                                   :
                                                       :
                                                       :
           vs.                                         :
                                                       :
                                                       :
PELOTON INTERACTIVE, INC.,                             :
                                                       :
          Defendants.                                  :
                                                       :


          ----------------------------------------
DEPOSITION UNDER ORAL EXAMINATION OF:
                 SCOTT BURCH
            September 25, 2025
               ------------
REPORTED BY:  JENNIFER L. WIELAGE, CCR, RPR, CRR
               ------------


JOB #  SY011239

Page 18

Q.    And how long is each of those meeting?

A.    They varied from one to four hours.

Q.    And how many hours in total have you met with counsel in preparation for this deposition today?

A.    Around ten, I believe.

Q.    And did you do anything else to prepare for the deposition today?

A.    I asked clarifying questions with members of my team and our organization that helped prepare the documents but that's it.

Q.    And whom did you speak to?

A.    I spoke to members of my team and one other person.  Are you looking for names specifically?

Q.    Yes, that's correct.

A.    Michelle Ballen.

Q.    If you could spell it for the court reporter, please?

A.    M-i-c-h-e-l-l-e, B-a-l-l-e-n, I believe.

Q.    Thank you.  And what are the other -- what are the names of the other colleagues of yours you've spoken with?

A.    Jake, J-a-k-e, Abrams, A-b-r-a-m-s.

Q.    Is that everyone?

A.    And Mike Masters, M-i-k-e, M-a-s-t-e-r-s.

Q.    And that is everyone, correct?

A.    Yes, I believe so.

Q.    And you mentioned you reviewed documents in preparation for the deposition today. So what documents did you review?

A.    Just the financial documents that were produced.

Q.    And did any documents that you have reviewed for this deposition refresh your recollection about any matter that you had otherwise forgot?

A.    That's vague, but no, I think we reviewed large data sets and large sets of numbers that I don't, you know, recall on a day-to-day basis, so in that sense, yes, it refreshed my recollection of that, but beyond that, no.

Q.    Okay. So do you know what this litigation is about?

A.    Broadly, yes.

Q.    Yeah. And what do you think -- what do you think it is about?

Page 20

A.    It's probably about streaming video patents.

Q.    And do you understand that Peloton is accused of patent infringement in this case?

A.    That is my understanding, yes.

Q.    And have you reviewed the patents in this case?

A.    No.

Q.    And do you understand -- do you know what products or services of Peloton are being accused of infringement in this case?

A.    I have -- my understanding is -- yes, I do.

Q.    So -- and just to clarify, when I refer to "accused products" today, I mean just any services, devices or a system that -- of Peloton that do content streaming.

Do you follow that?

A.    Um... um, my understanding is that the accused products are -- are specific to our -- our bikes, our hardware, so our bikes, our treadmills, our rowers or the digital app subscriptions that we provide.

Q.    Sure.  I'm just explaining that when I refer to the accused product today, I mean any

Page 21

services, devices or support systems of Peloton that you count as streaming.

Do you understand that?

A.    I believe we're -- I believe we're saying the same thing, but...

Q.    And that would include streaming both -- just as a clarification, that would include streaming on both Peloton brand equipment as well as the mobile tablet computer TV.

Do you understand that?

A.    On Peloton equipment and via the Peloton app on mobile or TV or web, yes.

Q.    So I'd like just to start today by -- by way of some very basic questions.

Can you confirm for me -- I know this may not -- may be obvious, can you confirm for me where you're currently employed?

A.    I am employed by Peloton Interactive.

Q.    And how long have you worked there?

A.    Almost five years.

Q.    And how do you like working there?

A.    I enjoy it.

Q.    And what is your current job title?

A.    Vice president, head of FP&A.

Q.    And what does FP&A stand for?

Page 22

A.        Financial Planning and Analysis.

Q.        And as a vice president, will you be notified about any legal claims or litigation against Peloton?

A.        I may be, but I don't know that every -- I don't believe that every claim would come across my desk, no.

Q.        And at what stage do you get informed?

A.        I don't -- I don't know specifically. I would say it would vary. I don't think there's a consistent or like an established timeline or kind of construct there.

Q.        And how long have you been in this position of VP for FP&A?

A.        Two, I believe two years in my current role.

Q.        You mentioned that you've worked for about five years. So what -- what's your position before then?

A.        Still within the FP&A organization, but I did not lead the team entirely prior to that.

Q.        Okay. Currently, do you report to anyone within Peloton?

A.        I do, yes.

Page 178

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

I, Jennifer L. Wielage, CCR No. 30X100191600, Certified Court Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of Delaware that the foregoing is true and correct.

Dated this 25th day of September 2025.

_____

Jennifer L. Wielage, CCR, RPR, CRR

Page 179

216 E. 45th Street, Suite #903
NEW YORK, NEW YORK 10017
(212) 400-8845

CASE: NEC CORPORATION vs. PELOTON INTERACTIVE, INC.
DATE: SEPTEMBER 25, 2025
WITNESS: SCOTT BURCH        REF: 11239

 PAGE   LINE   FROM                        TO

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

____|_____|_____|_____

_____
SCOTT BURCH

Subscribed and sworn to before me

this ____ day of _____, 20__.

_____
Notary Public

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

# EXHIBIT K

## NEC's MIL No. 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| A.L.M. HOLDING COMPANY, ERGON ASPHALT & EMULSIONS, INC. | : CIVIL ACTION |
| | : |
| | : |
| **v.** | : NO.   25-155 |
| | : |
| ZYDEX INDUSTRIES PRIVATE LIMITED, ZYDEX INC. | : |
| | : |

## ORDER

**AND NOW**, this 29th day of April 2026, upon considering plaintiffs' motion to compel waiver of privilege (DI 190), defendants' opposition (DI 198), and plaintiffs' reply (DI 204), it is **ORDERED** plaintiffs' motion to compel waiver of privilege (DI 190) is **DENIED** for the reasons that follow.

In this patent litigation, Zydex has advanced an equitable estoppel defense.  Essentially, that means Zydex will have to show that ALM misled Zydex to believe that it would not be sued, and that Zydex reasonably relied on ALM's conduct to its detriment.[1]  And for these purposes, we may oversimplify the facts as follows: during the time that Zydex says it was reasonably relying on ALM's silence, Zydex's privilege log suggests that Zydex was talking to its lawyers about ALM's patents.  Understandably, ALM finds that a bit suspicious.  How reasonable can Zydex's reliance be if it was busy in the meantime seeking and collecting legal advice about the situation?  In its motion, ALM asks us hold that Zydex cannot assert its equitable estoppel defense unless it waives privilege for the relevant communications.

The most familiar context for waiver of privilege in patent litigation is when a defendant

---

[1] The Federal Circuit's standard is laid out in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc) (abrogated on other grounds by *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017)).

relies on advice of counsel to rebut willfulness.  The logic is simple: if you plan to tell the jury that your lawyers said you weren't infringing, then the jury gets to find out exactly what your lawyers said.[2]  But neither ALM nor Zydex has identified any decision applying similar logic to equitable estoppel.  There is a reason for that.  We cannot agree with ALM that it would be good to break this new ground.

The fundamental principle at work here "is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." *Seagate*, 497 F. 3d at 1372.  And that's where ALM's argument starts and stops.  What, exactly, is the sword here?  Zydex has not waived privilege as to "favorable communications" or sought to benefit from some otherwise privileged information.  In the willfulness context, plaintiffs are free to try to prove willfulness without waiving privilege as to whatever their lawyers may have been saying behind closed doors about the strength of the case; and defendants are free to tell juries that they did not think they were infringing without relying on a lawyer, if the admissible evidence allows.  So too, here.  ALM says that "Zydex wields the privilege as a sword by asserting that its course of conduct was consistent with innocent reliance," DI 204 at 6, but that way of thinking about waiver knows no limits.  You don't get to see the other side's legal communications just because you suspect that they will contradict other evidence.

This denial comes with two caveats.  First, Zydex is bound by its decision to try to prove

---

[2] For background, examine another en banc decision, *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007) (en banc) (abrogated on other grounds by *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)).

equitable estoppel with no help from the lawyers or their advice.  Second, although the legal communications are privileged, the privilege log itself, of course, is not.  None of this pre-decides any particular evidentiary issues that may arise for trial.

_John F. Murphy_
_____
**MURPHY, J.**

3

# EXHIBIT L

## NEC's MIL No. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEC CORPORATION,                     )
                                     )
              Plaintiff,             )
                                     )
      v.                             )    C.A. No. 22-987 (CJB)
                                     )
PELOTON INTERACTIVE, INC.,           )
                                     )
              Defendant.             )

PROPOUNDING PARTY:      Plaintiff NEC CORPORATION

RESPONDING PARTY:       Defendant PELOTON INTERACTIVE, INC.

SET NO.:                One

NOS.:                   1-56

**DEFENDANT PELOTON INTERACTIVE, INC.'S RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS AND THINGS (NOS. 1-56)**

Defendant Peloton Interactive, Inc. ("Peloton" or "Defendant"), by and through its

attorneys and pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Local Rules of

this Court, hereby responds and objects to the First Set of Requests for Production of Documents

and Things propounded by Plaintiff NEC Corporation ("NEC" or "Plaintiff") as follows:

**PRELIMINARY STATEMENT**

Peloton makes this response to Plaintiff's First Set of Requests for Production of

Documents and Things solely for the purpose of this action. Each response is subject to all

objections as to competence, relevance, materiality, propriety, admissibility, privilege, privacy,

proprietary information, trade secrets and the like, and any and all other objections on grounds that

would require the exclusion of any response herein if such were offered in court, all of which

objections and grounds are reserved and may be interposed at the time of trial.

Peloton further objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any party's claim or defense, and not proportional to the needs of this case to the extent it seeks information pertaining to patents, and/or patent applications that Peloton is not accused of infringing. The Federal Rules of Civil Procedure do not obligate Peloton to guess as to what specific patents and/or patent applications would be responsive to this Request. Peloton will not produce Documents and Things in response to this Request unless those Documents and Things relate to the Patents-In-Suit. Peloton also expressly incorporates its objections to the definition of "Asserted Patents" into this Response.

