**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-987-CJB |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>FINAL JURY INSTRUCTIONS</u>**

**TABLE OF CONTENTS**

1.  GENERAL INSTRUCTIONS ................................................................................ 1

   1.1  INTRODUCTION ................................................................................ 1

   1.2  JURORS' DUTIES ................................................................................ 2

   1.3  USE OF NOTES ................................................................................ 3

   1.4  EVIDENCE DEFINED ................................................................................ 4

   1.5  DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................ 6

   1.6  CONSIDERATION OF EVIDENCE ................................................................ 7

   1.7  CREDIBILITY OF WITNESSES ................................................................ 8

   1.8  EXPERT TESTIMONY ................................................................................ 9

   1.9  DEPOSITION TESTIMONY ................................................................ 10

   1.10  NUMBER OF WITNESSES ................................................................ 11

   1.11  USE OF INTERROGATORIES ................................................................ 12

   1.12  ADMITTED OR UNCONTESTED FACTS ................................................ 13

   1.13  EXHIBITS AND DEMONSTRATIVES ................................................ 14

   1.14  BURDENS OF PROOF ................................................................ 15

2.  THE PARTIES AND THEIR CONTENTIONS ................................................ 16

3.  SUMMARY OF THE PATENT ISSUES ................................................ 17

4.  PATENTS ................................................................................ 18

   4.1  THE ROLE OF CLAIMS IN A PATENT ................................................ 18

   4.2  INDEPENDENT  CLAIMS ................................................................ 19

   4.3  CONSTRUCTION OF CLAIM TERMS ................................................ 20

5.  INFRINGEMENT ................................................................................ 21

   5.1  INFRINGEMENT GENERALLY ................................................................ 21

   5.2  DIRECT INFRINGEMENT – LITERAL INFRINGEMENT ................................ 22

   5.3  INFRINGEMENT OF A SYSTEM CLAIM ................................................ 23

   5.4  INFRINGEMENT OF A METHOD CLAIM ................................................ 24

   5.5  INDIRECT INFRINGEMENT – INDUCED INFRINGEMENT ................................ 25

   5.6  INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT ................ 27

6.  INVALIDITY ................................................................................ 29

   6.1  PRIORITY DATE ................................................................................ 30

   6.2  INVALIDITY – WRITTEN DESCRIPTION ................................................ 31

7.  DAMAGES ................................................................................ 33

7.1    DAMAGES – GENERALLY ................................................................. 33

7.2    REASONABLE ROYALTY—ENTITLEMENT ....................................... 34

7.3    REASONABLE ROYALTY – DEFINITION ............................................ 35

7.4    REASONABLE ROYALTY – LUMP SUM V. RUNNING ROYALTY .... 36

7.5    REASONABLE ROYALTY – RELEVANT FACTORS ............................ 37

7.6    REASONABLE ROYALTY – COMPARABLE AGREEMENTS ............. 40

7.7    REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT ........ 41

7.8    REASONABLE ROYALTY – TIMING .................................................. 42

**8.    WILLFUL INFRINGEMENT ......................................................... 43**

**9.    DELIBERATION AND VERDICT ................................................. 44**

9.1    INTRODUCTION ............................................................................. 44

9.2    UNANIMOUS VERDICT .................................................................. 45

9.3    DUTY TO DELIBERATE .................................................................. 46

9.4    SOCIAL MEDIA ............................................................................. 47

9.5    COURT HAS NO OPINION ............................................................. 48

1.      **GENERAL INSTRUCTIONS**

1.1      **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

1

### 1.2    JURORS' DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes any instructions I gave you before and during the trial and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    USE OF NOTES

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is a tendency to attach undue importance to matters that have been written down. Some testimony that is considered unimportant at the time presented, and therefore not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### 1.4    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case only includes what the witnesses said while they were testifying under oath (including any deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any stipulations to which the parties have agreed.

The attorneys showed you certain slides, charts and graphics to illustrate testimony from witnesses. Those are called demonstratives. The purpose of those demonstratives was to summarize or otherwise help you understand certain evidence in the case. Unless I have specifically admitted them into evidence, those demonstratives are not evidence themselves, even if they refer to, identify, or summarize evidence.