Subject to and without waiving these objections and the General Objections, to the extent such documents exist and are in the possession, custody, or control of Peloton and to the extent Peloton can identify such information without the application of ESI search terms, Peloton will produce nonprivileged matter that is responsive to the non-objectionable portions of this Request (i.e., matter that is responsive *and* relates to the Patents-In-Suit) on a rolling basis according to the deadlines in the Scheduling Order and in compliance with the ESI Order. Peloton will only produce e-mails or other custodian ESI subject to the ESI Order.

**REQUEST FOR PRODUCTION NO. 4:**

With respect to the Asserted Patents or any Related Patents, all Documents relating to any opinion (whether written or oral) regarding the infringement, validity, patentability, enforceability, or scope of any claim of the Asserted Patents or Related Patents, including without limitation all communications concerning any such opinion, all Documents generated or reviewed in the drafting or preparation of any opinion, and all searches, investigations, reviews, tests, or analyses performed, whether oral or in writing.

22

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Peloton incorporates by reference the General Objections set forth above.

Peloton objects that this Request for Production is harassing because it simply repeats and seeks the same information that is Responsive to Requests for Production Nos. 1 and 2. Peloton expressly incorporates all objections made in response to those Requests for Production as if set forth fully herein.

Peloton objects to this Response to the extent it assumes Peloton infringes the Asserted Patents when Peloton maintains that it does not. Any response Peloton provides with respect to this Request should not construed as an admission that any Peloton product or service practices and/or otherwise infringes any limitation or claim of the Asserted Patents.

Peloton objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any party's claim or defense, and not proportional to the needs of this case to the extent it seeks information pertaining to Peloton products and/or services other than those specific products and/or services identified and expressly accused in Plaintiff's March 27, 2023 Identification of Accused Products for Defendant Peloton Interactive, Inc.

Peloton further objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any party's claim or defense, and not proportional to the needs of this case to the extent it seeks information pertaining to processes, services, structures, functionality, and/or features other than those discrete features and functionalities specifically described and expressly accused in Plaintiff's forthcoming Infringement Contentions.

Peloton further objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any party's claim or defense, and not proportional to the needs of this case to the extent it seeks information pertaining to claims NEC has not asserted against Peloton

23

in NEC's forthcoming Infringement Contentions. The Asserted Patents include more than 100 claims. Plaintiff's demand that Peloton produce "all Documents" and "[C]ommunications" relating to each of these claims, including claims Plaintiff has not asserted against Peloton, is *per se* overbroad, unduly burdensome, harassing, not relevant to any party's claim or defense, not proportional to the needs of this case, and premature.

Peloton expressly incorporates its objections to the definition of "Accused Products" into this Response.

Peloton further objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any party's claim or defense, and not proportional to the needs of this case to the extent it seeks information pertaining to "Related Patents," patents, and/or patent applications that Peloton is not accused of infringing. The definition of "Related Patents" makes no attempt to identify specifically the patents and/or patent applications which are the subject matter of the definition. Furthermore, Peloton has no obligation under the Federal Rules of Civil Procedure to produce documents relating to patents it is not specifically accused of infringing. Finally, the Federal Rules of Civil Procedure do not obligate Peloton to guess as to what specific patents and/or patent applications would be responsive to this Request for Documents and Communications relating to "Related Patents." Peloton will not produce Documents and Communications in response to this Request unless those documents relate to the Patents-In-Suit. Peloton expressly incorporates its objections to the definition of "Related Patents" into this Response. Peloton also expressly incorporates its objections to the definition of "Asserted Patents" into this Response.

24

Peloton objects to this Request to the extent that Plaintiff seeks information subject to the attorney-client privilege, attorney work-product doctrine, or any other applicable privileges or immunities.

Peloton further objects to this Request as premature to the extent it seeks information that is properly part of expert discovery or claim construction proceedings. Peloton reserves its right to present evidence and/or expert testimony related to the subject matter of this Request at an appropriate time pursuant to the Court's Scheduling Order.

Peloton objects to this Request as overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case to the extent it requires Peloton to produce "all Documents" and "[C]ommunications" responsive to the Request. Peloton specifically objects to this Request to the extent compliance would require retrieval of ESI that is not reasonably accessible or proportional to the needs of this case. Peloton also objects to this Request to the extent the burden and expense attendant to retrieval of any ESI substantially outweighs any benefit or probative value. Peloton further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks to require Peloton to search for and produce electronic documents from Peloton's witnesses or custodians. Peloton will only produce e-mails or other custodian ESI subject to the ESI Order. Peloton further objects to this Request as overly broad, unduly burdensome, vague, ambiguous, not relevant to any claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case because a Request for "all Documents" and "[C]ommunications" necessarily seeks to require Peloton to search for and produce electronically stored information that can only be identified through the application of search terms to the entirety of Peloton's data repositories.

25

Peloton objects to this Request to the extent it seeks information not in the possession, custody, or control of Peloton. Some documents may be in the sole custody or control of Plaintiff, pending response to Peloton's Requests for Production, or third parties, including, but not limited to, VisualOn, Inc., ExoPlayer, JWMedia Player, and Apple Inc. Peloton objects to this Request to the extent it seeks information that is publicly available and/or equally accessible to Plaintiff.

Peloton objects to this Request to the extent that the information requested constitutes confidential and/or proprietary information belonging to third parties with whom Peloton has entered into non-disclosure or confidentiality agreements that prohibit the disclosure by Peloton of the third-party signatories' confidential and/or proprietary information.

Finally, Peloton also specifically objects to this Request as premature because it seeks the disclosure of Peloton's Invalidity Contentions prior to the Court's deadlines for those disclosures.

Subject to and without waiving these objections and the General Objections, to the extent such documents exist and are in the possession, custody, or control of Peloton and to the extent Peloton can identify such information without the application of ESI search terms, Peloton will produce nonprivileged matter that is responsive to the non-objectionable portions of this Request (i.e., matter that is responsive *and* relates to the infringement allegations contained in Plaintiff's forthcoming Infringement Contentions) on a rolling basis according to the deadlines in the Scheduling Order and in compliance with the ESI Order. Peloton will only produce e-mails or other custodian ESI subject to the ESI Order. Peloton reserves its right to present expert opinion and/or testimony related to the subject matter of this Request at an appropriate time pursuant to the Court's Scheduling Order.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
mflynn@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Peloton Interactive, Inc.*

OF COUNSEL:

Steven G. Schortgen
Jennifer Klein Ayers
SHEPPARD MULLIN
2200 Ross Avenue
20th Floor
Dallas, TX  75201
(469) 391-7400

April 24, 2023

134

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2023, copies of the foregoing were caused to be served

upon the following in the manner indicated:

| | |
|---|---|
| Kenneth L. Dorsney, Esquire<br>Cortlan S. Hitch, Esquire<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff NEC Corporation* | *VIA ELECTRONIC MAIL* |
| Robert L. Maier, Esquire<br>Jennifer C. Tempesta, Esquire<br>Michael E. Knierim, Esquire<br>Nick Palmieri, Esquire<br>BAKER BOTTS L.L.P.<br>30 Rockefeller Plaza<br>New York, NY  10112<br>*Attorneys for Plaintiff NEC Corporation* | *VIA ELECTRONIC MAIL* |
| Lance J. Goodman, Esquire<br>BAKER BOTTS L.L.P.<br>401 South 1st Street, Suite 1300<br>Austin, TX  78704<br>*Attorneys for Plaintiff NEC Corporation* | *VIA ELECTRONIC MAIL* |
| Sarah J. Guske, Esquire<br>BAKER BOTTS L.L.P.<br>101 California Street, Suite 3200<br>San Francisco, CA  94111<br>*Attorneys for Plaintiff NEC Corporation* | *VIA ELECTRONIC MAIL* |
| Kiyotoki Natsume, Esquire<br>BAKER BOTTS L.L.P.<br>Level 30 20 Fenchurch Street<br>London<br>EC3M 3BY<br>United Kingdom<br>*Attorneys for Plaintiff NEC Corporation* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)

-1-

# EXHIBIT M

## NEC's MIL No. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BIO-RAD LABORATORIES, INC. and
THE UNIVERSITY OF CHICAGO,

        Plaintiffs,

        v.

10X GENOMICS, INC.,

        Defendant.

C.A. No. 15-cv-152-RGA

## ORDER ON MOTIONS IN LIMINE

Each side has filed three motions in limine. (D.I. 323-1). They are resolved as follows.

Plaintiffs' MIL #1 is **GRANTED**. The litigations and IPRs involving unrelated patents

and issues are not relevant to this case. Fed. R. Evid. 401. Defendant's theory that Bio-Rad

acquired the prior plaintiff in this case (RainDance), for $87 million, just to have another shot at

litigating against Defendant is of dubious relevancy at best. The technical and market analyses

in the prior ITC actions are even less relevant, and regardless, have little value compared to the

extensive infringement and damages expert testimony to be presented at trial. Therefore, even if

these matters have marginal probative value, that value is substantially outweighed by the danger

of confusing the issues, misleading the jury, and wasting time by needlessly presenting evidence

of little or no value. Fed. R. Evid. 403.

Plaintiffs' MIL #2 will be addressed separately. Because the parties' arguments rely on

speculation as to what theories each side will be advancing at trial, it is difficult to conduct a

Rule 403 analysis in the abstract. Fed. R. Evid. 403. Whether particular evidence purportedly

related to Plaintiffs' "pre-suit state-of-mind" is probative of willfulness, or the extent to which asserted patents are "foundational," depends in large part on how Plaintiffs address those issues. It would be premature to exclude Defendant's purportedly responsive evidence without first knowing what it is responding to. Therefore, the parties should be prepared to discuss this motion at the Final Pretrial Conference on October 15, 2018. The parties should be ready to provide more detail on the evidence they plan to offer as it relates to this motion.