Nothing else is evidence. The following things are not evidence: statements, arguments, and questions by the lawyers; objections by lawyers; any testimony I have told you to disregard; and anything you may have seen or heard about this case outside the courtroom. The arguments of the lawyers are offered solely as an aid to help you assess the evidence presented at trial. If I sustained an objection during the trial, you should ignore the question that was asked. If I overruled an objection, you should treat the answer to the question like any other. Whether sustained or overruled, the objections themselves that the lawyers made should be ignored. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence, but those objections are not evidence themselves. Do not consider the fact that I sustained or denied an objection as any indication of my opinion of the case or of what your verdict should be.

A further word about statements and arguments of counsel. The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the

4

law. An attorney may argue all reasonable conclusions from evidence in the record. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion that an attorney has offered during opening or closing statements, or at any other time during the course of the trial. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

If you were instructed that an item of evidence was received for a limited purpose, you must follow that instruction.

If I ordered testimony or exhibits stricken from the record and instructed you to disregard such testimony or exhibit, you should not consider any such stricken or excluded testimony or exhibit. Do not speculate about what a witness might have said or what an exhibit might have shown.

During the presentation of evidence in this case, you heard reference to other patents owned by NEC.  Your job, however, is only to decide issues relating to the '101 Patent.  Therefore, you should not consider evidence relating to any other NEC patents in rendering your verdict in this case.

You are to make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.5    DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.6    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.7    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 1.8    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.9    DEPOSITION TESTIMONY

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video excerpts from a deposition. If played by video, the deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

**1.10    NUMBER OF WITNESSES**

Do not weigh the evidence based only on the number of witnesses who testified. Instead, consider how credible each witness was, and how much weight you think their testimony deserves.

## 1.11    USE OF INTERROGATORIES

You may have heard answers that the parties gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

You must consider the parties' answers to interrogatories in the same manner as if the answers were made from the witness stand.

### 1.12   ADMITTED OR UNCONTESTED FACTS

The parties have stipulated that certain facts are not disputed, or have agreed to or stipulated that they are true, and those stipulations have been read to you during trial, sometimes referred to as "Admitted Facts" or "Uncontested Facts." You must treat these facts as having been proved for the purposes of this case.

## 1.13    EXHIBITS AND DEMONSTRATIVES

During the course of the trial, you have seen many exhibits, and many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room during your deliberations.

There are other exhibits (including charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," will not be in the jury room and have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, the underlying testimony of the witness that you heard when you saw the demonstrative exhibits is the evidence.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records may not be here. You should give them only such weight as you think they deserve.

### 1.14    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

This is a civil case in which NEC is the owner of the patent (the "Asserted Patent") that it alleges Peloton infringes. A party asserting patent infringement has the burden of proving infringement, whether that infringement was willful, and the amount of monetary damages by a preponderance of the evidence. That means the party asserting infringement has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side. If the scale should remain equal or tip in favor of the alleged patent infringer, you must find for the alleged patent infringer.

As I noted earlier, Peloton contends that the Asserted Patent is invalid. A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the asserted claims are invalid. Clear and convincing evidence means that it is highly probable that the fact sought to be proved by the evidence is true. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement.

Those of you who are familiar with criminal cases may have heard the term "proof beyond a reasonable doubt." That is a stricter standard of proof that applies only in criminal cases. It does not apply in a civil case such as this and you should, therefore, put it out of your mind.

15

## 2.    THE PARTIES AND THEIR CONTENTIONS

I will now review for you the subject matter of this case, who the parties are, and what each of them contends.

This is a patent case. NEC alleges patent infringement against Peloton. Peloton filed counterclaims, alleging the Asserted Patent is not infringed and is invalid.

You have heard evidence regarding the Asserted Patent in this case.