Plaintiffs' MIL #3 is **GRANTED**. Defendant disclaimed any reliance on advice of counsel in its response to interrogatories. This includes any reliance on advice given to QuantaLife, where Defendant's principals formerly worked, and which was later acquired by Bio-Rad. That Bio-Rad owns, and did not waive, the attorney-client privilege over any advice given to QuantaLife did not prevent Defendant from identifying such advice in response to interrogatories. Defendant's disclaimer of reliance on advice of counsel cannot be withdrawn piecemeal to Defendant's advantage.

Defendant's MIL #1 is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiffs do not oppose exclusion of the recently initiated ex parte reexaminations. Regarding the IPR decisions, failure to institute an IPR has little or no probative value. To the extent there is any probative value, it is substantially outweighed by the risk of confusing the issues, misleading the jury, and undue delay for time spent providing appropriate context. Fed. R. Evid. 403. Thus, the motion is **GRANTED** with respect to the IPR decisions and the ex parte reexaminations. Defendant also moves to exclude expert testimony given by Drs. Huck and Olmsted during the IPRs. I agree with Defendant that, on the present record, this testimony is inadmissible hearsay and cannot be presented in Plaintiffs' case-in-chief. However, that does not prevent Dr. Huck's IPR testimony from being used for impeachment purposes if Dr. Huck testifies at trial.

Likewise, Dr. Sia is free to rely on the IPR testimony, regardless of its admissibility, as part of his own expert testimony, assuming that the proper foundation is laid. Fed. R. Evid. 703. Whether Dr. Sia can disclose the underlying IPR testimony to the jury depends on whether its probative value substantially outweighs its prejudicial effect. *Id.* It should not be introduced absent my express approval. I will conduct a balancing analysis, should it be necessary, when I have a clearer idea of what each expert intends to testify at trial. The parties may address this at the Final Pretrial Conference. Thus, the motion is **GRANTED** with respect to the IPR testimony, but only to the extent that Plaintiffs seek to introduce it in their case-in-chief. Lastly, Defendant moves to exclude the Patent Office's consideration of Quake during the original prosecution of the asserted patents. Quake is the key prior art in this case and, to properly weigh the evidence, the jury should know that the Patent Office has already considered it. *See Sciele Pharms Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260–61 (Fed. Cir. 2012). Thus, the motion is **DENIED** with respect to the consideration of Quake in the original prosecution.

Defendant's MIL #2 is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiffs assert that the e-mails at issue were only added to their exhibit list by administrative error and have already been removed. Thus, the motion is **GRANTED** with respect to the actual e-mails.[1] Plaintiffs' refusal to produce the e-mails, however, is unrelated to testimony on QuantaLife's efforts to recruit Dr. Ismagilov. Defendant seeks to exclude testimony based on the e-mails and "other evidence that employees of QuantaLife communicated with the University of Chicago or Dr. Ismagilov that Plaintiffs failed to produce in discovery." It is not clear exactly what evidence this refers to, but, to the extent that Defendant moves to exclude testimony or other evidence

---

[1] This refers to the set of e-mails added and removed from Plaintiffs' exhibit list. Defendant states in its reply that there were seven e-mails, but only six were attached as exhibits to the motion. (Exs. A–F).

3

Case 1:22-cv-00982-GJB   Document 614   Filed 07/17/26   Page 383 of 453 PageID #:
Case 1:15-cv-00152-RGA   Document 971   Filed 10/12/18   Page 4 of 4 PageID #: 34546:
32360

related to QuantaLife's efforts to recruit Dr. Ismagilov, on the theory that the e-mails should have been produced in discovery, the motion is **DENIED**.

Defendant's MIL #3 is **GRANTED**. As discussed regarding Plaintiffs' MIL #2, Defendant is barred from relying on any advice of counsel at trial. Plaintiffs have stated that they do not intend to imply lack of advice of counsel so long as Defendant "does not suggest it has or is relying on legal advice." Thus, I would characterize this motion as being unopposed. If either side, including witnesses associated with the side, raise or refer to advice of counsel, or lack of advice of counsel, that side should expect to pay all necessary costs and fees relating to a retrial if one becomes necessary.

IT IS SO ORDERED this 12 day of October 2018.

_____
United States District Judge

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-987 (CJB) |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| PELOTON INTERACTIVE, INC., | ) | **ATTORNEYS' EYES ONLY** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PELOTON'S OPPOSITION TO NEC'S MOTION *IN LIMINE* #2**

**(TO EXCLUDE ANY PREVIOUSLY UNDISCLOSED EVIDENCE OR ARGUMENT
THAT PELOTON HAD A GOOD FAITH BELIEF
OF NON-INFRINGEMENT OR INVALIDITY)**

**Exhibit 14 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #2**

NEC effectively seeks to preclude Peloton from establishing its good faith at trial by advancing two arguments: (1) any good faith basis "would necessarily be new and never disclosed," and (2) Peloton cannot otherwise rely on its litigation defenses. NEC MIL 2 at 1–2. NEC improperly seeks summary judgment on Peloton's good faith defense under the guise of a MIL. That alone warrants denial. *See 10x Genomics, Inc. v. Vizgen, Inc.*, 2025 WL 625684, at *2 (D. Del. Jan. 27, 2025). Nevertheless, NEC's arguments are meritless. NEC did not require Peloton to disclose the basis for its good faith, NEC ignores evidence of Peloton's good faith, and NEC disregards Federal Circuit precedent holding that litigation defenses are relevant to good faith.

## I.        Peloton Is Not Precluded By Any Purported Failure to Respond to Discovery.

NEC claims that Peloton failed to disclose its basis for a good faith defense. But NEC served no discovery request requiring this, as demonstrated by the very discovery cited by NEC:

- Interrogatory No. 1 asked Peloton for "all bases for each *affirmative* defense," NEC MIL 2, Ex. C (emphasis added). But a good faith belief of non-infringement or invalidity is not an *affirmative defense*. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006) (listing affirmative defenses); *Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 566 (3d Cir. 2003) (distinguishing affirmative defenses and negation by affirmative proof).

- Common Interrogatory No. 1 concerned Peloton's first awareness of the NEC patents, NEC MIL 2, Ex. D, and has no relevance to a good faith belief, particularly given that the Court dismissed NEC's claim for pre-suit willful infringement. *See* D.I. 108 at 5–6.

- Deposition Topics 4, 6, and 7—relating to Peloton's communications regarding this case, including NEC's patents and assessments thereof—are also not dispositive of Peloton's good faith. *See SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1309–10 (Fed. Cir. 2019) (vacating denial of JMOL because lack of advice-of-counsel "is legally irrelevant" and "it was unremarkable" that

1

**Exhibit 14 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #2**

engineers did not analyze the patents in suit). Nor can NEC force Peloton to waive privilege regarding the substance of its litigation strategies to the extent implicated by those topics. *See Sensormatic Elecs., LLC v. Genetec (USA) Inc.*, 2022 WL 14760185, at *2 (D. Del. Oct. 20, 2022) (no loss of privilege merely from fact that party's state of mind is put into issue).

NEC could have posed an interrogatory specifically requesting Peloton's basis for asserting that its alleged infringement was not willful, but did not do so.

## II.    There is Ample Record Evidence Supporting Peloton's Good Faith Belief.

Moreover, NEC improperly seeks to restrict how Peloton may establish its good faith. The specific evidence cited by NEC—i.e., whether Peloton engineers had seen or reviewed the NEC Patents—is not exhaustive of what supports good faith. *See SRI Int'l*, 930 F.3d at 1309–10. Nor can a negative inference be drawn from the lack of evidence of an opinion of counsel. 35 U.S.C. § 298. Instead, a broader range of evidence may be used to support Peloton's good faith belief. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1367, 1377–79 (Fed. Cir. 2020) (upholding jury instructions on willfulness to "consider all facts").

Here, the record supports Peloton's good faith. For example, it is undisputed that Peloton was not copying any NEC product and Peloton never tried to conceal any alleged infringement. *Cf. id.* (intentional copying and concealment are relevant). Instead, Peloton incorporates in its products industry-standard video players made by third parties. Ex. A (Shanahan Dep. Tr.) at 43:22–44:10, 49:3–49:16; Ex. B (Santos Dep. Tr.) at 83:10–84:10; *see Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *3 (D. Del. May 23, 2020) (acting "consistently with the standards of behavior for its industry" is relevant to willfulness) (citation modified). Moreover, Peloton does not possess the source code for the incorporated AVPlayer, JW Player, and Visual On video players, which NEC had to subpoena. *See* Exs. C (AV Player) at 20–21, D (JW Player) at 19–21, E (Visual On) at 20–21. Thus, Peloton's engineers had no awareness of operational

2

**Exhibit 14 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #2**

details for the third-party players, including how bit rates are calculated during playback. Ex. A at 43:22–44:10, 49:3–16, 61:19–23; Ex. B at 83:10–84:10. From this, a jury may conclude that Peloton's continued and open use of well-known ABR technologies in the industry demonstrated it had no bad faith intent to infringe valid patents. *See Nox Medical Ehf v. Natus Neurology*, 2018 WL 6427686, at *3 (D. Del. Dec. 7, 2018) (circumstantial evidence supported good faith beliefs).

### III.     Peloton's Litigation Defenses Are Relevant and Admissible as to Its Good Faith.

The existence of Peloton's post-suit litigation defenses is also relevant to its good faith. *See Focus Products Group Int'l, LLC v. Kartri Sales Co., Inc.*, 156 F.4th 1259, 1287–88 (Fed. Cir. 2025) (district court erred in finding willful infringement by ignoring defendant's "consistent conduct during this litigation," including reasonable non-infringement beliefs); *see also Nox Medical Ehf*, 2018 WL 6427686, at *3 ("contest[ing] the claims through trial" provided circumstantial evidence of good faith). NEC's only Federal Circuit citation does not counsel differently as *WBIP, LLC v. Kohler Co.* only held that an objectively reasonable litigation defense is no longer a *complete bar* to enhanced damages. 829 F.3d 1317, 1340 (Fed. Cir. 2016) (rejecting "notion that objective recklessness *must* be found in every case involving enhanced damages") (emphasis added); *see also Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1355–56 (Fed. Cir. 2018) (district courts must "consider all relevant factors" including "closeness of the case"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2017 WL 6206382, at *10 (D. Del. Dec. 8, 2017) ("The post–Complaint timing of the direct infringement" makes litigation defenses relevant to the willfulness determination).[1] The Court should reject NEC's request to bar Peloton from making any assertion of good faith at trial.