NEC contends that Peloton infringes certain claims of U.S. Patent No. 8,752,101 (the "'101 Patent") by making, using, selling, and offering for sale its fitness products incorporating certain video players in the United States. In this case, we referred to these asserted claims together as the "Asserted Claims." NEC seeks damages for the alleged infringement. NEC also contends that Peloton's alleged infringement of the Asserted Claims has been willful. Peloton denies that it infringes any of the Asserted Claims and contends that the Asserted Claims are invalid. Peloton contends that NEC is not entitled to any damages and denies that any infringement is willful.

**3.      SUMMARY OF THE PATENT ISSUES**

You must decide the following issues in this case according to the instructions that I give you:

(1) Whether NEC has proven by a preponderance of the evidence that Peloton infringes one or more of the Asserted Claims of the '101 Patent.

(2) Whether Peloton has proven by clear and convincing evidence that one or more of the Asserted Claims of the '101 Patent are invalid.

(3) If you decide that any Asserted Claim is both infringed and not invalid, what monetary damages NEC has proven by a preponderance of the evidence that it is entitled to.

(4) If you decide that any Asserted Claim is infringed and not invalid, whether NEC has proven by a preponderance of the evidence that Peloton's infringement was willful.

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

17

4.      **PATENTS**

4.1     **THE ROLE OF CLAIMS IN A PATENT**

Before you can decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. Only the claims of a patent can be infringed, not other portions of the patent.

The claims are intended to define, in words, the boundaries of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. Each of the claims must be considered individually.

Each claim is made up of claim elements (also referred to as claim limitations). A claim "element" (or claim "limitation") is another word for a requirement of a claim. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs, and glue are each a separate limitation of the claim. A patent claim is infringed only if an accused product includes each and every element in that patent claim.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

18

**4.2    INDEPENDENT  CLAIMS**

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claims 1, 11, 22, and 26 are independent claims.  An independent claim must be read separately from other claims to determine the scope of the claim.

## 4.3    CONSTRUCTION OF CLAIM TERMS

Before deciding if there is any infringement of the Asserted Claims, you will first need to understand what each claim covers. The law says that it is my role to define the terms of the claims and it is your duty to apply my definitions. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity. You must ignore any different interpretation that you may either believe is true or different interpretations referenced by the witnesses or by the attorneys.

You are advised that the following definitions for the following terms appearing in certain Asserted Claims must be applied:

| Claim Term | Court's Construction |
|---|---|
| "content" | video and/or audio (i.e., all or a portion of the artistic work that has been transmitted from the server) |
| "code rate" | a rate representing the data amount (the data size, e.g., the number of bytes) of content data for reproducing content at constant speed (reproducing content at 1× speed) for a unit time (e.g., one second) |

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

20

**5.    INFRINGEMENT**

**5.1    INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not a patent owner has proven that an alleged infringer has infringed an asserted patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

As I stated earlier, NEC alleges that Peloton infringes the Asserted Claims.

A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused infringing activity is covered by at least one claim of the patent. Indirect infringement results if a defendant induces another to infringe a claim of a patent or contributes to the infringement of a claim of a patent by another. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, NEC has alleged that Peloton directly infringes the Asserted Claims. In addition, NEC has alleged that Peloton's customers—that is, the users of Peloton's subscription products—directly infringe the Asserted Claims and Peloton is liable for actively inducing or contributing to that direct infringement by Peloton's customers.

**5.2    DIRECT INFRINGEMENT – LITERAL INFRINGEMENT**

To prove direct, literal infringement of the Asserted Claims in this case, NEC must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Peloton made, used, sold, or offered for sale within the United States a product or process that meets all of the requirements of a claim without the patent owner's permission during the time the Asserted Patent was in force. There is no knowledge or intent requirement for direct infringement. You must compare the product or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

You must determine, separately for each Asserted Claim, whether or not there is infringement.

### 5.3    INFRINGEMENT OF A SYSTEM CLAIM

NEC alleges that Peloton infringes the system claims 1, 22, and 26 of the '101 Patent by controlling the actions of Peloton's customers, and/or Akamai.

To prove direct infringement of a system claim, NEC must prove by a preponderance of the evidence that Peloton makes, uses, sells, offers to sell, or imports the claimed system. To "use" a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it.