---

[1] NEC's citation to *Zimmer Surgical, Inc. v. Stryker Corp.* is inapposite; that case dealt with the relevance and prejudice of evidence of plaintiff's copying, which is not at issue here. 2019 WL 9171205, at *2 (D. Del. Mar. 13, 2019).

**Exhibit 14 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #2**

Dated: July 1, 2026


OF COUNSEL:                                  Respectfully submitted,

COVINGTON & BURLING LLP                      MORRIS, NICHOLS, ARSHT & TUNNELL
                                             LLP
Robert Haslam (*pro hac vice*)
3000 El Camino Real                          /s/   *Michael J. Flynn*
5 Palo Alto Square 10th Floor
Palo Alto, CA 94306-2112                     Karen Jacobs (#2881)
(650) 632-4700                               Michael J. Flynn (#5333)
rhaslam@cov.com                              Cameron P. Clark (#6647)
                                             1201 North Market Street
                                             P.O. Box 1347
Philip Irwin (*pro hac vice*)                Wilmington, DE 19899
30 Hudson Yards                              (302) 658-9200
New York, NY 10001-2170                      kjacobs@morrisnichols.com
(212) 841-1000                               mflynn@morrisnichols.com
pirwin@cov.com                               cclark@morrisnichols.com


Richard Rainey (*pro hac vice*)              *Attorneys for Defendant*
Emily Mondry (*pro hac vice*)                *Peloton Interactive, Inc.*
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
rrainey@cov.com
emondry@cov.com

# EXHIBIT A

# REDACTED IN ITS ENTIRETY

# EXHIBIT B

## REDACTED IN ITS ENTIRETY

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NEC CORPORATION

PLAINTIFF,

v.

PELOTON INTERACTIVE, INC.

DEFENDANT.

C.A. No. 1:22cv00987

## PLAINTIFF NEC CORPORATION'S NOTICE OF DEPOSITION AND DOCUMENT SUBPOENAS TO APPLE INC.

**PLEASE TAKE NOTICE** that, pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, Plaintiff NEC Corporation ("NEC") by and through its undersigned counsel, will take the deposition of Apple Inc. beginning at 10:00 a.m. on January 10, 2024, or another mutually agreed upon date and time, on the topics set forth in Attachment A attached to the deposition subpoena. The deposition will be held live at Baker Botts' New York office, or at such other time and place as may be mutually agreed. The deposition will be taken before a certified shorthand reporter and will be recorded on videotape and by real-time transcription service as well as by stenographic means.

Plaintiff will also subpoena documents of Apple Inc. as set forth in Attachment A attached to the document subpoena that are due by January 3, 2024, or at such other time and place as counsel for the parties and Apple Inc. may agree.

1

Dated: December 13, 2023

/s/ Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff*
*NEC Corporation*

2

# ATTACHMENT A

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

District of Delaware

<table>
<tr><td>NEC Corporation</td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff</i></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.  1:22cv00987</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Peloton Interactive, Inc.</td><td>)</td><td></td></tr>
<tr><td><i>Defendant</i></td><td>)</td><td></td></tr>
</table>

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Apple Inc.

C/O CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See Attachment A

<table>
<tr><td>Place: Offices of Baker Botts L.L.P.<br>30 Rockefeller Plaza, New York, NY 10112-4498</td><td>Date and Time:<br>01/10/2024 10:00 am</td></tr>
</table>

The deposition will be recorded by this method:  Stenographic and Videographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/13/2023

*CLERK OF COURT*

OR

/s/ Jennifer C. Tempesta

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* NEC Corporation
, who issues or requests this subpoena, are:

Jennifer C. Tempesta, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10012, Tel: (212) 408-2571
jennifer.tempesta@bakerbotts.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  1:22cv00987

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
       **(i)** is a party or a party's officer; or
       **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
       **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
       **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

       **(i)** fails to allow a reasonable time to comply;
       **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
       **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
       **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
       **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
       **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
       **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
       **(i)** expressly make the claim; and
       **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

For purposes of this subpoena, the following definitions and instructions shall apply.

### DEFINITIONS

1.      "Plaintiff" or "NEC" shall mean Plaintiff NEC Corporation.

2.      "Defendant" shall mean Defendant Peloton Interactive, Inc., and all predecessors and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

3.      "Peloton" shall mean Peloton Interactive, Inc.

4.      "You," "Your," and "Yours," shall mean Apple Inc. ("Apple") and all predecessor and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

5.      "The '101 Patent" shall mean U.S. Patent No. 8,752,101.

6.      "The '809 Patent" shall mean U.S. Patent No. 8,909,809.

7.      "The '427 Patent" shall mean U.S. Patent No. 9,769,427.

8.      "The Patents-in-Suit" shall mean the '101 Patent, the '809 Patent, and the '427 Patent.

9.      "Streaming Product(s)" shall mean all content streaming services provided to the Defendant, including, but not limited to, all versions of AVPlayer software (source code, object code, executables, libraries, make files, build files, scripts, templates, application program interfaces, models), hardware (designs, descriptions, requirements, specifications, modeling), software development kits (SDKs), and any other related documentation, including, but not limited

1

to, documents addressing requirements, architectures, designs, diagrams, templates, libraries, release notes, version information, proposals, specifications, and modeling.

10.     The terms "reflecting," "referring," "relating to," or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

11.     Where appropriate, the use of the singular form of any word shall be taken to mean the plural and vice versa; references to one gender shall include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

**INSTRUCTIONS**

1.      You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities, email correspondence, or documents in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to the requests herein.  To the extent You use search terms to search for email correspondence, such terms will be provided to NEC in advance so that the parties can meet and confer on any search term modifications.

2.      If You do not produce each document or thing requested herein as they are kept in the usual course of business, You must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

3.      You are to produce all documents that are responsive in whole or in part to any of the requests herein in full, without abridgement or abbreviation.  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in Your written response what portion of the document is not produced and why it could not be produced.

4.      If any of the documents requested herein are no longer in Your possession, custody, or control, You are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

5.      If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction and the name of the person who ordered or authorized such destruction.

3

6.    If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reasons, with respect to each such document state:

a.    the date appearing on such document, or if no date appears, the date on which such document was prepared;

b.    the name of each person to whom such document was addressed;

c.    the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

d.    the name of each person who signed such document or, if not signed, the name of each person who prepared it;

e.    the name of each person making any contribution to the authorship of such document;

f.    the job title or position of each person identified in subparagraph (b), (c), (d) and (e) above;

g.    the date such document was received or discussed by each person identified in subparagraphs (b) or (c) above;

h.    the general nature or description of such document and its number of pages; and the specific ground(s) upon which the privilege or work product rests.

7.    Documents produced pursuant to this subpoena will be made under and pursuant to the terms of the Stipulated Protective Order ("Protective Order"), a copy of which is attached herein as Attachment B.

4

**DEPOSITION TOPICS**

1.      The operation and distribution of Your Streaming Product(s), including those of any components or instances thereof, in relation to or within any computers, mobile devices, servers, cloud instances, or the like, from July 28, 2016 to the present.

2.      Your communications with the Defendant or any person action on behalf of the Defendant regarding the above-captioned action, the Patents-in-Suit, and/or Your Streaming Product(s).

3.      Any agreements, contracts, or memoranda of understanding between You and Defendant.

4.      The operation of past versions and current versions of any of Your Streaming Product(s), used by the Defendant from July 28, 2016 to present, specifically related to the operation of any algorithms, routines, methods, functions, or structures for delivering media content.

5.      Instruction manuals, technical support documents, protocols, programming guides, design specifications, integration guides, configuration guides, or any other reference materials that You provided directly or indirectly to the Defendant from July 28, 2016 to present related to Your Streaming Product(s).

6.      All documents and things You received, or have access to, from the Defendant, that relate to the above-captioned action and/or the Patents-in-Suit, whether received informally or in response to a subpoena or other discovery requests in the above-captioned actions.

7.      The operation and/or the implementation of the source code for Your Streaming Product(s) used by Defendant from July 28, 2016 to present, including, but not limited to, the source code within the library or libraries that have been accessed or continue to be assessable via a client device executing Defendant's software along with information regarding the file name(s)

7

and file type(s) and format(s) that the source code has been or is provided to the client device of a client device configured to instantiate a client-side player and stream the content from a server configured to host and/or stream the content during the operation of content streaming.

8.      How bit rates in Your Streaming Product(s), from July 28, 2016 to present, are determined, created, stored and implemented for respective content media.

9.      Parameters that are included in determining which bit rate in Your Streaming Product(s) is chosen to be sent by the server device during content streaming from July 28, 2016 to present.

10.     The total number of times any server under Your control was accessed in connection with Your Streaming Product(s) provided to the Defendant on a monthly and annual basis from July 28, 2016 to the present.

11.     The location where media content is stored in connection with our Streaming Product(s), agreements You or Defendant have in place for enabling the storage of the media content, how You or Defendant retrieve the media content needed for a particular stream, and how You or Defendant map identified media content to a particular server or storage location.

12.     Authentication of an documents produced in response to a subpoena for documents in connection with the above-captioned action.

8

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | | |
|---|---|---|
| NEC Corporation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:22cv00987 |
| Peloton Interactive, Inc. | ) | |
| *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS**
**OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:
Apple Inc.

C/O CT Corporation System, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A

| Place: Offices of Baker Botts L.L.P.<br>30 Rockefeller Plaza, New York, NY 10112-4498<br>jennifer.tempesta@bakerbotts.com | Date and Time:<br><br>01/03/2024 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/13/2023

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Jennifer C. Tempesta |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  NEC Corporation
, who issues or requests this subpoena, are:

Jennifer C. Tempesta, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Tel: (212) 408-2571
email: jennifer.tempesta@bakerbotts.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:22cv00987

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

For purposes of this subpoena, the following definitions and instructions shall apply.