## 5.4    INFRINGEMENT OF A METHOD CLAIM

NEC alleges that Peloton, Peloton's customers, and/or Akamai collectively infringe the method claim 11 of the '101 Patent.

Direct infringement of a method claim occurs where all steps of a claimed method are performed by or are attributable to a single party. Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.

For infringement to be proved, NEC must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed and (2) that the acts of Peloton's customers and/or Akamai are attributable to Peloton because Peloton directs or controls the acts of Peloton's customers and/or Akamai.

To prove that Peloton directed or controlled the acts of Peloton's customers and/or Akamai, NEC must prove that Peloton's customers and/or Akamai performed the claim step(s) in order to receive a benefit from Peloton and that Peloton established how or when the claim step(s) were performed.

24

### 5.5 INDIRECT INFRINGEMENT – INDUCED INFRINGEMENT

NEC alleges that Peloton is liable for infringement by actively inducing others to directly infringe the Asserted Patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A party induces patent infringement if it purposefully causes, urges, instructs, aids, or encourages another to use a product in a manner that infringes an asserted claim. In order to find a party to have induced infringement, there must be direct infringement of an asserted claim; if there is no direct infringement by anyone, there can be no induced infringement. Inducing infringement cannot occur unintentionally.

Peloton is liable for active inducement only if NEC proves by a preponderance of the evidence:

(1)     that the acts actually carried out by Peloton's customers directly infringe that claim;

(2)     that Peloton took action during the time the Asserted Patent was in force that was intended to cause and led to the infringing acts by Peloton's customers; and

(3)     that Peloton was aware of the Asserted Patent and knew that the acts, if taken, would constitute infringement of that patent or that Peloton believed there was a high probability that the acts by Peloton's customers would infringe an NEC patent and Peloton took deliberate steps to avoid learning of that infringement.

If you find that Peloton was aware of the Asserted Patent, but believed that the acts it encouraged did not infringe the Asserted Patent, Peloton cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that Peloton's customers directly infringe the claim. Nor is it sufficient that Peloton was aware of the act(s) by Peloton's customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Peloton specifically intended Peloton's

25

customers to infringe the Asserted Patent or that Peloton believed there was a high probability that Peloton's customers would infringe the Asserted Patent, but deliberately avoided learning the infringing nature of Peloton's customers' acts.

The mere fact, if true, that Peloton knew or should have known that there was a substantial risk that Peloton's customers' acts would infringe the Asserted Patent would not be sufficient to support a finding of active inducement of infringement.

### 5.6    INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

A second form of indirect infringement is contributory infringement. Contributory infringement can occur by selling, offering for sale, or importing into the United States a component that is used to infringe one of the patent claims. NEC argues that Peloton is liable for contributory infringement by contributing to the direct infringement of the Asserted Patent by Peloton's customers. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order to find contributory infringement, there must be direct infringement of an asserted claim; if there is no direct infringement by anyone, there can be no contributory infringement. As with induced infringement, to establish contributory infringement, NEC must prove by a preponderance of the evidence that Peloton had knowledge of both the patent and direct infringement of that patent by Peloton's customers. Specifically, to prove contributory infringement, NEC must prove each of the following by a preponderance of the evidence:

    (1)    Peloton sold, offered for sale, or imported within the United States a component for use in an infringing product or for use in the infringing method, during the time the Asserted Patent was in force;

    (2)    the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

    (3)    the component or apparatus constitutes a material part of the claimed invention;

    (4)    Peloton was aware of the Asserted Patent and knew that the component or apparatus was especially made or adapted for use in an infringing method or product; and

    (5)    Peloton's customers use the component or apparatus to directly infringe a claim.

A "staple article of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or other than in the patented

27

method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical. All of these things must be proven by direct or circumstantial evidence before you may find contributory infringement.

**6.    INVALIDITY**

I will now instruct you on the rules you must follow in deciding whether or not Peloton has proven that any of the Asserted Claims in this case are invalid. To prove that any claim of a patent is invalid, Peloton must persuade you by clear and convincing evidence; that is, that it is highly probable that the claim is invalid.