### DEFINITIONS

1.      "Plaintiff" or "NEC" shall mean Plaintiff NEC Corporation.

2.      "Defendant" shall mean Defendant Peloton Interactive, Inc., and all predecessors and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

3.      "Peloton" shall mean Peloton Interactive, Inc.

4.      "You," "Your," and "Yours," shall mean Apple Inc. ("Apple") and all predecessor and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

5.      "The '101 Patent" shall mean U.S. Patent No. 8,752,101.

6.      "The '809 Patent" shall mean U.S. Patent No. 8,909,809.

7.      "The '427 Patent" shall mean U.S. Patent No. 9,769,427.

8.      "The Patents-in-Suit" shall mean the '101 Patent, the '809 Patent, and the '427 Patent.

9.      "Streaming Product(s)" shall mean all content streaming services provided to the Defendant, including, but not limited to, all versions of AVPlayer software (source code, object code, executables, libraries, make files, build files, scripts, templates, application program interfaces, models), hardware (designs, descriptions, requirements, specifications, modeling), software development kits (SDKs), and any other related documentation, including, but not limited

1

to, documents addressing requirements, architectures, designs, diagrams, templates, libraries, release notes, version information, proposals, specifications, and modeling.

10.     The terms "reflecting," "referring," "relating to," or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

11.     Where appropriate, the use of the singular form of any word shall be taken to mean the plural and vice versa; references to one gender shall include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

## INSTRUCTIONS

1.      You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities, email correspondence, or documents in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to the requests herein.  To the extent You use search terms to search for email correspondence, such terms will be provided to NEC in advance so that the parties can meet and confer on any search term modifications.

2.      If You do not produce each document or thing requested herein as they are kept in the usual course of business, You must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

3.      You are to produce all documents that are responsive in whole or in part to any of the requests herein in full, without abridgement or abbreviation.  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in Your written response what portion of the document is not produced and why it could not be produced.

4.      If any of the documents requested herein are no longer in Your possession, custody, or control, You are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

5.      If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction and the name of the person who ordered or authorized such destruction.

6.      If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reasons, with respect to each such document state:

    a.      the date appearing on such document, or if no date appears, the date on which such document was prepared;

    b.      the name of each person to whom such document was addressed;

    c.      the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

    d.      the name of each person who signed such document or, if not signed, the name of each person who prepared it;

    e.      the name of each person making any contribution to the authorship of such document;

    f.      the job title or position of each person identified in subparagraph (b), (c), (d) and (e) above;

    g.      the date such document was received or discussed by each person identified in subparagraphs (b) or (c) above;

    h.      the general nature or description of such document and its number of pages; and the specific ground(s) upon which the privilege or work product rests.

7.      Documents produced pursuant to this subpoena will be made under and pursuant to the terms of the Stipulated Protective Order ("Protective Order"), a copy of which is attached herein as Attachment B.

## REQUESTS FOR PRODUCTION

1.      Documents sufficient to show the operation and distribution of Your Streaming Product(s), including those of any components or instances thereof, in relation to or within any computers, mobile devices, servers, cloud instances, or the like, from July 28, 2016 to the present.

2.      Your communications with the Defendant or any person acting on behalf of the Defendant regarding the above-captioned action, the Patents-in-Suit, and/or Your Streaming Product(s).

3.      Documents sufficient to show any agreements, contracts, or memoranda of understanding between You and Defendant relevant to Your Streaming Product(s).

4.      Documents showing the operation of past versions (including documents sufficient to show the timeframe during which each version was used), and current versions of any of Your Streaming Product(s), used by the Defendant from July 28, 2016 to present, specifically related to the operation of any algorithms, routines, methods, functions, or structures for delivering media content.

5.      Documents sufficient to show any instruction manuals, technical support documents, protocols, programming guides, design specifications, integration guides, configuration guides, or any other reference materials that You provided directly or indirectly to the Defendant from July 28, 2016 to present related to Your Streaming Product(s).

6.      All documents and things You received, or have access to, from the Defendant, that relate to the above-captioned action and/or the Patents-in-Suit, whether received informally or in response to a subpoena or other discovery requests in the above-captioned action.

7.      Documents and things sufficient to identify and show in detail the operation and/or the implementation of the source code for Your Streaming Product(s) used by Defendant from July

5

28, 2016 to present of a client device configured to instantiate a client-side player and stream the content from a server configured to host and/or stream the content during the operation of content streaming, including, but not limited to, the source code of Your Streaming Product(s) within the library and/or libraries that were available for access, where accessed, and/or continue to be accessible by the client devices executing Defendant's software along with the name of the library or libraries, names of the files, and format and/or file type of the source code that has been or is provided to the client devices upon instantiation of Your Streaming Product(s).

8.      Documents and things sufficient to identify and show in detail how bit rates in Your Streaming Product(s), from July 28, 2016 to present, are determined, created, stored and implemented for respective content media.

9.      Documents and things sufficient to identify and show in detail all parameters that are included in determining which bit rate in Your Streaming Product(s) is chosen to be sent by the server device during content streaming from July 28, 2016 to the present.

10.     Documents and things sufficient to show the total number of times any server under Your control was accessed in connection with Your Streaming Product(s) provided to the Defendant on a monthly and annual basis from July 28, 2016 to the present.

11.     Documents sufficient to show where media content is stored in connection with Your Streaming Product(s), agreements You or Defendant have in place for enabling the storage of the media content, how You or Defendant retrieve the media content for a particular stream, and how You or Defendant map identified media content to a particular server or storage location.

12.     A business records certification satisfying Federal Rules of Evidence 803(6) and 901 for documents produced in response to this subpoena.

6

**Notices**

PATENT

## U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Dorsney, Kenneth on 12/13/2023 at 4:51 PM EST and filed on 12/13/2023

**Case Name:**        NEC Corporation v. Peloton Interactive, Inc.
**Case Number:**      1:22-cv-00987-CJB
**Filer:**            NEC Corporation
**Document Number:** 112

**Docket Text:**
**NOTICE of NEC's Notice of Deposition and Document Subpoenas to Apple, Inc. by NEC Corporation (Dorsney, Kenneth)**

**1:22-cv-00987-CJB Notice has been electronically mailed to:**

Anupam Sharma     asharma@cov.com

Cameron Paul Clark     cclark@mnat.com

Cortlan S. Hitch     chitch@morrisjames.com

Han Park     hpark@cov.com, docketing@cov.com

Jennifer C. Tempesta     jennifer.tempesta@bakerbotts.com

Karen Jacobs     kjacobs@mnat.com, kjlefiling@mnat.com, mnat_IP_eFiling@morrisnichols.com

Kenneth Laurence Dorsney     kdorsney@morrisjames.com, CHitch@morrisjames.com, ippara@morrisjames.com

Lance Goodman     lance.goodman@bakerbotts.com

Michael E. Knierim     michael.knierim@bakerbotts.com

Michael J. Flynn     mflynn@mnat.com, mjfefiling@mnat.com, mnat_IP_eFiling@morrisnichols.com

Nick Palmieri     nick.palmieri@bakerbotts.com

Richard L. Rainey     rrainey@cov.com

Robert L. Maier     Robert.Maier@BakerBotts.com, marco.giguere@bakerbotts.com

Robert T. Haslam    rhaslam@cov.com, jkoch@cov.com

Sarah J. Guske    sarah.guske@bakerbotts.com, sarah-guske-6120@ecf.pacerpro.com

**1:22-cv-00987-CJB Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/13/2023] [FileNumber=5403364-0] [52e5dbf524b585fbc25fa8359dc18e69b050143989cb90c97b9dca950e4f23b763 6f37a111789f27c06b81a4d6018de2405778a8aa3264914df1dfa7f51efe69]]

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>OUR BODY ELECTRIC, INC.,<br><br>Defendant. | Civil Action No. 22-986 (CJB) |
| NEC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>Defendant. | Civil Action No. 22-987 (CJB) |
| NEC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TONE IT UP, INC.,<br><br>Defendant. | Civil Action No. 22-988 (CJB) |

### PLAINTIFF NEC CORPORATION'S AMENDED NOTICE OF DEPOSITION AND DOCUMENT SUBPOENAS TO LONGTAIL AD SOLUTIONS, INC. (d/b/a "JW PLAYER")

**PLEASE TAKE NOTICE** that, pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, Plaintiff NEC Corporation ("NEC") by and through its undersigned counsel, will take the deposition of LongTail Ad Solutions, Inc. (d/b/a "JW Player") beginning at 10:00 a.m. on August 24, 2023, or another mutually agreed upon date and time, on the topics set forth in Attachment A attached to the deposition subpoena.  The deposition will be held live at Baker Botts'

1

New York office, or at such other time and place as may be mutually agreed.  The deposition will be taken before a certified shorthand reporter and will be recorded on videotape and by real-time transcription service as well as by stenographic means.

Plaintiff will also subpoena documents of JW Player as set forth in Attachment A attached to the document subpoena that are due by August 10, 2023, or at such other time and place as counsel for the parties and JW Player may agree.

Date: July 20, 2023

/s/ Kenneth L. Dorsney
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff*
*NEC Corporation*

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| NEC Corporation | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:22cv00986; 1:22cv00987 |
| Our Body Electric, Inc.; Peloton Interactive, Inc.; Tone It Up, Inc. | ) 1:22cv00988 |
| | ) |
| *Defendant* | ) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:                  Longtail Ad Solutions, Inc. (d/b/a "JW Player")

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:   See Attachment A

| Place: Offices of Baker Botts L.L.P. 30 Rockefeller Plaza, New York, NY 10112-4498 | Date and Time: 08/24/2023 10:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographic and Videographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/20/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ Jennifer C. Tempesta |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   NEC Corporation , who issues or requests this subpoena, are:
Jennifer C. Tempesta, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Tel: (212) 408-2571
jennifer.tempesta@bakerbotts.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:22cv00986; 1:22cv00987; 1:22cv00988

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

For purposes of this subpoena, the following definitions and instructions shall apply.