I previously told you that infringement must be assessed on a claim-by-claim basis. That is also true for invalidity. Invalidity must be determined on a claim-by-claim basis.

**6.1    PRIORITY DATE**

The inventor of the '101 Patent filed a Japanese Patent Application on November 5, 2009.

This is the effective filing date of the Asserted Patent for the purposes of assessing validity.

## 6.2    INVALIDITY – WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the written description requirement. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's filing date.

In this case, Peloton contends that the Asserted Claims of the '101 Patent are invalid because the specification does not contain an adequate written description of the invention. To succeed, Peloton must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of November 5, 2009, would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims of the '101 Patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill. In other words, that a person having ordinary skill in the art could have envisioned the claimed invention does not satisfy the written description requirement. Original claims may be considered for written description.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams,

31

formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

If you find that one or more of the Asserted Claims did not comply with the written description requirement, you must find that claim invalid.

## 7.    DAMAGES

### 7.1    DAMAGES – GENERALLY

If you find that Peloton is liable for infringing any Asserted Claim that is not invalid, you must then consider what amount of damages to award to NEC. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate the patent owner for the infringement. They are not meant to punish an infringer.

NEC has the burden to establish the amount of its damages by a preponderance of the evidence. While NEC is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

You must be careful to ensure that any damages award is no more and no less than the value of the patented invention. I will give more detailed instructions regarding damages shortly. Note, however, that a patent owner is entitled to recover no less than a reasonable royalty for each infringing act.

## 7.2    REASONABLE ROYALTY—ENTITLEMENT

If you find that a patent claim is infringed and not invalid, then the patent holder is entitled to at least a reasonable royalty to compensate it for that infringement.

## 7.3    REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent owner in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent owner and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent owner and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the asserted patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### 7.4    REASONABLE ROYALTY – LUMP SUM V. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

**7.5     REASONABLE ROYALTY – RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patent owner for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patent, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patent owner) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patent owner who was willing to grant a license.

38

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

## 7.6    REASONABLE ROYALTY – COMPARABLE AGREEMENTS

When determining a reasonable royalty, you may consider evidence concerning the amounts or rates that other parties have paid for rights to the patent in question, or for rights to similar technologies.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

### 7.7    REASONABLE ROYALTY – ATTRIBUTION/APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or a defendant's size or market position.

In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

A product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest saleable unit" that infringes each asserted claim of the patent and has close relation to the claimed invention. Where the smallest saleable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product that is attributable to the patented technology.

## 7.8   REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the hypothetical negotiation in July 2016. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started and license agreements entered into by the parties after the date of the hypothetical negotiation.

**8.    WILLFUL INFRINGEMENT**

To prove willful infringement, NEC must persuade you that Peloton infringed a claim of the Asserted Patent that you also have found not to be invalid.  You must also find that it is more likely true than not that Peloton intentionally ignored or recklessly disregarded that claim.  You must base your decision on Peloton's knowledge and actions at the time of infringement.  Evidence that Peloton had knowledge of the Asserted Patent at the time of infringement by itself is not sufficient to show willfulness.  Rather, to show willfulness, you must find that Peloton engaged in additional conduct evidencing deliberate or reckless disregard of NEC's patent rights.

In deciding whether Peloton willfully infringed, you should consider all of the facts surrounding the infringement including: whether Peloton knew, or should have known, that its conduct involved an unreasonable risk of infringement and whether Peloton had a reasonable belief at the time of infringement that its products did not infringe the Asserted Patent.

If you decide that there was willful infringement, that decision should not affect any damage award you give in this case.

## 9. DELIBERATION AND VERDICT

### 9.1 INTRODUCTION

That concludes my instructions on the law. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone other than your fellow jurors how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

### 9.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But you should not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.

I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### 9.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

## 9.4    SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, TikTok, WeChat, WhatsApp, Snapchat or Twitter, now known as X to discuss this case. You should not communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

## 9.5    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.