## DEFINITIONS

1.      "Plaintiff" or "NEC" shall mean Plaintiff NEC Corporation.

2.      "Defendants" shall mean Defendants Our Body Electric, Inc., Peloton Interactive, Inc., and Tone It Up, Inc., individually and/or collectively and all predecessors and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

3.      "Obé" shall mean Our Body Electric, Inc.

4.      "Peloton" shall mean Peloton Interactive, Inc.

5.      "TIU" shall mean Tone It Up, Inc.

6.      "You," "Your," and "Yours," shall mean Longtail Ad Solutions, Inc. (d/b/a "JW Player") and all predecessor and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

7.      "The '101 Patent" shall mean U.S. Patent No. 8,752,101.

8.      "The '809 Patent" shall mean U.S. Patent No. 8,909,809.

9.      "The '427 Patent" shall mean U.S. Patent No. 9,769,427.

10.      "The Patents-in-Suit" shall mean the '101 Patent, the '809 Patent, and the '427 Patent.

11.      "Streaming Product(s)" shall mean all content streaming services provided to the Defendants, including, but not limited to, all versions of software (source code, object code, executables, libraries, make files, build files, scripts, templates, application program interfaces, models), hardware (designs, descriptions, requirements, specifications, modeling), software

1

development kits (SDKs), and any other related documentation, including, but not limited to, documents addressing requirements, architectures, designs, diagrams, templates, libraries, release notes, version information, proposals, specifications, and modeling.

12.     The terms "reflecting," "referring," "relating to," or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

13.     Where appropriate, the use of the singular form of any word shall be taken to mean the plural and vice versa; references to one gender shall include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

## **INSTRUCTIONS**

1.      You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities, email correspondence, or documents in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to the requests herein.  To the extent You use search terms to search for email correspondence, such terms will be provided to NEC in advance so that the parties can meet and confer on any search term modifications.

2.      If You do not produce each document or thing requested herein as they are kept in the usual course of business, You must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

3.      You are to produce all documents that are responsive in whole or in part to any of the requests herein in full, without abridgement or abbreviation.  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in Your written response what portion of the document is not produced and why it could not be produced.

4.      If any of the documents requested herein are no longer in Your possession, custody or control, You are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

5.      If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction and the name of the person who ordered or authorized such destruction.

6.      If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reasons, with respect to each such document state:

a.      the date appearing on such document, or if no date appears, the date on which such document was prepared;

b.      the name of each person to whom such document was addressed;

c.      the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

d.      the name of each person who signed such document or, if not signed, the name of each person who prepared it;

e.      the name of each person making any contribution to the authorship of such document;

f.      the job title or position of each person identified in subparagraph (b), (c), (d) and (e) above;

g.      the date such document was received or discussed by each person identified in subparagraphs (b) or (c) above;

h.      the general nature or description of such document and its number of pages; and the specific ground(s) upon which the privilege or work product rests.

7.      Documents produced pursuant to this subpoena will be made under and pursuant to the terms of the Stipulated Protective Order ("Protective Order"), a copy of which is attached herein as Attachment B.

## DEPOSITION TOPICS

1.      The operation and distribution of Your Streaming Product(s), including those of any components or instances thereof, in relation to or within any computers, mobile devices, servers, cloud instances, or the like, from July 28, 2016 to the present.

2.      Your communications with the Defendants or any person acting on behalf of the Defendants regarding the above-captioned actions, the Patents-in-Suit, and/or Your Streaming Product(s).

3.      The operation of past versions and current versions of any of Your Streaming Product(s), used by the Defendants from July 28, 2016 to present, specifically related to the operation of any algorithms, routines, methods, functions, or structures for delivering media content.

4.      Instruction manuals, technical support documents, protocols, programming guides, design specifications, integration guides, configuration guides, or any other reference materials that You provided directly or indirectly to the Defendants from July 28, 2016 to present related to Your Streaming Product(s).

5.      All documents and things You received, or have access to, from the Defendants, that relate to the above-captioned actions and/or the Patents-in-Suit, whether received informally or in response to a subpoena or other discovery requests in the above-captioned actions.

6.      The operation and/or the implementation of the source code for Your Streaming Product(s) used by Defendants from July 28, 2016 to present, including, but not limited to, the source code within the library titled "react-jw-player," of a client device configured to instantiate a client-side player and stream the content from a server configured to host and/or stream the content during the operation of content streaming.

7. How bit rates in Your Streaming Product(s), from July 28, 2016 to present, are determined, created, stored and implemented for respective content media.

8. Parameters that are included in determining which bit rate in Your Streaming Product(s) is chosen to be sent by the server device during content streaming from July 28, 2016 to the present.

9. The total number of times any server under Your control was accessed in connection with Your Streaming Product(s) provided to any of the Defendants on a monthly and annual basis from July 28, 2016 to the present.

10. The location where media content is stored in connection with Your Streaming Product(s), agreements You or Defendants have in place for enabling the storage of the media content, how You or Defendants retrieve the media content needed for a particular stream, and how You or Defendants map identified media content to a particular server or storage location.

11. Authentication of any documents produced in response to a subpoena for documents in connection with the above-captioned actions.

8

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Delaware

| | |
|---|---|
| NEC Corporation | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:22cv00986; 1:22cv00987 |
| Our Body Electric, Inc.; Peloton Interactive, Inc.; Tone It Up, Inc. | ) 1:22cv00988 |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

LongTail Ad Solutions, Inc. (d/b/a "JW Player")

To:

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Offices of Baker Botts, L.L.P. 30 Rockefeller Plaza, New York, NY 10112-4498 jennifer.tempesta@bakerbotts.com | Date and Time: 08/10/2023 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/20/2023

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Jennifer C. Tempesta |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* NEC Corporation
, who issues or requests this subpoena, are:

Jennifer C. Tempesta, Baker Botts L.L.P., 30 Rockefeller Plaza, New York, NY 10112, Tel: (212) 408-2571

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:22cv00986; 1:22cv00987 ; 1:22cv00988

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

For purposes of this subpoena, the following definitions and instructions shall apply.

## DEFINITIONS

1.      "Plaintiff" or "NEC" shall mean Plaintiff NEC Corporation.

2.      "Defendants" shall mean Defendants Our Body Electric, Inc., Peloton Interactive, Inc., and Tone It Up, Inc., individually and/or collectively and all predecessors and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

3.      "Obé" shall mean Our Body Electric, Inc.

4.      "Peloton" shall mean Peloton Interactive, Inc.

5.      "TIU" shall mean Tone It Up, Inc.

6.      "You," "Your," and "Yours," shall mean Longtail Ad Solutions, Inc. (d/b/a "JW Player") and all predecessor and successors thereof, all parents, affiliates, and subsidiaries; and all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

7.      "The '101 Patent" shall mean U.S. Patent No. 8,752,101.

8.      "The '809 Patent" shall mean U.S. Patent No. 8,909,809.

9.      "The '427 Patent" shall mean U.S. Patent No. 9,769,427.

10.      "The Patents-in-Suit" shall mean the '101 Patent, the '809 Patent, and the '427 Patent.

11.      "Streaming Product(s)" shall mean all content streaming services provided to the Defendants, including, but not limited to, all versions of software (source code, object code, executables, libraries, make files, build files, scripts, templates, application program interfaces, models), hardware (designs, descriptions, requirements, specifications, modeling), software

1

development kits (SDKs), and any other related documentation, including, but not limited to, documents addressing requirements, architectures, designs, diagrams, templates, libraries, release notes, version information, proposals, specifications, and modeling.

12. The terms "reflecting," "referring," "relating to," or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

13. Where appropriate, the use of the singular form of any word shall be taken to mean the plural and vice versa; references to one gender shall include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

## INSTRUCTIONS

1.      You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities, email correspondence, or documents in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to the requests herein.  To the extent You use search terms to search for email correspondence, such terms will be provided to NEC in advance so that the parties can meet and confer on any search term modifications.

2.      If You do not produce each document or thing requested herein as they are kept in the usual course of business, You must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

3.      You are to produce all documents that are responsive in whole or in part to any of the requests herein in full, without abridgement or abbreviation.  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in Your written response what portion of the document is not produced and why it could not be produced.

4.      If any of the documents requested herein are no longer in Your possession, custody or control, You are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

5.      If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction and the name of the person who ordered or authorized such destruction.

3

6.      If the production of any documents responsive to these requests is objected to on the ground of privilege or work product, or for any other reasons, with respect to each such document state:

a.      the date appearing on such document, or if no date appears, the date on which such document was prepared;

b.      the name of each person to whom such document was addressed;

c.      the name of each person, other than the addressee(s) identified in subparagraph (b) above, to whom such document or copy thereof was sent, or with whom such document was discussed;

d.      the name of each person who signed such document or, if not signed, the name of each person who prepared it;

e.      the name of each person making any contribution to the authorship of such document;

f.      the job title or position of each person identified in subparagraph (b), (c), (d) and (e) above;

g.      the date such document was received or discussed by each person identified in subparagraphs (b) or (c) above;

h.      the general nature or description of such document and its number of pages; and the specific ground(s) upon which the privilege or work product rests.

7.      Documents produced pursuant to this subpoena will be made under and pursuant to the terms of the Stipulated Protective Order ("Protective Order"), a copy of which is attached herein as Attachment B.

## DOCUMENT REQUESTS

1.     Documents sufficient to show the operation and distribution of Your Streaming Product(s), including those of any components or instances thereof, in relation to or within any computers, mobile devices, servers, cloud instances, or the like, from July 28, 2016 to the present.

2.     Your communications with the Defendants or any person acting on behalf of the Defendants regarding the above-captioned actions, the Patents-in-Suit, and/or Your Streaming Product(s).

3.     Documents showing the operation of past versions (including documents sufficient to show the timeframe during which each version was used), and current versions of any of Your Streaming Product(s), used by the Defendants from July 28, 2016 to present, specifically related to the operation of any algorithms, routines, methods, functions, or structures for delivering media content.

4.     Documents sufficient to show any instruction manuals, technical support documents, protocols, programming guides, design specifications, integration guides, configuration guides, or any other reference materials that You provided directly or indirectly to the Defendants from July 28, 2016 to present related to Your Streaming Product(s).

5.     All documents and things You received, or have access to, from the Defendants, that relate to the above-captioned actions and/or the Patents-in-Suit, whether received informally or in response to a subpoena or other discovery requests in the above-captioned actions.

6.     Documents and things sufficient to identify and show in detail the operation and/or the implementation of the source code for Your Streaming Product(s) used by Defendants from July 28, 2016 to present, including, but not limited to, the source code within the library titled "react-jw-player," of client device configured to instantiate a client-side player and stream the

5

content from a server configured to host and/or stream the content during the operation of content streaming.

7.      Documents and things sufficient to identify and show in detail how bit rates in Your Streaming Product(s), from July 28, 2016 to present, are determined, created, stored and implemented for respective content media.

8.      Documents and things sufficient to identify and show in detail all parameters that are included in determining which bit rate in Your Streaming Product(s) is chosen to be sent by the server device during content streaming from July 28, 2016 to the present.

9.      Documents and things sufficient to show the total number of times any server under Your control was accessed in connection with Your Streaming Product(s) provided to any of the Defendants on a monthly and annual basis from July 28, 2016 to the present.

10.     Documents sufficient to show where media content is stored in connection with Your Streaming Product(s), agreements You or Defendants have in place for enabling the storage of the media content, how You or Defendants retrieve the media content for a particular stream, and how You or Defendants map identified media content to a particular server or storage location.

11.     A business records certification satisfying Federal Rules of Evidence 803(6) and 901 for documents produced in response to this subpoena.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NEC'S REPLY IN SUPPORT OF ITS MOTION IN *LIMINE* ("MIL") NO. 2
TO EXCLUDE ANY PREVIOUSLY UNDISCLOSED EVIDENCE OR ARGUMENT
THAT PELOTON HAD A GOOD FAITH BELIEF OF NON-INFRINGEMENT OR
<u>INVALIDITY</u>**

Peloton's opposition confirms its intention to make new or legally improper arguments to rebut willfulness.  NEC's motion should be granted.

*First*, good faith *is* an affirmative defense to willful infringement. *See Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30, 34 (D. Del. 1995).[1] Peloton did not provide a basis for such defense in response to NEC's discovery request on affirmative defenses and should not be able to do so now.

*Second*, Peloton points to its alleged lack of concealment or copying, but those arguments are distinct from alleged good faith belief of noninfringement or invalidity, which is the issue at the heart of NEC's motion. Peloton is free to argue it did not copy or conceal its infringement.

*Third*, Peloton's argument that objective reasonableness in litigation-inspired defenses "remains a factor" in proof of willfulness at trial before the jury, is foreclosed by *WBIP, LLC v. Kohler Co.,* which explicitly held that "[p]roof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement."  829 F.3d 1317, 1341 (Fed. Cir. 2016).[2] Notably, Peloton in its citation to *Polara* and *Focus* also conflates the question of willful infringement with the distinct question of enhancement. In any event, Peloton should not be permitted rely on litigation-inspired defenses after declining to waive privilege, and cannot properly avoid waiver here.[3] A party cannot fairly use privilege both as a sword in good faith reliance on the lawyers' conclusions, and as a shield to protect communications about those conclusions (including communications that may be unfavorable to its positions).

---

[1] *Monsanto* cited by Peloton discusses only defenses to infringement, not willfulness, and does not purport to be a comprehensive listing of affirmative defenses. *Moore* was not a patent case.

[2] To the extent that the Federal Circuit cases cited by Peloton seem to conflict with this principle, the cited portions were dicta, and even if not, they were decided later in time than *WBIP* such that *WBIP* governs.  *Newell Companies, Inc. v. Kenney Mfg. Co.,* 864 F.2d 757, 765 (Fed. Cir. 1988).

[3] Peloton's citation to *Sensormatic* is inapt, as it has clearly signaled it intends to rely, during the course of this case, on the litigation defenses devised by its counsel and communicated to Peloton, thereby placing the substance of counsel's advice at issue.

# EXHIBIT 15

NEC's Motion in *Limine* #3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NEC CORPORATION,

      Plaintiff,

      v.

PELOTON INTERACTIVE, INC.,

      Defendant.

Civil Action No. 22-987-CJB

**EXHIBIT NO. 15
NEC'S MOTION IN *LIMINE* ("MIL") NO. 3
TO EXCLUDE EVIDENCE OR ARGUMENT THAT
THE '809 PATENT IS INVALID**

Peloton should be precluded from offering any evidence, testimony, or argument suggesting that U.S. Patent No. 8,909,809 (the "'809 Patent") is invalid, because Peloton's invalidity case rests entirely on a claim construction of "the bit rate" that the Court has now rejected. *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284- LPS, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019) (granting motion in limine excluding "witness testimony inconsistent with the Court's constructions"); *3G Licensing SA v. HTC Corporation*, C. A. No. 17-cv-83-GBW, 2023 WL 6442140, at *2 (D. Del. Oct. 3, 2023).

On March 16, 2026, the Court adopted Peloton's proposed construction of "the bit rate" as "the bit rate of the content data *currently* transmitted," and rejected NEC's competing construction of "the bit rate of the content data *to be* transmitted." D.I. 453. However, prior to that and during expert discovery, Peloton and its invalidity expert, Dr. Almeroth, only "applied NEC's proposed constructions of the limitation language [for this term 'the bit rate']." Almeroth Reply Report, ¶¶ 326, 332, 378, 425, 472, 576, 610 (attached as Ex. A); *see also, e.g.*, Almeroth Opening Report, ¶¶751, 757-758, 764-765, 820, 823-824, 831, 871, 874, 876-877, 879-881, 887, 890, 892-893, 951, 959, 1078, 1087, 1151, 1161, 1223, 1231 (attached as Ex. B). Although Dr. Almeroth states, in a section regarding claim construction, that "unless otherwise noted….[he] applied the Agreed Constructions and the Disputed Construction," (*see* Ex. B, ¶77; Ex. A, ¶¶16, 20-22) his analysis of the claim limitation at issue states, for every prior art reference, that his opinions are "under NEC's infringement theory." Ex. B, ¶¶751, 757-758, 764-765, 820, 823-824, 831, 871, 874, 876-877, 879-881, 887, 890, 892-893, 951, 959, 1078, 1087, 1151, 1161, 1223, 1231. Nowhere in his invalidity analysis does Dr. Almeroth apply Peloton's proposed construction for "the bit rate." Indeed, there is no analysis or explanation of how the prior art discloses "the bit rate of the content data *currently* transmitted" as proposed by Peloton and adopted by the Court.

1

In other words, Dr. Almeroth only applied NEC's proposed construction of this term for purposes of his invalidity analysis.  NEC's proposed construction was rejected. Dr. Almeroth did not provide any analysis under the construction adopted by the Court. Thus, Dr. Almeroth's only invalidity opinions for the '809 Patent—and any invalidity arguments derived from them that Peloton could raise at trial—do not apply the controlling claim construction, and would therefore be wholly irrelevant to the issues within the scope of the trial. Under Federal Rules of Evidence 402 and 403, and consistent with the settled practice of this Court, such invalidity evidence and argument should be excluded. *Siemens Mobility*, 2019 WL 77046, at \*1; *3G Licensing SA v. HTC Corporation*, 2023 WL 6442140, at \*2.

Only relevant evidence is admissible under Rule 402. Evidence is relevant only if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence premised on a rejected claim construction cannot make any fact "of consequence" more or less probable because the jury must apply only the Court's construction. Evidence or argument that contradicts or circumvents that construction is irrelevant as a matter of law. Fed. R. Evid. 402; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Indeed, this District has stated that "both sides are precluded from presenting evidence and arguments inconsistent with [the] Court's claim construction." *3G Licensing SA v. HTC Corporation*, 2023 WL 6442140, at \*2. Accordingly, under Rule 402, Peloton should be precluded from offering any evidence, testimony, or argument suggesting that the '809 Patent is invalid.

Even if marginally probative, such evidence must be excluded under Rule 403 because its admission would confuse the jury and cause unfair prejudice. Rule 403 mandates exclusion where probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the

2

issues, [or] misleading the jury." Fed. R. Evid. 403. The risk here is acute: if Peloton is permitted to present invalidity theories resting on a rejected claim construction, the jury will be invited to assess the prior art against a claim scope the Court has foreclosed. This would "confuse the issues" because the jury would be asked to perform an invalidity analysis under one construction while simultaneously being instructed to apply a different construction when determining infringement—an impossible task that is contrary to the law and invites inconsistent verdicts. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1429 (Fed. Cir. 1997) ("[C]laims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.") (internal citations omitted). To the extent Peloton were permitted to have its expert testify regarding the application of the Court's construction of this term to the prior art—which was not included in his report—this would result in manifest prejudice to NEC. NEC would be forced to defend claims it was never required to defend under the Court's controlling construction. Finally, the probative value of Peloton's invalidity evidence (which is no value at all, given that it does not apply the correct claim construction) is substantially outweighed by these dangers and the undue prejudice to NEC, warranting exclusion under Rule 403.

For the foregoing reasons, NEC respectfully requests that the Court preclude Peloton and Dr. Almeroth from introducing any evidence, testimony, or argument that the '809 Patent is invalid. *Siemens Mobility*, C.A. No. 16-284- LPS, 2019 WL 77046, at *1 (granting motion in limine excluding "witness testimony inconsistent with the Court's constructions"). Because Dr. Almeroth cannot reach a complete conclusion of invalidity of the '809 Patent without reliance on NEC's rejected construction of "the bit rate," NEC respectfully requests that the Court also preclude Peloton from introducing any evidence of invalidity of the '809 Patent that relies on Dr. Almeroth's testimony.

# EXHIBIT A

# REDACTED IN ITS ENTIRETY

# NEC's MIL No. 3

# EXHIBIT B

# REDACTED IN ITS ENTIRETY

## NEC's MIL No. 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-987 (CJB) |
| v. | ) | |
| | ) | **HIGHLY CONFIDENTIAL –** |
| PELOTON INTERACTIVE, INC., | ) | **ATTORNEYS' EYES ONLY** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PELOTON'S OPPOSITION TO NEC'S MOTION *IN LIMINE* #3**

**(TO EXCLUDE EVIDENCE OR ARGUMENT THAT
THE '809 PATENT IS INVALID)**

**Exhibit 15 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #3**

NEC's Motion, which seeks the dispositive resolution of Peloton's claim that the '809 Patent is invalid, "is essentially a motion for summary judgment, which is not a proper basis for a MIL." *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 2020 WL 509182, at *1 (D. Del. Jan. 31, 2020); *see also Johns Hopkins Univ. v. Alcon Lab'ys Inc.*, 2018 WL 4178159, at *21 (D. Del. Aug. 30, 2018) ("A motion in limine is not the proper vehicle by which to eliminate issues from a case.").[1] The Motion should be denied on that basis alone.

To the extent the Motion is nevertheless considered, NEC's Motion rests on a fundamental mischaracterization of Dr. Almeroth's opinions. Contrary to NEC's assertion that Dr. Almeroth "only" applied NEC's proposed constructions for the term "the bit rate," NEC MIL 3 at 1, his reports and testimony make clear that he analyzed validity under *all* relevant constructions. NEC's Motion ignores Dr. Almeroth's explicit statements, misconstrues the language of his reports, and mischaracterizes illustrative examples as wholesale reliance on NEC's construction. NEC's Motion should be denied in full.

As NEC itself notes, Dr. Almeroth stated categorically that "[u]nless otherwise noted in [his] report, [he] applied the Agreed Constructions and the Disputed Constructions," i.e., *all* constructions. NEC MIL 3, Ex. B (Almeroth Op.) ¶ 77; *see also id.*, Ex. A (Almeroth Reply) ¶ 326 ("In addition, I relied upon and analyzed NEC's Final Infringement Contentions and NEC's interpretations of the limitations therein, and offered opinions on validity under NEC's interpretation of *Peloton's constructions*.") (emphasis added); *see also id.*, Ex. A (Almeroth Reply) ¶¶ 332, 378, 425, 472, 576, 610 (same). And for each limitation, Dr. Almeroth explained how it was anticipated or rendered obvious without restriction to a particular construction. *See, e.g., id.*,

---

[1] NEC's failure to put this issue forward for summary judgment rings especially hollow given that it was NEC that told the Court that "the parties can proceed with dispositive and *Daubert* motions without decisions on claim construction." (D.I. 358 at 1).

**Exhibit 15 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #3**

Ex. B (Almeroth Op.) ¶¶ 759–762 (noting that "Zhang discloses and renders obvious this limitation," followed by a general analysis).

Nowhere did Dr. Almeroth state that he was limiting himself to NEC's construction of the term "the bit rate." To the contrary, as NEC itself acknowledges, after his more general analysis, Dr. Almeroth's "analysis of the claim limitation at issue states, for every prior art reference, . . . his opinions are 'under NEC's *infringement theory*'"—not NEC's *construction*. NEC MIL 3 at 1 (emphasis added). NEC's argument hinges on improperly conflating "NEC's infringement theory" with "NEC's proposed [claim] construction," *id.* at 2. But the distinction is crucial. Unless NEC contends that none of its infringement theories survive the Court's adoption of Peloton's construction of "the bit rate,"[2] its position collapses under its own logic: Dr. Almeroth's invalidity analysis addresses the same claim reading embodied in NEC's infringement theories, *see 01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 743 (Fed. Cir. 2018), meaning those opinions remain relevant to the same extent as NEC's infringement case. Either both remain viable, or neither does—NEC cannot have it both ways.[3]

A closer review of one of the example disclosures Dr. Almeroth found in the prior art "under NEC's infringement theory"—which NEC relies on here to support its motion—further

---

[2] Though Peloton welcomes any potential simplification of the issues before trial, NEC's statements do not suggest it intends to forego its infringement positions. *See* D.I. 358 at 2 n.1 ("For each of the disputed terms, Dr. Rubin, NEC's technical expert, offers infringement opinions even under Peloton's constructions"); *see also* D.I. 531 (NEC arguing that its expert Dr. Rubin also sets forth opinions "that if the term ['the bit rate'] is construed as 'the bit rate of the content data currently transmitted,' as it now has been, the Accused Products still infringe").

[3] Any attempt by NEC to argue that Dr. Almeroth's opinions are limited to one particular infringement theory should also be rejected. Indeed, Dr. Almeroth explicitly rejected this misconception at his deposition. *See, e.g.*, Ex. A (Almeroth Dep. Tr. at 267:13–16 (Jan. 23, 2026)) ("Q. And, in particular, you are mapping Zhang to one example of NEC's infringement theories; correct? A. No. I think that oversimplifies the analysis that's in the report."); *see also* discussion *infra*.

**Exhibit 15 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #3**

highlights NEC's error in suggesting that "Dr. Almeroth cannot reach a complete conclusion of invalidity of the '809 Patent without reliance on NEC's rejected construction of 'the bit rate.'" NEC MIL 3 at 3. In Dr. Almeroth's example in his invalidity report discussing limitation 1[e] (addressing "the bit rate"), he states that, in its infringement contentions, "NEC . . . argues that this limitation is satisfied where the bit rate under consideration is within a range between 'a lower bound of the previous bit rate and/or an upper bound of the current bandwidth[.]'" NEC MIL 3, Ex. B (Almeroth Op. Rep.) ¶ 763. This is the exact same theory that NEC asserts should establish infringement under the Court's recent construction of "the bit rate." *See* D.I. 531 at 1 (citing Rubin Op. ¶ 287, referring to a "first" example of infringement). This purported "example" of infringement refers to the same theory reproduced above that Dr. Almeroth relies upon, where "the bit rate" range refers to "a lower bound of the previous bit rate . . . and/or an upper bound of the current bandwidth." *See* Ex. B (Rubin Op., Ex. 1) ¶ 256. Thus, even these self-same examples cherrypicked by NEC showcase the continuing relevance of Dr. Almeroth's invalidity opinions.

In summary, MIL No. 3 should be rejected because (1) it is a stealth summary judgment motion, (2) it elides Dr. Almeroth's statements that his analysis addressed all of the parties' disputed constructions, (3) it mischaracterizes examples from Dr. Almeroth's report as being directed to NEC's *constructions* as opposed to *infringement theories*, and (4) it ignores that NEC now relies on these same infringement theories referenced by Dr. Almeroth to argue that Peloton infringes under the Court's construction of "the bit rate." NEC's Motion should be denied.

**Exhibit 15 to the Pretrial Order**                    **Peloton's Opposition to NEC's MIL #3**

Dated: July 1, 2026

| | |
|---|---|
| OF COUNSEL: | Respectfully submitted, |

COVINGTON & BURLING LLP                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert Haslam (*pro hac vice*)
3000 El Camino Real                        */s/    Michael J. Flynn*
5 Palo Alto Square 10th Floor
Palo Alto, CA 94306-2112                   Karen Jacobs (#2881)
(650) 632-4700                             Michael J. Flynn (#5333)
rhaslam@cov.com                            Cameron P. Clark (#6647)
                                           1201 North Market Street
Philip Irwin (*pro hac vice*)              P.O. Box 1347
30 Hudson Yards                            Wilmington, DE 19899
New York, NY 10001-2170                    (302) 658-9200
(212) 841-1000                             kjacobs@morrisnichols.com
pirwin@cov.com                             mflynn@morrisnichols.com
                                           cclark@morrisnichols.com
Richard Rainey (*pro hac vice*)
Emily Mondry (*pro hac vice*)              *Attorneys for Defendant*
One City Center                            *Peloton Interactive, Inc.*
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
rrainey@cov.com
emondry@cov.com

4

# EXHIBIT A

## REDACTED IN ITS ENTIRETY

# EXHIBIT B

## REDACTED IN ITS ENTIRETY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NEC'S REPLY BRIEF IN SUPPORT OF ITS MOTION IN *LIMINE* ("MIL")
NO. 3 TO EXCLUDE EVIDENCE OR ARGUMENT THAT
THE '809 PATENT IS INVALID**

"It is a bedrock principle of patent law that testimony that is contrary to or ignores the court's claim construction is unhelpful to the trier of fact and is therefore inadmissible." *Kaneka Corp. v. Zhejiang Med. Co.*, No. 11-02389 SJO, 2017 WL 10591760, at *7 (C.D. Cal. Feb. 22, 2017); *e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming the district court's exclusion of expert testimony regarding invalidity which was "based on an impermissible claim construction" and "could prejudice and confuse the jury"). With its motion, NEC seeks to exclude specific evidence that is irrelevant and would confuse the jury—i.e. "exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see, e.g.*, *Natera, Inc. v. ArcherDX, Inc.*, C.A. No. 20-125-GBW, 2023 WL 12139680, at *2 (D. Del. May 3, 2023).

Peloton recasts NEC's motion as a "stealth" summary judgment motion. It is not. NEC does not ask the Court to resolve the ultimate question of validity; it asks the Court to exclude specific, identified opinions—those of Dr. Almeroth—that are irrelevant because they never apply the Court's construction. Peloton is unable to point to a single instance in Dr. Almeroth's report where he applies the Court's construction of the term "the bit rate" in assessing the prior art. This Court routinely uses that mechanism to bar "witness testimony inconsistent with the Court's constructions." *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019).

Peloton next insists that Dr. Almeroth tied his opinions to "NEC's infringement theory," not "NEC's construction," and that the two are distinct. The distinction is illusory. Dr. Almeroth stated that he "applied NEC's proposed constructions of the limitation language." *See* Ex. A; Ex. B. In contrast, Dr. Rubin offers opinions expressly under the Court's adopted construction of "the bit rate." For the foregoing reasons, NEC respectfully requests that the Court grant MIL No. 3.